ROB BONTA
Attorney General of California
BRANDON WALKER
STATE BAR NO. 254581
Supervising Deputy Attorney General
JACK C. NICK
Deputy Attorney General
State Bar No. 160196
ISABELLA A. PANICUCCI
DEPUTY ATTORNEY GENERAL
STATE BAR NO. 318984
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013-1230
  Telephone:  (213) 269-6173
  Fax:  (916) 731-2144
  E-mail:  jack.nick@doj.ca.gov
*Attorneys for Defendant,*
*State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

METROPOLITAN DIVISION

| | |
|---|---|
| **Pacific Pipeline Company, A Delaware Corporation,**<br><br>Plaintiff,<br><br>v.<br><br>**State of California and DOES 1 through 25,**<br><br>Defendant. | Case No.: 1:26-CV-01486-KES-CDB<br><br>**DEFENDANT STATE OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:        June 15, 2026<br>Time:        1:30 PM<br>Courtroom: 6 [7th Floor]<br>Judge:       Sheriff<br>Action Filed:  9/29/2025 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on June 15, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 6 of the Robert E. Coyle United States Courthouse located at 2500 Tulare Street in Fresno, California 93721, Defendant, State of California (the State), will move to dismiss the First Amended Complaint for Declaratory Relief (FAC) filed by plaintiff,

Pacific Pipeline Company. The motion will be and hereby is based on this notice, the memorandum of points and authorities in support of the motion, the concurrently-filed declaration of Jack Nick and Request for Judicial Notice, Federal Rule of Civil Procedure 12(b)(1) and (6), the files and records in this action, and any further evidence and argument that the Court may receive at or before the hearing.

Counsel for moving defendant has attempted to meet and confer regarding the basis for this motion via two emails and voicemail messages to counsel of record at Alston & Bird LLP but did not receive any response.

The particular grounds on which the State will move to dismiss the FAC are as follows:

**First Cause of Action**

The Court lacks subject matter jurisdiction over the First Cause of Action and the First Cause of Action does not state facts sufficient to constitute a cause of action. Therefore it is subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

**Second Cause of Action**

The Court lacks subject matter jurisdiction over the Second Cause of Action and the Second Cause of Action does not state facts sufficient to constitute a cause of action. Therefore it is subject to dismissal under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Dated: March 30, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
BRANDON S. WALKER
Supervising Deputy Attorney General
ISABELLA PANICUCCI
Deputy Attorney General

JACK C. NICK
Deputy Attorney General
*Attorneys for Defendant,*
*State of California*

**TABLE OF CONTENTS**

**Page**

Memorandum Of Points And Authorities ..................................................................................... 1

Introduction ................................................................................................................................. 1

Background .................................................................................................................................. 2

    A.    Plaintiff's oil processing facilities ................................................................. 3

    B.    SB 237 ........................................................................................................... 4

    C.    Other pending matters involving the Las Flores pipelines ........................... 5

    D.    Procedural background .................................................................................. 7

Legal Standard ............................................................................................................................ 8

    A.    Federal Rules of Civil Procedure Rule 12(b)(6) .......................................... 8

    B.    Federal Rules of Civil Procedure Rule 12(b)(1) .......................................... 8

Argument .................................................................................................................................... 9

    I.    Plaintiff has Failed to Allege Any Facts to Support a Claim Against the State of California ........................................................................................ 9

    II.    Plaintiff's Causes of Action for Declaratory Relief Do Not Establish an Actual Controversy or Subject Matter Jurisdiction ................................... 10

        A.    Plaintiff fails to allege a case or controversy under California Code of Civil Procedure Section 1060. ................................................ 10

            1.    There is no actual controversy ....................................................... 12

            2.    Declaratory relief is not necessary or proper ............................... 16

            3.    Plaintiff's federal preemption claim is barred by claim preclusion ................................................................................... 18

        B.    Plaintiff lacks standing and the alleged dispute is not ripe for adjudication ................................................................................... 19

        C.    Plaintiff fails to sufficiently allege the dispute is constitutionally ripe for adjudication ................................................................... 20

Conclusion ................................................................................................................................ 21

i

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Artus v. Gramercy Towers Condo Assn.*,
    19 Cal. App. 5th 923 (2018).................................................................................... 11, 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................................... 8

*California Physicians' Service v. Garrison*,
    28 Cal.2d 790 (1946) ..................................................................................................... 9

*Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara*,
    102 Cal.App.5th 1303 (2024)....................................................................................... 14

*Center for Biological Diversity, et al. v. California Department of Forestry and
    Fire Protection, et al.* ............................................................................................... 5, 7

*People of the State of California ex rel. Central Coast Regional Water Quality
    Board v. Sable Offshore Corp.* ..................................................................................... 7

*City of Cotati v. Cashman*,
    29 Cal. 4th 69 (2002) .................................................................................................. 13

*City of Santa Monica v. Stewart*,
    126 Cal. App. 4th 43 (2005)..................................................................................... 12, 13

*Clark v. City of Lakewood*,
    259 F3d 996 (9th Cir. 2001)........................................................................................ 20

*Connerly v. Schwarzenegger*,
    146 Cal.App.4th 739 ..................................................................................................... 9

*Connerly v. Schwarzenegger*,
    *supra*, 146 Cal. App. 4th at 213 ................................................................................ 10

*Environmental Defense Center, et al. v. California Department of Forestry and
    Fire Protection, et al.* .................................................................................................. 7

*Fagerstedt v. Continental Ins. Co.*,
    266 Cal. App. 2d 370 (1968)........................................................................................ 16

*Farm Sanctuary, Inc. v. Department of Food & Agriculture*,
    63 Cal.App.4th 495 (1998).................................................................................... 12, 16

*Foothills Christian Ministries v. Johnson*,
    148 F.4th 1040 (9th Cir. 2025)..................................................................................... 20

**TABLE OF AUTHORITIES**
(continued)

Page

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*,
    528 US 167 (2000) .................................................................................................... 20

*Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*,
    896 F. 2d 1542 (9th Cir. 1990) .................................................................................. 8

*Hill RHF Housing Partners, L.P. v. City of Los Angeles*,
    12 Cal.5th 458 (2021) ............................................................................................... 14

*Hollingsworth v. Perry*,
    570 US 693 (2013) .................................................................................................... 20

*Lent v. California Coastal Com.*,
    62 Cal.App.5th 812 (2021) ........................................................................................ 4

*Levy v. Cohen*,
    19 Cal.3d 165 (1977) ................................................................................................ 18

*Littlejohn v. U.S.*
    321 F.3d 915 (9th Cir. 2003) .................................................................................... 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .................................................................................................. 19

*Lujan v. Defenders of Wildlife*,
    504 US 555 (1992) ...................................................................................................... 8

*Metropolitan Water District of Southern California v. Winograd*,
    24 Cal.App.5th 881 (2018) ....................................................................................... 16

