# EXHIBIT I

**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:     (213) 576-1000
Facsimile:     (213) 576-1100

**PAUL HASTINGS LLP**
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:     (310) 620-5879
Facsimile:     (310) 620-5899

Attorneys for Plaintiff
PACIFIC PIPELINE COMPANY

SUPERIOR**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

COUNTY OF KERN**METROPOLITAN DIVISION**

| | |
|---|---|
| PACIFIC PIPELINE COMPANY, a Delaware corporation,<br><br>             Plaintiffs,<br><br>     v.<br><br>STATE OF CALIFORNIA, a state government; CALIFORNIA COASTAL COMMISSION, a state agency; CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, a state agency; OFFICE OF THE STATE FIRE MARSHAL, a state agency; DANIEL BERLANT, in his official capacity as State Fire Marshal and DOES 1 through 25, inclusive,<br><br>             Defendants. | Case No. 1:26-CV-01486-KES-CDB<br><br>(*Originally filed as* Case No. BCV-25-103508)<br><br>VERIFIED FIRST**SECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF AND INJUNCTIVE RELIEF, CONSTITUTIONAL VIOLATIONS, INVERSE CONDEMNATION, AND DAMAGES**<br><br>(Code Civ. Proc. § 1060) |

- 1 -
VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Pacific Pipeline Company brings this ~~First~~Second Amended Complaint for Declaratory Relief ~~against Defendant~~and Injunctive Relief, Constitutional Violations, Inverse Condemnation Damages, and Prospective Injunctive Relief against Defendants the State of California. ~~By this verified~~, California Coastal Commission, California Department of Forestry and Fire Protection, Office of State Fire Marshal, and Daniel Berlant (collectively, "Defendants"). By this pleading, Plaintiff Pacific Pipeline Company alleges as follows:

**INTRODUCTION**

1. Sable Offshore Corp. ("Sable") operates an interconnected pipeline facility known as the Santa Ynez Pipeline System, which includes both offshore and onshore components. Two onshore segments of this System are known as Segments CA-324 and CA-325, sometimes referred to as the Las Flores Pipeline, which are owned by Pacific Pipeline Company. Portions of Segments CA-325 are located in Kern County, San Luis Obispo County, and an unincorporated area of the County of Santa Barbara ("County"), including portions both inside and outside the Coastal Zone. Other onshore portions of the Santa Ynez Pipeline System, including Segment CA-324, are located in Santa Barbara County and within the Coastal Zone.

2. Sable is the lessee and operator of federal offshore oil and gas leases in federal waters off the coast of California that form the Santa Ynez Unit. Offshore pipeline segments (the "Offshore Pipeline Segments") transport oil from this offshore field to intermediate onshore processing facilities at Las Flores Canyon (the "LFC Facilities"), and Segments CA-324 and CA-325 transport oil from the LFC Facilities to Gaviota and Pentland Stations and further downstream. Sable operates the Offshore Pipeline Segments, the LFC Facilities, and Segments CA-324 and CA-325 as part of the integrated Santa Ynez Pipeline System, which moves crude oil from offshore waters into and through California. Sable acquired the Santa Ynez Unit, the Offshore Pipeline Segments, the LFC Facilities and Pacific Pipeline Company in February 2024.

3. Since that time, Sable and Pacific Pipeline Company have worked with federal and state agencies toward resuming petroleum transportation through the entirety of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325. This has involved the

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

performance of repair and maintenance work on all components of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

4.    On September 13, 2025, the California Legislature adopted Senate Bill ("SB") 237.

5.    Among other things, SB 237 adds Section 51014.1 of the Government Code, which provides that "[a]ny existing oil pipeline that is six inches or larger that has been idle, inactive, or out of service for five years or more, shall not be restarted without passing a spike hydrostatic testing program."

6.    SB 237 also amends Section 30262 of the California Coastal Act to require a person to obtain a new coastal development permit ("CDP") for the "[r]epair, reactivation, and maintenance of an oil and gas facility, including an oil pipeline, that has been idled, inactive, or out of service for five years or more."

7.    SB 237 does not define "idled, inactive, or out of service."

8.    On September 19, 2025, Governor Gavin Newsom signed SB 237 into law.

9.    ~~The State of California has~~Defendants have taken the position that Segments CA-324 and CA-325 have been idled, inactive, or out of service for five years or more. Pacific Pipeline Company disagrees. The entire Santa Ynez Pipeline System—including Segments CA-324 and CA-325—is active. The Segments are not idle nor out of service. In fact, the entire Pipeline System has retained its active status under state and federal law since 2015. More recently, Pacific Pipeline Company and Sable have been diligently performing necessary work on Segments CA-324 and CA-325 to resume petroleum transportation through them. Under all relevant and applicable meanings of the words, the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, is not idle, inactive, or out of service.

10.    On December 17, 2025, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") determined the Santa Ynez Pipeline System is an interstate pipeline under its exclusive pipeline safety jurisdiction. In making its determination, PHMSA confirmed the Santa Ynez Pipeline System is considered an "active" pipeline. Since assuming jurisdiction

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

over the Santa Ynez Pipeline System, PHMSA approved Sable's Restart Plan for Segments CA-324 and CA-325 on December 22, 2025 and issued Sable an Emergency Special Permit with respect to Segments CA-324 and CA-325 on December 23, 2025.

11. On February 18, 2026, the California Coastal Commission sent a correspondence to Sable indicating that it has "independent authority over any resumption of use of [Segments CA-324 and CA-325]" and will require Pacific Pipeline Company to "apply for and receive a CDP from the Commission that meets the standards of Section 30262" as amended by SB 237. Feb. 18, 2026 Letter from California Coastal Commission to Sable, attached hereto as Exhibit E.

12. On March 13, 2026, the Secretary of Energy, pursuant to the powers delegated to him from the President of the United States, commanded Sable and Pacific Pipeline Company to immediately commence the flow of oil through the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, pursuant to the Defense Production Act, 50 U.S.C §§ 4501 et seq. (the "DPA Order"). Exhibit F.

13. On March 16, 2026, State Fire Marshal Berlant notified Sable that "OSFM reserves all rights to enforcement action if operations on Lines 324 and/or 325 re-commence without a valid State Waiver" issued by OSFM. March 16, 2026, Letter to DJ Moore, attached hereto as Exhibit I.

14. On March 19, 2026, the California Coastal Commission, sent a further correspondence to Sable explaining its position that "[a]s of January 1, 2026, the Pipelines had been idled, inactive, and out of service for more than five years," and "Sable has not obtained a new Coastal Development Permit for reactivation of the Pipelines. Thus, any reactivation of the Pipelines is unpermitted development and would be grounds for further enforcement action by the Commission." March 19, 2026, Letter to Steve Rusch, attached hereto as Exhibit H.

15. 11. An actual and present controversy exists between Pacific Pipeline Company and Defendant Defendants concerning their respective rights and duties regarding the Santa Ynez Pipeline System's status, and the applicability of SB 237 to Segments CA-324 and CA-325 in

- 4 -

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

light of PHMSA's assumption of jurisdiction over the Santa Ynez Pipeline System. and the issuance of the DPA Order.

16. Consequently, Pacific Pipeline Company seeks a judicial declaration from this Court that: 1) the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, is not idle, inactive, or out of service as those terms are used in SB 237.

17. Pacific Pipeline Company seeks injunctive relief and a judicial declaration from this Court that: 1) the application of SB 237 as to the Santa Ynez Pipeline System is preempted by the Federal Pipeline Safety Act; and 2) the application of SB 237 as to the Santa Ynez Pipeline System is preempted by federal law the DPA Order.

18. Further, Pacific Pipeline Company seeks additional declaratory relief and/or damages on the grounds that the enforcement or threatened enforcement of SB 237 constitutes:

a. a violation of Pacific Pipeline Company's due process rights under Article I, Section 7 of the California Constitution and the Fourteenth Amendment to the United States Constitution;

b. a violation of Pacific Pipeline Company's equal protection rights under Article I, Section 7 of the California Constitution and the Fourteenth Amendment to the United States Constitution;

c. a bill of attainder in violation of Article I, Section 9, of the California Constitution and Article I, Section 9, Clause 3 or Article I, Section 10, Clause 1, of the United States Constitution;

d. an impairment of Pacific Pipeline Company's vested rights; and

e. a temporary and permanent taking of Pacific Pipeline Company's private property for public use without prior compensation in violation of Article I, Section 19 of the California Constitution and the Takings Clause of the Fifth Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment.

19. In pursuing this action, which involves enforcement of important rights affecting the public interest, Pacific Pipeline Company will confer a substantial benefit on the general public, citizens of the County of Kern, and the State of California, and therefore will be entitled to attorneys' fees and costs pursuant to Code of Civil Procedure section 1021.5 and section 1988, title 42, of the United States Code. In addition, Pacific Pipeline Company will be entitled to recover attorneys' fees and costs as part of its claim for inverse condemnation pursuant to Code of Civil Procedure section 1036.

## THE PARTIES

20. 12. Plaintiff Pacific Pipeline Company is a Delaware Corporation and does business in Kern County, California. Pacific Pipeline Company owns Segments CA-324 and CA-325, which are critical portions of the Santa Ynez Pipeline System.

21. 13. Pacific Pipeline Company is a "person interested under a statute" within the meaning of Code of Civil Procedure § 1060, because Pacific Pipeline Company's rights and obligations under SB 237 are directly at issue in this action.

