**ALSTON & BIRD LLP**
JEFFREY D. DINTZER, SBN 139056
jeffrey.dintzer@alston.com
GARRETT B. STANTON, SBN 324775
garrett.stanton@alston.com
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone:   (213) 576-1000
Facsimile:   (213) 576-1100

**PAUL HASTINGS LLP**
BENJAMIN J. HANELIN, SBN 237595
benjaminhanelin@paulhastings.com
NATALIE C. ROGERS, SBN 301254
natalierogers@paulhastings.com
1999 Avenue of the Stars, 27th Floor
Century City, California, 90067
Telephone:   (310) 620-5879
Facsimile:   (310) 620-5899

Attorneys for Plaintiff
PACIFIC PIPELINE COMPANY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

# METROPOLITAN DIVISION

| | |
|---|---|
| PACIFIC PIPELINE COMPANY, a Delaware corporation,<br><br>   Plaintiffs,<br><br>  v.<br><br>STATE OF CALIFORNIA, a state government; and DOES 1 through 25, inclusive,<br><br>   Defendants. | Case No. 1:26-CV-01486-KES-CDB<br><br>(*Originally filed as Case No. BCV-25-103508*)<br><br>**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br><br>[*Filed concurrently with Declaration of Jeffrey D. Dintzer; Request for Judicial Notice*]<br><br>Date:  June 15, 2026<br>Time:  1:30 p.m.<br>Location: Courtroom 6<br>Judge:  Hon. Kirk E. Sherriff |

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

**Page(s)**

I.  INTRODUCTION ...................................................................................1

II.  FACTUAL BACKGROUND .........................................................................1

III.  PROCEDURAL HISTORY ........................................................................5

IV.  LEGAL STANDARD ................................................................................6

V.  ARGUMENT.............................................................................................8

  A.  The State is a Proper Defendant and a Declaratory Action is a
      Correct Vehicle for Relief.........................................................9

  B.  Plaintiff has Standing and Alleges a Ripe and Justiciable
      Controversy Against the State.............................................11

  C.  Any Alleged Party Defects will be Cured by Amendment.................14

  D.  Plaintiff's Federal Preemption Claim is Not Barred by
      Preclusion. ..............................................................15

VI.  CONCLUSION ......................................................................................18

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................7

*Babbitt v. Farm Workers*,
  442 U.S. 289 (1979)..................................................................................8

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)...............................................................................6, 7

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)..................................................................................8

*Ctr. for Biological Diversity v. Veneman*,
  394 F.3d 1108 (9th Cir. 2005) ..................................................................8

*DaimlerChrysler Corp. v. Cuno*,
  547 U.S. 332 (2006)..................................................................................7

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ................................................................15

*FEC v. Cruz*,
  596 U.S. 289 (2022)..................................................................................7

*Felder v. Casey*,
  487 U.S. 131 (1988)................................................................................13

*Foman v. Davis*,
  371 U.S. 178 (1962)................................................................................14

*Lawlor v. Nat'l Screen Serv. Corp.*,
  349 U.S. 322 (1955).............................................................................16, 17

*Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*,
  590 U.S. 405 (2020)................................................................................17

ii

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992).................................................................................................7

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007)...............................................................................................11

*N. Star Int'l v. Ariz. Corp. Comm'n*,
    720 F.2d 578 (9th Cir. 1983) ..................................................................................6

*Purdy & Fitzpatrick v. State of California*,
    71 Cal. 2d 566 (Cal. 1969) .......................................................................9, 10, 13

*Regina v. State*,
    92 Cal. App. 5th 330, 338 (Cal. App. 2023) ......................................................9, 10

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) .................................................................................7

*Sail'er Inn, Inc. v. Kirby*,
    5 Cal. 3d 1 (1971) ...................................................................................................13

*Sentinel Peak Resources California LLC v. State of California, et al.*,
    No. 24STCV31066 (Sup. Ct. of Cal. Los Angeles Cnty., Dec. 2, 2024).............9

*Serrano v. Priest*,
    18 Cal. 3d 728, 752 (Cal. 1976) ............................................................................10

*Seymour v. Mut. of N.Y. Life Ins. Co.*,
    No. 20-cv-7578 PA, 2021 WL 4497502 (C.D. Cal. Mar. 1, 2021)......................8

*Shaw v. Delta Air Lines*,
    463 U.S. 85 (1983)..................................................................................................13

