ROB BONTA
Attorney General of California
BRANDON S. WALKER
Supervising Deputy Attorney General
JACK C. NICK, State Bar No. 160196
ISABELLA A. PANICUCCI, State Bar No. 318984
Deputy Attorneys General
  1300 I Street, Suite 125
  Sacramento, CA 95814
  Telephone:  (916) 210-7662
  Fax:  (916) 327-2319
  E-mail:  Isabella.Panicucci@doj.ca.gov
*Attorneys for Defendant*
*State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Pacific Pipeline Company, A Delaware Corporation,**<br><br>                              Plaintiff,<br><br>        v.<br><br>**State of California and DOES 1 through 25,**<br><br>                              Defendant. | 1:26-CV-01486-KES-CDB<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT**<br><br>Date:        May 18, 2026<br>Time:       10:30 a.m.<br>Judge:      The Honorable Christopher D. Baker<br>Trial Date:   None set<br>Action Filed:  September 29, 2025 |

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................................... 1

Relevant Facts ............................................................................................................... 3

Procedural History ........................................................................................................ 5

Legal Standard .............................................................................................................. 6

Argument ....................................................................................................................... 6

    I.    The State Will Be Prejudiced If Pacific Pipeline Is Permitted to File its Second Amended Complaint .................................................................................. 6

    II.    Amendment Is Futile .......................................................................................... 11

        A.    All Causes of Action – Sovereign Immunity Bars Each Cause of Action in the SAC, except for the First and Second Causes of Action As Pleaded Against the State Prior to Removal, and Amendment is Futile ................................................................................. 11

        B.    All Causes of Action – The State Is Not a Proper Party ........................... 11

        C.    First Cause of Action – Declaratory Relief (Applicability of SB 237) ...................................................................................................... 12

        D.    Second Cause of Action – Preemption (Federal Pipeline Safety Act) ...... 13

        E.    Third Cause of Action – Preemption (DPA Order) ................................... 14

        F.    Fourth and Fifth Causes of Action – Due Process and Equal Protection Violations ............................................................................... 15

        G.    Sixth Cause of Action – Bill of Attainder ................................................ 16

        H.    Seventh through Ninth Causes of Action – Impairment of Vested Rights, Inverse Condemnation, Damages for Taking ............................. 17

        I.    Tenth Cause of Action – Injunctive Relief .............................................. 18

Conclusion .................................................................................................................... 19

i

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*,
    491 F. Supp. 3d 727 (E.D. Cal. 2020) .................................................................... 18

*Arizona Students' Ass'n v. Arizona Bd. of Regents*,
    824 F.3d 858 (9th Cir. 2016) ................................................................................. 9

*Ashcroft v. Mattis*,
    431 U.S. 171 (1977) .............................................................................................. 12

*Bellanger v. Health Plan of Nevada, Inc.*,
    814 F. Supp. 914 (D. Nev. 1992) .......................................................................... 6

*Biotics Rsch. Corp. v. Heckler*,
    710 F.2d 1375 (9th Cir. 1983) ............................................................................... 13

*California Department of Parks and Recreation v. Sable Offshore Corp., et al.*,
    Case No. 2:26-cv-02946-SVW-SSC (C.D. Cal.) .................................................. 5

*Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara*,
    102 Cal. App. 5th 1303 (2024) ......................................................................... 13, 17

*Center for Biological Diversity, et al. vs. California Dept. of Forestry and Fire
    Protection, et al.*, Santa Barbara Superior Court, Case No. 25CV02244 ............... 5

*Curtis v. Inslee*,
    709 F. Supp. 3d 1257 (W.D. Wash. 2023) ............................................................ 3

*Embury v. King*,
    361 F.3d 562 (9th Cir. 2004) ................................................................................. 8

*Eminence Capital, LLC v. Aspeon, Inc.*,
    316 F.3d 1048 (9th Cir. 2003) ............................................................................... 6

*Foman v. Davis*,
    371 U.S. 178 (1962) .............................................................................................. 6

*Franceschi v. Yee*,
    887 F.3d 927 (9th Cir. 2018) ................................................................................. 16

*Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*,
    980 F. Supp. 2d 1160 (E.D. Cal. 2013) ................................................................. 6

Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint (1:26-CV-01486-KES-CDB)

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Frew ex rel. Frew v. Hawkins*,
    540 U.S. 431 (2004) .................................................................................................. 11

*Gonzales v. State of California*,
    29 Cal. App. 3d 585 (Ct. App. 1972) ....................................................................... 11

*Hess v. Port Auth. Trans-Hudson Corp.*,
    513 U.S. 30 (1994) ...................................................................................................... 8

*Idaho v. Coeur d'Alene Tribe of Idaho*,
    521 U.S. 261 (1997) ................................................................................................... 11

*Jenkins v. Washington*,
    46 F. Supp. 3d 1110 (W.D. Wash. 2014) .............................................................. 9, 17

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*,
    535 U.S. 613 (2002) ..................................................................................................... 8

*Lathus v. City of Huntington Beach*,
    56 F.4th 1238 (9th Cir. 2023) ................................................................................ 6, 11

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ................................................................................................... 13

*Moore v. Kayport Package Exp., Inc.*,
    885 F.2d 531 (9th Cir. 1989) .................................................................................. 6, 11

*Morongo Band of Mission Indians v. Rose*,
    893 F.2d 1074 (9th Cir. 1990) .................................................................................... 7

*Pacific Legal Foundation v. California Coastal Com.*,
    33 Cal. 3d 158 (1982) ................................................................................................ 12

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ....................................................................................................... 9

*People ex rel. Lockyer v. Superior Ct.*,
    122 Cal. App. 4th 1060 (2004) .................................................................................... 7

*Rockridge Tr. v. Wells Fargo, N.A.*,
    985 F. Supp. 2d 1110 (N.D. Cal. 2013) .................................................................... 18

*Sable Offshore Corp. v. California Coastal Commission*,
    Santa Barbara Superior Court Case No. 25CV00974 ........................................... 12, 18

