UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC PIPELINE COMPANY,<br><br>            Plaintiff,<br><br>      v.<br><br>STATE OF CALIFORNIA,<br><br>            Defendant. | Case No. 1:25-cv-01486-KES-CDB<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT<br><br>(Docs. 21, 22)<br><br>ORDER DIRECTING CLERK OF THE COURT TO TERMINATE DEFENDANT'S MOTION TO DISMISS AS MOOT<br><br>(Doc. 20) |

Pending before the Court is the motion of Plaintiff Pacific Pipeline Company ("Plaintiff") for leave to file a second amended complaint ("SAC"), filed on April 10, 2026. (Docs. 21, 22). On April 24, 2026, Defendant State of California ("Defendant") filed an opposition to Plaintiff's motion. (Doc. 29). On May 4, 2026, Plaintiff filed a reply. (Doc. 36). Following review of the parties' filings made in connection with the motion, on May 21, 2026, the Court deemed the motion suitable for disposition without hearing and oral argument and vacated the motion hearing set for May 26, 2026. (Doc. 37) (citing Local Rule 230(g)). For the reasons set forth herein, the Court will grant Plaintiff's motion for leave to file a SAC.

## I.    Relevant Background

### A.    Procedural History

Plaintiff initiated this action with the filing of a complaint in state court on September 29, 2025, and the operative first amended complaint ("FAC") against Defendant on January 21, 2026. (Doc. 1); *see id.* at 45-63 (Ex. B, "FAC").  On February 20, 2026, Defendant removed the case to this Court on the grounds that the FAC added a second cause of action seeking a judicial declaration that California Senate Bill 237, as applied to California Pipelines 324 and 325 (the "Pipelines"), is preempted by the federal Pipeline Safety Act ("PSA"), 49 U.S.C. § 60104(c).  *Id.* ¶¶ 2, 5; *see* FAC.

On March 30, 2026, Defendant filed a pending motion to dismiss the FAC.  (Doc. 20). Plaintiff filed an opposition to the motion on April 13, 2026, and Defendant filed a reply on April 23, 2026.  (Docs. 25, 27).  On June 10, 2026, the Court submitted the motion to dismiss for decision without oral argument pursuant to Local Rule 230(g) and vacated the hearing set for June 15, 2026. (Doc. 38).

### B.    Relevant Factual Background[1]

California Senate Bill ("SB") 237 was enacted by the California State Legislature and signed into law in September 2025 with an effective date beginning January 1, 2026.  FAC ¶¶ 38, 54.  Relevant here, SB 237 added Government Code section 51014.1 to the Elder California Pipeline Safety Act of 1981 (the "CPSA"), Cal. Gov. Code § 51010, *et seq.*, and amended section 30262 of the California Public Resources Code, which is part of the California Coastal Act of 1976 (the "Coastal Act").  *Id.* ¶¶ 6, 39-40.

The CPSA gives exclusive safety regulatory and enforcement authority over intrastate oil pipelines to the Office of the State Fire Marshal ("OSFM") and sets testing requirements.  (Doc. 29 at 9) (citing Cal. Gov. Code §§ 51010, 51013.5, 51014).  Section 51014.1 provides that "[a]ny existing oil pipeline that is six inches or larger that has been idle, inactive, or out of service for five years or more, shall not be restarted without passing a spike hydrostatic testing program."

---

[1] The factual background is derived from allegations in the FAC relevant and material to the instant motion and as raised in the parties' briefing.  *See* (Docs. 1, 22, 29, 36).

FAC ¶¶ 5, 39.

The Coastal Act delineates the coastal zone of the State of California and sets policies and requirements for development for the protection of distinct and valuable natural resources within the coastal zone. (Doc. 29 at 9) (citing Cal. Pub. Res. Code §§ 30001, 30001.5, 30008, 30103). SB 237 amended section 30262 of the Coastal Act to provide in relevant part:

> (2) Repair, reactivation, and maintenance of an oil and gas facility, including an oil pipeline, that has been idled, inactive, or out of service for five years or more shall be considered a new or expanded development requiring a new coastal development permit.
>
> (3) Development associated with the repair, reactivation, or maintenance of an oil pipeline that has been idled, inactive, or out of service for five years or more requires a new coastal development permit consistent with this section.