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009) .............................................................................................. 17

*Mi Familia Vota v. Fontes*
    111 F.4th 976 (9th Cir. 2024) ................................................................................... 19

*Pacific Legal Foundation v. California Coastal Com.*,
    33 Cal.3d 158 (1982) .......................................................................................... 11, 13

*People of the State of California v. Sable Offshore Corporation* ...................................................... 7

*PG&E Corp. v. Public Utilities Com.*,
    118 Cal.App.4th 1174 (2004) ................................................................................... 13

*Ross v. Alaska*,
    189 F.3d 1107 (1999) ............................................................................................... 20

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Sable Offshore Corp., et al. v. California Coastal Commission* ..................................................... 7

*Sanctity of Human Life Network v. California Highway Patrol*,
    105 Cal. App. 4th 858 (2003) ................................................................................. 12

*Serrano v. Priest*,
    18 Cal.3d 728 (1976) ............................................................................................... 9

*Steinberg v. Chiang*,
    223 Cal.App.4th 338 (2014) ................................................................................... 11

*Stonehouse Homes LLC v. City of Sierra Madre*,
    167 Cal.App.4th 531 (2008) ................................................................................... 12

*Taking Offense v. State of California*,
    18 Cal. 5th 891 (2025) ........................................................................................... 10

*Taylor v. Sturgell*,
    553 U.S. 880 (2008) ............................................................................................... 19

*Templo v. State*,
    24 Cal.App.5th 730 (2018) ...................................................................................... 9

*Tobe v. City of Santa Ana*,
    9 Cal.4th 1069 (1995) ............................................................................................ 13

*U.S. v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .................................................................................... 8

*Western Radio Services Co., Inc. v. Glickman*,
    123 F.3d 1189 (9th Cir. 1997) ................................................................................ 18

*Wilson & Wilson v. City Council of Redwood City*,
    191 Cal.App.4th 1559 (2011) ................................................................................. 12

**Statutes**

28 U.S.C.
    § 1331 ...................................................................................................................... 8
    § 1441 ...................................................................................................................... 8
    § 1738 .................................................................................................................... 18

California Civil Code
    § 1094.5 ................................................................................................................. 16

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

California Code of Civil Procedure
§ 1060.........................................................................................................*passim*
§ 1061.......................................................................................... 12, 16, 17

California Government Code
§ 51010............................................................................................... 4
§ 51013.5............................................................................................ 4
§ 51014............................................................................................... 4

California Public Resources Code
§ 30000 et seq. ................................................................................. 4

Code of Civil Procedure
§ 1094.5(b) ...................................................................................... 14
§ 1908.............................................................................................. 18

Government Code
§ 51010, et seq. ................................................................................ 4
§ 51014.1.................................................................................. 4, 11, 14

Public Resources Code
§ 30001............................................................................................. 4
§ 30001.5.......................................................................................... 4
§ 30008............................................................................................. 4
§ 30100............................................................................................. 4
§ 30103............................................................................................. 4
§ 30106............................................................................................. 4
§ 30262......................................................................................... 4, 11
§ 30262(b)(1) ................................................................................. 14
§ 30262(b)(2) ................................................................................. 14
§ 30600, subd. (a)............................................................................. 4

**Other Authorities**

California Coastal Act of 1976 ............................................................... 4, 16

California Pipeline Safety Act ................................................................... 4

Federal Rule of Civil Procedure 12(b)(6) .................................................. 8, 10

Federal Rules of Civil Procedure Rule 12(b)(1) ......................................... 8, 10

U.S. Constitution Article III
§ 2.............................................................................................. 8, 20

v

**TABLE OF AUTHORITIES**
(continued)

**Page**

U.S. Constitution Article V
§ 1....................................................................................................................................... 18

vi

**MEMORANDUM OF POINTS AND AUTHORITIES**

**INTRODUCTION**

Recently enacted California legislation provides that idle pipelines may not restart without following specific procedures and obtaining specific approvals from the state's pipeline safety regulator, the Office of the State Fire Marshal, and the state's coastal protection agency, the California Coastal Commission. Plaintiff, which operates on-shore pipelines that have been idle since a catastrophic rupture in 2015 caused over 140,000 gallons of crude oil to spill along the beaches and coast of Santa Barbara County, seeks to bring a pre-enforcement challenge to those new California statutory provisions. Those claims are not properly presented in this case for four reasons, each of which is an independent ground to dismiss the complaint.

First, Plaintiff has not sued the proper defendant. The only defendant here is the "State of California"—the sovereign—not the Office of the State Fire Marshal or California Coastal Commission, the agencies that might be called upon to enforce and implement the new legislation.

Second, even if those agencies were properly named, they have not taken any final agency action with respect to Plaintiff's efforts to restart its idle pipelines. If and when they do, and if and when Plaintiff has exhausted administrative remedies, Plaintiff would have a ripe claim to challenge those agency actions; until then, however, its claim is unripe. As a consequence, Plaintiff's claims for declaratory relief under California law fails are fatally defective.

Third, Plaintiff lacks Article III standing for the same reasons—there is no concrete case or controversy at present.

Fourth, Plaintiff's federal preemption claim is barred by claim and issue preclusion. Plaintiff's predecessor is party to a final consent decree entered by the U.S. District Court for the Central District of California following the 2015 oil spill, which Plaintiff has specifically assumed. The party to that consent decree—with which Plaintiff is in privity—could have, but did not, assert federal preemption or federal jurisdiction over regulation of the restart of the pipelines at issue here. Instead, that consent decree requires permission from the State's pipeline safety regulator—the Office of the State Fire Marshal—to restart.

1

What's more, the State is presently challenging the federal government's recent 180-degree reversal of position and assertion of authority over the safety of these pipelines, in litigation now pending in the Ninth Circuit.  Little purpose is served by Plaintiff's effort here to obtain a determination on its federal preemption claim when that matter will soon be resolved conclusively by the Ninth Circuit.

For all these reasons, Plaintiff's complaint should be dismissed in full without leave to amend.

## BACKGROUND

This is one of several lawsuits involving two oil pipelines that have not transported oil since one of the pipelines ruptured on May 19, 2015, spilling more than 140,000 barrels of heavy crude oil at Refugio State Beach in Santa Barbara County in 2015. Plaintiff, Pacific Pipeline Company, owns the pipelines which it refers to separately as Lines CA-324 and CA-325 and together as the Las Flores Pipelines[1]. (First Amended Complaint (FAC), ¶ 1.)