22. 14. Defendant State of California is the government entity responsible for enacting and enforcing the laws of the State of California., with the capacity to sue and be sued. The State of California must comply with the State and United States Constitutions. SB 237 is an act of the State itself, through the state Legislature, and the provisions of SB 237 impose duties on state agencies, state officials, and the Legislature to carry out and enforce its provisions, including the provision marking "[a] violation of the act is a crime."

23. Defendant California Coastal Commission is a "Commission of the State of California established by voter initiative in 1972 (Proposition 20) and later made permanent by the Legislature through adoption of the California Coastal Act of 1976." Specifically, the California Coastal Commission is "an independent, quasi-judicial state agency[,]" "[u]nder California's federally-approved Coastal Management Program[] [that] manages development

- 6 -
VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

along the California coast except for San Francisco Bay[.]"[1] The California Coastal Commission has the capacity to sue and be sued.

24.    Defendant California Department of Forestry and Fire Protection is a political division of the State of California, organized and existing under the laws of the State of California, with capacity to sue and be sued. The California Department of Forestry and Fire Protection includes several organizational programs, including the Office of the State Fire Marshal.

25.    Defendant Office of the State Fire Marshal is a political subdivision of the State of California, organized and existing under the laws of the State of California, with the capacity to sue and be sued. The Office of the State Fire Marshal is the state agency responsible for ensuring the safety of intrastate hazardous liquid pipelines.

26.    Defendant Daniel Berlant is the State Fire Marshal and is sued in his official capacity as head of the Office of the State Fire Marshal.

27.    15. Pacific Pipeline Company is unaware of the true names and/or capacities of Defendants DOES 1 through 25, inclusive, and therefore sues said Defendants by such fictitious names. Pacific Pipeline Company will amend this pleading to insert the true names and/or capacities of DOES 1 through 25, inclusive, when the same have been ascertained. Pacific Pipeline Company is informed and believe and thereon alleges that each such fictitiously named Defendant is, in some manner or for some reason, responsible for the actions or omissions alleged in this pleading, and each is subject to the relief being sought herein.

**JURISDICTION AND VENUE**

28.    This Court has federal question jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. § 1331, as this action arises under 49 U.S.C. § 60101 *et seq.*, 50 U.S.C §§ 4501 *et seq.* (the Defense Production Act), and the Supremacy Clause of the United States Constitution.

---

[1] *See* California Coastal Commission's "Mission" Page listed on its Website, accessible at https://www.coastal.ca.gov/whoweare.html.

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

29.    16. ThisThe Court has subject-mattersupplemental jurisdiction over this actionunder 28 U.S.C. § 1367 over the claims herein asserted under California Constitution, article VI, section 10, and section 1060 of the Code of Civil Procedure, because they are so related to the claims within this Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

30.    17. Venue is proper in this Court pursuant to Code of Civil Procedure section 39228 U.S.C. § 1391(b) because all defendants "reside" in the State of California and are subject to personal jurisdiction here, and because significant portions of the Santa Ynez Pipeline System at issue in this litigation are located in Kern Countythe Eastern District of California and the Santa Ynez Pipeline System ultimately delivers crude oil to the Pentland Delivery Point in Kern County, embraced within the Eastern District of California.

## FACTUAL AND LEGAL STATEMEMT

**A.    The Santa Ynez Unit**

31.    18. The Santa Ynez Unit consists of sixteen federal leases across approximately 76,000 acres of outer continental shelf and produces crude oil and natural gas from Platforms Hondo, Harmony, and Heritage, located in federal waters off the California Coast in the Santa Barbara Channel.

32.    19. The oil and gas are transported through the Santa Ynez Pipeline System's Offshore Pipeline Segments to the onshore LFC Facilities, comprised principally of the Las Flores Canyon Oil and Gas Processing Facilities and the Pacific Offshore Pipeline Company-owned Gas Plant, both of which are located in Las Flores Canyon in unincorporated Santa Barbara County.

33.    20. The LFC Facilities separate oil, propane, butane, sulfur products, and fuel quality gas. The natural gas is dried, treated, compressed, and delivered to a local utility company. The partially processed crude oil continues through the Santa Ynez Pipeline System via Segments CA-324 and CA-325 to Pentland Station, where the oil enters third-party owned and operated infrastructure and is transported to a refinery for final processing.

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

34.    21. In February 1988, the California Coastal Commission ("Coastal Commission") reviewed and analyzed Sable's predecessor-in-interest's (Exxon Company U.S.A.) proposal for the construction, operation, and ongoing maintenance of the Santa Ynez Unit-related assets and the Offshore Pipeline Segments, as part of a "Development and Production Plan" ("DPP") submitted to the federal Minerals Management Service in 1987.

35.    22. The Coastal Commission issued three approvals for the Santa Ynez Unit-related assets and Offline Pipeline Segments: (1) Consistency Certification No. CC-7-83, which confirmed pursuant to the federal Coastal Zone Management Act ("CMZA") that a Development and Production Plan ("DPP") for the Santa Ynez Unit-related assets would be consistent with the Coastal Act, (2) Consistency Certification No. CC-64-87, which confirmed pursuant to the CZMA that construction, operation, and maintenance of the Santa Ynez-related assets and Offshore Pipeline Segments pursuant to a revised DPP would be consistent with the Coastal Act, and (3) CDP No. E-88-1 (the "Offshore CDP"), which authorized the construction, operation, and maintenance of those portions of the Offshore Pipeline Segments located in California state waters.

**B.    Segments CA-324 and CA-325 of the Santa Ynez Pipeline System**

34.    23. The Santa Ynez Pipeline System is made up of various segments. One segment is known as Segment CA-325. Segment CA-325 is a thirty-inch diameter pipeline with a maximum permitted throughput capacity of 300,000-barrels of crude oil per day and transports crude oil approximately 113.5 miles north from the Gaviota Pump Station to the Sisquoc Pump Station, then east through the Los Padres National Forest and Cuyama Valley, ultimately delivering crude oil to the existing Pentland Delivery Point in the San Joaquin Valley in Kern County.

35.    24. Another segment is Segment CA-324. Segment CA-324 is a twenty-four-inch diameter pipeline with a maximum permitted throughput capacity of 150,000-barrels of crude oil per day. Segment CA-324 transports crude oil approximately 10.9 miles from the Las Flores Pump Station in Las Flores Canyon, west along the Gaviota Coast, to the existing Gaviota Pump

- 9 -

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

Station located approximately one mile east of Gaviota State Park in Santa Barbara County. The Offshore Pipeline Segments, as described above, comprise a third segment of the Santa Ynez Pipeline System and transport oil from the Santa Ynez Unit to the onshore LFC Facilities in Las Flores Canyon.

36. 25. In the mid-1980s, the California State Lands Commission, federal Bureau of Land Management, and Department of the Interior prepared a joint Environmental Impact Report and Environmental Impact Statement ("EIR/EIS") for the Celeron Pipeline Project, which includes analysis of the construction and long-term operation of what are now known as Segments CA-324 and CA-325. The locations of Segments CA-324 and CA-325 were identified as an environmentally superior alignment to minimize impacts to environmental resources. The State Lands Commission certified the EIR/EIS in January 1985.

37. 26. After reviewing the EIR/EIS, the County Planning Commission made a final decision to approve the Celeron Pipeline Project and associated entitlements in February 1986. The County's approval was not challenged during the appeal period, and the Planning Commission's approval action became final and effective.

38. 27. Pursuant to the County of Santa Barbara's certified Local Coastal Program ("LCP"), the County issued CDP No. 86-CDP-189 for the Celeron Pipeline Project on July 27, 1986. CDP No. 86-CDP-189 approved "[c]learing, grading and trenching activities for [the] Celeron Pipeline Project." On August 5, 1986, the County issued CDP No. 86-CDP-205 for the "[r]emainder of all construction activities for the Celeron Pipeline [P]roject." The CDPs were not appealed by any party and are, therefore, final, valid, and not subject to further appeal.

39. 28. Although the County has issued separate CDPs for major improvements, such as relocations and realignments of pipeline segments since Segments CA-324 and CA-325's CDPs were first issued, the County has not required new or amended CDPs for repair and maintenance work on Segments CA-324 and CA-325.

**C.      The Refugio Oil Spill and Resulting Repair Work**

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

40. 29. On May 19, 2015, a leak along Segment CA-324 resulted in an oil spill. Segments CA-324 and CA-325 remained active, but petroleum has not flowed through them since that time, even though petroleum began flowing through other portions of the Santa Ynez Pipeline System in May 2025. To maintain Segments CA-324 and CA-325 in an active state, they were filled with nitrogen to prevent oxidation and internal corrosion, and the cathodic protection system is active and has been regularly inspected and maintained.

41. 30. Since 2015, Pacific Pipeline Company (including its predecessor in interest, Plains Pipeline, L.P. ("Plains")), has maintained Segments CA-324 and CA-325 as active and has undertaken substantial efforts to diligently repair Segments CA-324 and CA-325 to ensure compliance with industry standards for active pipelines and resume petroleum transportation.

42. 31. For example, in April 2021, Plains secured approval from the Office of the State Fire Marshal ("OSFM") to retrofit Segments CA-324 and CA-325 with 16 safety valves as required by law, including seven valves in the Coastal Zone. In December 2021, Plains submitted applications to the County for approval to complete the safety valve installation work. Pacific Pipeline Company has since installed the safety valves along Segments CA-324 and CA-325.