*Steffel v. Thompson*,
    415 U.S. 452 (1974)................................................................................................11

*Steinle v. City & County of San Francisco*,
    919 F.3d 1154 (9th Cir. 2019) .................................................................................6

*Susan B. Anthony List v. Driehaus*,
    573 U.S. 149 (2014)..........................................................................................7, 8, 13

iii

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

*Taking Offense v. State*
 18 Cal. 5th 891, 905 (Cal. 2025) ...........................................................................10

*Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*,
 368 F.3d 1053 (9th Cir. 2004) .................................................................................8

*Virginia v. American Booksellers Ass'n*
 484 U.S. 383, 392-93 (1988) .................................................................................12

*Warth v. Seldin*,
 422 U.S. 490 (1975)..................................................................................................7

*Western Radio Servs. Co., Inc. v. Glickman*,
 123 F.3d 1189 (9th Cir. 1997) ...............................................................................15


**RULES**

Fed. R. Civ. P. 8(a)(2)................................................................................................6

Fed. R. Civ. P. 12(b) ..............................................................................................6, 7

Fed. R. Civ. P. 15.................................................................................................14, 15

Fed. R. Civ. P. 21 ....................................................................................................15


**STATUTES**

28 U.S.C. § 1331.......................................................................................................14

49 U.S.C. § 60118(c)(2)(A) .......................................................................................3

Cal. Coastal Act § 30262 ...........................................................................................3

Cal. Civ. Proc. Code § 526a......................................................................................10

Cal. Gov. Code § 51010..............................................................................................3

Cal. Gov. Code, § 51013.5..........................................................................................3

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Cal. Gov. Code § 51014.................................................................................................2, 3

Cal. Pub. Res. Code . § 30600(a).......................................................................................3

**OTHER AUTHORITIES**

SB 237 (Cal. 2025) .............................................................................................................3

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

## I.    <u>INTRODUCTION</u>

None of the bases set forth in Defendant State of California's (the "State") Motion to Dismiss (the "Motion") support dismissal of Plaintiff's complaint. First, the State is a proper party defendant where, as here, a preemption challenge is brought against a state statute. Second, to the extent the California Coastal Commission ("Commission") and California Office of the State Fire Marshal ("OSFM") are necessary parties, party defects are not a ground for dismissal. Regardless, Plaintiff has sought leave from the Court to amend its complaint given that the State has refused to stipulate to the amended complaint. Third, the operative complaint presents a justiciable, live dispute with the State over the validity and enforceability of California Senate Bill ("SB") 237, which will be maintained through amendment. Finally, the Consent Decree, which imposes distinct requirements under a formerly existing jurisdictional scheme, has no preclusive effect. The Motion should be denied.

## II.    <u>FACTUAL BACKGROUND</u>

Sable Offshore Corp. ("Sable") is the lessee and operator of federal offshore oil and gas leases in federal waters off the coast of California that form the Santa Ynez Unit. First Amended Complaint ("FAC") at ¶ 2.  Sable operates the interconnected Santa Ynez Pipeline System, which consists of offshore pipeline infrastructure, onshore processing and storage facilities, and two onshore pipeline segments known as Lines CA-324 and CA-325 (collectively, "Segments CA-324 and CA-325"). *Id.* In February 2024, Sable acquired the Santa Ynez Unit oil production infrastructure (the "SYU Facilities") and Pacific Pipeline Company, which owns Segments CA-324 and CA-325. *Id.*

The SYU Facilities consist of sixteen federal leases across approximately 76,000 acres of outer continental shelf and produce crude oil and natural gas from

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

platforms located in federal waters off the California Coast in the Santa Barbara Channel. FAC at ¶ 18. Oil and gas is transported through the Santa Ynez Pipeline System's offshore pipeline infrastructure to the Pipeline System's onshore processing facilities, and then Segments CA-324 and CA-325 transport oil from Las Flores Canyon to the Gaviota and Pentland Stations further downstream. *Id.* at ¶¶ 2, 18, 19, 20.

Segments CA-324 and CA-325 received their initial approvals and development permits in the late 1980s. *Id.* at ¶¶ 25-27. In May 2015, a leak and oil spill occurred along Segment CA-324 in Santa Barbara County. *Id.* at ¶ 29. Segments CA-324 and CA-325 remained active after this leak – these segments were filled with nitrogen to prevent oxidation and internal corrosion, and the cathodic protection system remains active, regularly inspected, and maintained. *Id.* In May 2024, Pacific Pipeline Company began anomaly repairs to Segments CA-324 and CA-325, which were completed under OSFM supervision. *Id.* at ¶ 34.