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Schaired v. Monterey Fin. Servs., Inc.*,
No. 22-CV-0736-BAS-MDD, 2023 WL 376007 (S.D. Cal. Jan. 24, 2023) ........................... 3

*SeaRiver Maritime Financial Holdings, Inc. v. Mineta*,
309 F.3d 662 (9th Cir. 2002) ................................................................................ 15, 16

*State of California v. PHMSA, et al.*,
Case No. 26-508 (9th Cir.) ......................................................................... 4, 10, 14

*State of California v. Wright, et al.*,
Case No. 2:26-cv-03396-SVW-SSCx (C.D. Cal.) ...................................................... 4, 10, 14

*Texas v. Caremark, Inc.*,
584 F.3d 655 (5th Cir. 2009) .................................................................................. 8, 17

*Thomas v. Anchorage Equal Rts. Comm'n*,
220 F.3d 1134 (9th Cir. 2000) ............................................................................... 12

*United States of America, et al. v. Plains All American Pipeline L.P., et al.*,
Case No. 2:20-cv-02415-SVW-SSC (C.D. Cal.) .................................................... 5, 10

*Walden v. Nevada*,
945 F.3d 1088 (9th Cir. 2019) ............................................................................... 8

*Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council, Inc.*,
276 F. Supp. 2d 1046 (E.D. Cal. 2003) .................................................................. 12

*Wizards of the Coast LLC v. Cryptozoic Ent. LLC*,
309 F.R.D. 645 (W.D. Wash. 2015) ....................................................................... 6

*Ex Parte Young*,
209 U.S. 123 (1908) ............................................................................................ 9, 11

**Statutes**

50 U.S.C
§§ 4501 et seq. ................................................................................................... 4

California Government Code
§ 11043(c) ........................................................................................................ 7
§ 51010 ............................................................................................................ 3
§§ 51010, et seq. .............................................................................................. 3
§ 51013.5 .......................................................................................................... 3
§ 51014 ............................................................................................................ 3
§ 51014.1 ......................................................................................................... 3, 15

iv

**TABLE OF AUTHORITIES**
(continued)

Page

California Public Resources Code
§ 30000 *et seq.* ........................................................................................ 3, 13, 17
§ 30001 ........................................................................................................... 3
§ 30001.5 ........................................................................................................ 3
§ 30008 ........................................................................................................... 3
§ 30103 ........................................................................................................... 3
§ 30262 ....................................................................................................... 3, 15
§ 30600(a) ...................................................................................................... 3

**Other Authorities**

Fifth Amendment ...................................................................................... 14, 15, 16

Eleventh Amendment................................................................................ 1, 2, 8, 17

Fourteenth Amendment..................................................................................... 16

Federal Rules of Civil Procedure
Rule 12(b)(6).................................................................................................. 3
Rule 15(a)..................................................................................................... 5, 6
Rule 15(a)(2) ................................................................................................. 5

Senate Bill 237 ................................................................................................. 1

v

**INTRODUCTION**

Plaintiff Pacific Pipeline Company ("Plaintiff") seeks leave to file a Second Amended Complaint that would drastically expand the scope of this litigation by adding new California state agencies and officials as defendants and by adding new claims—including claims for money damages against the State of California ("State"). Leave should be denied because that amendment would be futile; the Eleventh Amendment bars the claims Plaintiff wishes to add, and those claims are unripe and based on a separate nucleus of facts in any event.

This lawsuit began as a limited litigation against the State alone, seeking declaratory relief that a California law passed in 2025, Senate Bill 237 ("SB 237"), did not apply to pipelines that are owned and operated by Plaintiff. Plaintiff later amended its complaint to add a second cause of action seeking a judicial declaration that SB 237 is preempted by federal law, namely the federal Pipeline Safety Act. Now, Plaintiff seeks leave to file a Second Amended Complaint that would add eight causes of action, for a total of ten causes of action. All claims would be asserted against the State, as well as against new defendants the California Coastal Commission ("Coastal Commission"), the California Department of Forestry and Fire Protection ("CAL FIRE") and the Office of the State Fire Marshal ("OSFM") within that department,[1] and Daniel Berlant in his official capacity as State Fire Marshal. Leave to amend should not be permitted because the amendments would prejudice the State and proposed new defendants, and the amendments are futile because the new claims would not survive a motion to dismiss.

First, none of the new parties consented to the exercise of federal jurisdiction over these claims, and Plaintiff cannot simply extend the State's limited waiver of sovereign immunity to state agencies and state officials that were not party to the litigation at all when the State removed the original case to federal court. Similarly, when the State consented to have the First Amended Complaint ("FAC") decided by this Court, that limited waiver of sovereign immunity—as to two claims for declaratory relief only—did not extend to claims for money damages from the State's Treasury or claims that do not arise out of the same transaction or occurrence from which the

---

[1] Because the OSFM is an organizational component of CAL FIRE, and OSFM is the agency charged with overseeing pipeline safety, the remainder of this opposition will refer to CAL FIRE and OSFM collectively as "OSFM."

1

existing claims in the FAC arise. So the new claims in the SAC would be barred by state sovereign immunity, including Eleventh Amendment immunity (referred to in this brief as "sovereign immunity").

Second, many of the new claims in the SAC rely on the theory that all of the proposed defendants have taken action to enforce SB 237 or have threatened to enforce SB 237. Yet the SAC fails to allege specific facts clearly setting forth the specific acts committed by each proposed defendant that support Plaintiff's causes of action. As with the FAC, which is subject to a pending motion to dismiss, the SAC does not allege any facts showing that the State has done anything to enforce or even threaten to enforce SB 237. With respect to Plaintiff's attempt to add new defendants, Plaintiff's claims against them are based on a separate nucleus of facts from what is alleged in the operative complaint. Moreover, while the SAC points to correspondence between the Coastal Commission and OSFM as the basis for its claims that these agencies have "enforced or threatened enforcement of SB 237," in reality, no state agency or official has taken any final action with respect to SB 237. The claims are unripe and Plaintiff lacks standing to bring them. These pleading deficiencies render the SAC futile, as the claims would not survive a motion to dismiss for lack of subject-matter jurisdiction and for failure to state a claim, and it is highly prejudicial to impute the actions of a single entity onto an entire group of defendants.