(Doc. 22 at 8) (citing Pub. Res. Code §§ 30262(b)(2) and (3)); FAC ¶ 40.

Since 2016, Segments CA-324 and CA-325 of the Santa Ynez Pipeline System—pipelines owned/operated by Plaintiff and at issue in this case—were considered "intrastate" pipelines under the regulatory oversight of the OSFM. (Doc. 29 at 10) (citing FAC ¶ 34). The Santa Ynez Pipeline System is also subject to the federal Hazardous Liquid Pipeline Safety Act ("PSA") administered by the Pipeline and Hazardous Materials Safety Administration ("PHMSA"). FAC ¶ 42; *see* 49 U.S.C. §§ 60101 *et seq.* On December 17, 2025, PHMSA determined that the Santa Ynez Pipeline System is an interstate pipeline under PHMSA's exclusive jurisdiction and confirmed that it considers the Santa Ynez Pipeline System to be an "active" pipeline under PHMSA regulations. *Id.* ¶¶ 10, 42. PHMSA thereafter approved Plaintiff's plan to restart pipeline operations and issued an emergency special permit. (Doc. 29 at 10) (citing FAC, Exs. C [December 22, 2025, Letter from PHMSA to Sable], D [PHMSA Emergency Special Permit]).

Defendant has taken the position that Segments CA-324 and CA-325 of the SY Pipeline System have been "idled, inactive, or out of service for five years or more" under section 30262 and therefore the "repair, reactivation, maintenance, and development associated" with the SY Pipeline System "would require a new Coastal Development Permit" ("CDP") under SB 237. (Doc. 22 at 8). On January 23, 2026, Defendant filed a Petition for Review in the Ninth Circuit

challenging the PHMSA's orders as unlawful, and the appeal remains pending following oral argument and submission by the assigned panel on July 7, 2026. (Doc. 29 at 10); *see State of Cal. v. PHMSA, et al.*, No. 26-508 (9th Cir. 2026).

On March 13, 2026, the Secretary of the Department of Energy directed Plaintiff and its parent company Sable Offshore Corp. ("Sable") to "prioritize and allocate pipeline transportation services … through" the Santa Ynez Pipeline System, including Segments CA-324 and CA-325 pursuant to the Defense Production Act ("DPA"), 50 U.S.C. §§ 4501 *et seq.* (hereinafter the "DPA Order"). *Id.* (citing Doc. 29-2, 57-59 ("Ex. C")). Plaintiff has resumed transporting oil through the pipelines. (Doc. 22 at 6) ("Segments CA-324 and CA-325 are currently transporting petroleum pursuant to the DPA Order and approvals issued and safety oversight provided by [PHMSA].").

In this action, Plaintiff asserts claims against Defendant seeking a judicial declaration that the Santa Ynez Pipeline System, including Segments CA-324 and CA-325, has not been idled or inactive or otherwise within the ambit of state law discussed above such that Plaintiff would require a CDP under SB 237, and separately, that SB 237 as to the Santa Ynez Pipeline System is preempted by federal law.

## II.    Governing Authority

Federal Rule of Civil Procedure 15 permits a plaintiff to amend the complaint once as a matter of course no later than 21 days after service of the complaint or 21 days after service of a responsive pleading or motion to dismiss, whichever is earlier. *See* Fed. R. Civ. P. 15(a)(1). After such time has passed or plaintiff has once amended their complaint, amendment may only be by leave of the court or by written consent of the adverse parties. Fed. R. Civ. P. 15(a)(2). "Rule 15(a) is very liberal" and a court should freely give leave to amend when "justice so requires." *AmerisourceBergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006); *see Chodos v. W. Publ. Co.*, 292 F.3d 992, 1003 (9th Cir. 2002) ("it is generally our policy to permit amendment with 'extreme liberality'") (quoting *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir.1990)).