The Las Flores Pipelines connect to larger oil production infrastructure owned by Plaintiff's parent company, Sable Offshore Company (Sable). (FAC, ¶¶ 1, 2.) Recent California legislation, SB 237, which became effective on January 1, 2026, requires the owner of a pipeline that has been idled, inactive or out of service for five years or more to obtain a coastal development permit and conduct certain testing before activating the pipeline. (FAC ¶ 40.) That legislation was enacted with the Las Flores Pipelines specifically in mind.  (FAC ¶ 45.) The pipelines are also subject to a Consent Decree issued by the United States District Court for the Central District of California, to which Plaintiff is bound, which decrees that the California Office of the State Fire Marshall (OSFM) is responsible for receiving and approving any restart plan for the Las Flores Pipelines. (RJN, Ex. B, ¶¶ 29, 88 [Consent Decree in case 2:20-CV-02415 ("Consent Decree")].)

The Consent Decree has not been discharged to date and binds the owner of the pipelines at the time, Plains All American Pipeline LP, as well as its successors and assigns. (RJN, Exh. B

---

[1] In its original complaint Plaintiff referred to these pipelines as the Las Flores Pipelines (plural) and will be referred to in this brief in the plural. (Request for Judicial Notice (RJN, Exh. A [Original Complaint, ¶ 1].)

[Consent Decree ¶ 4].) Inconsistent with the Consent Decree, the federal Pipeline and Hazardous Materials Safety Administration (PHMSA) recently reversed its prior position and asserted sole jurisdiction over the pipelines and issued an emergency permit for the pipelines to restart operation—orders that are currently being challenged in the Ninth Circuit on petitions for review of PHMSA's actions. (9th Cir. Case Nos. 25-8059, 26-508.)

### A. Plaintiff's oil processing facilities

Plaintiff alleges that Sable holds federal offshore oil and gas leases in federal waters off the coast of Santa Barbara, California. (FAC ¶¶ 1-2.) Plaintiff alleges that a mixture of chemicals would be transported from the offshore leases to the shore where it would then be processed into various products including crude oil. (FAC, ¶¶ 2, 18.)The crude oil portion would then be transported through onshore Pipeline CA-324 from a pump station at its processing facilities in Las Flores Canyon to another pump station near Gaviota, California. (FAC, ¶¶ 20, 24.) Onshore Pipeline CA-325 would then transport the oil from the Gaviota pump station inland to another third-party owned and operated infrastructure near Bakersfield, where it would then be transported to a refinery for final processing. (FAC, ¶¶ 20, 23.) Sable acquired these various facilities and the Pacific Pipeline Company in February 2024. (FAC, ¶ 2.)

The Las Flores Pipelines received initial approvals, including necessary coastal development permits, in the 1980s. (FAC, ¶¶ 21-22, 25-27.) No crude oil has flowed through the Las Flores Pipelines since the May 19, 2015 spill at Refugio State Beach. (FAC, ¶¶ 29, 48, Exh A to FAC at p. 81.) Significant repair work on numerous "anomalies" found in the pipelines has been ongoing since February 2024. (FAC, ¶¶ 2, 33.) Some of the repairs were done illegally, without a necessary coastal development permit. (RJN, Exh. L [Order re Preliminary Injunction, Exh. A attached to the order at p. 8].) Accordingly, Sable and Plaintiff are currently subject to a preliminary injunction issued by the Santa Barbara Superior Court prohibiting it from "development associated with the return to service of [the] Las Flores Pipelines" without obtaining a "new, final action pursuant to the Coastal Act and/or the LCP." (RJN, Exh. L [Order re Preliminary Injunction, ¶¶ 1-2].) However, Plaintiff and Sable now intend to resume use of the pipelines. (FAC, ¶¶ 3, 35, 37.)

3

**B.    SB 237**

Pursuant to its sovereign authority to regulate both intrastate oil pipelines and the California coastal zone, the California Legislature enacted, and Governor Newsom signed Senate Bill 237 (SB 237) in September 2025. (FAC ¶ 38; Stats.2025, c. 118 (S.B.237), eff. Jan. 1, 2026.) SB 237 became effective January 1, 2026. (FAC ¶ 54.)

Among other unrelated provisions, SB 237 adds Government Code section 51014.1 to the Elder California Pipeline Safety Act of 1981 (California Pipeline Safety Act), Government Code section 51010, et seq. (FAC, ¶ 39.) The California Pipeline Safety Act gives exclusive safety regulatory and enforcement authority over intrastate oil pipelines to OSFM and sets testing requirements, among other requirements. Cal. Gov. Code, §§51010, 51013.5, 51014. (FAC, ¶ 34.)

SB 237 also amended Public Resources Code section 30262, which is part of the California Coastal Act of 1976 (Coastal Act). Cal. Public Resources Code 30000 et seq. (FAC, ¶ 40.) The Coastal Act delineates the coastal zone and sets policies and requirements for development to protect the distinct and valuable natural resources within the coastal zone. Pub. Resources Code, §§ 30001, 30001.5, 30008, 30103. Under the Coastal Act, any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit. (Pub. Resources Code, §30600, subd. (a).) The Coastal Act provides its own definitions. (Pub. Resources Code, § 30100.)  "Development" includes the placement, construction, reconstruction, or alteration of any structure. Pub. Resources Code, § 30106. "Structure" specifically includes any pipe. *Id*. Public Resources Code section 30262 specifically discusses oil and gas development within the coastal zone. Additionally, a person that maintains and uses an illegal development undertakes an activity that requires a coastal development permit. *Lent v. California Coastal Com.*, 62 Cal.App.5th 812, 832 (2021).

Plaintiff alleges that, prior to SB 237's effective date, it undertook repairs and other development in furtherance of its intent to resume petroleum transportation through the Las Flores Pipelines. (FAC, ¶¶ 3, 9, 31, 33, 53.) The FAC is silent as to whether any additional repairs or development are required.

4

**C.     Other pending matters involving the Las Flores pipelines**

Since 2016, Pipelines CA-324 and CA-325 have been considered "intrastate" pipelines under the regulatory oversight of OSFM. (FAC, ¶ 34.) Accordingly, in April 2024, Plaintiff submitted "State Waiver" applications to OSFM for CA-324 and CA-325 to modify regulatory pipeline safety requirements under state law based on the specifications applicable to the individual pipeline facilities. (FAC, ¶ 34.) Plaintiff was required to comply with the State Waivers as successor in interest to the pipelines under the terms of a Consent Decree. (RJN, Exh B. [Consent Decree, ¶ 4 ].) The Consent Decree resulted from various claims and litigation arising out of the 2015 spill. (RJN, Exh B [Consent Decree, ¶¶ A-S).) Consistent with the designation of CA-324 and CA-325 as intrastate pipelines, the Consent Decree assigned responsibility to OSFM to develop and enforce the State Waivers. (RJN, Exh. B [Consent Decree, App. B, p. 80].)[2]

On December 17, 2024, OSFM granted both State Waivers, which included sixty separate requirements relating to Plaintiff's proposed restart of the Las Flores Pipelines. (FAC, ¶ 34.)