43. 32. In addition, multiple in-line inspections ("ILI") have been conducted on Segments CA-324 and CA-325:

    a.   Two ILI runs have been performed on Segment CA-324, one in February 2022 and another in December 2022;

    b.   An ILI run was performed on a portion of on Segment CA-325 in September 2023; and

    c.   An ILI run was performed on the remainder of Segment CA-325 in October 2023.

44. 33. In May 2024, Pacific Pipeline Company and Sable separately began anomaly[12] repair and maintenance work on Segments CA-324 and CA-325 under the County's

---

[12] A pipeline anomaly refers to a pipeline segment with some deviation from its original configuration.

1986 approvals and permits that authorized ongoing pipeline maintenance. On February 12 and March 21, 2025, in response to Pacific Pipeline Company's request to address claims from the Coastal Commission that the repair and maintenance work was not authorized, the County confirmed that no further permits were required for Pacific Pipeline Company's anomaly repair work. Pacific Pipeline Company has completed the anomaly repairs, as well as subsequent pipeline hydrotesting, under OSFM supervision.

45. ~~34.~~ Since 2016, Segments CA-324 and CA-325 had been considered an "intrastate" pipeline under the regulatory oversight of OSFM. In April 2024, Pacific Pipeline Company submitted "State Waiver" applications to OSFM for Segments CA-324 and CA-325 to modify regulatory pipeline safety requirements based on the specifications applicable to the individual pipeline facilities. On December 17, 2024, OSFM granted both State Waivers and imposed over sixty separate conditions on Pacific Pipeline Company's operation of Segments CA-324 and CA-325, conditional on the Pipeline and Hazardous Materials Safety Administration ("PHMSA") expressing no objection to the State Waivers. On February 11, 2025, PHMSA notified OSFM that it had no objection to its issuance of the State Waivers. On December 17, 2025, PHMSA designated the entire Santa Ynez Pipeline System (including Segments CA-324 and CA-325) as an interstate pipeline. As a result, OSFM no longer retains any regulatory oversight of Segments CA-324 and CA-325 and the State Waivers have been rendered moot.

46. ~~35.~~ Pacific Pipeline Company further submitted a Restart Plan to OSFM for review on July 29, 2024. In August and September 2025, OSFM performed multiple inspections of Segments CA-324 and CA-325 in connection with its review of the Restart Plan. As of December 17, 2025, PHMSA has assumed complete safety jurisdiction over the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, including the processing and approval of Pacific Pipeline Company's Restart Plan.

47. ~~36.~~ As of May 15, 2025, Sable resumed petroleum transportation through the Santa Ynez Pipeline System's Offshore Pipeline Segments to its storage facilities in Las Flores Canyon.

- 12 -

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

48. 37. At all times, Pacific Pipeline Company has intended to resume petroleum transportation from Sable's storage facilities in Las Flores Canyon through the remainder of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325. Pacific Pipeline Company and its predecessors never abandoned Segments CA-324 and CA-325. Rather, these segments have been operated as part of an active pipeline under the law and Pacific Pipeline Company has worked diligently to maintain their use under existing and valid CDPs.

**D.      Senate Bill 237**

49. 38. On September 13, 2025, the California Legislature passed SB 237. On September 19, 2025, Governor Newsom signed SB 237 into law.

50. 39. SB 237 adds Section 51014.1 of the Government Code, which states in part, "[a]ny existing oil pipeline that is six inches or larger that has been *idle, inactive, or out of service* for five years or more, shall not be restarted without passing a spike hydrostatic testing program." (Emphasis added).

51. 40. SB 237 also amends Section 30262 of the Coastal Act to provide, in relevant part:

> (2) Repair, reactivation, and maintenance of an oil and gas facility, including an oil pipeline, that has been idled, inactive, or out of service for five years or more shall be considered a new or expanded development requiring a new coastal development permit.
>
> (3) Development associated with the repair, reactivation, or maintenance of an oil pipeline that has been idled, inactive, or out of service for five years or more requires a new coastal development permit consistent with this section. (Pub. Res. Code §§ 30262(b)(2) and (3)).

52. SB 237 further provides that "[a] violation of the act is a crime."

53. 41. State law does not define the terms "idled," "inactive," and "out of service." However, such terms are defined or described by PHMSA, the federal agency that administers the federal law pursuant to which the Santa Ynez Pipeline System is regulated.

54. 42. The Santa Ynez Pipeline System is subject to the federal Hazardous Liquid Pipeline Safety Act ("Pipeline Safety Act") administered by PHMSA. (49 U.S.C. §§ 60101 *et*

- 13 -

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

*seq.*) On December 17, 2025, PHMSA determined that the Santa Ynez Pipeline System is an interstate pipeline under PHMSA's exclusive jurisdiction. (*See* Dec. 17, 2025 Letter from PHMSA to Sable, attached hereto as Exhibit B.) In making its determination, PHMSA confirmed that PHMSA regulations consider the Santa Ynez Pipeline System to be an "active" pipeline. (Ex. Exhibit B, p. 3, fn. 8.)

55. 43. PHMSA recognizes two categories of pipeline status: (i) active and (ii) abandoned. (*See* 81 Fed. Reg. 54512 [(federal "regulations consider pipelines to be either active and fully subject to all relevant parts of the safety regulations or abandoned."]); *see also* PHMSA Advisory Bulletin ADB 2016-0075 (Aug. 11, 2016). Federal regulations for hazardous liquid pipelines define the term "abandoned" to mean "permanently removed from service." (*See* 49 C.F.R. 195.3.)

56. 44. Federal regulations do not recognize "idle," "inactive," or "out of service" status at all. (*See* 81 Fed. Reg. 54512.) "If a pipeline is not properly abandoned and may be used in the future for transportation of hazardous liquid or gas, PHMSA regulations consider it as an active pipeline." (81 Fed. Reg. 54513.) "Owners and operators of pipelines that are not operating but contain hazardous liquids and gas must comply with all applicable safety requirements, including periodic maintenance, integrity management assessments, damage prevention programs, response planning, and public awareness programs." (*Ibid*.)

57. 45. Pacific Pipeline Company is informed and believes, and on that basis alleges, that it is the position of the State of California that Segments CA-324 and CA-325 have been "idled, inactive, or out of service for five years or more" and, therefore, repair, reactivation, maintenance, and development associated with such work is new or expanded development requiring a new CDP.

58. 46. The State, through the Coastal Commission and the Legislature, has previously made numerous statements and findings concerning its position on the status of Segments CA-324 and CA-325.

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

59. 47. The Staff Report for the Coastal Commission's Cease and Desist Order CCC-25-CD-01, Restoration Order CCC-25-RO-01, and Administrative Civil Penalty Order CCC-25-AP3-01, characterizes Segments CA-324 and CA-325 as "offline and out-of-service" since the 2015 oil spill. (Staff Report, p. 3.) "[T]he pipelines remained in service until the 2015 oil spill, at which point they were placed out of service." (*Ibid.*)*Id.* The Staff Report also characterizes the Segments as "inoperable," having "sat inactive for a decade." (*Id*., p. 65.)

60. 48. Similarly, the Senate Rules Committee digest for SB 237 makes clear that SB 237 is intended to apply to the Santa Ynez Pipeline System. (*See* Sen. Com. on Natural Resources, Analysis of Senate Bill No. 237 (2025-2026 Reg. Sess.) as amended on Sept. 10, 2025, attached hereto as Exhibit A.)

    a. "This Bill [applies to] pipelines of a certain size that have been out of service for more than five years (which would notably include certain pipelines serving the Sable Corporation's Santa Ynez Unit)[.]" (Ex. Exhibit A, p. 3.)

    b. "Preventing oil spills from pipelines. On May 19, 2015 an offshore pipeline ruptured, spilling over 140,000 gallons of heavy crude oil along the Gaviota coast at Refugio Beach in Santa Barbara County. Sable announced they were restarting oil production in the Santa Ynez unit (in federal waters) on May 15, 2025, and restarting the use of those two pipelines. Sable has not replaced, but has rather made repairs to the pipelines. Some of the provisions of SB 237 are intended to address concerns surrounding the safety of restarting use of the repaired pipelines by requiring testing of the pipelines' durability." (Ex. A*Id.*, p. 5.)

61. On September 18, 2025, California Assembly Member Gregg Hart made clear that the purpose of SB 237 is specifically to stymie Pacific Pipeline Company's business operations and prevent restart of Segments CA-324 and CA-325. In an interview with Newsmakers TV, Assembly Member Hart championed SB 237 and stated that "We need an umbrella organization or state agency that will look at the [restart of Segments CA-324 and CA-

- 15 -

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

325] in its entirety and really give it the rigorous environmental review that it needed."[3] Assembly Member Hart additionally stated, "I introduced a bill that would really codify the existing law. The Coastal Commission has the authority to do this now, but it's under dispute. Sable has contested that jurisdiction…So my bill simply clarified that jurisdictional authority for the Coastal Commission." Assembly Member Hart additionally singled out Sable and Pacific Pipeline Company and stated that "Sable can't begin operations until that happens."

62.　　On February 18, 2026, the California Coastal Commission, carbon-copying the Office of State Fire Marshal, indicated that it has "independent authority over any resumption of use of [Segments CA-324 and CA-325]" and will require Pacific Pipeline Company to "apply for and receive a CDP from the Commission that meets the standards of Section 30262" as amended by SB 237. February 18, 2026 Letter to Steve Rusch, attached hereto as Exhibit E.