As of May 2025, Sable resumed petroleum transportation from the SYU Facilities' offshore platforms through the Santa Ynez Pipeline System. *Id.* at ¶ 36. Since the pause in production related to the spill, Pacific Pipeline Company and its predecessors always intended to resume petroleum transportation through Segments CA-324 and CA-325. *Id.* at ¶ 37. Pacific Pipeline Company and its predecessors never abandoned the Santa Ynez Pipeline System and continue to maintain and repair the Santa Ynez Pipeline System, including Segments CA-324 and CA-325. *Id.*

In September 2025, the California Legislature passed, and Governor Newsom signed into law, SB 237. *Id.* at ¶ 38. SB 237 went into effect on January 1, 2026, and is not retroactive. Id. at ¶ 59. Among other things, SB 237 adds Section 51014.1 of the California Government Code, which states in part: "[a]ny existing oil pipeline

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

that is six inches or larger that has been idle, inactive, or out of service for five years or more, shall not be restarted without passing a spike hydrostatic testing program." FAC at ¶ 39. Under SB 237, OSFM is responsible for administering the requirements of the spike hydrotesting program. *See* SB 237 (Cal. 2025); Cal. Gov. Code §§ 51010, 51013.5, 51014.

SB 237 separately amends Section 30262 of the California Coastal Act to provide requirements for coastal development permits ("CDPs") for pipelines that have been "idled, inactive, or out of service" for five years or more. FAC at ¶ 40. The Commission is responsible for issuing CDPs under the Coastal Act. *See* Cal. Pub. Res. Code § 30600(a). State law does not define "idle," "inactive," and "out of service," but the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA"), which regulates interstate pipelines, defines analogous terms. FAC at ¶ 41. The California Senate Rules Committee digest for SB 237 makes clear that SB 237 is intended to apply to the Santa Ynez Pipeline System. *Id.* at ¶ 48.

On December 17, 2025, PHMSA determined that the entirety of the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, is an interstate pipeline subject to PHMSA's exclusive jurisdiction. *Id.* at ¶ 51. This determination eliminated any jurisdiction OSFM had over Segments CA-324 and CA-325. ECF No. 1, at 75-77. In making its determination that the Santa Ynez Pipeline System is an interstate pipeline, PHMSA notified OSFM that Segments CA-324 and CA-325 are "subject to the regulatory oversight of PHMSA." *Id.* at 2–3. On December 22, 2025, PHMSA approved Plaintiff's Restart Plan for Segments CA-324 and CA-325 (the "Restart Approval"). *Id.* at 79-80. On December 23, 2025, PHMSA granted Plaintiff an "emergency special permit" for Segments CA-324 and CA-325 pursuant to 49 U.S.C. Section 60118(c)(2)(A) (the "Emergency Special Permit"). ECF. No. 1, at 82-97. With the Restart Approval and the Emergency Special Permit, no other

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

PHMSA approvals or permits are necessary to flow oil through the Santa Ynez Pipeline System, including Segments CA-324 and CA-325. Given PHMSA's assertion of jurisdiction over the entirety of the Santa Ynez Pipeline System as an interstate pipeline, OSFM is without jurisdiction to regulate Segments CA-324 and CA-325, or any other portion of the Pipeline System. FAC at ¶ 55.

On February 18, 2026, the Commission sent Plaintiff a letter, carbon-copying OSFM and State Fire Marshal Daniel Berlant, detailing their intent to enforce SB 237 to prevent Plaintiff's business operations from proceeding. Plaintiff's RJN & Declaration of Jeffrey D. Dintzer ("Dintzer Decl."), Ex. A.

On March 13, 2026, the President of the United States issued Executive Order 13603, delegating "certain authorities of the President under the Defense Production Act (50 U.S.C. 4501 *et seq.*), to specified executive department and agency (agency) heads," including the Secretary of Energy. Plaintiff's RJN and Dintzer Decl., Ex. D. Upon this delegation and on behalf of the President, on March 13, 2026, the Secretary of Energy commanded Sable to commence the flow of crude oil through the Santa Ynez Pipeline System pursuant to the Defense Production Act (the "DPA Order"). Plaintiff's RJN and Dintzer Decl., Ex. E.