Plaintiff's dispute with the Coastal Commission, OSFM, and State Fire Marshal Berlant should be raised at the proper time, in a court with jurisdiction, if and when these entities take final action and an actual case or controversy has arisen. In fact, some of Plaintiff's claims are already being litigated in other courts. Adding premature claims to the present lawsuit would create confusion, unduly complicate this proceeding with immunity bars to suit, prolong resolution of the pending motion to dismiss which will determine the propriety of the State's involvement in any litigation related to SB 237, and would be profoundly unfair to all defendants. The Court should deny leave to amend.

2

**RELEVANT FACTS**[2]

Pursuant to its sovereign authority to regulate intrastate oil pipelines and the California coastal zone, the California Legislature enacted, and Governor Newsom signed, SB 237 in September 2025. FAC, ¶ 38; Stats.2025, c. 118 (S.B.237), eff. Jan. 1, 2026. Among other unrelated provisions, SB 237 adds Government Code section 51014.1 to the Elder California Pipeline Safety Act of 1981 ("California Pipeline Safety Act"), Government Code section 51010, et seq. The new section 51014.1 provides that "[a]ny existing oil pipeline that is six inches or larger that has been idle, inactive, or out of service for five years or more, shall not be restarted without passing a spike hydrostatic testing program." FAC, ¶¶ 5, 39. The California Pipeline Safety Act gives exclusive safety regulatory and enforcement authority over intrastate oil pipelines to the OSFM and sets testing requirements, among other requirements. Cal. Gov't Code §§ 51010, 51013.5, 51014.

SB 237 also amended Public Resources Code section 30262, which is part of the California Coastal Act of 1976 ("Coastal Act"). Cal. Pub. Res. Code § 30000 *et seq.*; FAC, ¶¶ 6, 40. The Coastal Act delineates the coastal zone and sets policies and requirements for development to protect the distinct and valuable natural resources within the coastal zone. Cal. Pub. Res. Code §§ 30001, 30001.5, 30008, 30103. Under the Coastal Act, any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit. Cal. Pub. Res. Code § 30600(a). Coastal Act section 30262, as amended by SB 237, requires a person to obtain a new coastal development permit for the "[r]epair, reactivation, and maintenance of an oil and gas facility, including an oil pipeline, that has been idled, inactive, or out of service for five years or more." FAC, ¶¶ 6, 40.

---

[2] For purposes of a motion to amend, courts ordinarily treat the allegations in the complaint as true, but need not "'accept as true allegations that contradict matters properly subject to judicial notice,' or in a complaint's attachment, or incorporated by reference into the complaint." *Curtis v. Inslee*, 709 F. Supp. 3d 1257, 1263 (W.D. Wash. 2023) (citing *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014); *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998)). The test of futility is identical to the one applied when considering challenges under Rule 12(b)(6); under that standard, courts accept factual allegations as true, but do not accept "legal conclusions pleaded in the guise of factual allegations," nor "formulaic recitations of the elements of a cause of action." *Schaired v. Monterey Fin. Servs., Inc.*, No. 22-CV-0736-BAS-MDD, 2023 WL 376007, at *4 (S.D. Cal. Jan. 24, 2023).

Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint (1:26-CV-01486-KES-CDB)

Since 2016, Lines CA-324 and CA-325, the pipelines at issue in this litigation which are owned by Plaintiff, have been considered "intrastate" pipelines under the regulatory oversight of the OSFM. FAC, ¶ 34. However, on December 17, 2025, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") reversed its prior position and designated CA-324 and CA-325 and the larger system they are part of as one single *inter*state pipeline because the offshore pipelines extend beyond state waters, which end three miles off the coast, to federal waters. FAC, ¶¶ 34, 42, Ex. B [Dec. 17, 2025, Letter from PHMSA to Sable]. PHMSA shortly thereafter approved Plaintiff's plan to restart pipeline operations and issued an emergency special permit. FAC, Ex. C [Dec. 22, 2025, Letter from PHMSA to Sable] and Ex. D [PHMSA Emergency Special Permit].

On January 23, 2026, the State of California, by and through Attorney General Rob Bonta and the OSFM, filed a Petition for Review in the United States Court of Appeals for the Ninth Circuit challenging the orders issued by PHMSA as unlawful. *State of California v. PHMSA, et al.*, Case No. 26-508 (9th Cir.). That appeal remains pending. The Ninth Circuit is considering scheduling oral argument for July or August, but argument has not been scheduled.

On March 13, 2026, the Secretary of Energy, pursuant to the powers delegated to him from the President of the United States, purported to direct Pacific Pipeline Company and Sable Offshore Corp. ("Sable"), the parent company of Pacific Pipeline Company, to "prioritize and allocate pipeline transportation services . . . through" the Santa Ynez Pipeline System, including Lines CA-324 and CA-325, pursuant to the Defense Production Act, 50 U.S.C §§ 4501 et seq. (the "DPA Order"). Declaration of Jeffrey Dintzer in support of Motion for Leave to File SAC ("Dintzer Decl."), Ex. C. Plaintiff admits it has resumed transporting oil through the pipelines. ECF No. 22 at 6:16-18.

On March 31, 2026, the State of California brought a suit for declaratory and injunctive relief against Chris Wright in his official capacity as Secretary of the U.S. Department of Energy and the U.S. Department of Energy related to the DPA Order. *State of California v. Wright, et al.*, Case No. 2:26-cv-03396-SVW-SSCx (C.D. Cal.). The complaint seeks, among other things, a judicial declaration that the DPA Order is unconstitutional and/or unlawful and to enjoin the

4

defendants from invoking the DPA Order to authorize or compel operation of the pipelines. Three other pending lawsuits could potentially halt the operation of the pipelines: *Center for Biological Diversity, et al. vs. California Dept. of Forestry and Fire Protection, et al.*, Santa Barbara Superior Court, Case No. 25CV02244, consolidated with 25CV02247, a California Environmental Quality Act case regarding waivers issued by OSFM; *United States of America, et al. v. Plains All American Pipeline L.P., et al.*, Case No. 2:20-cv-02415-SVW-SSC (C.D. Cal.), which involves a Consent Decree[3] regarding the pipelines; and *California Department of Parks and Recreation v. Sable Offshore Corp., et al.*, Case No. 2:26-cv-02946-SVW-SSC (C.D. Cal.), a lawsuit stemming from Sable's improper use of the portion of the pipelines that traverse state-owned land without an easement.