Granting or denying leave to amend a complaint under Rule 15 is within the discretion of the court. *Swanson v. United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996). "In exercising

this discretion, a court must be guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir, 1981); *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir. 2011) ("refusing Chudacoff leave to amend a technical pleading error, albeit one he should have noticed earlier, would run contrary to Rule 15(a)'s intent.").

A court ordinarily considers five factors to assess whether to grant leave to amend: "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint." *Nunes v. Ashcroft*, 375 F.3d 805, 808 (9th Cir. 2004). The factors are not weighed equally. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995); *see Atkins v. Astrue*, No. C 10–0180 PJH, 2011 WL 1335607, at *3 (N.D. Cal. Apr. 7, 2011) (the five factors "need not all be considered in each case"). Undue delay, "by itself … is insufficient to justify denying a motion to amend." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). On the other hand, futility of amendment and prejudice to the opposing party can, by themselves, justify the denial of a motion for leave to amend. *Bonin*, 59 F.3d at 845; *see Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (the consideration of prejudice to the opposing party carries the greatest weight).

In conducting this five-factor analysis, the court generally grants all inferences in favor of permitting amendment. *Griggs v. Pace Am. Group, Inc.*, 170 F.3d 877, 880 (9th Cir. 1999). Moreover, the court must be mindful that, for each of these factors, the party opposing amendment has the burden of showing that amendment is not warranted. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987).

### III.    Parties' Contentions

In its proposed SAC, filed just ten days after Defendant moved to dismiss the FAC, Plaintiff seeks to add eight new claims and four new defendants—the California Coastal Commission ("Commission"), the California Department of Forestry and Fire Protection ("CAL FIRE"), the OSFM, and Daniel Berlant in his official capacity as State Fire Marshal. (Doc. 22-9 ¶¶ 23-26); *see id.* at 30-40. Plaintiff seeks leave to file the proposed SAC attached to its motion, asserting that there "is no futility, prejudice, undue delay, bad faith, or dilatory motive" such that leave

5

should be granted.  (Doc. 22 at 10-11).  The proposed SAC advances claims for declaratory and injunctive relief, violation of prohibition of bills of attainder, constitutional violations, and inverse condemnation.  *Id.* at 11-12.  Plaintiff contends the proposed amendments arise from the same controversy concerning the applicability of SB 237 as it augments the FAC's claims concerning SB 237's legality and application, and the proposed additional defendants "have now imminently threatened the enforcement of SB 237[.]"  *Id.* at 12.

Defendant contends that Plaintiff's proposed SAC "would drastically expand the scope of this litigation by adding new California state agencies and officials as defendants and by adding [eight] new claims[.]"  (Doc. 29 at 7).  Defendant asserts that leave to amend should be denied because amendment would be futile and the Eleventh Amendment bars Plaintiff's proposed claims against newly-added defendants.  Specifically, while Defendant acknowledges that, by removing the action, it waived sovereign immunity as to the two claims asserted in the FAC on behalf of the State of California, it did not waive sovereign immunity as to new claims against new defendants. Defendant separately argues that the new claims proposed in the SAC are unripe and are based on a nucleus of facts separate and distinct from the facts pleaded in the FAC.  *Id.*  Defendant argues that the SAC fails to allege facts clearly setting forth the specific acts committed by each proposed defendant that support Plaintiff's claims.  *Id.* at 8.