On February 11, 2025, PHMSA notified OSFM that it had no objection to its issuance of the State Waivers. (FAC, ¶ 34.)[3]  However, on December 17, 2025, PHMSA reversed its prior position and designated the Las Flores Pipelines, the onshore processing facility at Las Flores Canyon, and the offshore pipelines as one single *inter*state pipeline because the offshore pipelines extend beyond state waters, which end three miles off the coast, to federal waters. (FAC, ¶¶ 34, 42, exhibit B to FAC [Dec. 17, 2025, Letter from PHMSA to Sable].) On December 22, 2025, PHMSA approved Sable's pipeline restart plan. (FAC, ¶ 52.) On December 23, 2025, PHMSA issued an Emergency Special Permit purporting to allow Plaintiff to restart the pipelines. (FAC,

_____

[2] On February 26, 2026, Sable relinquished the State Waivers issued by OSFM. (RJN, Exh. M.)

[3] The Waivers issued by OSFM have been challenged in a lawsuit filed by various environmental organizations. (*See Center for Biological Diversity v. California Dept of Forestry and Fire Protection, et al*, Santa Barbara County Superior Court case nos. 25CV02244 consolidated with 25CV02247.) The Superior Court issued a preliminary injunction prohibiting Sable from restarting the Las Flores Pipelines without notice. (RJN, Exh. J [preliminary injunction].) After PHMSA asserted federal jurisdiction over the pipelines, Sable filed a motion for reconsideration of the preliminary injunction based on federal preemption, which was denied at the February 27, 2026 hearing. (RJN, Exh. F [motion for reconsideration].)

¶¶ 53-54.) The Emergency Special Permit purports to take the place of the OSFM-issued State Waivers and carried forward substantially the same conditions as issued in the State Waivers with a notable exception regarding the emergency permit's removal of a condition in the State Waivers with which Plaintiff had not complied. (FAC, ¶ 53, Exh. D; RJN, Exh. B [Consent Decree].)

PHMSA's designation of the pipelines as interstate, its approval of Sable's restart plan and issuance of an emergency permit all conflict with the Consent Decree and are currently being challenged in the Ninth Circuit by the State of California, and in a separate action by environmental organizations. (RJN, Exhs. D, E [Petitions for Review], Ninth Cir. Case nos. 25-8059, 26-508.) However, Plaintiff now alleges in this lawsuit and other pending matters that, as a result of the PHMSA orders, OSFM no longer retains any regulatory oversight of the Las Flores Pipelines. (FAC, ¶ 34; RJN, Exh. F [Motion for Reconsideration].)

Plaintiff alleges that no other PHMSA approvals or permits are necessary to flow oil through Pipelines CA-324 and CA-325. (FAC ¶ 54.) However, the pipelines remain subject to the obligations of the Consent Decree, which has not been discharged, in addition to other approvals required by other state agencies. [4] (RJN, Exh A [Complaint, ¶ 29].) The Consent Decree identifies California-specific requirements for Lines CA-324 and CA-325, including a State Waiver; replacement, restart, or abandonment options; integrity management; valves; risk analysis; and leak detection. (RJN Exh. B [Consent Decree, ¶ 1 of Appendix D at p. 91].) The Consent Decree also refers to the Las Flores Pipelines as being "not in service" and sets technical and testing requirements before the pipelines may be reactivated. (RJN, Exh. B [Consent Decree at App. B, p. 85].) The Consent Decree also requires the operator to obtain OSFM's approval of a restart plan. (FAC ¶ 35; RJN, Exh. B [Consent Decree, App. B, pp. 91-95].)

Although Plaintiff alleges that some inspections and tests were performed on the pipelines (FAC ¶¶ 32, 33), Plaintiff does not allege that the performed inspections and tests satisfy what is required by the Consent Decree or the State waivers, only that these requirements have now been preempted. (FAC, ¶ 55.)

---

[4] There is no specific reference to the Consent Decree in the text of the FAC but it is discussed at length in the Emergency Special Permit attached to the FAC as exhibit D.

6

In addition to the Consent Decree and the Petition for Review there are other pending cases involving the Las Flores Pipelines. With respect to the Coastal Commission, there is a petition for writ of mandate and complaint for damages and injunctive relief, as well as a cross-complaint for declaratory and injunctive relief, in *Sable Offshore Corp., et al. v. California Coastal Commission* (Santa Barbara Super. Ct., Case No. 25CV00974). And with respect to OSFM, two petitions for writ of mandate are consolidated in *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al.* (Santa Barbara Super. Ct., Case No. 25CV02244) and *Environmental Defense Center, et al. v. California Department of Forestry and Fire Protection, et al.* (Santa Barbara Super. Ct., Case No. 25CV02247).[5]

Plaintiff alleges that the Coastal Commission made statements concerning its position on the status of the Las Flores Pipelines in a staff report that refers to the pipelines as "offline and out of service" and "inoperable" for the past 10 years. (FAC ¶¶ 46-47.) It further alleges that the California Legislature has made statements regarding the pipelines in the history of the SB 237 legislation, and that PHMSA's assertion of jurisdiction has mooted the requirements of SB 237. (FAC, ¶¶ 34, 48.) However, as Plaintiff's allegations are insufficient, as a matter of law, to establish either of its claims for declaratory relief against the State or anyone else, the lawsuit should be dismissed.

### D.    Procedural background

Plaintiff filed this action on September 29, 2026, in Kern County Superior Court.  The State moved to transfer venue to Santa Barbara County, where the other actions concerning the pipelines were already pending, on December 5, 2025.  Then, on January 21, 2026, Plaintiff amended its complaint to raise a new federal preemption claim in light of PHMSA's recent assertion of jurisdiction.  On February 3, 2026, the Kern County Superior Court denied the

---

[5] A complaint for civil penalties and injunctive relief for Water Code violations is also pending in Santa Barbara County Superior Court. (*People of the State of California ex rel. Central Coast Regional Water Quality Board v. Sable Offshore Corp.,* Santa Barbara Super. Ct., Case No.25CV06285). And the Santa Barbara County District Attorney filed a criminal complaint for knowingly discharging material into nearby creeks and waterways, obstructing streambeds, and discharging material harmful to wildlife in *People of the State of California v. Sable Offshore Corporation* (Santa Barbara Super. Ct., Case No. 25CR07677).

Defendant's Notice of Motion and Motion to Dismiss First Amended Complaint (1:26-CV-01486-KES-CDB)

motion to transfer, and on February 20, 2026, the State removed this action to this Court under 28 U.S.C. § 1441 in light of the newly asserted federal claim, which gives rise to this Court's jurisdiction under 28 U.S.C. § 1331.

## LEGAL STANDARD

### A.     Federal Rules of Civil Procedure Rule 12(b)(6)

Federal Rule 12(b)(6) allows a defendant to assert a defense by motion based on failure to state a claim. Fed. Rules Civ. Proc. 12(b)(6). To survive a motion to dismiss for failure to state a claim, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff must also allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Instead, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id*.