63.　　On March 19, 2026, the California Coastal Commission, carbon-copying the California State Lands Commission, California Department of Conservation, California State Parks, and CalFire, further explained its position that "[a]s of January 1, 2026, the Pipelines had been idled, inactive, and out of service for more than five years," and "Sable has not obtained a new Coastal Development Permit for reactivation of the Pipelines. Thus, any reactivation of the Pipelines is unpermitted development and would be grounds for further enforcement action by the Commission." March 19, 2026, Letter to Steve Rusch, attached hereto as Exhibit H.

64.　　49. Based on the State's asserted authority under the Coastal Act and SB 237 and Defendants' threat of enforcement of SB 237 made on February 18, 2026 and again on March 19, 2026, Pacific Pipeline Company faces an immediate choice to either (i) resumeflow petroleum transportationthrough the Santa Ynez Pipeline System pursuant to its existing entitlements, permits, and approvals, including County-issued CDPs and, PHMSA approvals, and a DPA Order, but risk possible enforcement action, fines, and other penalties by the

---

[3] Santa Barbara Independent, *Gregg Hart's Sable Oil Pushback Bill Lands in Gov's Grand Bargain Enviro Deal* (Sept. 19, 2025) available at: https://www.independent.com/2025/09/19/gregg-harts-sable-oil-pushback-bill-lands-in-govs-grand-bargain-enviro-deal/.

- 16 -

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

StateDefendants; or (ii) not resumecease petroleum transportation at alland risk enforcement actions, fines, and other penalties by the United States. State law provides no administrative procedure for addressing a dispute concerning the applicability of SB 237 to the Santa Ynez Pipeline System.

65. 50. Given the absence of a process under the law for resolving this dispute, a judicial determination concerning the applicability of SB 237 to the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, is necessary.

**E.     PHMSA's Assumption of Jurisdiction**

66. In general, states and local governments may not exercise jurisdiction over hazardous liquid interstate pipelines. 49 U.S.C. § 60104(c) ("A State authority may not adopt or continue in force safety standards for interstate pipeline facilities or interstate pipeline transportation.")

67. 51. On December 17, 2025, PHMSA determined that the entirety of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, is an interstate pipeline subject to PHMSA's exclusive jurisdiction. This determination eliminated any jurisdiction of OSFM over Segments CA-324 and CA-325. In making its determination that the Santa Ynez Pipeline System is an interstate pipeline, PHMSA notified OSFM that the Pipeline System is "subject to the regulatory oversight of PHMSA." (Ex.Exhibit B, p. 3.) PHMSA further confirmed that the Santa Ynez Pipeline System is considered an "active" pipeline under PHMSA regulations. (Ex.Exhibit B, p. 3, fn. 8.)

68. 52. On December 22, 2025, PHMSA approved Sable's Restart Plan for Segments CA-324 and CA-325. (See Dec. 22, 2025 Letter from PHMSA to Sable, attached hereto as Exhibit C.)

69. 53. On December 23, 2025, PHMSA granted Sable an Emergency Special Permit for Segments CA-324 and CA-325. (See Dec. 23, 2025 Emergency Special Permit issued by PHMSA to Sable, attached hereto as Exhibit D.) The Emergency Special Permit takes the place

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

of the OSFM-issued State Waivers and carried forward substantially the same conditions as issued in the State Waivers.

70. ~~54.~~ No other PHMSA approvals or permits are necessary to flow oil through Segments CA-324 and CA-325.

71. ~~55.~~ Given PHMSA's assumption of jurisdiction over the Santa Ynez Pipeline System as an interstate pipeline, OSFM is without jurisdiction to regulate Segments CA-324 and CA-325, or any other portion of the Santa Ynez Pipeline System. The requirements of the State Waivers have therefore been mooted and preempted by these federal actions. A judicial determination concerning whether the application of SB 237 as to the Santa Ynez Pipeline System is preempted by federal law is therefore necessary.

**F.    California Demands Ongoing Energy and Hydrocarbons, While Increased Reliance on Imported Oil Causes National Defense and Environmental Impacts.**

68. California's population and economy, both the largest and most diverse in the country, require a continued, reliable supply of hydrocarbons to maintain economic stability and foster economic growth.

69. The demand for oil within the State has remained high and is not likely to decrease in the near future. California is the second largest consumer of motor gasoline and all petroleum products in the United States.[4]

70. The transportation sector uses about eighty-five percent (85%) of the petroleum consumed in the State.[5] According to the California Department of Transportation, Californians significantly increased their vehicle miles traveled over the last two decades.[6]

---

[4] U.S. Energy Info. Admin., *California State Energy Profile*, https://www.eia.gov/state/print.php?sid=CA (last updated May 16, 2024).
[5] U.S. Energy Info. Admin., *California State Profile and Energy Estimates*, available at https://www.eia.gov/state/analysis.php?sid=CA (last updated May 16, 2024).
[6] Caltrans, California VMT Data, available at https://dot.ca.gov/programs/esta/sb-743/ca-vmt.

- 18 -

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~



71.    Although the State has supported and subsidized the sale or lease of electric vehicles for decades, electric and plug-in hybrid vehicles still only make up about five percent (5%) of the light-duty vehicles on the road in California.[7] The vast majority of Californians still depend on vehicles powered by gasoline.

72.    In the last ten years, California has fallen from the third-largest producer of crude oil in the nation to seventh.[8] From 1986 to 2023, oil production within California has declined by about sixty-nine percent (69%).[9]

---

[7] California Energy Commission, *Light-Duty Vehicle Population in California,* available at https://www.energy.ca.gov/data-reports/energy-almanac/zero-emission-vehicle-and-infrastructure-statistics/light-duty-vehicle.
[8] U.S. Energy Info. Admin., *California State Profile and Energy Estimates,* available at https://www.eia.gov/state/analysis.php?sid=CA.
[9] California Energy Commission, *Oil Supply Sources to California Refineries,* available at https://www.energy.ca.gov/data-reports/energy-almanac/californias-petroleum-market/oil-supply-sources-california-refineries.

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

(Added)



73.    California's legislative and regulatory hostility causing this decline in production is self-evident and well-documented.[10] The U.S. Energy Information Administration concluded that "[a]s crude oil production in California and Alaska declined, the state's refineries increased their supply from foreign oil imports."[11]

74.    According to the California Energy Commission and the U.S. Energy Information Administration, approximately twenty-three percent (22.9%) of the oil consumed in California in

_____

[10] *See, e.g.,* Bakersfield Californian, *Oil drilling all but dries up as well rework permits rise* (July 17, 2023), available at https://www.bakersfield.com/news/oil-drilling-all-but-dries-up-as-well-rework-permits-rise/article_6001fd72-2500-11ee-9ff7-f3ca6fe0250b.html; Reuters, *California new oil well approvals have nearly ground to a halt* (July 13, 2023), available at https://www.reuters.com/business/energy/california-new-oil-well-approvals-have-nearly-ground-halt-data-show-2023-07-13/; LA Times, *Newsom's oil regulators deny new fracking permits, but industry is pushing back* (July 9, 2021), available at https://www.latimes.com/environment/story/2021-07-09/california-oil-regulators-deny-new-fracking-permits; San Francisco Chronicle, *Report Criticizes Oil Regulations:  Environmental rules blamed for decline in state's production* (March 29, 1993).
[11] U.S. Energy Info. Admin., *California State Profile and Energy Estimates*, available at https://www.eia.gov/state/analysis.php?sid=CA.

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

2025 was produced under the protection of California's laws. The market for hydrocarbons is global and hydrocarbons are a commodity. Over sixty percent (61.1%) of the oil consumed in California is imported from foreign countries, increasingly from Iraq, Saudi Arabia, Brazil, Guyana, and Ecuador.[12] These countries do not adhere to California's high environmental and human-rights standards.[13]

(Added)



Foreign Sources of Maring Crude Oil Imports to California 2025

[12] Cal. Energy Comm., *Oil Supply Sources To California Refineries*, https://www.energy.ca.gov/data-reports/energy-almanac/californias-petroleum-market/oil-supply-sources-california-refineries; *see, e.g.*, Cal. Energy Comm., *Foreign Sources of Crude Oil Imports to California 2023*, https://www.energy.ca.gov/data-reports/energy-almanac/californias-petroleum-market/foreign-sources-crude-oil-imports; U.S. Energy Info. Admin., California State Energy Profile, https://www.eia.gov/state/print.php?sid=CA.

[13] U.S. State Dept., *Ecuador 2023 Human Rights Report*, available at https://www.state.gov/wp-content/uploads/2024/02/528267_ECUADOR-2023-HUMAN-RIGHTS-REPORT.pdf; U.S. State Dept., *Brazil 2023 Human Rights Report*, available at https://www.state.gov/wp-content/uploads/2024/02/528267_BRAZIL-2023-HUMAN-RIGHTS-REPORT.pdf; U.S. State Dept., *Saudi Arabia 2023 Human Rights Report*, available at https://www.state.gov/wp-content/uploads/2024/02/528267-SAUDI-ARABIA-2023-HUMAN-RIGHTS-REPORT.pdf; U.S. State Dept., *Iraq 2023 Human Rights Report*, available at https://www.state.gov/wp-content/uploads/2024/03/528267_IRAQ-2023-HUMAN-RIGHTS-REPORT.pdf; U.S. State Dept., *2024 Trafficking in Persons Report: Saudi Arabia*, available at https://www.state.gov/reports/2024-trafficking-in-persons-report/saudi-arabia.