The DPA Order finds the "[a]n affordable and reliable domestic supply of energy is a fundamental requirement for the national and economic security of any nation" and these "problems are most pronounced in our Nation's West Coast, 'where dangerous State and local policies jeopardize our Nation's core national defense and security needs, and devastate the prosperity of not only local residents but the entire United States population.'" *Id.* at 1. The DPA Order further finds that the Santa Ynez Pipeline System is a "critical energy resource on the West Coast" but "cannot be used to address the shortages identified in EO 14156 and the resulting vulnerabilities, including adversarial dependence" because "California agencies

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

have deployed an array of state measures—including SB 237 []—to block pipeline operations." Plaintiff's RJN and Dintzer Decl., Ex. E at 2.

The DPA Order directs Sable "to immediately prioritize and allocate pipeline transportation services for hydrocarbons from the SYU [Santa Ynez Unit] through the SYPS [Santa Ynez Pipeline System]" and "immediately commence performance under contracts or orders for services… for hydrocarbon transportation capacity in the SYPS[.]" *Id.* at 3. The DPA Order further requires Sable to "comply with this order immediately and maintain such compliance until such time as the conditions necessitating the issuance of this order abate or until Sable is directed otherwise." *Id.*

On March 16, 2026, State Fire Marshal Daniel Berlant notified Sable that "OSFM reserves all rights to enforcement action if operations on Lines 324 and/or 325 re-commence without a valid State Waiver" issued by OSFM. Plaintiff's RJN and Dintzer Decl., Ex. B. On March 19, 2026, the Commission, copying OSFM and State Fire Marshal Berlant, sent Plaintiff a further letter expressing the Commission's position that "any reactivation of the Pipelines is unpermitted development and would be grounds for further enforcement action by the Commission." Plaintiff's RJN and Dintzer Decl., Ex. C.

## III.   **PROCEDURAL HISTORY**

On September 29, 2025, Plaintiff filed this action in the Superior Court for the County of Kern. On December 5, 2025, the State moved to transfer venue to the Superior Court for the County of Santa Barbara. On January 21, 2026, Plaintiff filed its First Amended Complaint in state court, raising a federal preemption claim in light of PHMSA's determination that the Santa Ynez Pipeline System is an interstate pipeline subject to PHMSA's exclusive jurisdiction. On February 3, 2026, the

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Superior Court for the County of Kern denied the State's motion to transfer venue. On February 20, 2026, the State removed this action to this Court.

On March 10, 2026, Plaintiff sought the State's consent to file a Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 15(a)(2), noting its intent to add constitutional claims against the State, allege the preemptive effect of the DPA Order, and join the Commission and OSFM as parties. Plaintiff provided a copy of its proposed SAC to the State on March 26, 2026. Plaintiff did not ask the State to waive any of its own defenses or those of the additional proposed defendants.

On April 3, 2026, the State indicated that it would only "allow [Plaintiff]" to pursue "some of the claims against certain defendants." Accordingly, Plaintiff filed its Motion for Leave to File its SAC on April 10, 2026. ECF Nos. 22, 22-1; *see also* ECF No. 24.

## IV.    **LEGAL STANDARD**

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of a complaint. *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). On a motion to dismiss under Rule 12(b)(6), the court must assume that all of the plaintiff's factual allegations are true, construing "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019). To survive a motion to dismiss under Rule 12(b)(6), a complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Accordingly, although a formulaic recitation of the elements of a cause of action is inadequate, the "detailed factual allegations" are not necessary to survive a motion to dismiss. *Twombly*, 550 U.S. at 555. A complaint need only contain sufficient factual detail to "state a claim to relief that is plausible

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

on its face" and to raise the plaintiff's right to relief above the "speculative level." *Twombly,* 550 U.S. at 555, 570; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A motion under Rule 12(b)(1) challenges whether a justiciable controversy exists through a facial or factual attack. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction. By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.*

"Article III of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 157 (2014) ("*Driehaus*") (citing U.S. Const. art. III, § 2). "The doctrines of standing and ripeness 'originate' from the same Article III limitation." *Id.* at 157 n.5 (citing *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335 (2006)). At the motion to dismiss stage, a plaintiff need only allege facts "plausibly" showing that the dispute is ripe. *Twombly*, 550 U.S. at 570. Likewise, to demonstrate Article III standing, a plaintiff need only allege (1) an injury in fact to a legally protected interest (2) fairly traceable to a defendant's actions (3) that is redressable by the requested relief. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "For standing purposes, [courts] accept as valid the merits of [the plaintiff's] legal claims…." *FEC v. Cruz*, 596 U.S. 289, 298 (2022); *Warth v. Seldin*, 422 U.S. 490, 502 (1975) (assuming legal theory of complaint).