## PROCEDURAL HISTORY

Plaintiff initiated this lawsuit against the State of California on September 29, 2025, before SB 237 even went into effect. Plaintiff alleged a single cause of action concerning the interpretation of SB 237: Plaintiff asserted that the relevant provisions of the new statute (i.e., the hydrostatic spike testing requirement and coastal development permit requirement) do not apply to Lines CA-324 and CA-325, as they have not been "idled, inactive, or out of service for five years or more" within the meaning of SB 237. The lawsuit was filed in the Kern County Superior Court against the State as sole defendant.

On January 21, 2026, Plaintiff filed its First Amended Complaint, adding a second cause of action alleging that SB 237 was preempted by PHMSA's December 2025 orders. On February 20, 2026, in light of the addition of this federal question to Plaintiff's action for declaratory relief, the State removed the action to federal court. ECF No. 1. Plaintiff filed its motion for leave to file its Second Amended Complaint on April 10, 2026. ECF No. 22.

---

[3] A Consent Decree was entered by the U.S. District Court for the Central District of California, Case No. 2:20-cv-02415, following the 2015 oil spill caused by Plaintiff's pipelines. The Consent Decree is binding on Plaintiff. It requires permission from the OSFM and compliance with certain requirements in order to restart transportation of oil through the pipelines.

5

**LEGAL STANDARD**

The standard for reviewing a motion for leave to file an amended complaint is set forth in Federal Rule of Civil Procedure 15(a), which states in relevant part that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.* Reasons that justify denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment . . . ." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

In the Ninth Circuit, prejudice to the party opposing amendment carries the greatest weight and is the "'touchstone of the inquiry under rule 15(a).'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (quoting *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001)). "Prejudice results when an amendment would unnecessarily increase costs or would diminish the opposing party's ability to respond to the amended pleading." *Fresno Unified Sch. Dist. v. K.U. ex rel. A.D.U.*, 980 F. Supp. 2d 1160, 1177 (E.D. Cal. 2013); *Wizards of the Coast LLC v. Cryptozoic Ent. LLC*, 309 F.R.D. 645, 652 (W.D. Wash. 2015) ("'Prejudice,' in the context of a motion to amend, means 'undue difficulty in prosecuting a lawsuit as a result of a change of tactics or theories on the part of the other party.'").

Although leave to amend should be given freely, denying leave is not an abuse of discretion if it is clear that granting leave to amend would have been futile. *Lathus v. City of Huntington Beach*, 56 F.4th 1238, 1243 (9th Cir. 2023). Leave to amend need not be given if a complaint, as amended, is subject to dismissal. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989); *Bellanger v. Health Plan of Nevada, Inc.*, 814 F. Supp. 914, 916 (D. Nev. 1992).

**ARGUMENT**

**I.    THE STATE WILL BE PREJUDICED IF PACIFIC PIPELINE IS PERMITTED TO FILE ITS SECOND AMENDED COMPLAINT**

If Plaintiff is granted leave to file its proposed SAC in its current form, the State (and the potential new defendants) would be severely prejudiced. Plaintiff's proposed amendments inject

additional defendants, unfairly attribute the actions of one defendant to all defendants, and do so in such a way that will radically shift the nature of the case, cause confusion, and delay the conclusion of this proceeding. The prejudice the State and potential new defendants will face justifies denial of Plaintiff's motion for leave to file the SAC. *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990) (a radical shift in direction posed by the new claims and their tenuous nature, combined with inordinate delay [though delay on its own is not enough to support denial], justifies denial of leave to amend).

The proposed SAC seeks to add the Coastal Commission, OSFM, and State Fire Marshal Berlant as defendants to the litigation. The State, OSFM, and Coastal Commission are separate legal entities under California law, and the actions of one cannot be imputed to the others. *See* Cal. Gov't Code § 11043(c) ("Every state agency is a separate legal entity."); *see also People ex rel. Lockyer v. Superior Ct.*, 122 Cal. App. 4th 1060, 1078-79 (2004). Yet, Plaintiff's proposed SAC ignores the distinction between defendants and does not clearly allege which agency took what action or actions, or how each defendant is allegedly liable for each cause of action. For instance, Plaintiff makes no factual allegation in the SAC that the OSFM enforced or threatened to enforce SB 237. Plaintiff instead points to a letter the OSFM sent on March 16, 2026 stating that OSFM "reserves all rights to enforcement action if operations on Lines 324 and/or 325 re-commence without a valid State Waiver," but which does not specify enforcement under SB 237 and could equally apply to enforcement pursuant to the Consent Decree or preliminary injunction entered by the Santa Barbara County Superior Court. *See* Dintzer Decl., Ex. D; SAC, ¶ 13, Ex. I. Similarly, Plaintiff's SAC does not allege that the State took any action that can be construed as enforcement or threatened enforcement of SB 237. Accordingly, any claim that the OSFM or State enforced or threatened to enforce SB 237 is unsupported by alleged facts and purely speculative.

Plaintiff ignores such factual distinctions in its proposed SAC, however, electing instead to assert its causes of action against all defendants, even where there are no facts to support a cause of action against specific defendants. The SAC improperly imputes allegations against one defendant onto all defendants, even muddling which defendant is purportedly charged with the

7

enforcement of an unidentified criminal liability provision.[4] In its current form, the SAC would cause confusion and it would be prejudicial to the defendants to have to defend a lawsuit that does not clearly set forth the specific actions by each defendant that support Plaintiff's causes of action.