In reply, Plaintiff asserts Defendant fails to demonstrate why leave to file the SAC should not be granted as Defendant's arguments for prejudice and futility "prematurely target the merits of Plaintiff's SAC and fail to overcome the strong presumption in favor of amendment under Rule 15(a)."  (Doc. 36 at 6).  Plaintiff contends Defendant State of California shares "an unmistakable unity of interest with its agencies" with respect to SB 237, and that the State, through its removal of the case, sought the Court's jurisdiction in waiving sovereign immunity for itself and its agencies.  *Id.*  Plaintiff maintains that Rule 15 is not the "correct vehicle to weigh the merits" of Defendant's defenses to the claims raised in the SAC, and amendment is not futile.  *Id*.

**IV.    <u>Discussion</u>**

Defendant contends that leave to file the proposed SAC should be denied on grounds of futility of amendment, prejudice, and undue delay.  The Court first addresses the factors of bad

faith and prior amendment before considering the remaining factors in tandem in determining whether leave to amend should be granted.

### A.  Bad Faith and Prior Amendments

A motion to amend is made in bad faith where there is "evidence in the record which would indicate a wrongful motive" on the part of the litigant requesting leave to amend. *DCD Programs*, 833 F.2d at 187; *Wizards of the Coast LLC v. Cryptozoic Entm't LLC*, 309 F.R.D. 645, 651 (W.D. Wash. 2015) ("In the context of a motion for leave to amend, 'bad faith' means acting with intent to deceive, harass, mislead, delay, or disrupt.") (citing *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006)).  The Court's discretion to deny leave to amend is "particularly broad" where a party has previously amended the pleading. *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990).

Here, there is no information before the Court suggesting bad faith on the part of Plaintiff in seeking leave to amend.  That Defendant does not argue Plaintiff acts in bad faith supports the Court's assessment of an absence of bad faith on the part of Plaintiff. *See* (Doc. 29).  Separately, Plaintiff's proposed amendments would constitute the second amendment to the pleadings. Because this action remains at the pleadings stage, the Court does not find indicia that Plaintiff acted in bad faith Plaintiff, and Defendant does not argue in favor of a finding of bad faith, the Court finds these factors weigh in favor of granting leave to amend.

### B.  Undue Delay, Futility of Amendment, and Prejudice to the Opposing Party

#### 1.  Governing Authority

By itself, a showing of undue delay is insufficient to deny leave to amend pleadings. *Howey v. United States*, 481 F.2d 1187, 1191 (9th Cir. 1973); *DCD Programs*, 833 F.2d at 186.  However, in combination with other factors, delay may be sufficient to deny amendment. *Webb*, 655 F.2d at 979-80; *see Lockheed Martin Corp. v. Network Solutions Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (substantial delay, while not dispositive, is relevant to whether to permit amendment).  In assessing whether any delay is undue, a court shall consider if "the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (citations omitted).  The mere fact that a party fails to

offer a reason for not moving to amend earlier does not in itself constitute an adequate basis for denying leave to amend. *Howey*, 481 F.2d at 1190-91. Whether there has been "undue delay" should be considered in the context of (1) the length of the delay measured from the time the moving party obtained relevant facts; (2) whether discovery has closed; and (3) proximity to the trial date. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th Cir. 1991).

A court may deny leave to amend if the proposed amendment is futile or would be subject to dismissal. *Carrico v. City & Cnty. of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). An amendment is futile if the complaint clearly could not be saved by amendment. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "Ordinarily, 'courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed.'" *Zurich Am. Ins. Co. of Illinois v. VForce Inc.*, No. 2:18-cv-02066-TLN-CKD, 2020 WL 2732046, at *3 (E.D. Cal. May 26, 2020) (citing *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003)).

The most critical factor in determining whether to grant leave to amend is prejudice to the opposing party. *Eminence Capital*, 316 F.3d at 1052. The burden of showing prejudice is on the party opposing an amendment to the complaint. *DCD Programs*, 833 F.2d at 187. There is a presumption in favor of granting leave to amend where prejudice is not shown under Rule 15(a). *Eminence Capital*, 316 F.3d at 1052.