Although a district court generally will not consider evidence or documents beyond the complaint in the context of a Rule 12(b)(6) motion to dismiss (*see Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F. 2d 1542, 1550 (9th Cir. 1990)), it may "consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### B.     Federal Rules of Civil Procedure Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) is proper where the plaintiff has failed to plead facts establishing subject matter jurisdiction. Federal Rules of Civ. Proc. 12(b)(1). The Constitution limits the federal courts' jurisdiction to "cases and controversies." U.S. Const., Art. III, § 2. Both terms require a matter to be "justiciable" for the federal court to hear it. *See Lujan v. Defenders of Wildlife*, 504 US 555, 560 (1992). Justiciability includes the doctrines of standing, ripeness and mootness. Consequently, a defendant may challenge a plaintiff's standing and the ripeness of a claim by way of a Rule 12(b)(1) motion to dismiss.

# ARGUMENT

**I.    PLAINTIFF HAS FAILED TO ALLEGE ANY FACTS TO SUPPORT A CLAIM AGAINST THE STATE OF CALIFORNIA**

Plaintiff has not named any viable party as a defendant. Instead, the allegations are directed entirely against the State of California. However, the State is not a properly named defendant and therefore the allegations in the FAC do not establish a claim against it.

Plaintiff alleges the State is named as a defendant because it is "responsible for enacting and enforcing the laws of the State of California." (FAC, ¶ 14.) However, California law recognizes that "the State" as an entity is distinct from the specific state agencies and officers who carry out governmental functions. While declaratory relief may be available against state agencies (*see California Physicians' Service v. Garrison*, 28 Cal.2d 790 (1946)), the State qua State does not have direct responsibility for the statute's administration. *Serrano v. Priest*, 18 Cal.3d 728, 752 (1976). That is why the interest that state lawmakers have in the validity of statutes they enact, for example, "is not of the immediacy and directness requisite to party status" and may be "fully and adequately represented by the appropriate administrative officers of the state." *Id*.

The failure to name the proper government defendant under a challenged statute should result in dismissal of the action. In *Templo v. State of California*, the trial court granted the State's motion for judgment on the pleadings specifically because the State was not a proper defendant to the cause of action. *Templo v. State,* 24 Cal.App.5th 730, 737 (2018). Similarly, in *Connerly v. Schwarzenegger*, the court noted that the plaintiff "has not named any state agency as a defendant, nor does he allege that any agency is enforcing or threatens to enforce" the challenged provision. *Connerly v. Schwarzenegger*,146 Cal.App.4th 739.  f.n. 3 (2007). The court emphasized that without naming the agency with enforcement authority, there was no proper party to defend against the challenge to the statute. *Id*. at 213.

The potentially proper defendants would be the state agency or agencies with the direct responsibility for enforcement of SB 237 that have the direct institutional interest and responsibility to defend the statute's validity and application. *Serrano v. Priest*, *supra,* at 728. By naming only the State of California, and not a specific, appropriate agency, there is no justiciable

9

controversy on which the court may declare the parties' rights. *Connerly v. Schwarzenegger*, *supra*, 146 Cal. App. 4th at 213.

Plaintiff alleges no facts to support any of the limited exceptions to the rule against naming the State of California as a defendant. Moreover, the facts alleged in the FAC do not present a facial challenge to SB 237, as Plaintiff does not allege that the text of SB 237 is unconstitutional. *See Taking Offense v. State of California*, 18 Cal. 5th 891, 921-922 (2025). To the contrary, the FAC acknowledges the statute may apply to pipelines that are idle, inactive or out of service for five years starting January 1, 2026. (FAC, par. 59.) Accordingly, this case should be dismissed because Plaintiff improperly names the State as the defendant.[6]

## II.   PLAINTIFF'S CAUSES OF ACTION FOR DECLARATORY RELIEF DO NOT ESTABLISH AN ACTUAL CONTROVERSY OR SUBJECT MATTER JURISDICTION

Even if allegations in the FAC support some type of claim against the State (which they do not), Plaintiff still fails to allege sufficient facts to establish its causes of action for declaratory relief under California Code of Civil Procedure section 1060 as it fails to allege any actual controversy and therefore is subject to dismissal under Rule 12(b)(6). Plaintiff has also failed to properly allege a sufficient "case or controversy" in that it has failed to allege standing or that the alleged action is ripe and is therefore subject to dismissal under Rule 12(b)(1).

### A.   Plaintiff fails to allege a case or controversy under California Code of Civil Procedure Section 1060.

Plaintiff's two claims for declaratory invoke relief under California Code of Civil Procedure section 1060. (FAC, ¶¶ 57, 65.) Section 1060 allows a party to obtain a judicial declaration of his or her rights where, among other requirements, there is an "actual controversy

---

[6] The FAC fails to join the OSFM and the California Coastal Commission as defendants, despite their primary roles in the potential enforcement of SB 237. This omission further underscores the justiciability arguments raised below.

Moreover, Plaintiff does not state any reason as to why it did not join OSFM or the California Coastal Commission.  The State is left to speculate as to the reasons, which it assumes are strategic and to avoid arguments that may be raised by these entities in defending themselves in the lawsuit.

relating to the legal rights and duties of the respective parties...." California Code Civil Proc. § 1060.

Plaintiff requests in its first cause of action that this Court declare that pipelines CA-324 and CA-325 "have not been idled, inactive, or out of service for five years or more" within the meaning of SB 237. (FAC, ¶¶ 60, 63.) Plaintiff requests in its second cause of action that this Court declare that "application of SB 237 as to the [Las Flores Pipelines] has been preempted by federal law" based on PHMSA's issuance of an emergency permit to allow Plaintiff to restart the pipelines. (FAC, ¶¶ 70, 73.)

Plaintiff does not allege that the State or any state agency has sought to enforce either of the statutory provisions added by SB 237. Plaintiff does not contend that the Coastal Commission has taken any action, much less final agency action, to enforce Public Resources Code section 30262 regarding the requirement for Plaintiff to obtain a coastal development permit before restarting the pipelines and does not allege OSFM has taken any action, much less final agency action, regarding enforcement of the technical provisions of Government Code section 51014.1.[7]

A cause of action for declaratory relief under section 1060 must be ripe for adjudication, presenting an "actual controversy" that is "real and substantial … admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *Pacific Legal Foundation v. California Coastal Com.*, 33 Cal.3d 158, 170 (1982). California courts engage in a two-prong inquiry to assess whether a declaratory relief claim is appropriate. *Artus v. Gramercy Towers Condo Assn.*, 19 Cal. App. 5th 923, 930-931 (2018). Under the first prong, the Court considers whether "a probable future dispute over legal rights between parties is sufficiently ripe to represent an 'actual controversy' within the meaning of Code of Civil Procedure section 1060, as opposed to purely hypothetical concerns." *Steinberg v. Chiang*, 223 Cal.App.4th 338, 343 (2014). This prong involves a pure question of law, and thus a court will dismiss the matter if it is not sufficiently ripe for adjudication. *Ibid*. The second prong concerns "[w]hether such [an] actual controversy

[7] The technical requirements of Government Code section 51014.1 are already required under the Consent Decree and State Waivers which OSFM is administering.