- 21 -

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

75.    State officials are fully aware of the continued growth of hydrocarbon use in California, and yet they are facilitating a policy that would shift oil and gas production out-of-state and abroad. During a hearing before the Kern County Board of Supervisors on January 14, 2020, Department of Conservation Director David Shabazian admitted that "[i]t is important to acknowledge that even as oil production has decreased steadily since it peaked 35 years ago here in California, consumption of fossil fuels has actually grown, whether in the form of gasoline, diesel fuel, jet fuel or in a variety of other products, from asphalt to electronics from roof tiles to rugs. That is an important context for today's conversation."[14]

76.    The California Department of Conservation, Geologic Energy Management Division ("CalGEM") also acknowledged, in an environmental impact report certified on July 1, 2015 analyzing the impacts of well stimulation, that a decrease in oil production within the state "would require importing oil from other sources to meet demand, thus increasing ship, rail, and tanker truck traffic to the State from the foreign and domestic suppliers."[15] CalGEM explained in detail that the importation of crude oil from out of state will have increased environmental impacts, particularly increased GHG emissions:

"Sources of GHG at oil and gas fields outside of California are not subject to California's regulatory setting [citation], which ensures that GHG sources in the business of oil and gas production in California are subject to multiple programs aimed at reducing GHG. Emissions of GHG that occur at a point of oil and gas extraction outside of California are not subject to the Cap-and-Trade Program, and by increasing the activity of oil and gas extraction outside of California, this alternative would cause increased GHG from sources that are not required to offset the GHG to comply with California's cap, resulting in an overall net increase in GHG emissions compared with both existing conditions and the project."

"Although the oil and gas extraction and associated GHG emissions would occur outside California, California would continue to experience the adverse environmental effects of global climate change driven by GHG emissions worldwide. This impact would occur from GHG sources that are not covered by

[14] Bd. of Supervisors, Kern Cnty., Regular Meeting (Jan. 14, 2020) (video and minutes), https://kern.granicus.com/MediaPlayer.php?view_id=56&clip_id=4169.
[15] CalGEM, *Well Stimulation Environmental Impact Report* ("WST EIR") at 12.2-49 C.2-84, available at https://www.conservation.ca.gov/calgem/Pages/SB4_Final_EIR_TOC.aspx.

- 22 -

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

California's regulatory setting and outside of the potential control of [CalGEM] to feasibly mitigate. As a result of increasing GHG emissions from sources beyond California's control, no feasible mitigation would be available."[16]

**G.    The Defense Production Act Order**

77.    On January 29, 2025, the President of the United States issued an executive order declaring a national emergency. Executive Order 14156.

78.    On March 13, 2026, the President of the United States issued Executive Order 13603, delegating "certain authorities of the President under the Defense Production Act (50 U.S.C. 4501 et seq.), to specified executive department and agency (agency) heads," including the Secretary of Energy.

79.    On March 13, 2026, the Secretary of Energy, pursuant to the delegated authority from the President of the United States, commanded Pacific Pipeline Company and Sable to immediately commence the flow of oil through the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, pursuant to the Defense Production Act ("DPA"). 50 U.S.C §§ 4501 *et seq.*

80.    The DPA Order finds the "[a]n affordable and reliable domestic supply of energy is a fundamental requirement for the national and economic security of any nation" and these "problems are most pronounced in our Nation's West Coast, 'where dangerous State and local policies jeopardize our Nation's core national defense and security needs, and devastate the prosperity of not only local residents but the entire United States population.'" Exhibit F, at p. 1. The DPA Order further finds that the Santa Ynez Pipeline System is a "critical energy resource on the West Coast" but "cannot be used to address the shortages identified in EO 14156 and the resulting vulnerabilities, including adversarial dependence" because "California agencies have deployed an array of state measures—including SB 237 []—to block pipeline operations." *Id.*, at p. 2.

81.    Specifically, the DPA Order directs Sable and Pacific Pipeline Company "to

---

[16] *Id.* at p. 12.2-37; *see also id*. at p. C.2-63 ["[CalGEM] has given considerable weight to the fact that increased oil imports would lead to increased greenhouse gas generation").)

- 23 -

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

immediately prioritize and allocate pipeline transportation services for hydrocarbons from the SYU [Santa Ynez Unit] through the SYPS [Santa Ynez Pipeline System]" and "immediately commence performance under contracts or orders for services… for hydrocarbon transportation capacity in the SYPS[.]" Exhibit F, at p. 3. The DPA Order further requires Sable and Pacific Pipeline Company to "comply with this order immediately and maintain such compliance until such time as the conditions necessitating the issuance of this order abate or until Sable is directed otherwise." *Id.*

82.     When enacting the DPA, Congress found "the development of domestic productive capacity" critical for ensuring the national defense, 50 U.S.C. § 4502(a)(3), and similarly found it necessary "to assure the availability of domestic energy supplies." (*Id.*, § 4502(a)(5).) The DPA thus vests "the President with an array of authorities," all designed "to maintain and enhance the domestic industrial base." 50 U.S.C. § 4502(a)(4). The President may use those authorities "whether or not an 'emergency' situation exists." *Legal Authorities Available to the President to Respond to a Severe Energy Supply Interruption or Other Substantial Reduction in Available Petroleum Products*, 6 Op. O.L.C. 644, 662 (1982) ("*Energy Supply Interruption*"). Thus, the DPA confers "broad and flexible" authority on the President to regulate private parties and preempt contrary state law to shape domestic industry in the interest of national defense. H.R. Rep. No. 81-2759, at 4 (1950).

83.     The President is authorized "to allocate materials, services, and facilities in such manner, upon such conditions, and to such extent as he shall deem necessary or appropriate to promote the national defense." 50 U.S.C. § 4511(a)(2). The President may use this section "to facilitate petroleum transportation," such as "by requiring pipelines, marine terminals, and other facilities to perform oil transport contracts necessary or appropriate to promote the national defense." *Energy Supply Interruption, supra,* 6 Op. O.L.C. at p. 665. Moreover, the "sweeping language [of 50 U.S.C. § 4511(a)(2)] allows the President to preempt contrary state law by ordering Pacific Pipeline Company and Sable to produce the recoverable oil located on the Santa Ynez Pipeline System and transport such production to the California refinery complex using the Santa

- 24 -

Ynez Pipeline System." Exhibit G, at pp. 16-17; *see, e.g., Johnson v. Tyson Foods, Inc.* 580 F.Supp. 3d 382, 389 (N.D. Tex. 2022) (holding that the President's allocation authority under the DPA allowed him to require meat facilities to remain open during the COVID-19 pandemic and preempt state tort law); *Reed v. Tyson Foods, Inc.*, No. 21-cv-01155, 2021 WL 5107725, at *6 (W.D. Tenn. Nov. 3, 2021) ("Because the purpose of the DPA cannot otherwise be accomplished while allowing states to implement their own, potentially inconsistent policy decisions for meat and poultry processor operations during the COVID-19 pandemic, the state law must yield.").

84.    Additionally, "[t]he President's prioritization authority under section 4511(a)(1) also allows him to preempt state law." Exhibit G at p. 18. "Section 4511(a)(1) authorizes the President 'to require that performance under contracts or orders' that 'he deems necessary or appropriate to promote the national defense shall take priority over performance under any other contract or order.'" *Id.* The President's DPA Order preempts those laws that, in the President's judgment, impair or delay prioritized contract performance as required by the DPA Order. *See id.* at pp. 18-19, citing *E. Air Lines, Inc. v. McDonnell Douglas Corp.* 532 F.2d 957, 993 (5th Cir. 1976) ("Congress intended to accord the Executive Branch great flexibility in molding its priorities policies to the frequently unanticipated exigencies of national defense."). State law rendering the DPA Order's prioritization impossible is now preempted. *See id.* at p. 19.

85.    Furthermore, to "assure the availability of domestic energy supplies," the DPA grants the President the ability to take actions and issue orders to "maximize domestic energy supplies." 50 U.S.C. § 4511(c). The President may exempt Pacific Pipeline Company from compliance with laws, such as SB 237, threatening the ability to "maximize domestic energy supplies." *Id.*, § 4511(c)(1). The President's preemptive powers exist "even in the absence of a national-defense finding." Exhibit G at p. 19, citing *Energy Supply Interruption, supra*, 6 Op. O.L.C. at p. 668.

## FIRST CAUSE OF ACTION

**Declarative Relief (~~Code of Civ. Proc., § 1060~~Applicability of SB 237) – As To All Defendants**

- 25 -

~~VERIFIED FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

86.   56. Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as though fully set forth herein.

87.   57. Pacific Pipeline Company is a "person interested" under Code of Civil Procedure § 1060, because Pacific Pipeline Company owns and operates Segments CA-324 and CA-325 of the Santa Ynez Pipeline System, which are operated pursuant to existing CDPs issued by the County and are the target of the amendments to the Government Code and Coastal Act enacted by SB 237.