"An injury sufficient to satisfy Article III must be concrete and particularized and actual or imminent, not conjectural or hypothetical." *Driehaus*, 573 U.S. at 158 (internal quotation marks omitted) (citing *Lujan*, 504 U.S. at 560). "An allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Id.* (internal quotation marks omitted)

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

(citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 414 n.5 (2013)). "When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law." *Driehaus*, 573 U.S. at 158-59. The Supreme Court has "held that a plaintiff satisfies the injury-in-fact requirement where he alleges 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Id.* at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Moreover, "[d]ismissal without leave to amend is improper unless it is clear…that the complaint could not be saved by any amendment." *Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1061 (9th Cir. 2004); *cf. Seymour v. Mut. of N.Y. Life Ins. Co.*, No. 20-cv-7578 PA (JEMX), 2021 WL 4497502, at *2 (C.D. Cal. Mar. 1, 2021) ("[A] district court may, and should, grant leave to amend when it appears that subject matter jurisdiction may exist – even though the [complaint] inadequately alleges jurisdiction."). In such determination, a proposed amendment is futile only if its futility is "clear beyond doubt." *Ctr. for Biological Diversity v. Veneman*, 394 F.3d 1108, 1114 (9th Cir. 2005).

## V.    **ARGUMENT**

The Motion provides no basis for dismissing the First Amended Complaint. As an initial matter, the State's Motion would be mooted if the Court grants Plaintiff leave to file its SAC. As detailed in Plaintiff's Motion for Leave, Plaintiff should be allowed to amend at this early stage of litigation since "[t]he purpose of pleadings is to facilitate a proper disposition on the merits." *Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Industry*, 648 F.2d 1252, 1254 (9th Cir. 1981) (internal quotations omitted).

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Regardless, the State is a proper party defendant, and any alleged party defects are cured by amendment. Moreover, Plaintiff need not face actual enforcement to establish Article III standing, nor exhaust its administrative remedies before seeking declaratory relief based on federal preemption or seeking to vindicate its constitutional rights. Finally, the Consent Decree supports no claim or issue preclusion where the basis of Plaintiff's claims is wholly rooted in subsequent changes to the nucleus of operative facts. The Motion should be denied.

## A.     The State is a Proper Defendant and a Declaratory Action is a Correct Vehicle for Relief.

The State argues there is a categorical "rule against naming the State of California as a defendant." ECF No. 20 at 10. This is simply incorrect.[1] Where a state's law conflicts with federal law, the state may be sued in a declaratory action seeking to invalidate the state law on preemption grounds, even before actual enforcement. *See Purdy & Fitzpatrick v. State*, 71 Cal. 2d 566, 568-69 (1969).

The State was a defendant in *Purdy & Fitzpatrick v. State of California*, where the California Supreme Court struck down a California state labor law because it improperly "encroache[d] upon the [federal] congressional scheme" with respect to immigration laws. 71 Cal. 2d at 569. Similarly, in *Regina v. State of California*, the California Court of Appeal expressly noted that the plaintiff "sued the State of California" and that "as part of his declaratory relief cause of action, [the plaintiff] alleged [a] [California state] statute was in conflict with, and preempted by," federal law. 89 Cal.App.5th 386, 393 (2023). The Court of Appeal then resolved that

---

[1] The State's argument is further belied by the fact that the State is currently defending a similar action brought by an oil operator concerning the legality of California Assembly Bill No. 2716, which amends sections of the California Public Resources Code addressing that operator's low-production oil wells. *See Sentinel Peak Resources California LLC v. State of California, et al.*, No. 24STCV31066 (Super. Ct. of Cal. Los Angeles Cnty., Dec. 2, 2024).