Plaintiff's proposed SAC also seeks to improperly expand what is presently a limited waiver of sovereign immunity. The State removed this case to federal court from Kern County Superior Court on February 20, 2026. At the time the State removed the case, the operative FAC asserted just two declaratory relief causes of action against the State as the sole defendant. By removing the case, the State waived its sovereign immunity only with respect to the two causes of action that were asserted in the FAC, and what can be considered part of that case or controversy, as it was constituted at the time of removal.[5] The case or controversy is limited to claims that arise out of the same transaction or occurrence as the subject matter of the removed case. *Texas v. Caremark, Inc.*, 584 F.3d 655, 659 (5th Cir. 2009) (a state waives sovereign immunity only to the extent required for the lawsuit's determination, and waiver is limited to claims "arising out of the same transaction or occurrence"). The State did not waive sovereign immunity as to any future claim that Plaintiff might attempt to pursue to enlarge the scope of the case—let alone for new claims that would target the State's Treasury with claims for money damages, as opposed to the original claims for declaratory relief only. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994) (the impetus for the Eleventh Amendment is the prevention of federal court

---

[4] As discussed in the State's reply in support of its motion to dismiss, Plaintiff does not identify any provision in SB 237 that carries criminal penalties, and there is no mention of criminal penalties in SB 237. ECF No. 27 at 5-6. Additionally, the only alleged threat of enforcement is by the Coastal Commission, pursuant to SB 237's amendment to the Coastal Act, but the SAC does not allege that the Coastal Act contains criminal penalties, which it does not. *Id.* at 5, n.2.

[5] Indeed, the State does not raise sovereign immunity as a defense to the First and Second Causes of Action in the FAC. ECF No. 20. Claims that fall outside the case or controversy alleged in the FAC, however, are not encompassed by the State's limited waiver of sovereign immunity. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) and *Walden v. Nevada*, 945 F.3d 1088 (9th Cir. 2019), cited by Plaintiff, both deal with defendants that removed claims and then subsequently requested dismissal on sovereign immunity grounds, and are therefore inapplicable here. *See* ECF No. 22 at 12:12-18. Plaintiff also relies on *Embury v. King*, 361 F.3d 562 (9th Cir. 2004), but that case is also inapposite. *Id.* at 12:18-19. Though *Embury* involved an amended complaint, it is distinguishable in that it did not involve a plaintiff attempting to bring in new claims that arose out of an entirely distinct case or controversy through an amended pleading, as Plaintiff attempts here.

8

Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint (1:26-CV-01486-KES-CDB)

judgments that must be paid out of a State's treasury) (citing cases); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) ("[T]he Eleventh Amendment bars individuals from bringing lawsuits against a state for money damages or other retrospective relief . . . ."); *Jenkins v. Washington*, 46 F. Supp. 3d 1110, 1117 (W.D. Wash. 2014) (two claims are not sufficiently related for waiver purposes simply because they involve the same entities or have some commonalities). Yet, that is precisely what Plaintiff's SAC would do. For example, the Third Cause of Action is based on the Secretary of Energy's March 13, 2026 DPA Order, which occurred after the State removed this case and is a separate transaction or occurrence than the interpretation of SB 237 and preemption of SB 237 by the PHMSA orders alleged as the basis of the FAC. The other new causes of action are based on the alleged enforcement or threats of enforcement of SB 237 by separate state agencies, not the State, and accordingly are likewise based on separate transactions or occurrences than those alleged against the State in the FAC. Accordingly, the State did not waive sovereign immunity for the eight new causes of action asserted against it.

Nor did the State waive the sovereign immunity of separate state agencies or officers sued in their official capacities who were not a party to the case at the time of removal. The SAC seeks to add eight causes of action and four defendants to the case, despite the fact that the proposed new defendants did not waive their sovereign immunity. Plaintiff's SAC unfairly tries to impute the State's limited waiver of sovereign immunity for two declaratory relief claims asserted only against the State onto two separate state agencies and a state official for ten claims seeking damages and injunctive relief. But the State could not have consented, and had no intention of consenting, to a waiver of sovereign immunity that broad when it removed a case raising only two claims for declaratory relief against the State alone. Sovereign immunity prevents federal courts from exercising jurisdiction over claims against the State, its officers sued in their official capacities, or state agencies unless there has been express and unequivocal consent or waiver, express and unequivocal Congressional abrogation of the State's immunity, or where *Ex Parte Young* doctrine applies to federal claims for prospective injunctive relief against state officials. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99-102 (1984). No such waiver was

9

ever effected with respect to the Coastal Commission, OSFM, or State Fire Marshal Berlant, who were not in the case at the time of removal, and the Court should deny leave to amend.

The SAC will also delay the State's forthcoming motion to dismiss, filed on March 30, 2026, and scheduled for hearing on June 15, 2026. ECF No. 20. As discussed below, the new allegations in the SAC do not cure the deficiencies in the pleading as to the State of California. Prolonging the State's involvement in this case is both a waste of judicial resources and prejudicial to the State.

Additionally, the new claims asserted against the Coastal Commission, OSFM, and State Fire Marshal Berlant involve separate nuclei of facts and should be raised in separate cases. In the SAC, Plaintiff points to correspondence that State Fire Marshal Berlant and the Coastal Commission sent to Plaintiff, claiming that those letters constitute a "threat of enforcement." SAC, ¶¶ 13, 62-64. These letters are separate transactions that are not related to Plaintiff's sparse factual allegations against the State in its operative FAC. There is no reason to combine the claims against each defendant in a single suit, and doing so would serve only to confuse issues, muddle the facts, and make it inordinately difficult for the defendants to defend this litigation.

Finally, many of these claims are already pending in other courts, which demonstrates that the added confusion, added time, and added costs to this case that would result from Plaintiff being permitted to file the SAC would be unnecessary to the administration of justice. The legality of the PHMSA Orders and preemption issues are currently being addressed before the Ninth Circuit. *State of California v. PHMSA, et al.*, Case No. 26-508 (9th Cir.). The legality of the DPA Order is being addressed by the United States District Court for the Central District of California. *State of California v. Wright, et al.*, Case No. 2:26-cv-03396-SVW-SSCx (C.D. Cal.). A motion to terminate or modify the Consent Decree and a motion to enforce the Consent Decree are pending before the United States District Court for the Central District of California. *United States of America, et al. v. Plains All American Pipeline L.P., et al.*, Case No. 2:20-cv-02415-SVW-SSC (C.D. Cal.). Since these issues will be resolved in other matters, there is little utility in this Court addressing them in this matter, particularly when injecting these issues into the present case will create confusion, waste time, and increase costs.