2.     Analysis

Defendant argues that amendment would be futile because sovereign immunity bars each new cause of action asserted in the proposed SAC, excluding only the first and second claims for which Defendant extended a "limited waiver of sovereign immunity[.]" (Doc. 29 at 17). Defendant asserts that the State is not a proper party to this litigation because the "State has taken no action, actual or threatened, to enforce SB 237 and therefore the claims against the State are unripe" and the State did not waive its sovereign immunity to claims beyond the case or controversy alleged in the FAC. *Id.* at 17-18.

a.     *Defendant's Removal Waives Sovereign Immunity*

Defendant's argument that that leave to amend is futile because its waiver of sovereign

8

immunity is limited to only Plaintiff's first two causes of action against the State for declaratory relief is unavailing. In *Embury v. King*, the Ninth Circuit rejected the state's argument that because the complaint was amended after removal, the state could not have anticipated all of the claims it was agreeing to subject to federal court jurisdiction when it removed the case to federal court. *Embury v. King*, 361 F.3d 562, 563-65 (9th Cir. 2004). "[T]he State, by removing the case, 'voluntarily agreed to remove the case to federal court. In doing so, it voluntarily invoked the [Court's] jurisdiction." *Id.* at 565 (citing *Lapides v. Bd. of Regents of Univ. Sys. Of Ga.*, 535 U.S. 613, 620 (2002)); *see id.* ("[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a *matter*.") (emphasis in original). The United States Supreme Court in *Lapides* "suggests that the federal court's power extends, once immunity is waived, to the *entire case*[.]" *Id.* (emphasis added). As the Tenth Circuit noted in *Estes v. Wyoming Dep't of Transportation*, 302 F.3d 1200, 1204-06 (10th Cir. 2002) and the Ninth Circuit reaffirmed in *Embury*, "under *Lapides*, a state's motive for removing the case does not matter." *Id.* at 565-66. "[R]emoval itself affirmatively invokes federal judicial authority and therefore waives Eleventh Amendment immunity from subsequent exercise of that judicial authority, in this case over claims added in the amended complaint." *Id.* at 566. *Embury* sets forth the "straightforward, easy-to-administer rule in accord with *Lapides*: Removal waives Eleventh Amendment immunity." *Id.* at 566; *see Walden v. Nevada*, 945 F.3d 1088, 1095-96 (9th Cir. 2019) (finding that removal of a case to federal court waives all federal claims "even when those federal claims are ones Congress did not apply to the States through unequivocal and valid abrogation of their Eleventh Amendment immunity"); *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("A state generally waives its immunity when it voluntarily invokes federal jurisdiction or ... makes a clear declaration that it intends to submit itself to federal jurisdiction.").

Here, Defendant waived its sovereign immunity when it removed the case to this Court in February 2026. *See* (Doc. 1). Therefore, Defendant's argument relying on *Texas v. Caremark, Inc.*, 584 F.3d 655, 659 (5th Cir. 2009) for the proposition that amendment is futile because its removal was conditioned on a limited waiver of sovereign immunity is precluded under *Embury*,

9

and Defendant may not reassert the bar of sovereign immunity to show amendment is futile over Plaintiff's proposed additional claims of the SAC.

Defendant's reliance on *Jenkins v. Washington*, 46 F. Supp. 1110 (W.D. Wash. 2014) is not persuasive.  In *Jenkins*, the district court found the State of Washington had not consented to waiver of sovereign immunity in a subsequent action after it consented to waiver in a former action, noting that in the subsequent action, the plaintiff "filed in federal court" and plaintiff had fair notice of the State's intent to assert its immunity based on the State's responsive pleading asserting it was not a "person" for 42 U.S.C. § 1983 purposes.  *Jenkins*, 46 F. Supp. at 1117-18.  Here, in contrast, the State of California removed the action to this Court, asserted an express waiver of sovereign immunity in the notice of removal (*see* Doc. 1 at 2 ¶ 5), and has actively litigated the merits of Plaintiff's operative pleading in the pending motion to dismiss the FAC (*see* Doc. 20).