11

merits declaratory relief as necessary and proper" under California Code of Civil Procedure section 1061. *Id.* at 931. Plaintiff's declaratory relief claims should be dismissed under both prongs.

### 1. There is no actual controversy

Under the first prong, "courts will decline to adjudicate a dispute if 'the abstract posture of (the) proceeding makes it difficult to evaluate the issues,' if the court is asked to speculate on the resolution of hypothetical situations, or if the case presents a 'contrived inquiry.'" *Farm Sanctuary, Inc. v. Department of Food & Agriculture*, 63 Cal.App.4th 495, 502 (1998). As noted by the California Court of Appeal in *City of Santa Monica v. Stewart*, 126 Cal. App. 4th 43, 63-64 (2005), "judicial decision-making is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." *Id.* at 63-64 (citing *Pacific Legal Foundation*, *supra*, at 170. Moreover, "[w]here a legislative measure does not immediately and adversely impact anyone, and its effects cannot be adjudicated in any concrete factual context, a request for declaratory relief is not yet ripe." *Id.* at 78 (citation omitted). Plaintiff's anticipatory, pre-enforcement challenge to SB 237 fails the first prong because there is not an established set of facts by which the dispute may be adjudicated. *Wilson & Wilson v. City Council of Redwood City*, 191 Cal.App.4th 1559, 1573-1574 (2011). The court would be required to speculate about how an unnamed, nonparty State agency might apply the legislation and whether enforcement would actually occur. *Stonehouse Homes LLC v. City of Sierra Madre*, 167 Cal.App.4th 531, 540 (2008).

A dispute must also have "known parameters" to rise to the level of an actual controversy under section 1060; it cannot be based on a hypothetical set of facts. *Sanctity of Human Life Network v. California Highway Patrol*, 105 Cal. App. 4th 858, 872 (2003). Although Plaintiff alleges a few facts regarding the Las Flores Pipelines and related facilities, Plaintiff fails to allege a factual context under which either of the challenged statutory provisions added by SB 273 may

be analyzed.[8]

Plaintiff's challenge to SB 237 represents precisely the type of premature adjudication the federal and California ripeness doctrines aim to prevent. "Determination of the scope and constitutionality of legislation in advance of its immediate adverse effect in the context of a concrete case involves too remote and abstract an inquiry for the proper exercise of the judicial function." *Stewart*, *supra*, 126 Cal.App.4th at 78 (citing *Longshoremen's Union v. Boyd,* 347 U.S. 222, 224 (1954)). Without any allegations of when, how, or if the State will enforce the statute against Plaintiff or deny necessary permits, the case amounts to seeking an advisory opinion on a hypothetical application of future law. *Pacific Legal Foundation*, *supra*, 33 Cal.3d at 171.

Plaintiff contends the FAC does not seek an advisory opinion or abstract interpretation of law in that the Las Flores Pipelines are now ready for resumed petroleum transportation, and that "statements" have been made by the California Coastal Commission and the California Legislature regarding the status of the pipelines that are "inconsistent" with Plaintiff's own position on these issues. (FAC, ¶¶ 46-48, 60). Plaintiff cites to *City of Cotati v. Cashman*, 29 Cal. 4th 69 (2002), in support of this contention. (FAC, ¶ 60.) However, the appellate issue in *City of Cotati* was whether the city's action in filing a declaratory relief lawsuit after the defendant had already filed a lawsuit challenging the constitutionality of a mobile home statute as a takings under the Fifth and Fourteenth Amendments to the United States Constitution arose from the protected activity of asserting constitutional rights (i.e., a SLAPP suit), not whether the dispute presented an actual controversy. *City of Cotati*, 29 Cal. 4th at 72, 76-77. To the extent Plaintiff cites the case for the general proposition that a declaratory relief claim may be proper to challenge the constitutionality of a statute, Plaintiff has asserted no such claim. *See Tobe v. City of Santa Ana*, 9 Cal.4th 1069, 1084 (1995) [a facial challenge to the constitutional validity of a statute considers only the text of the measure itself, not its application to the particular circumstances of an individual].

---

[8] Plaintiff filed its original Complaint even before SB 237 took effect, creating an abstract dispute rather than a concrete controversy with known parameters. *PG&E Corp. v. Public Utilities Com.*, 118 Cal.App.4th 1174, 1217 (2004); *Stewart*, *supra*, 126 Cal.App.4th at 88.

13

Defendant's Notice of Motion and Motion to Dismiss First Amended Complaint (1:26-CV-01486-KES-CDB)

As noted above, Plaintiff has improperly named the State as the sole defendant. However, if Plaintiff were to amend the FAC to name one or more agencies, there would still be no actual controversy because Plaintiff cannot point to any action by any state agency relating to the statutes at the center of Plaintiff's claims. If there eventually is an adverse action by a state agency that Plaintiff sought to challenge, then Plaintiff would likely have to exhaust administrative remedies, and only *then* could validly challenge any final agency action, as a matter of general administrative law.  Exhaustion of administrative remedies generally requires that one who seeks judicial review to challenge agency action first utilize all available administrative procedures before coming to court. *Hill RHF Housing Partners, L.P. v. City of Los Angeles*, 12 Cal.5th 458, 477 (2021) ["As a general rule, a party must exhaust administrative remedies before resorting to the courts. Under this rule, an administrative remedy is exhausted only upon termination of all available, nonduplicative administrative review procedures."]. In the context of a pre-enforcement challenge of a dispute that may have otherwise involved an administrative proceeding, a controversy is "not ripe for adjudication until the administrative process is completed and the agency makes a final decision that results in a direct and immediate impact on the parties." *Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara,* 102 Cal.App.5th 1303, 1309 [citations omitted] (2024).

Requiring some type of adverse action by a state agency also provides parameters on the scope of the dispute including a standard of review of agency action, and an analytical framework regarding the admissibility of external evidence to the administrative record. *See, e.g.*, Code of Civil Procedure section 1094.5(b).  Here, it is speculative as to what action any State agency may take relating to unknown future conduct by Plaintiff. As it is, there is an indefinite universe of hypothetical situations the State would be forced to defend and the Court would have to address if the FAC as drafted were adjudicated now.