88.   58. Segments CA-324 and CA-325 of the Santa Ynez Pipeline System have not been "idled, inactive, or out of service for five years or more" within the meaning of SB 237, because Pacific Pipeline Company has diligently undertaken repair and maintenance efforts since the 2015 spill under existing entitlements, permits, and approvals to resume petroleum transportation through Segments CA-324 and CA-325. Segments CA-324 and CA-325 have not been "abandoned" under federal or state law applicable to oil and gas pipelines. Rather, the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, has been deemed "active" under these laws by the agencies who administer them.

89.   59. Further, the Legislature did not make SB 237 retroactive. As such, SB 237 and its new rules for what is an idled, inactive, or out of service pipelines and what permitting standards may or may not be followed only applies prospectively. This means that SB 237 can only apply to pipelines that are eventually "idled, inactive, or out of service for five years or more" commencing on January 1, 2026. Thus, since the five-year idle, inactive, or out of service period must commence on January 1, 2026, the earliest a pipeline could be "idled, inactive, or out of service *for five years or more*" is January 1, 2031 (i.e., five years from SB 237's effective date).

90.   60. Given statements the State, through the Coastal Commission and Legislature, has previously made concerning the status of Segments CA-324 and CA-325 as "idle," "inactive," and "out of service" for more than five years, including most recently letters sent to Pacific Pipeline Company on February 18, 2026 (Exhibit E) and March 19, 2026 (Exhibit H) threatening to enforce SB 237 to the Santa Ynez Pipeline System, an actual, present controversy exists between the parties

- 26 -

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

concerning the applicability of SB 237 to the Santa Ynez Pipeline System, including Segments CA-324 and CA-325. This controversy is definite and concrete, touches the legal relations of parties with adverse legal interests, and is of sufficient immediacy and reality to warrant declaratory relief. (*City of Cotati v. Cashman* (2002), 29 Cal.4th 69, 79–80.) (Cal. 2002).

91. 61. This action does not seek an advisory opinion or abstract interpretation of law. Pacific Pipeline Company must make immediate operational and financial decisions regarding whether to resumecontinue to transport petroleum transportation under its existing CDPs at the risk of enforcement actions, penalties, or orders by the State. Moreover, SB 237 states that "[a] violation of the act is a crime." This presents a justiciable controversy under Code of Civil Procedure § 1060. (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647.)

92. 62. Declaratory relief is necessary and proper within the meaning of Code of Civil Procedure § 1061, because a judicial declaration will clarify the parties' rights and duties, guide Pacific Pipeline Company's conduct, and prevent multiplicity of actions.

93. 63. Accordingly, Pacific Pipeline Company seeks a judicial declaration that the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, have not been "idled, inactive, or out of service for five years or more" under SB 237.

### SECOND CAUSE OF ACTION

**Declaratory Relief (Code of Civ. Proc., § 1060)Federal Preemption – Federal Pipeline Safety Act) – As To All Defendants**

94. 64. Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

95. 65. Pacific Pipeline Company is a "person interested" under Code of Civil Procedure § 1060, because Pacific Pipeline Company owns and operates Segments CA-324 and CA-325 of the Santa Ynez Pipeline System pursuant to existing CDPs and is the target of the amendments to the Government Code and Coastal Act enacted by SB 237.

96. 66. With PHMSA's assumption of jurisdiction and December 17, 2025 determination that the Santa Ynez Pipeline System is an interstate pipeline under its exclusive

regulatory oversight, OSFM no longer retains any regulatory authority over Segments CA-324 and CA-325, including the resumption of petroleum transportation through the Segments.

97. 67. Moreover, with PHMSA's approval of Sable's Restart Plan on December 22, 2025 and issuance of the Emergency Special Permit (which overrides the State Waivers) on December 23, 2025, no other PHMSA approvals or permits are necessary to flow oil through Segments CA-324 and CA-325.

98. 68. Under the federal Pipeline Safety Act, at 49 U.S.C. § 60104(c), state agencies, such as OSFM or the Coastal Commission, are precluded from imposing any safety standards for interstate pipeline facilities, including the Santa Ynez Pipeline System.

99. 69. Moreover, under the federal pipeline safety regulations administered by PHMSA under 49 C.F.R. Part 195, Pacific Pipeline Company, as owner of Segments CA-324 and CA-325, is subject to several ongoing pipeline operation, maintenance, and repair requirements that are, in many cases, time-sensitive and not otherwise subject to advance permitting or approval requirements by PHMSA.

100. 70. Article VI, Clause 2 of the U.S. Constitution provides that "the Laws of the United States … shall be the supreme Law of the Land," such that federal laws preempt state laws that purport to override or otherwise conflict with the implementation of federal laws.

101. 71. This action does not seek an advisory opinion or abstract interpretation of law. Segments CA-324 and CA-325 are now ready for resumed currently transporting petroleum transportation pursuant to PHMSA's approvals and the DPA Order, and Pacific Pipeline Company must make immediate operational and financial decisions regarding whether to resume transport petroleum transportation through the Segments at the risk of enforcement actions, penalties, or orders by the State. This presents a justiciable controversy under Code of Civil Procedure § 1060. (*Meyer v. Sprint Spectrum L.P.* (2009) 45 Cal.4th 634, 647.)

102. 72. Declaratory relief is necessary and proper within the meaning of Code of Civil Procedure § 1061, because a judicial declaration will clarify the parties' rights and duties, guide Pacific Pipeline Company's conduct, and prevent multiplicity of actions.

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

103.    ~~73.~~ Accordingly, Pacific Pipeline Company seeks a judicial declaration that the application of SB 237 as to the Santa Ynez Pipeline System has been preempted by federal law.

104.    Additionally, as SB 237 is preempted by federal law, injunctive relief is appropriate to avoid the continued deprivation of federal constitutional rights that will result if SB 237 were to remain in effect.

**THIRD CAUSE OF ACTION**

**Declaratory Relief (Federal Preemption – DPA Order) – As To All Defendants**

105.    Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

106.    Pacific Pipeline Company is a "person interested" under Code of Civil Procedure § 1060, because Pacific Pipeline Company owns and operates Segments CA-324 and CA-325 of the Santa Ynez Pipeline System pursuant to existing CDPs and is the target of the amendments to the Government Code and Coastal Act enacted by SB 237.

107.    On March 13, 2026, the President of the United States issued Executive Order 13603, delegating "certain authorities of the President under the Defense Production Act (50 U.S.C. 4501 *et seq.*), to specified executive department and agency (agency) heads," including the Secretary of Energy. Upon this delegation and on behalf of the President, on March 13, 2026, the Secretary of Energy commanded Sable and Pacific Pipeline Company to commence the flow of crude oil through the Santa Ynez Pipeline System pursuant to the DPA Order. *See* Exhibit F.

108.    Article VI, Clause 2 of the U.S. Constitution provides that "the Laws of the United States … shall be the supreme Law of the Land," such that federal laws preempt state laws that purport to override or otherwise conflict with the implementation of federal laws.

109.    This action does not seek an advisory opinion or abstract interpretation of law. Segments CA-324 and CA-325 are currently transporting petroleum pursuant to PHMSA's approvals and the DPA Order, and Pacific Pipeline Company must make immediate operational and financial decisions regarding whether to transport petroleum through the Segments at the risk of enforcement actions, penalties, or orders by the State. This presents a justiciable controversy

- 29 -

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

under Code of Civil Procedure § 1060. *Meyer v. Sprint Spectrum L.P.* 45 Cal.4th 634, 647 (2009).

110.   Accordingly, Pacific Pipeline Company seeks a judicial declaration that the application of SB 237 as to the Santa Ynez Pipeline System has been preempted by the DPA Order.

111.   As SB 237 is preempted by the DPA Order pursuant to federal law, injunctive relief and a judicial determination are necessary and appropriate to avoid the continued deprivation of federal constitutional rights that will result if SB 237 were to remain in effect.

**FOURTH CAUSE OF ACTION**

**Declaratory Relief (Due Process Clause Violation) – As To All Defendants**

112.   Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

113.   The United States Constitution's Fifth Amendment provides, in relevant part: "No person shall ...be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." Likewise, the Due Process Clause of the 14th Amendment to the United States Constitution provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law . . . ." The California Constitution also separately prohibits a person from being "deprived of life, liberty, or property without due process of law[.]" Cal. Const. art. I, § 7.

114.   The Constitutional due process guarantees have both procedural and substantive components, the latter which protects fundamental rights that are so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Palko v. Conn.* 302 U.S. 319, 325 (1937). These fundamental rights include those guaranteed by the Bill of Rights, as well as certain liberty and privacy interests implicitly protected by the Due Process Clause.

115.   "The due process clauses of the federal and state Constitutions are the most basic substantive checks on government's power to act unfairly or oppressively." *Hale v. Morgan* 22 Cal.3d 388, 398 (1978). "Courts have consistently assumed that 'oppressive' or 'unreasonable' statutory penalties may be invalidated as violative of due process." *Id.* at p. 399.

116.   By enforcement or threat of enforcement of SB 237, Defendants violate Pacific

- 30 -

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

Pipeline Company's substantive and procedural rights under the due process clauses of Article I, Section 7 of the California Constitution and the Fourteenth Amendment to the United States Constitution.

117.    As enacted, SB 237 sets forth a requirement that an oil pipeline "idled, inactive, or out of service for more than five years" "shall not be restarted" before obtaining a new CDP and completing a hydrostatic pressure test in an arbitrary, irrational, and oppressive manner that is unreasonable, improper, and not related to any legitimate governmental purpose.