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

preemption theory on the merits rather than suggesting the State's presence in the suit was itself procedurally improper. *Regina,* 89 Cal.App.5th at 408. Just as in those cases, here Plaintiff seeks a declaration that the application of SB 237 as to the Santa Ynez Pipeline System is preempted by federal law. FAC at ¶ 73. *Purdy* and *Regina* confirm that the State itself is a proper party defendant in a declaratory relief action on federal preemption grounds. The DPA Order leaves no doubt that SB 237 has been preempted and cannot stand in the way of resuming the flow of oil through the Santa Ynez Pipeline System.

The State's authorities are inapposite and do not stand for the proposition that where state agencies may also be proper party defendants, the State itself is categorically not. In *Serrano v. Priest*, the issue was not whether the State was a *proper* party, but a *necessary* party. *See* 18 Cal. 3d 728, 752 (1976) ("Moreover, even should the Legislature and the Governor be considered *proper* parties to this litigation (i.e., parties subject to permissive joinder or capable of intervention), it is clear that they could in no case be considered *indispensable* parties, or parties without whom the action could not fairly proceed."). Similarly, *Taking Offense v. State of California* does not hold that only constitutional claims may be brought against the State. Rather, the case narrowly holds that the plaintiff lacked standing to sue the State under the "taxpayer standing" doctrine articulated in California Code of Civil Procedure section 526a. 18 Cal. 5th 891, 905 (2025) (holding that "we agree with the State that the present version of section 526a, as amended in 2018, does not allow standing to sue state officers or entities.").

In any case, Plaintiff's SAC will incorporate additional constitutional claims including bill of attainder, due process, equal protection, takings, and vested rights. In addition, Plaintiff's SAC adds an additional claim for federal preemption based on the March 13, 2026 issuance of the DPA Order. Those added claims are not futile

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

and will further illustrate that this case presents a justiciable, live dispute over the validity and enforceability of SB 237 with the State as a properly named defendant.

**B.     Plaintiff has Standing and Alleges a Ripe and Justiciable Controversy Against the State.**

The State's administrative exhaustion argument mischaracterizes the nature of this case. SB 237 does not operate solely through an administrative process. The official bill text states that "[a] violation of the [Elder California Pipeline Safety Act] is a crime," and further provides that SB 237 prohibits restart of qualifying pipelines without a spike hydrostatic test "[b]y expanding the scope of a crime." As adopted, Cal. Gov. Code § 51018.7 provides that "[a]ny person who willfully and knowingly violates any provision of this chapter or a regulation issued pursuant thereto shall, upon conviction, be subject, for each offense, to a fine of not more than twenty-five thousand dollars ($25,000), imprisonment in a county jail for not more than one year, imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code, or by both that fine and imprisonment." In other words, SB 237 is not merely an agency-review statute; it also operates through the State's penal machinery, which is not subject to the administrative process.

Plaintiff need not subject itself to the State's prosecution or expose itself to liabilities to establish Article III standing—the threat of enforcement suffices. *See Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights"); *see also MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 128-29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat").

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

Moreover, Plaintiff's claims are ripe even in the absence of actual enforcement. In *Virginia v. American Booksellers Association*, the United States Supreme Court held that a pre-enforcement challenge to a criminal law was ripe where the law was "aimed directly at plaintiffs, who, if their interpretation of the statute is correct, [would] have to take significant and costly compliance measures or risk criminal prosecution," and where plaintiffs had alleged "an actual and well-founded fear that the law will be enforced against them." 484 U.S. 383, 392-93 (1988).

Here, there is no doubt SB 237 is aimed directly at Plaintiff.[2] The Senate Rules Committee digest for SB 237 say as much. FAC at ¶ 48. Plaintiff's Second Amended Complaint will plead that California Assemblymember Gregg Hart also made this clear when he publicly championed SB 237, noting its purpose was specifically to stymie Plaintiff's business operations and prevent restart of Segments CA-324 and CA-325 of the Santa Ynez Pipeline System.

Nor is there any doubt that SB 237 will be enforced against Plaintiff. On February 18, 2026, the Commission sent Plaintiff a letter, copying OSFM and State Fire Marshal Berlant, "regarding the Commission's independent authority over any resumption of use of [Segments] CA-324 and CA-325[], such as through the reintroduction of oil into those lines." Plaintiff's RJN and Dintzer Decl., Ex. A. According to the Commission's letter, "[p]ursuant to SB 237," Sable must "apply for and receive a CDP from the Commission" "in order for Sable to reactivate the pipelines." *Id.* On March 16, 2026, State Fire Marshal Berlant notified Sable that "OSFM reserves all rights to enforcement action if operations on Lines 324 and/or 325 re-commence without a valid State Waiver" issued by OSFM. Plaintiff's RJN

---

[2] The State acknowledges it was. *See* ECF No. 20 at 2 ("That legislation [SB 237] was enacted with the Las Flores Pipelines specifically in mind.")