10

## II.    AMENDMENT IS FUTILE

Leave to amend should not be granted if amendment would be futile. *Lathus v. City of Huntington Beach*, 56 F.4th at 1243. Amendment is futile if the complaint would not survive a motion to dismiss. *Moore v. Kayport Package Exp., Inc.*, 885 F.2d at 538. The SAC does not cure the FAC's deficiencies as to the State, as set forth in the State's pending motion to dismiss, nor would the new claims survive a motion to dismiss. The State will address the futility of each cause of action in turn.

### A.    All Causes of Action – Sovereign Immunity Bars Each Cause of Action in the SAC, except for the First and Second Causes of Action As Pleaded Against the State Prior to Removal, and Amendment is Futile

For each cause of action, amendment is futile because the Coastal Commission, OSFM, and State Fire Marshal Berlant have not waived sovereign immunity, and the *Ex Parte Young* doctrine does not apply to permit suit against the State Fire Marshal. *Ex Parte Young*, 209 U.S. 123, 166 (1908).[6] The State's limited waiver of sovereign immunity as to the First and Second Causes of Action cannot be imputed to separate state agencies or agency officials. California law recognizes the State as an entity is distinct from the specific state agencies and officers who carry out governmental functions. *Gonzales v. State of California*, 29 Cal. App. 3d 585, 590 (Ct. App. 1972). Accordingly, Plaintiff is barred from suing the Coastal Commission, OSFM, and State Fire Marshal Berlant in federal court and the SAC would not survive a motion to dismiss the new defendants from the case.

### B.    All Causes of Action – The State Is Not a Proper Party

As detailed more fully in its motion to dismiss the FAC (ECF No. 20) and reply in support of that motion (ECF No. 27), incorporated by reference here, the State is not a proper party to this litigation: The State has taken no action, actual or threatened, to enforce SB 237, and therefore claims against the State are unripe (ECF No. 20 at 11-15, 20-21; ECF No. 27 at 5-6); and Plaintiff has not alleged an actual case or controversy as against the State (ECF No. 20 at 10-18; ECF No.

---

[6] The *Ex Parte Young* exception to sovereign immunity only applies where a violation of the Constitution or federal law is alleged, and it only authorizes suits to enjoin individually named state officials to comply with federal law. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281 (1997); *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004).

11

27 at 5-6). And as discussed above, the State did not waive its sovereign immunity to claims beyond the case or controversy alleged in the FAC. *Supra* at 7-9. The State should be dismissed from this case, and none of the amendments in the SAC adequately plead a claim against the State, so amendment would be futile.

### C.    First Cause of Action – Declaratory Relief (Applicability of SB 237)

The first cause of action in the SAC seeks a judicial declaration interpreting SB 237 and finding that the pipelines have not been "idled, inactive, or out of service for five years or more" as those terms are used in SB 237. It is primarily the same as the First Cause of Action asserted in the FAC, but adds the Coastal Commission, OSFM, and State Fire Marshal Berlant as defendants. As to the State, the SAC does not address the deficiencies with those claims that the State identified in its pending motion to dismiss: The State is not a proper party, and the SAC still does not allege any facts showing that the State has taken any action—much less final action—to enforce SB 237, or has even threatened to enforce SB 237. *See* ECF No. 20 at 9-10; ECF No. 27 at 3-4. Like the FAC, the SAC still does not contain any allegations of when, how, or if the State will enforce the statute against Plaintiff or deny necessary permits, and therefore the claims against the State amount to seeking an advisory opinion on a hypothetical application of future law. *Ashcroft v. Mattis*, 431 U.S. 171, 172 (1977); *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000); *Westlands Water Dist. Distribution Dist. v. Nat. Res. Def. Council, Inc.*, 276 F. Supp. 2d 1046, 1050-52 (E.D. Cal. 2003); *Pacific Legal Foundation v. California Coastal Com.*, 33 Cal. 3d 158, 171 (1982).

The SAC similarly fails to allege any facts that the Coastal Commission, OSFM, or State Fire Marshal Berlant have taken any final action to enforce SB 237. Plaintiff points to a March 16, 2026, letter sent by the Fire Marshal that "reserve[d] all rights to enforcement of action if operations on Lines 324 and/or 325 re-commence without a valid State Waiver," but no actual enforcement action has yet been taken. Further, the letter is not specific to SB 237, and equally reserves enforcement under the Consent Decree or other operative court orders. Plaintiff similarly points to letters issued by the Coastal Commission, but again, does not and cannot allege any final agency action has been taken at this time. Additionally, Plaintiff admits that it is currently using

12

the pipelines, in open defiance of State regulators, so Plaintiff cannot plausibly claim it is being *impeded* in any way by alleged threats of State enforcement. ECF No. 22 at 6:16-18. Accordingly, Plaintiff has not suffered an injury in fact, and therefore has no standing, and its claim is not ripe. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (to have standing, a plaintiff must establish that he has suffered an "injury in fact"); *Biotics Rsch. Corp. v. Heckler*, 710 F.2d 1375, 1378 (9th Cir. 1983) (regulatory letter does not constitute a final agency action that is ripe for review); *Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara*, 102 Cal. App. 5th 1303, 1309 (2024) (a controversy is "not ripe for adjudication until the administrative process is completed and the agency makes a final decision . . . .") (citations omitted). Because neither the State nor any of the proposed new defendants have taken any final action at this time, Plaintiff has not yet exhausted its administrative remedies, a necessary prerequisite to bringing its claims. If and when a state agency enforces SB 237 against Plaintiff, it can bring an action for relief to challenge and review that agency's enforcement decision. *See Sable Offshore Corp. v. California Coastal Commission*, Santa Barbara Superior Court Case No. 25CV00974 (Plaintiff and its parent company already brought and lost a petition for writ of administrative mandate challenge to the Coastal Commission's enforcement of the Coastal Act with respect to Plaintiff's pre-reactivation activities related to pipelines CA-324 and CA-325); *see also Sable Offshore Corp. vs. California Geologic Energy Management Division, et al.*, Sacramento Superior Court Case No. 26WM000036 (another petition for writ of mandate recently initiated by Plaintiff's parent company against a State agency).