Additionally, Defendant's reliance on *Gonzales v. State of California*, 29 Cal. App. 3d 585, 590 (1972) likewise is unpersuasive.  There, the California Court of Appeal found that a bus driver employed by a school district is not an employee of the state because "the authority of a school district to operate buses, and the incidental authority to employ bus drivers, is derived from the State through its Legislature … [and] does not support the conclusion a bus drive employed by the District is an employee of the State." *Gonzales*, 29 Cal. App. 3d at 590-91.  "State agencies, even though exercising a portion of the state's powers of government, are not the state or a part of the state … and may not act on behalf of the state unless authorized to do so by statute[.]" *Id.* at 590. Here, Defendant has not articulated how the specific state agencies and officers proposed as defendants in the SAC are functioning outside of their respective authorities under SB 237 or any other relevant statute to render them as distinct, separate entities from the State of California. Therefore, Defendant fails to show futility of amendment based on its arguments attempting to reassert the bar of sovereign immunity or under a limited waiver theory.

Further, to the extent the proposed new agency and individual defendants seek to challenge the waiver of sovereign immunity—through Defendant's arguments that Plaintiff's proposed SAC may enlarge the scope of the case as the proposed claims arise from a separate case or controversy, that suit against the State Fire Marshal is not permitted under the *Ex Parte Young* doctrine, or that

the agency defendants, who were not in the case at the time of removal, did not separately effect a waiver of sovereign immunity (*see* Doc. 29 at 14-16)—that issue may properly be addressed on the merits in a motion to dismiss the SAC. *See Zurich Am. Ins. Co.*, 2020 WL 2732046, at *3 ("Ordinarily, 'courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed.'") (citing *Netbula, LLC*, 212 F.R.D. at 539).[2] Thus, for purposes of the futility analysis, the Court finds that Defendant fails to show amendment is futile based on a limited waiver of sovereign immunity. Moreover, Defendant's observations that "many of [the issues raised and claims proposed in the SAC] are already pending in other courts[,]" permitting those claims in this case "would be unnecessary to the administration of justice[,]" and "these issues will be resolved in other matters" (Doc. 29 at 16) tends to suggest that the proposed additional claims here are not futile and Defendant's argument that "there is little utility in this Court addressing [these issues] in this matter" does not show futility of the proposed claims. Therefore, this factor weighs in favor of amendment.

### b. *No Futility, Undue Delay or Prejudice*

Defendant contends that "[a]dding premature claims to the present lawsuit would create confusion, unduly complicate this proceeding with immunity bars to suit, prolong resolution of the pending motion to dismiss[,] … and would be profoundly unfair to all defendants." (Doc. 29 at 2). Defendant argues that the proposed SAC injects additional defendants, unfairly attributes the actions of one defendant to all defendants, and "will radically shift the nature of the case, cause confusion, and delay the conclusion of this proceeding." *Id.* at 6-7.

---

[2] Preliminarily, Defendant's contention that the State, OSFM, and the Commission "are separate legal entities under California law, and the actions of one cannot be imputed to the others" (Doc. 29 at 13) is unconvincing in the sovereign immunity context. "Under the 'arm of the state doctrine, a state agent or agency is immune from suit under the Eleventh Amendment because 'the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity form suit even though individual officials [or state entities] are nominal defendants." *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991). "Sovereign immunity cloaks the state agent or agency because, if the plaintiff prevails, '[s]uch a judgment would have the same effect as if it were rendered directly against the State[.]'" *Id.* (citing *Smith v. Reeves*, 178 U.S. 436, 439 (1900)). The State, as the real party in interest, waived its sovereign immunity to suit in this Court. Under *Durning*, that waiver appears to encompass a waiver by the State's agencies and agents to suit in federal court. Accord, *Embury*, 361 F.3d at 566.