Plaintiff's Prayers for Relief also highlight the lack of actual controversy. Plaintiff seeks in the first cause of action a "declaration that the [Las Flores Pipelines] have not been 'idled, inactive or out of service for five years or more' under Government Code section 51014.1 and Public Resources Code Sections 30262(b)(1) and (b)(2) as amended by SB 237." (FAC, ¶ 63,

14

Prayer for Relief 1.) The allegations in support of the requested relief include an argument that because SB 237 does not define the words "idle, inactive and out of service," the pipeline nomenclature defaults to federal regulations which establish a binary status of either abandoned or active, and that because idle, inactive and out of service do not meet the definition of "abandoned," the pipelines must therefore be considered active. (FAC, ¶¶ 43-44.) This is essentially a pre-enforcement argument asserting that the federal definitions will apply to all situations in which SB 237 may apply to the Las Flores Pipelines. This across-the-board, hypothetical approach is the very reason why the law requires an "actual" controversy to assert a claim under section 1060, and the reason why Plaintiff fails to properly allege such claim. For example, the legal definition of these words may depend on whether there is federal preemption, which brings us to the second cause of action.

Plaintiff is requesting in its second cause of action a declaration that the "application of SB 237 as to the [Las Flores Pipelines] is preempted by federal law." (FAC, Prayer for Relief 2.) This request is essentially the flip side of the same pre-enforcement coin of Plaintiff's prayer for relief in its first cause of action: it seeks an across-the-board ruling enforcing PHMSA's preemption order against any hypothetical situation in which SB 237 may apply to the Las Flores Pipelines. However, Plaintiff's broad-brush approach fails to recognize the multiple components to SB 237. The general structure of the bill, relevant to this case, adds a statute relating to the technical and testing aspects of idle, inactive or out of service pipelines (that involve OSFM), and an amended statute requiring a coastal development permit (that involves the Coastal Commission).[9] How those State agencies will apply those laws to these pipelines, and whether those applications would conflict with PHMSA's federal regulatory orders, raises hypothetical questions that those State agencies—who are not present in this suit—could not answer. And yet the preemption analysis would turn on those specific questions. While the merits of Plaintiff's preemption claims are not the subject of this motion, it bears noting by way of example that PHMSA purports to displace OSFM as the pipeline safety regulator, but that PHMSA plays no

---

[9] SB 237 contains multiple other provisions that do not affect pipelines and are not at issue in this case.

role in coastal protections and could not even arguably displace the California Coastal Act provisions amended by SB 237.  A much less abstract controversy would be required to permissibly adjudicate these claims under California Code of Civil Procedure section 1060.

Moreover, the issue of preemption relating to PHMSA's orders and OSFM's authority is already being litigated in the Ninth Circuit—in a case involving PHMSA OSFM themselves. Consequently, intervention by this Court in ruling on the efficacy and application of PHMSA's orders would potentially result in inconsistent rulings and get ahead of the already-pending Ninth Circuit actions.

### 2.    Declaratory relief is not necessary or proper

The second prong in assessing the sufficiency of allegations to support a declaratory relief claim is determining whether the Court's declaration or determination is necessary or proper at the time under all the circumstances. Cal. Code of Civil Proc. § 1061.

Whether other litigation will resolve one or more of the issues on which a declaratory relief is requested is relevant in assessing whether the court may decline to hear a declaratory relief claim under section 1061. *Fagerstedt v. Continental Ins. Co.,* 266 Cal. App. 2d 370, 373 (1968) [citations omitted]. Courts will generally "not consider issues based on speculative future harm" which is "particularly true where the complaining party will have the opportunity to pursue appropriate legal remedies should the anticipated harm ever materialize." *Metropolitan Water District of Southern California v. Winograd*, 24 Cal.App.5th 881, 893 (2018). Here, if any negative enforcement action is taken by any state agency, Plaintiff would have a remedy to challenge such action by way of a petition for writ of mandate challenging that final and concrete state agency action. California Civil Code § 1094.5.

The hardship of the parties resulting from withholding judicial consideration of a declaratory relief claim is also relevant in assessing whether a claim is necessary or proper under section 1061. *Farm Sanctuary, Inc. v. Department of Food & Agriculture*, 63 Cal.App.4th 495 (1998). Here, the pipelines have not transported oil since 2015. Plaintiff claims it has "worked with federal and state agencies toward resuming petroleum transportation" including maintenance and

16

repair work on the Las Flores Pipelines.[10] (FAC, ¶¶ 3.) There is nothing to suggest Plaintiff cannot seek the necessary approvals SB 237 requires, especially when it is already required to get a permit for the required development in the coastal zone and perform the spike hydrostatic testing. (RJN Exhs. C [Statement of Decision re Writ], G, H [State Waivers].) Plaintiff does not claim any changed circumstances that support an immediate need to restart operations other than PHMSA's course reversal and designation of the pipelines as interstate.[11] Seizing upon an opportunity does not create a hardship of the type courts are or should be concerned about, particularly where PHMSA created the opportunity by its own violation of law, as OSFM and others claim in the matter pending in the Ninth Circuit.

Plaintiff also claims that it faces undue hardship if this Court were to decide its claims are not ripe for adjudication. (FAC, ¶ 61.) Specifically, Plaintiff contends it must make "immediate operational and financial decisions regarding whether to resume petroleum transportation under its existing CDPs at the risk of enforcement actions, penalties or orders by the State" and cites to *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634 (2009) in support of its position. (FAC, ¶ 61.) But *Meyer* does not help Plaintiff. *Meyer* held that declaratory relief was not appropriate because the requested declaration would have "little practical effect in terms of altering the parties' behavior." *Id. at* 648. It does not follow that declaratory relief is always appropriate where a ruling could have some practical effect. But even if the requested declaration, as overbroad as it may be, could have some practical impact if given as requested, it is unnecessary and improper for other reasons as discussed.

Plaintiff also contends declaratory relief is necessary and proper under Code of Civil Procedure section 1061, in part because a judicial declaration will guide Plaintiff's conduct, and "prevent multiplicity of actions." (FAC ¶ 72). However, this lawsuit has only added to the already-large number of pending actions resulting from the Las Flores Pipelines. Moreover, as noted,

---

[10] Plaintiff failed to obtain a new coastal development permit from the Coastal Commission for its activities in the coastal zone, for which the Coastal Commission issued a cease and desist order. (RJN, Exh. I).

[11] A review of the Emergency Permit issued by PHMSA shows there are no material change in circumstances regarding the pipelines from its earlier designation of the pipelines as intrastate.

17

petitions for review of PHMSA's actions are already pending in the Ninth Circuit that could significantly affect Plaintiff's second cause of action, relating to PHMSA's assertion of preemption and issuance of emergency permits.

As Plaintiff has other remedies available if the circumstances ripen and action is taken by a state agency to enforce the new provisions of the Government and Public Resources Codes, other pending litigation will significantly affect Plaintiff's claims, and Plaintiff has not and will not suffer hardship if its declaratory relief claims are not heard, it is not necessary or proper for the Court to hear Plaintiff's declaratory relief claims and therefore the First Amended Complaint should be dismissed.