118.    SB 237 imposes requirements prior to restart of commencing the flow of crude oil through Segments CA-324 and CA-325 of the Santa Ynez Pipeline System that are not tied to any harm allegedly caused by the operation of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325. There is also no rational basis for imposing additional requirements to commence the flow of crude oil through the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

119.    By enforcement or the threat of enforcement of SB 237, Defendants violate Pacific Pipeline Company's procedural due process rights.

120.    A bona fide and actual controversy exists between Pacific Pipeline Company and Defendants in that Pacific Pipeline Company alleges, and is informed and believes that Defendants deny, that SB 237 violates the due process clauses of Article I, Section 7 of the California Constitution and the Fourteenth Amendment to the United States Constitution.

121.    Pursuant to California Code of Civil Procedure section 1060 and section 1983, title 42, of the United States Code, Pacific Pipeline Company seeks a judicial determination that SB 237 violates Pacific Pipeline Company's due process rights in violation of the federal and state constitutions.

122.    As SB 237 constitutes a violation of Pacific Pipeline Company's due process rights, injunctive relief and a judicial determination are necessary and appropriate to avoid the continued deprivation of state and federal constitutional rights that will result if SB 237 were to remain in effect.

- 31 -

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

/ / /

**FIFTH CAUSE OF ACTION**

**Declaratory Relief (Equal Protection Violation) – As To All Defendants**

123.    Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

124.    The United States and California Constitutions guarantee that a person may not be denied equal protection of the laws. Cal. Const. art. 1, § 7(a); U.S. Constitution, 14th Amend. Corporations are "persons" within the meaning of this provision and thus entitled to equal protection of the laws.

125.    The purpose of the Equal Protection Clause is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by the express terms of a statute or by its improper execution through duly constituted agents.

126.    The Equal Protection Clause of the California Constitution requires that similarly situated individuals be treated similarly, absent an adequate basis for disparate treatment by the state legislature.

127.    SB 237 intentionally singles out and discriminates against Pacific Pipeline Company by imposing additional permitting requirements applicable only to the Santa Ynez Pipeline System, including Segments CA-324 and CA-325. SB 237 does not impose any requirements on other pipeline facilities within the State of California. SB 237 applies to Pacific Pipeline Company as a "class of one."

128.    By enforcement or the threat of enforcement of SB 237, Respondents violate Pacific Pipeline Company's right to equal protection of the laws under Article 1, Section 7(a) of the California Constitution.

129.    A bona fide and actual controversy exists between Pacific Pipeline Company and Defendants in that Pacific Pipeline Company alleges, and is informed and believes that Defendants deny, that SB 237 violates the equal protection clauses of Article I, Section 7 of the California Constitution and the Fourteenth Amendment to the United States Constitution.

- 32 -

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

130.     Pursuant to California Code of Civil Procedure section 1060 and section 1983, title 42, of the United States Code, Pacific Pipeline Company seeks a judicial determination that SB 237 violates Pacific Pipeline Company's equal protection rights in violation of the federal and state constitutions.

131.     As SB 237 constitutes a violation of Pacific Pipeline Company's equal protection rights, injunctive relief and a judicial determination are necessary and appropriate to avoid the continued deprivation of state and federal constitutional rights that will result if SB 237 were to remain in effect.

### SIXTH CAUSE OF ACTION

### Declaratory Relief (Violation of the Prohibition on Bills of Attainder) – As To All Defendants

132.     Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

133.     The United States and California Constitutions prohibit passage of a bill of attainder. A bill of attainder imposes punishment on a specific individual or group.

134.     SB 237 applies with specificity only to Pacific Pipeline Company as the owner of the Santa Ynez Pipeline System.

135.     SB 237 punishes Pacific Pipeline Company by subjecting only Pacific Pipeline Company to the requirements of Section 51014.1 of the Government Code and Section 30262 of the Coastal Act. Moreover, SB 237 makes "[a] violation of the act [] a crime."

136.     SB 237 amounts to a trial by Legislature. It usurps the role of the judicial branch by punishing the conduct of a single, specific entity, in the absence of any evidentiary basis that the harm which the statute purportedly addresses actually exists.

137.     A bona fide and actual controversy exists between Pacific Pipeline Company and Defendants in that Pacific Pipeline Company alleges, and is informed and believes that Defendants deny, that SB 237 is a bill of attainder in violation of Section 9, Clause 3 or Section 10, Clause 1, of Article I of the United States Constitution and Article 1, Section 9, of the California

- 33 -

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

Constitution.

138.    Pursuant to California Code of Civil Procedure section 1060 and section 1983, title 42, of the United States Code, Petitioner is entitled to a declaration that SB 237 constitutes an unconstitutional bill of attainder under the United States and California Constitution.

139.    As SB 237 constitutes an unconstitutional bill of attainder, injunctive relief and a judicial determination are necessary and appropriate to avoid the continued deprivation of state and federal constitutional rights that will result if SB 237 were to remain in effect.

**SEVENTH CAUSE OF ACTION**

**Declaratory Relief (Impairment of Vested Rights) – As To All Defendants**

140.    Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

141.    Pacific Pipeline Company seeks a declaration from this Court that Pacific Pipeline Company has fully-vested rights of ownership of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.  Pacific Pipeline Company further seeks a declaration that, as a result of these vested rights, Defendants may not enforce the provisions of SB 237 to punish Pacific Pipeline Company's ownership interests in the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

142.    Pacific Pipeline Company has a property interest in the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

143.    The doctrine of vested rights seeks to protect property owners and developers who have substantially relied on past permits and proceeded accordingly with the government's acknowledgement. The doctrine protects a permit holder's right not only to construct, but also to use the premises as authorized by the permit. *Cnty. of San Diego v. McClurken*, 37 Cal. 2d 683, 691 (Cal. 1951).

144.    By enforcement or threat of enforcement of SB 237, Defendants impair Pacific Pipeline Company's vested rights over the ownership of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

- 34 -
VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

145.    A bona fide and actual controversy exists between Pacific Pipeline Company and Defendants in that Pacific Pipeline Company alleges, and is informed and believes that Defendants deny, that Defendants' enforcement or threatened enforcement of SB 237 impairs Pacific Pipeline Company's vested rights concerning ownership of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

146.    Pursuant to California Code of Civil Procedure section 1060, Pacific Pipeline Company seeks a judicial determination that Defendants' enforcement or threatened enforcement of SB 237 impairs Pacific Pipeline Company's vested rights concerning ownership of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

## EIGHTH CAUSE OF ACTION

### Declaratory Relief (Inverse Condemnation) – As To All Defendants

147.    Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

148.    SB 237 is invalid because it substantially impairs Pacific Pipeline Company's vested rights in the ownership of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

149.    By their enforcement or threatened enforcement of SB 237, Defendants impair Pacific Pipeline Company's ownership interest and operating rights in the Santa Ynez Pipeline System, including Segments CA-324 and CA-325. Defendants, therefore, violate article I, section 19, of the California Constitution and the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution by enforcing or threatening to enforce SB 237.

150.    The enactment of SB 237 is part of a statewide effort to prevent the transport of crude oil within Segments CA-324 and CA-325 of the Santa Ynez Pipeline System purely due to political machinations and without regard to ongoing business interests or actual impacts to neighboring uses.

151.    Defendants' enforcement or threatened enforcement of SB 237 substantially impairs Pacific Pipeline Company's property rights as to the Santa Ynez Pipeline System,

- 35 -

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

including Segments CA-324 and CA-325, for the benefit of the public without prior compensation to Pacific Pipeline Company.

152. SB 237 forces Pacific Pipeline Company to bear public burdens which, in all fairness and justice, should be borne by the public as a whole

153. By enactment, enforcement, or the threat of enforcement of SB 237, Defendants violate article I, section 19, of the California Constitution, which prohibits the temporary or permanent taking or damaging of private property for public use without prior, just compensation. Further, Defendants violate the takings clause of the Fifth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment, which prohibits the temporary or permanent taking of private property for public use without prior, just compensation.

154. Pacific Pipeline Company's interests will be materially, substantially, and irreparably harmed by SB 237. Defendants' enforcement or threat of enforcement of SB 237 will interfere with Pacific Pipeline Company's reasonable investment-backed expectations.

155. A bona fide and actual controversy exists between Pacific Pipeline Company and Defendants in that Pacific Pipeline Company alleges, and is informed and believes that Defendants deny, that SB 237 violates article I, section 19, of the California Constitution and the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution.

156. Pursuant to California Code of Civil Procedure section 1060, Pacific Pipeline Company seeks a judicial determination that SB 237 would result in a taking of Pacific Pipeline Company's property rights in violation of the federal and state constitutions.

157. As SB 237 would result in a taking of Pacific Pipeline Company's property rights in violation of the federal and state constitutions, injunctive relief and a judicial determination are necessary and appropriate to avoid the continued deprivation of state and federal constitutional rights that will result if SB 237 were to remain in effect.

**NINTH CAUSE OF ACTION**

**Damages for Taking or Damaging Property for Public Use Without Prior Compensation –**

**As To All Defendants**

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

158.    Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

159.    At the time the State enacted SB 237, Pacific Pipeline Company had an ownership interest in the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

160.    For years prior to the State's action in enacting SB 237, Pacific Pipeline Company had vested rights concerning the ownership and use of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

161.    Defendant State of California's enforcement or threatened enforcement of SB 237 substantially impairs Pacific Pipeline Company's vested rights in the Santa Ynez Pipeline System and eliminates substantially all of Pacific Pipeline Company's economically viable use of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, for the benefit of the public without prior compensation to Pacific Pipeline Company.