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

and Dintzer Decl., Ex. B. Then on March 19, 2026, the Commission doubled down on its threat, following the Secretary of Energy's issuance of the DPA Order, further detailing that the Commission believes that "any reactivation of the Pipelines is unpermitted development and would be grounds for further enforcement action by the Commission." Plaintiff's RJN and Dintzer Decl., Ex. C.

The added threat of criminal penalties under SB 237 makes this pre-enforcement challenge ripe for adjudication. *See Driehaus*, 573 U.S. at 166 ("[W]e need not decide whether the threat of Commission proceedings standing alone is sufficient; here, those proceedings are backed by the additional threat of criminal prosecution."). But even absent such criminal penalties, Plaintiff is not required to exhaust administrative processes before bringing federal preemption claims. Where an individual is "placed in the untenable situation of having to choose whether to obey possibly conflicting federal and state laws … [i]t would be improper to require them to exhaust their administrative remedies." *Sail'er Inn, Inc. v. Kirby*, 5 Cal. 3d 1, 7 (1971); *see also Purdy*, 71 Cal. 2d at 577 ("We need not await an instance of actual conflict to strike down a state law which purports to regulate a subject matter which the Congress simultaneously aims to control. The opportunity for potential conflict is too great to permit the operation of the state law.")

Nor is Plaintiff required to exhaust administrative remedies to vindicate its constitutional rights. *See Felder v. Casey*, 487 U.S. 131, 147-49 (1988) (explaining that state procedural authority "does not extend so far as to permit States to place conditions on the vindication of a federal right") (partially superseded by statute); *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983) ("It is beyond dispute that federal courts have jurisdiction over suits to enjoin state officials from interfering with federal rights. A plaintiff who seeks injunctive relief from state regulation, on the ground that such regulation is pre-empted by a federal statute which, by virtue

13

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

of the Supremacy Clause of the Constitution, must prevail, thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve.") (citations omitted).

The question, therefore, is not whether Plaintiff has exhausted a state administrative process; it is whether federal law preempts the State's attempt to regulate an interstate pipeline. Plaintiff has standing to seek adjudication of that question, this Court has subject matter jurisdiction to consider it, and it is ripe to be answered.

### C.    Any Alleged Party Defects will be Cured by Amendment.

Plaintiff has alleged a live controversy sufficient to proceed against the State, and any party-based objection will be cured by amendment. In its Second Amended Complaint, Plaintiff will add the Commission, OSFM, and its agency head, while retaining the State. *See* ECF No. 22-1, Exs. H and I. But the State is not an improper party defendant merely because additional defendants will be added. And to the extent these additional state actors are indispensable parties, the proper remedy is amendment, not dismissal.

Under Rule 15(a)(2), "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The United States Supreme Court has made clear that this "mandate is to be heeded," and that, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Court further held that "outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id*.

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

The Ninth Circuit applies Rule 15(a)(2) with "extreme liberality." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors [including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed … futility of amendment, etc."], there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* at 1052 (citations omitted).  Rule 21, which governs misjoinder and nonjoinder of parties, separately confirms the Court may "at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.

That standard is readily satisfied here. Plaintiff's proposed amendment is curative: it will respond directly to the objections raised in the State's Motion by adding the state actors the State contends are necessary. *See* ECF No. 22-1, Exs. H and I. This is precisely the type of amendment Rule 15 is designed to allow. Plaintiff is entitled to a disposition on the merits of its claims, especially when the State will not be prejudiced by the amendment and this case remains in its infancy. As such, the proper remedy for any alleged party defects is amendment, not dismissal.

### D.   Plaintiff's Federal Preemption Claim is Not Barred by Preclusion.

The State's preclusion theory overreads both the Consent Decree and federal preclusion law. First, Plaintiff and Sable are not parties to the Consent Decree. Even assuming the Consent Decree is a final judgment and that Plaintiff is in privity with Plains (which it is not), claim preclusion still requires an identity of claims. *See Western Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). That element is missing here.