For these reasons, Plaintiff still has not alleged an actual controversy to support a cause of action for declaratory relief. The claim is therefore futile and the Court should deny leave to amend.

**D.    Second Cause of Action – Preemption (Federal Pipeline Safety Act)**

The Second Cause of Action also seeks declaratory relief in the form of a judicial declaration that SB 237 is preempted by the federal Pipeline Safety Act. It is substantially similar to the Second Cause of Action alleged in the FAC, but seeks to add the OSFM, State Fire Marshal Berlant, and the Coastal Commission as defendants. For the same reasons that the First Cause of

13

Action would fail, the Second Cause of Action would fail, and thus amendment would be futile. No agency has taken final action; in fact, the State, OSFM, and Mr. Berlant have not taken any action in furtherance of SB 237 or even threatened to enforce SB 237,[7] and it is entirely hypothetical at this time whether any future action they might take to enforce SB 237 would conflict with federal law. Again, the SAC fails to establish that there is an actual case or controversy. Further, issues of preemption and the legitimacy and legal effect of PHMSA's orders are already being addressed by the Ninth Circuit in other cases, one of which involves the OSFM and PHMSA. *State of California v. PHMSA, et al.*, Case No. 26-508 (9th Cir.). Moreover, the SAC alleges facts, which if true, may support its preemption claim against OSFM, once Plaintiff has standing and if and when OSFM takes final action, but there are no such allegations to support its preemption claim against the Coastal Commission or SB 237 as a whole.

### E.   Third Cause of Action – Preemption (DPA Order)

In an entirely new cause of action not previously asserted in the original complaint or FAC, Plaintiff seeks declaratory relief that the DPA order preempts SB 237. Neither the State nor any of the proposed new defendants have waived their sovereign immunity on this claim and distinct set of facts and issues. As with the First and Second Causes of Action, Plaintiff does not have standing to raise this claim and the claim is not ripe, as the Coastal Commission has not taken final agency action with respect to SB 237, and neither the State, OSFM, nor Mr. Berlant have taken any action or threatened to take any action to enforce SB 237. Further, the legality of the DPA Order is currently being litigated in another matter. *State of California v. Wright, et al.*, Case No. 2:26-cv-03396-SVW-SSCx (C.D. Cal.). For the same reasons above, this claim is futile and leave to amend should not be granted.

---

[7] The March 16, 2026, letter Plaintiff cites in paragraph 13 of the SAC, and attached as Exhibit D to the Declaration of Jeffrey Dintzer filed in support of Plaintiff's motion for leave to file the SAC, does not even reference SB 237.

14

### F.   Fourth and Fifth Causes of Action – Due Process and Equal Protection Violations

The SAC proposes new constitutional claims based on alleged violations of the Due Process Clause and Equal Protection Clause of the Fifth Amendment of the U.S. Constitution. Again, granting leave to Plaintiff to bring these causes of action would be futile.

The Fourth and Fifth Causes of Action fail for the threshold reason that sovereign immunity precludes the claims against the new defendants and the State, as noted above. The State's limited waiver of sovereign immunity does not extend to Plaintiff's newly alleged constitutional claims, and Plaintiff's attempts to add these causes of action are an improper attempt to expand this litigation beyond the scope of the State's consent to federal jurisdiction.

Additionally, these claims would not survive a motion to dismiss because the SAC fails to state facts sufficient to support a claim for which relief can be granted. The allegations in the SAC and matters that are judicially noticeable show that there was a rational legislative purpose for SB 237 and that there was a rational basis for targeting the legislation toward idled, inactive, and out of service pipelines. *SeaRiver Maritime Financial Holdings, Inc. v. Mineta*, 309 F.3d 662, 678-79 (9th Cir. 2002). For instance, the Senate Rules Committee digest for SB 237, attached as Exhibit A to the SAC and FAC, states that the bill's provisions would require pipelines of a certain size (including but not limited to Plaintiff's pipelines) to meet specific testing requirements, and "address concerns surrounding the safety of restarting use of the repaired pipelines by requiring testing of the pipelines' durability." ECF No. 1 at 67, 69. Additionally, the FAC admits that the pipelines at issue here ruptured the last time they operated—underscoring the Legislature's safety concerns. FAC, ¶ 29.

For the Fourth Cause of Action, Plaintiff also cannot state a claim for relief under the Due Process Clause. Neither Plaintiff's procedural nor substantive due process rights have been violated, and Plaintiff's claims that its constitutional rights have been violated by the defendants' "enforcement or threat of enforcement of SB 237" (SAC, ¶ 116) are belied by the allegations and judicially noticeable materials. Plaintiff fails to state a claim for relief for a procedural due process violation (SAC ¶ 119) because the SAC makes no allegations that Plaintiff has been

15

denied adequate procedural protections, such as notice or an opportunity to be heard, or that it has any property interest that is at stake based on any supposed enforcement or threat of enforcement of SB 237. *Franceschi v. Yee*, 887 F.3d 927, 935 (9th Cir. 2018).

### G.    Sixth Cause of Action – Bill of Attainder

Plaintiff claims that SB 237 punishes the conduct of a single, specific entity by subjecting Plaintiff to the requirements of California Government Code section 51014.1 and California Public Resources Code section 30262. SAC, ¶¶ 135-36. Again, Plaintiff fails to state a claim upon which relief can be granted because sovereign immunity bars this new claim, and the plain language of the statute belies Plaintiff's claims. Plaintiff claims that "SB 237 applies with specificity only to Pacific Pipeline Company as the owner of the Santa Ynez Pipeline System." SAC, ¶ 134. Not so. SB 237, though applicable to Plaintiff, does not focus on any one entity or class. The statute is couched in general terms appliable to any pipeline that fits the criteria laid out in the statute, and on its face does not name Plaintiff or any other pipeline owner. *SeaRiver Maritime Financial Holdings, Inc. v. Mineta*, 309 F.3d at 669.

While a statute need not specifically call out an individual by name in order to constitute a bill of attainder if it effectively singles out an individual by describing past conduct attributable to a particular person (*id.* at 670), SB 237 does no such thing. SB 237 does not use retrospective language that focuses on past conduct targeting any one group or individual. The relevant provisions at issue in this lawsuit apply broadly to *any* pipeline in the State that has been idle, inactive, or out of service for five years or more, and Plaintiff does not allege (and could not plausibly allege) that Lines CA-324 and CA-325 are the only two meeting that description. It regulates conditions that were *present* at the effective date of the legislation, not *past* behavior. If Lines 324 and 325 had been legally restarted before January 1, 2026, then SB 237 would not have applied. The statute also does nothing to single out any one particular operator, and the mere fact that SB 237 may be applicable to a particular operator does not mean the law constitutes a bill of attainder.

Furthermore, if a law targets property as opposed to property owners, it is not a bill of attainder. *Id.* SB 237 targets pipelines, not induvial owners or a class of pipeline owners. For this additional reason, it does not qualify as a bill of attainder.

### H.     Seventh through Ninth Causes of Action – Impairment of Vested Rights, Inverse Condemnation, Damages for Taking

The Seventh through Ninth Causes of Action seek a judicial declaration from this Court that Plaintiff's vested rights are impaired by defendants' enforcement or threat of enforcement of SB 237, seek a declaration that defendants violate the Takings Clause of the Fifth and Fourteenth Amendments by their enforcement or threat of enforcement of SB 237, and—most notably—seek money damages for that alleged taking. Again, amendment to add these causes of action would be futile because these claims would not survive a motion to dismiss.

First, as discussed above, sovereign immunity precludes Plaintiff from bringing these new claims for money damages against the new proposed defendants and the State. The Coastal Commission, OSFM, and State Fire Marshal Berlant have not consented to federal jurisdiction with respect to these, or any claims. The State's limited waiver of sovereign immunity as to the First and Second Causes of Action did not extend to these claims, as those causes arise from transactions and occurrences that are entirely separate from those which the First and Second Causes of Action arise, and that limited waiver certainly did not extend to any claims for money damages—one of the heartland concerns of state sovereign immunity and Eleventh Amendment immunity. *Texas v. Caremark, Inc.*, 584 F.3d at 659; *Jenkins v. Washington*, 46 F. Supp. 3d at 1117.

Additionally, these claims all rely on allegations of defendants' "enforcement or threatened enforcement of SB 237." SAC, ¶¶ 144, 151, 161. As discussed above, the SAC fails to specifically allege what acts each defendant separately committed that constitute enforcement or threatened enforcement of SB 237. In the background section of the SAC, Plaintiff vaguely alludes to correspondence by the Coastal Commission and Fire Marshal Berlant (SAC, ¶¶ 11, 13-14), but the Causes of Action do not set forth how each defendant specifically enforced or threatened to enforce SB 237 and, indeed, letters are not enforcement actions at all. *Casa Blanca*

17

*Beach Estates Owners' Assn. v. County of Santa Barbara*, 102 Cal. App. 5th 1303, 1309 (2024) (preliminary letters from an agency are insufficient for purposes of ripeness, finality, and the exhaustion of administrative remedies). In pleading its causes of action this way, Plaintiff unfairly lumps all the defendants together, imputing the actions of one defendant to all defendants. It is not possible for defendants to adequately defend themselves in this case when it is not clear from the pleadings what actions Plaintiff alleges are the basis for its standing or each defendant's liability under each cause of action. As for the State, there are no allegations that the State has taken any action—actual or threatened—with respect to SB 237, and as discussed in the State's motion to dismiss, it remains an improper party.

To the extent Plaintiff believes any agency's future action will impair its vested rights or subject Plaintiff to an unconstitutional taking, Plaintiff will have the opportunity to litigate those claims at the appropriate time, in the proper venue, after the agency has taken a final action. For example, Plaintiff and its owner, Sable Offshore Corp., sued the Coastal Commission in Santa Barbara Superior Court for, among other things, impairment of vested rights, inverse condemnation, and takings following the Commission's enforcement of the Coastal Act regarding Plaintiff's work on the pipelines prior to reactivation. *See Sable Offshore Corp. v. California Coastal Commission*, Santa Barbara Superior Court Case No. 25CV00974.

## I.    Tenth Cause of Action – Injunctive Relief

It is well-established in the Ninth Circuit that injunctive relief is a remedy and not, in itself, an independent cause of action. *A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F. Supp. 3d 727, 737-38 (E.D. Cal. 2020); *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1167 (N.D. Cal. 2013). Plaintiff's Tenth Cause of Action for injunctive relief is not a stand-alone cause of action and would not survive a motion to dismiss for this reason, in addition to the sovereign immunity reasons noted above. Permitting amendment to add this cause of action would be futile.

Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint (1:26-CV-01486-KES-CDB)

**CONCLUSION**

For these reasons, the State requests that the Court deny Plaintiff's motion for leave to file the SAC.


Dated:  April 24, 2026                                   Respectfully submitted,

ROB BONTA
Attorney General of California
BRANDON S. WALKER
Supervising Deputy Attorney General
JACK C. NICK
Deputy Attorney General



*/s/ Isabella A. Panicucci*
ISABELLA A. PANICUCCI
Deputy Attorney General
*Attorneys for Defendant*
*State of California*

SA2025306665
39804243

19

Opposition to Plaintiff's Motion for Leave to File Second Amended Complaint (1:26-CV-01486-KES-CDB)

# CERTIFICATE OF SERVICE

Case Name: **Pacific Pipeline Company, A Delaware Corporation v. State of California**    CaseNo.    **1:26-CV-01486-KES-CDB**

I hereby certify that on <u>April 24, 2026</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT STATE OF CALIFORNIA'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on <u>April 24, 2026</u>, at Sacramento, California.

Antinia Brown
Declarant

Signature

SA2025306665
39803788