11

Here, the Court finds that granting Plaintiff leave to file the proposed SAC would not cause undue delay or prejudice to Defendant.  Defendant's contentions—that it will face prejudice and confusion based on pleading deficiencies of the proposed SAC's allegations, such as by failing to allege "that the State took any action that can be construed as enforcement or threatened enforcement of SB 237"[3] and in failing to allege "facts to support a cause of action against [each] specific defendant[]" (Doc. 29 at 13)—are tantamount to challenge that the proposed SAC does not give "fair notice of what the … claim[s are] and the grounds upon which it rests."  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)); *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Because Defendant may challenge the pleading "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory" by seeking dismissal under a proper Rule 12(b)(6) motion, Defendant fails to show prejudice or futility of further amendment under Rule 15(a) to preclude granting Plaintiff leave to file the proposed SAC. *Eminence Capital*, 316 F.3d at 1052.  Separately, because the case remains early in the litigation at the pleadings stage, and Plaintiff promptly sought leave to amend following Defendant's filing of the pending motion to dismiss the FAC, Defendant fails to show any undue delay at this posture to justify denial of leave to amend. *Ponsoldt*, 939 F.2d at 798-99.  Therefore, these factors weigh in favor of granting leave to amend.

*        *        *        *        *

Because the *Nunes* factors all weigh in favor of permitting the proposed amendments, the Court will grant Plaintiff's motion for leave to file the proposed SAC.

---

[3] Defendant's argument that Plaintiff has not suffered an injury in fact, lacks standing, and its claims are not ripe based on alleged threats of State enforcement do not demonstrate futility of amendment.  In *MedImmune Inc. v. Genetech, Inc.*, the United States Supreme Court recognized that "where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before brining suit to challenge the basis for the threat—for example, the constitutionality of a law threatened to be enforced." *MedImmune, Inc.*, 548 U.S. 118, 128-29 (2007).  Here, the proposed SAC's allegations addressing the State's threatened enforcement of SB 237 by letter correspondence and the Secretary of Energy's DPA Order (Doc. 22-9 ¶¶ 11-13) support the SAC's proposed claims for declaratory relief. *See id.* at 129 ("[I]n *Steffel v. Thompson*, 415 U.S. 452 [] (1974), we did not require the plaintiff to proceed to distribute handbills and risk actual prosecution before he could seek a declaratory judgment regarding the constitutionality of a state statute prohibiting such distribution.") (citing *Steffel*, 415 U.S. at 458-60).  Therefore, Defendant's argument against ripeness of Plaintiff's claims do not demonstrate futility.

12

And because the Court will grant Plaintiff leave to file the proposed SAC, the Court will direct the Clerk of the Court to terminate Defendant's pending motion to dismiss the FAC (Doc. 20) as moot. *See Ramirez v. Cnty. of San Bernadino*, 806 F.3d 1002, 1008 (9th Cir. 2015) ("the Plaintiff's Second Amended Complaint superseded the First Amended Complaint, and the First Amended Complaint ceased to exist. Because the Defendants' motion to dismiss targeted the Plaintiff's First Amended Complaint, which was no longer in effect, we conclude that the motion to dismiss should have been deemed moot before the district court granted it.").

**V.   Conclusion and Order**

Accordingly, it is HEREBY ORDERED that:

1. Plaintiff's motion for leave to file a second amended complaint ("SAC") (Docs. 21, 22) is GRANTED;

2. No later than five (5) days following entry of this order, Plaintiff SHALL FILE as a stand-alone docket entry the SAC proposed in the motion (Doc. 22-9, Ex. H);

3. Defendants SHALL respond to the SAC no later than 21 days following its filing and service (*see* Fed. R. Civ. P. 15(a)(3)); and

4. The Clerk of the Court is directed to TERMINATE Defendant's motion to dismiss (Doc. 20) as moot.

IT IS SO ORDERED.

Dated:   **July 7, 2026**

_____

UNITED STATES MAGISTRATE JUDGE