### 3.    Plaintiff's federal preemption claim is barred by claim preclusion

To further demonstrate that it is not necessary for this Court to hear Plaintiff's preemption claims as alleged in the second cause of action, claim preclusion bars Plaintiff from asserting federal preemption on this (or any) basis.[12]

Courts must give full faith and credit to judgments issued in other jurisdictions. (U.S. Const. art. V, § 1, 28 U.S.C. § 1738, Code Civ. Proc., § 1908.) Full faith and credit requires that this Court apply the preclusion rules of the court that issued the first judgment. *Levy v. Cohen*, 19 Cal.3d 165, 173 (1977). Here, the original judgment is the Consent Decree from the United States District Court for the Central District of California, so its preclusive effect is governed by federal law. One aspect of full faith and credit is res judicata, now usually called claim preclusion. And "for res judicata to apply there must be: 1) an identity of claims, 2) a final judgment on the merits, and 3) identity or privity between parties." *Western Radio Services Co., Inc. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). The Consent Decree satisfies all three elements:

First, there is an identity of claims. Plaintiff seeks to preempt the very requirements its parent company agreed to be bound by and comply with as established by the Consent Decree regarding the State Waivers. (RJN, Exh. B [Consent Decree], pp. 80 ["Plains must receive a State

---

[12] Claim preclusion may also bar Plaintiff's first cause of action as the Consent Decree concedes that the Las Flores Pipelines have not been in service. (RJN, Exh. B [Consent Decree at App. B, p. 85].)

Waiver from the OSFM prior to restarting Line 901[13]."], 91 ["Plains shall develop and submit . . . a written Restart Plan for Line 901 to the OSFM for review and approval."].) The fact that no party in the Consent Decree case asserted preemption based on an alleged interstate status of the pipelines, and that the federal government had not yet asserted that position itself, is immaterial. Claim preclusion "bars the subsequent application of all defenses that *could have been asserted* in a previous action between the same parties on the same cause of action, even if such contentions were not raised." *Littlejohn v. U.S.* 321 F.3d 915, 919–920 (9th Cir. 2003)(emphasis added). This bars Plaintiff's preemption cause of action because its predecessor, Plains Pipeline, could have asserted at that time that the federal government rather than OSFM had jurisdiction over the pipelines to bar the authority given to or asserted by the California state agency OSFM in the Consent Decree.

Second, under Ninth Circuit law, "[a] consent decree approved by a court is an enforceable, final judgment with the force of res judicata." *Mi Familia Vota v. Fontes* 111 F.4th 976, 982 (9th Cir. 2024). Here, the Consent Decree states that it is a judgment. (RJN, Exh. B [Consent Decree, ¶ 108].)

Third, there is privity between the parties because Plaintiff's parent company Sable agreed to be bound by the Consent Decree. (RJN, Exh. K [Sable stipulation].) "A person who agrees to be bound by the determination of issues in an action between others is bound in accordance with the terms of his agreement." *Taylor v. Sturgell*, 553 U.S. 880, 893 (2008), quoting 1 Restatement (Second) of Judgments § 40, p. 390 (1980).

**B.    Plaintiff lacks standing and the alleged dispute is not ripe for adjudication**

"[T]he irreducible constitutional minimum of standing contains three elements, all of which the party invoking federal jurisdiction bears the burden of establishing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The first of these elements requires the plaintiff to establish that he suffered an "injury in fact," defined as an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. at 560 (citations, internal quotation marks, and footnote omitted).

To satisfy the "case or controversy" requirement regarding standing in a pre-enforcement

---

[13] Plaintiff renamed Line 901 as Pipeline 324, and Line 902 as Pipeline 325.

19

challenge such as is alleged in this case, Plaintiff  must plausibly allege that, among other requirements, there is a credible threat that the challenged provision will be invoked against it. *Foothills Christian Ministries v. Johnson*, 148 F.4th 1040, 1049-1050 (9th Cir. 2025). In determining whether a plaintiff faces a credible threat of enforcement, the Court will generally consider whether the State has "communicated a specific warning or threat to initiate proceedings," and "the history of past prosecution or enforcement under the challenged statute." *Id*. at 1049 [citing *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) and *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003)]. Here, Plaintiff does not allege that the State, as the sole named defendant and separate from OSFM and the Coastal Commission, made any enforcement or specific threats of enforcement of the subject statutes that were not even in effect at the time the lawsuit was filed. The FAC also fails to allege that OSFM or the Coastal Commission made any specific enforcement threats. And, at this time, OSFM is litigating its jurisdiction, which would be a prerequisite to OSFM having authority to make such threats. Consequently, Plaintiff has failed to properly allege standing under Article Three, Section Two of the Constitution.

### C.   Plaintiff fails to sufficiently allege the dispute is constitutionally ripe for adjudication

Under Article III, section 2 of the United States Constitution, federal courts have jurisdiction over only those disputes that present a justiciable "case or controversy." U.S. Const. Art. 3, § 2; *Hollingsworth v. Perry*, 570 US 693, 704 (2013); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 US 167, 179-180, (2000); *see also Clark v. City of Lakewood*, 259 F3d 996, 1006 (9th Cir. 2001). A dispute must be ripe for judicial review for it to qualify as a "case or controversy" under Article III.

Where the plaintiff seeks declaratory and injunctive relief, the relevant ripeness inquiry is whether there is a "substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Ross v. Alaska*, 189 F.3d 1107, 1114 (1999) (citation omitted).

The dispute here is not ripe under Article III for the same reason it is not an actual

controversy under California Code of Civil Procedure section 1060 as discussed above: no action has been taken by the State or State agencies relating to enforcement of either of the statutes added by SB 237, and to rule on these statutes now without concrete factual parameters would involve abstract legal issues. Consequently, the case should be dismissed for lack of subject matter jurisdiction.

**CONCLUSION**

Plaintiff fails to state a claim against the State of California as a defendant and therefore the motion to dismiss should be granted for that reason alone.  Moreover, the claims Plaintiff asserts do not present an "actual controversy" sufficient to support a declaratory relief claim as the causes of action are not ripe for adjudication and the Ninth Circuit is currently reviewing Plaintiff's preemption claims. As Plaintiff is not able to cure these defects by further amending its complaint, the motion to dismiss should be granted without leave to amend.

Dated:  March 30, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
BRANDON S. WALKER
Supervising Deputy Attorney General
ISABELLA PANICUCCI
Deputy Attorney General

JACK C. NICK
Deputy Attorney General
*Attorneys for Defendant,*
*State of California*

SA2025306665

21

# CERTIFICATE OF SERVICE

Case Name:  **Pacific Pipeline Company, A Delaware Corporation v. State of California**

Case No.  **1:26-CV-01486-KES-CDB**

I hereby certify that on <u>March 30, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT STATE OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS FIRST AMENDED COMPLAINT MEMORANDUM OF POINTS AND AUTHORITIES**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>March 30, 2026</u>, at Los Angeles, California.

| Kevin Carballo | /s/ Kevin Carballo |
|:---:|:---:|
| Declarant | Signature |

SA2025306665
68285373.docx