162.    By enforcing or threatening to enforce SB 237, Defendant State of California violates article I, section 19, of the California Constitution, which prohibits the temporary or permanent taking or damaging of private property for public use without prior, just compensation. Further, Defendant State of California violates the takings clause of the Fifth Amendment to the U.S. Constitution, as incorporated by the Fourteenth Amendment, which prohibits the temporary or permanent taking of private property for public use without prior, just compensation.

163.    To date, Pacific Pipeline Company has not received any compensation from Defendant State of California on account of the above alleged taking of, or damage to, its property rights with respect to the Santa Ynez Pipeline System, including Segments CA-324 and CA-325.

164.    As a direct and proximate result of Defendant State of California's violation of article I, section 19, of the California Constitution and the takings clause of the Fifth Amendment of the U.S. Constitution, as alleged above, Pacific Pipeline Company has been and will be damaged from the interference with its reasonable investment-backed expectations in its interest in the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, and will suffer further damages in an amount to be determined at trial.

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

165.    Pacific Pipeline Company is entitled to damages in the amount in excess of $347,000,000 and attorneys' fees for Defendant State of California's constitutional violation under Sections 1983 and 1988 of the Federal Civil Rights Act of 1871. Additionally, Pacific Pipeline Company is entitled to reputational damages in an amount to be determined.

**TENTH CAUSE OF ACTION**

**Injunctive Relief – As To All Defendants**

166.    Pacific Pipeline Company realleges and incorporates by reference each of the above paragraphs as if fully set forth herein.

167.    Defendants have threatened to enforce the provisions of SB 237 against Pacific Pipeline Company. On February 18, 2026, the California Coastal Commission sent a letter, carbon-copying California Department of Forestry and Fire Protection, Office of State Fire Marshal, and Daniel Berlant in his official capacity as State Fire Marshal (collectively "CalFire"), to Pacific Pipeline Company indicating that it has "independent authority over any resumption of use of [Segments CA-324 and CA-325]" and will require Pacific Pipeline Company to "apply for and receive a CDP from the Commission that meets the standards of Section 30262" as amended by SB 237. Feb. 18, 2026 Letter from California Coastal Commission to S. Rusch, Exhibit E. Thereafter on March 19, 2026, the Commission explained its position that "[a]s of January 1, 2026, the Pipelines had been idled, inactive, and out of service for more than five years," and "Sable has not obtained a new Coastal Development Permit for reactivation of the Pipelines. Thus, any reactivation of the Pipelines is unpermitted development and would be grounds for further enforcement action by the Commission." Exhibit H, at p. 1. In addition, SB 237 provides CalFire with authority "to administer provisions regulating the inspection of intrastate pipelines used for the transportation of hazardous liquid." Specifically, SB 237 prohibits "the restarting of an existing oil pipeline that is 6 inches or larger that has been idle, inactive, or out of service for 5 years or more without passing a spike hydrostatic testing program that meets the requirements established by the State Fire Marshal[.]" SB 237 requires a hydrostatic spike test "shall be at least 139 percent of the maximum operating pressure of the pipeline and shall not exceed 80 percent of the specific

VERIFIED ~~FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

minimum yield strength, as determined appropriate by the State Fire Marshal." Unless immediately enjoined, Defendants' actions will cause substantial and irreparable harm to Pacific Pipeline Company and the parties with whom it contracts, as well as the public that depends on the petroleum products shipped through the Santa Ynez Pipeline System.

168.    Defendants' attempt to apply the provisions of SB 237 to the Santa Ynez Pipeline System would cause irreparable harm to the consistent, uniform scheme of federal pipeline regulation and the implementation of the DPA Order, and would result in significantly increased costs to Pacific Pipeline Company and the public with little or no corresponding safety benefit.

169.    Pacific Pipeline Company seeks a temporary and/or permanent injunction to prevent Defendants from taking enforcement action in furtherance of SB 237 as to the Santa Ynez Pipeline System. Including Segments CA-324 and CA-325, which would interfere with a) the free flow of petroleum products in interstate commerce; b) federal control over safety, design, construction, installation, testing, inspection, training, staffing, maintenance, and operations of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325; and c) and enforcement of the uniform, consistent scheme of federal hazardous liquid pipeline safety regulations.

**PRAYER FOR RELIEF**

WHEREFORE, Pacific Pipeline Company respectfully prays for judgment against the Defendant as follows:

1.    For a judicial declaration that the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, has not been "idled, inactive, or out of service for five years or more" under Government Code Section 51014.1 and Public Resources Code Sections 30262 (b)(1) and (b)(2), as amended by SB 237;

2.    For a judicial declaration that the application of SB 237 as to the Santa Ynez Pipeline System is preempted by the federal lawPipeline Safety Act;

3.    For a judicial declaration that the application of SB 237 as to the Santa Ynez Pipeline System is preempted by the DPA Order;

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

4.    For a declaration that SB 237 is unlawful and void as violating Petitioner's substantive and procedural due process rights;

5.    For a judicial declaration that the application of SB 237 as to the Santa Ynez Pipeline System is unlawful and void as violating the equal protection clauses of the federal and state constitutions;

6.    For a judicial declaration that SB 237 is unlawful and void as violating the prohibition against bills of attainder;

7.    For a judicial declaration that SB 237 is unlawful and void as it infringes upon and violates Pacific Pipeline Company's vested rights;

8.    For a judicial declaration that SB 237 is unlawful and void as it violates article I, section 19, of the California Constitution and the takings clause of the Fifth and Fourteenth Amendments to the United States Constitution;

9.    For damages in the amount in excess of $347,000,000 for just compensation and interest thereon, according to proof, for the temporary and permanent taking of Pacific Pipeline Company's property in violation of article I, section 19, of the California Constitution and the Fifth Amendment to the United States Constitution (as to only Defendant State of California);

10.    For a preliminary and permanent injunction prohibiting Defendants from taking enforcement action in furtherance of SB 237 as to the Santa Ynez Pipeline System, including Segments CA-324 and CA-325;

11.    For reasonable attorneys' fees incurred in this matter pursuant to sections 1021.5 or 1036 of the California Code of Civil Procedure, section 1988, title 42, of the United States Code, and other applicable law;

12.    3. For costs of suit incurred herein; and

/ / /

/ / /

/ / /

/ / /

- 40 -

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

/ / /

/ / /

13.    4. For such other and further relief as the Court deems just and proper, including supplemental relief under Code of Civil Procedure § 1062.

Respectfully submitted,

DATED:  January 21April 10, 2026

ALSTON & BIRD LLP

By: _____
JEFFREY D. DINTZER

Attorney for Plaintiff
PACIFIC PIPELINE COMPANY

- 41 -
VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

**~~VERIFICATION~~**

~~I, Steven P. Rusch, am Vice President of Regulatory and Environmental Affairs of Sable Offshore Corp., and I am an Authorized Representative of Pacific Pipeline Company. I am authorized to execute this verification on behalf of them. I have read the attached Verified Complaint for Declaratory Relief and am familiar with its contents. The Facts provided in the Complaint are true of my personal knowledge, except for those alleged on information and belief, and I believe those to be true.~~

~~DATED: January 21, 2026~~

(Del)

~~Steven P. Rusch~~

- 42 -
~~VERIFIED FIRST~~SECOND AMENDED COMPLAINT ~~FOR DECLARATORY RELIEF~~

**PROOF OF SERVICE**

I, **Kim Niz**, declare:

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Alston & Bird LLP, 350 South Grand Avenue, 51st Floor, Los Angeles, CA 90071.

On January 21, 2026, I served the document(s) **PACIFIC PIPELINE COMPANY'S VERIFIED FIRST AMENDED COMPLAINT FOR DECLARATORY RELIEF** on the interested parties stated below, by the following means of service:

Brandon Walker
Jack C. Nick
Isabella A. Panuccini
1300 I Street, Suite 125
Sacramento, CA 95814
Telephone: (916) 210-6395
Fax: (916) 327-2319
Brandon.Walker@doj.ca.gov
Jack.Nick@doj.ca.gov
Isabella.Panuccini@doj.ca.gov
Attorneys for Defendant State of California

☒  BY ELECTRONIC SERVICE on the date stated below, I caused the document(s) described above to be served electronically on the recipients designated on the Transaction Receipt pursuant to the parties' stipulation establishing the authorizing e-service of documents.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on January 21, 2026, at Los Angeles, California.

/s/ Kim Niz
Kim Niz

VERIFIED FIRSTSECOND AMENDED COMPLAINT FOR DECLARATORY RELIEF

| Summary report:<br>**Litera Compare for Word 11.11.0.158 Document comparison done on 4/10/2026 3:34:08 PM** | |
| --- | --- |
| **Style name:** Default Style | |
| **Intelligent Table Comparison:** Active | |
| **Original filename:** Pacific Pipeline Company First Amended Complaint for Declaratory Relief(.6).docx | |
| **Modified filename:** PPC (SB 237) - Second Amended Complaint(.8).docx | |
| **Changes:** | |
| Add | 452 |
| Delete | 178 |
| Move From | 0 |
| Move To | 0 |
| Table Insert | 0 |
| Table Delete | 2 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 4 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 636 |