The present claim does not seek to relitigate the 2020 Consent Decree. The Consent Decree resolved claims by <u>both</u> federal and state regulators for specific alleged pipeline safety violations related to the 2015 oil spill. The Consent Decree

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

did not weigh into 1) whether the Santa Ynez Pipeline System is an interstate pipeline (which was not at issue); 2) the applicability of SB 237 (which had not been enacted); or 3) federal preemption (which was not a relevant defense). Instead, the Consent Decree set up a framework where both federal and state regulators played a role in pipeline regulation pursuant to their shared jurisdiction under then-existing facts.[3]

Those facts have changed. The present claim challenges the legal effect of events that even the State itself acknowledges occurred years after the Consent Decree, including PHMSA's December 17, 2025 interstate designation, PHMSA's December 22, 2025 Restart Approval, PHMSA's December 23, 2025 issuance of the Emergency Special Permit, and SB 237's January 1, 2026 effective date. The State's Motion further admits that Plaintiff added its federal preemption claim only "in light of PHMSA's recent assertion of jurisdiction," and concedes that "no party in the Consent Decree case asserted preemption based on an alleged interstate status of the pipelines, and that the federal government had not yet asserted that position itself." ECF No. 20 at 26-27. Those admissions are incompatible with the State's assertion that the present claim, under new factual circumstances, is preempted.

A prior "judgment precludes recovery on claims arising prior to its entry, [but] it cannot be given the effect of extinguishing claims which did not even then exist, and which could not possibly have been sued upon in the previous case." *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 327-28 (1955). Here, the State attempts to treat the Consent Decree as a perpetual bar to any later theory of relief related to the same pipeline. *Lawlor* says no: post-judgment claims based on new facts and new legal consequences are not extinguished merely because they concern the same

---

[3] The Consent Decree further recognized that Plains, the actual party to the Consent Decree, "does not admit the allegations in the Complaint filed in this action, or any liability to [OSFM]." State's RJN, Ex. B, p. 5, ¶ P.

16

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

underlying asset or the same general subject matter. *See Lawlor,* 349 U.S. at 327-28; *see also Lucky Brand Dungarees, Inc. v. Marcel Fashions Grp., Inc.*, 590 U.S. 405, 412-13, 415, (2020) (holding that claim preclusion applies only where two matters share a "common nucleus of operative facts," and where the later case involves "different legal theories" and "different conduct—occurring at different times," claim preclusion "did not and could not" apply).

Here, the Consent Decree provides a negotiated restart framework under then-existing facts concerning OSFM's jurisdiction over the formerly intrastate pipeline.[4] The present case, by contrast, arises from PHMSA's later designation of the Santa Ynez Pipeline System as an interstate pipeline, later jurisdictional assertion and approvals, and a later-enacted state statute. Those are not the same operative facts. Thus, claim preclusion cannot apply here.

/ / /

/ / /

/ / /

/ / /

---

[4] The Central District denied the State's *ex parte* request to enforce the Consent Decree against Plaintiff and Sable. *See* Plaintiff's RJN and Dintzer Decl., Ex. F [*United States of America et al. v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2:20-cv-02415-SVW-SSC, at ECF No. 47]. Likewise, the United States of America, a party to the Consent Decree, expressed its position to the Central District that "Sable has complied with the injunctive relief requirements" that apply to it under the Consent Decree (Dintzer Decl., Ex. H at ¶ 17 [Declaration of Rod M. Seeley]) and has moved to terminate the Consent Decree altogether (*id.*, Ex. G [*United States of America et al. v. Plains All American Pipeline, L.P. and Plains Pipeline, L.P.*, Case No. 2:20-cv-02415-SVW-SSC, at ECF No. 49]).

17

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the State's Motion to Dismiss be denied.

Respectfully submitted,

DATED:  April 13, 2026            **ALSTON & BIRD LLP**


By: /s/ *Jeffrey D. Dintzer*
        JEFFREY D. DINTZER

        Attorney for Plaintiff
        PACIFIC PIPELINE
        COMPANY

18

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS

## CERTIFICATE OF SERVICE

I hereby certify that on April 13, 2026, I electronically filed the foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Electronic Mail notice list.

I certify that under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this, 13th day of April, 2026.

By: /s/ *Jeffrey D. Dintzer*

JEFFREY D. DINTZER

Attorney for Plaintiff
PACIFIC PIPELINE
COMPANY

19

PLAINTIFFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS