ROB BONTA
Attorney General of California
BRANDON S. WALKER, State Bar No. 254581
Supervising Deputy Attorney General
JACK C. NICK, State Bar No. 160196
ISABELLA A. PANICUCCI, State Bar No. 318984
Deputy Attorneys General
  1300 I Street, Suite 125
  Sacramento, CA 95814
  Telephone:  (916) 210-7662
  Fax:  (916) 327-2319
  E-mail:  Isabella.Panicucci@doj.ca.gov
*Attorneys for Defendant*
*State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PACIFIC PIPELINE COMPANY, A Delaware Corporation,**<br><br>Plaintiff,<br><br>v.<br><br>**STATE OF CALIFORNIA, a state government; CALIFORNIA COASTAL COMMISSION, a state agency; CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, a state agency; OFFICE OF THE STATE FIRE MARSHAL, a state agency; DANIEL BERLANT, in his official capacity as State Fire Marshal and DOES 1 through 25, inclusive,**<br><br>Defendants. | 1:26-CV-01486-KES-CDB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT STATE OF CALIFORNIA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:          September 8, 2026<br>Time:          1:30 p.m.<br>Courtroom:  6 [7th Floor]<br>Judge:         The Honorable Kirk E. Sherriff<br>Trial Date:   None Set<br>Action Filed:  September 29, 2025 |

# TABLE OF CONTENTS

**Page**

Introduction .................................................................................................................. 1

Relevant Background .................................................................................................... 2

    I.     Factual Background ..................................................................................... 2

          A.     SB 237 ............................................................................................. 2

          B.     Other Pending Matters Involving the Las Flores Pipelines ........................ 3

          C.     Correspondence from State Agencies Regarding the Las Flores Pipelines .......................................................................................... 4

    II.    Procedural History ...................................................................................... 5

Legal Standard .............................................................................................................. 6

Argument ...................................................................................................................... 7

    I.     The Second Amended Complaint Should Be Dismissed for Lack of Subject Matter Jurisdiction ................................................................................... 7

    II.    Plaintiff Fails to Allege Any Facts to Support a Claim Against the State of California .................................................................................................. 9

    III.   Eleventh Amendment Immunity Bars Plaintiff from Asserting Several of the Newly Pled Claims in the Second Amended Complaint ......................... 11

    IV.   The Second Amended Complaint Fails to State any Claim for Relief ................ 15

          A.     Plaintiff's Claims for Declaratory Relief (First through Eighth Causes of Action) Fail Because There is No Actual Controversy ............ 16

               1.     Plaintiff Fails to Allege an Actual Controversy Because the Claims Are Based on Enforcement or Threatened Enforcement of SB 237, and the State Does Not Enforce SB 237 ................................................................................................. 16

               2.     Declaratory Relief Is Not Necessary or Proper Under the Circumstances ..................................................................... 19

               3.     The Ninth and Tenth Causes of Action Fail to State a Claim Because They are Based on Enforcement or Threatened Enforcement ...................................................................... 21

          B.     The Second Cause of Action Should Be Dismissed Due to Claim Splitting ......................................................................................... 21

          C.     The Fifth and Sixth Causes of Action Fail to State a Claim Because SB 237 Does Not Single Out or Apply to Any One Particular Person or Entity .................................................................................. 22

          D.     The Seventh Through Ninth Causes of Action Fail Because Plaintiff Has Not Alleged That Any Property Right Has Been Impaired or Taken ................................................................................ 24

          E.     The Tenth Cause of Action Fails Because Injunctive Relief Is Not a Stand-Alone Cause of Action ............................................................... 25

Conclusion ................................................................................................................... 25

i

Memorandum of Points and Authorities in Support of State of California's Motion to Dismiss
Second Amended Complaint (1:26-CV-01486-KES-CDB)

## TABLE OF AUTHORITIES

**Page**

**CASES**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*
  491 F. Supp. 3d 727 (E.D. Cal. 2020)................................................................... 25

*Arizona Students' Ass'n v. Arizona Bd. of Regents*
  824 F.3d 858 (9th Cir. 2016).............................................................................. 15

*Artus v. Gramercy Towers Condo Assn.*
  19 Cal. App. 5th 923 (2018)............................................................................... 16

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007)............................................................................................. 6

*Bird v. Oregon Comm'n for the Blind*
  22 F.4th 809 (9th Cir. 2022).............................................................................. 11

*California Physicians' Service v. Garrison*
  28 Cal. 2d 790 (1946) ........................................................................................ 10

*City of Santa Monica v. Stewart*
  126 Cal. App. 4th 43 (2005)............................................................................... 17

*Clark v. City of Lakewood*
  259 F.3d 996 (9th Cir. 2001)................................................................................ 7

*Connerly v. Schwarzenegger*
  146 Cal. App. 4th 739 (2007).............................................................................. 11

*Crumpacker v. Kansas, Dept. of Human Res.*
  474 F.3d 747 (10th Cir. 2007) ........................................................................... 10

*Durning v. Citibank, N.A.*
  950 F.2d 1419 (9th Cir. 1991)............................................................................ 11

*Embury v. King*
  361 F.3d 562 (9th Cir. 2004)................................................................. 11, 12, 13

*Environmental Defense Center v. PHMSA*
  Ninth Circuit case no. 25-8059 ............................................................................ 4

*Fagerstedt v. Continental Ins. Co.*
  266 Cal. App. 2d 370 (1968)............................................................................... 20

*Faghri v. Univ. of Conn.*
  No. 3:06-CV-01957 VLB, 2010 WL 2232690 (D. Conn. June 3, 2010) ............. 13

ii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Farm Sanctuary, Inc. v. Department of Food & Agriculture*
  63 Cal. App. 4th 495 (1998)................................................................................ 17, 20

*Foothills Christian Ministries v. Johnson*
  148 F.4th 1040 (9th Cir. 2025)................................................................................. 8

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*
  528 U.S. 167 (2000)................................................................................................. 7

*Hess v. Port Auth. Trans-Hudson Corp.*
  513 U.S. 30 (1994)................................................................................................ 15

*Hollingsworth v. Perry*
  570 U.S. 693 (2013)................................................................................................ 7

*In re California*
  No. 25-584, 2025 WL 2427608 (9th Cir. Aug. 22, 2025) .................................. 10, 19

*In re Don Rose Oil, Inc.*
  614 B.R. 358 (Bankr. E.D. Cal. 2020) ................................................................. 22

*In re Lazar*
  237 F.3d 967 (9th Cir. 2001)................................................................................. 13

*Jenkins v. Washington*
  46 F. Supp. 3d 1110 (W. Dist. Wash. 2014) ........................................................ 13

*Johnson v. Riverside Healthcare Sys., LP*
  534 F.3d 1116 (9th Cir. 2008)............................................................................ 6, 21

*Lapides v. Board of Regents of University System of Georgia*
  535 U.S. 613 (2002) ...................................................................................... 12, 13, 25

*Lent v. California Coastal Com.*
  62 Cal. App. 5th 812 (2021)................................................................................... 3

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992)............................................................................................. 7, 8

*Marvel Entm't LLC v. Kimble*
  CV-15-00404-TUC-RM, 2016 WL 9525586 (D. Ariz. Apr. 14, 2016) ................ 22

*MedImmune, Inc. v. Genentech, Inc.*
  549 U.S. 118 (2007)................................................................................................ 8

iii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Mendoza v. Amalgamated Transit Union Int'l*
30 F.4th 879 (9th Cir. 2022).................................................................. 21, 22

*Metropolitan Water District of Southern California v. Winograd*
24 Cal. App. 5th 881 (2018)......................................................................... 20

*Meyer v. Sprint Spectrum L.P.*
45 Cal. 4th 634 (2009) ................................................................................. 19

*Natural Res. Def. Council v. Cal. Dep't of Transp.*
96 F.3d 420 (9th Cir. 1996)............................................................................. 7

*Pacific Legal Foundation v. California Coastal Com.*
33 Cal. 3d 158 (1982) ............................................................................. 16, 17

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984) .................................................................................. 11, 13

*People ex rel Lockyer v. Superior Court*
122 Cal. App. 4th 1060 (2004)................................................................. 10, 19

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*
494 F.3d 788 (9th Cir. 2007)........................................................................... 6

*Rockridge Tr. v. Wells Fargo, N.A.*
985 F. Supp. 2d 1110 (N.D. Cal. 2013) ......................................................... 25

*Samples v. Brown*
146 Cal. App. 4th 787 (2007)........................................................................ 23

*Sanctity of Human Life Network v. California Highway Patrol*
105 Cal. App. 4th 858 (2003)........................................................................ 17

*Sato v. Orange Cnty. Dep't of Educ.*
861 F.3d 923 (9th Cir. 2017)........................................................................... 6

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*
309 F.3d 662 (9th Cir. 2002)................................................................... 23, 24

*Serrano v. Priest*
18 Cal. 3d 728 (1976) ................................................................................... 10

*Smith v. Reeves*
178 U.S. 436 (1900)...................................................................................... 11

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

*State of California v. PHMSA, et al.*
Ninth Circuit case no 26-508 .................................................................................... 4

*State of California v. Superior Court (Veta)*
12 Cal. 3d 237 (1974) ............................................................................................ 10

*State of California v. Wright, et al.*
Case No. 2:26-cv-03396-SVW-SSCx (C.D. Cal. 2026) ....................................... 4, 7

*Steffel v. Thompson*
415 U.S. 452 (1974) ................................................................................................. 8

*Steinberg v. Chiang*
223 Cal. App. 4th 338 (2014) ................................................................................. 16

*Stonehouse Homes LLC v. City of Sierra Madre*
167 Cal. App. 4th 531 (2008) ................................................................................. 17

*Tailford v. Experian Info. Sols., Inc.*
26 F.4th 1092 (9th Cir. 2022) ................................................................................... 7

*Taking Offense v. State of California*
18 Cal. 5th 891 (2025) ........................................................................................... 23

*Templo v. State of California*
24 Cal. App. 5th 730 (2018) ................................................................................... 10

*Texas v. Caremark, Inc.*
584 F.3d 655 (5th Cir. 2009) (*Caremark*) .................................................. 12, 13, 15

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*
594 F.2d 730 (9th Cir. 1979) .................................................................................... 7

*Turtle Island Restoration Network v. U.S. Dept. of State*
673 F.3d 914 (9th Cir. 2012) .................................................................................. 14

*Walden v. Nevada*
945 F.3d 1088 (9th Cir. 2019) ................................................................................ 13

*Wilson & Wilson v. City Council of Redwood City*
191 Cal. App. 4th 1559 (2011) ............................................................................... 17

v

Memorandum of Points and Authorities in Support of State of California's Motion to Dismiss
Second Amended Complaint (1:26-CV-01486-KES-CDB)

**TABLE OF AUTHORITIES**
(continued)

**Page**

**STATUTES**

California Coastal Act of 1976 ................................................................ 3

California Code of Civil Procedure
  § 1060 ................................................................................... 16, 17
  § 1061 ................................................................................... 16, 20
  § 1085 ....................................................................................... 20
  § 1094.5 .................................................................................... 20

California Government Code
  § 11043 ...................................................................................... 18
  § 11043(a)(1) ................................................................................. 1
  § 11043(c) .............................................................................. 10, 19
  § 11043(d) .................................................................................... 1
  § 51010 ....................................................................................... 3
  § 51010, *et seq* ............................................................................ 3
  § 51013.5 ..................................................................................... 3
  § 51014 ....................................................................................... 3
  § 51014.1 .................................................................................. 2, 24

California Pipeline Safety Act ............................................................ 3, 20

California Public Resources Code
  § 30000 *et seq.* ............................................................................ 3
  § 30001 ....................................................................................... 3
  § 30001.5 ..................................................................................... 3
  § 30008 ....................................................................................... 3
  § 30103 ....................................................................................... 3
  § 30106 ....................................................................................... 3
  § 30262 ................................................................................ 3, 4, 24
  § 30600, subd. (a) ........................................................................... 3

Civil Rights Act
  § 1983 .................................................................................... 16, 25

Defense Production Act, 50 U.S.C.
  §§ 4501 et seq. ........................................................................ *passim*

Federal Pipeline Safety Act ................................................................. 18

vi

**TABLE OF AUTHORITIES**
(continued)

**Page**

**CONSTITUTIONAL PROVISIONS**

Kansas Constitution ........................................................................................................ 10

U.S. Constitution Eleventh Amendment ................................................................. *passim*

U.S. Constitution, Article III
§ 2 ........................................................................................................................ 7

**COURT RULES**

Federal Rules of Civil Procedure
Rule 12(b)(1) ................................................................................................ 6, 7, 9
Rule 12(b)(6) ................................................................................................ 6, 16

**INTRODUCTION**

Defendant State of California ("State"), by and through the Attorney General in his independent capacity (Cal. Gov't Code § 11043(d)), moves to dismiss the second amended complaint ("SAC") filed by Plaintiff Pacific Pipeline Company ("Plaintiff"). At its core, Plaintiff's case is a challenge to state agencies' enforcement of Senate Bill 237 ("SB 237") that Plaintiff has brought prematurely before any state agency has actually enforced SB 237, and is improperly asserted against the State as the sovereign. There are several grounds for dismissal.

First, Plaintiff lacks standing to bring this case due to its failure to allege that the State has caused it any injury. The State is not, nor has it ever been, a proper party to this action. This case is about the enforcement of a law that went into effect on January 1, 2026, and may eventually be enforced by the state agencies charged with administering the law.[1] The State is a distinct entity from the agencies that administer the laws at issue in this case, and the State is not a proper party to this improper attempt at a pre-enforcement challenge.

Second, Eleventh Amendment immunity bars Plaintiff from asserting seven of the ten causes of action asserted in the SAC. The State removed this case to federal court when the operative First Amended Complaint ("FAC") asserted only two causes of action for declaratory relief. Now, the SAC asserts eight additional causes of action, and all but one arise from a different case or controversy than the limited case that existed at the time of removal. The State's limited waiver of Eleventh Amendment immunity does not extend to the new claims that constitute entirely separate cases from the case that the State removed.

Third, the majority of Plaintiff's causes of action fail to state a claim for relief because they are based on enforcement or threatened enforcement of SB 237. The State, either as the sovereign or by and through the Attorney General in his independent capacity (Cal. Gov't Code § 11043(a)(1) and (d)), has not taken any action to enforce SB 237, as this responsibility is reserved for specific state agencies. Additionally, Plaintiff's Fifth (Equal Protection) and Sixth (Bill of Attainder) Causes of Action fail to state a claim because SB 237 does not specifically apply to

---

[1] The SAC adds three state agencies and a state official as defendants to this case. This motion to dismiss is brought only on behalf of the State. The SAC does not allege that any state agency or official has taken final agency action with respect to SB 237.

1

any one entity or person, nor does it single out and treat any particular entity or person differently from others.

For these reasons, the Court should grant the State's motion and dismiss the SAC.

## RELEVANT BACKGROUND

### I.   FACTUAL BACKGROUND

This lawsuit involves two onshore oil pipelines that, as of the date this case was initiated, had not transported oil since one of the pipelines ruptured on May 19, 2015, spilling more than 140,000 barrels of heavy crude oil that then flowed to Refugio State Beach in Santa Barbara County. ECF No. 40, ¶¶ 40, 60, Ex. A to SAC at 47. Plaintiff owns the onshore pipelines, which it refers to separately as Lines CA-324 and CA-325 and together as the Las Flores Pipelines.[2] ECF No. 40 (SAC), ¶ 1. The Las Flores Pipelines connect to larger oil production infrastructure owned by Plaintiff's parent company, Sable Offshore Corp. ("Sable"). ECF No. 40, ¶¶ 1, 2. The Las Flores Pipelines begin at the Las Flores Canyon Processing Facility in unincorporated Santa Barbara County and terminate at the Pentland Station in Kern County. ECF No. 40, ¶¶ 2, 32-33.

### A.   SB 237

Pursuant to its sovereign authority to regulate both intrastate oil pipelines and the California coastal zone, the California Legislature enacted SB 237, and Governor Newsom signed SB 237 in September 2025. ECF No. 40, ¶ 49; Stats.2025, c. 118 (S.B.237), eff. Jan. 1, 2026. SB 237 became effective on January 1, 2026 and requires the owner of a pipeline that has been idled, inactive or out of service for five years or more as of the effective date of the bill to obtain a coastal development permit and conduct certain testing before reactivating the pipeline. ECF No. 40, ¶ 51. The legislation is not limited to, nor does it single out or specifically target, Plaintiff, the Las Flores Pipelines, or any other specific person or entity. ECF No. 40, ¶¶ 51, 60.

Among other provisions not relevant to this lawsuit, SB 237 adds Government Code section 51014.1 to the Elder California Pipeline Safety Act of 1981 ("California Pipeline Safety Act"), Government Code section 51010, *et seq.* ECF No. 40, ¶ 50. The California Pipeline Safety Act

---

[2] In its original complaint, Plaintiff referred to these pipelines as the Las Flores Pipelines (plural). ECF No. 1 at 8. As such, the pipelines will be referred to in this brief in the plural.

2

Memorandum of Points and Authorities in Support of State of California's Motion to Dismiss
Second Amended Complaint (1:26-CV-01486-KES-CDB)

gives exclusive safety regulatory and enforcement authority over intrastate oil pipelines to the Office of the State Fire Marshal ("OSFM") and sets testing requirements, among other requirements. Cal. Gov't Code §§ 51010, 51013.5, 51014; ECF No. 40, ¶ 45.

SB 237 also amended Public Resources Code section 30262, which is part of the California Coastal Act of 1976 ("Coastal Act"). Cal. Pub. Res. Code § 30000 *et seq.*; ECF No. 40, ¶ 51. The Coastal Act delineates the coastal zone and sets policies and requirements for development to protect the distinct and valuable natural resources within the coastal zone. Cal. Pub. Res. Code §§ 30001, 30001.5, 30008, 30103. Under the Coastal Act, any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit. *Id.* § 30600, subd. (a). The Coastal Act defines "Development" as the placement, construction, reconstruction, or alteration of any structure. *Id.* § 30106. "Structure" specifically includes any pipe. *Id*. Public Resources Code section 30262 focuses on one particular type of development— oil and gas development. Additionally, a person who maintains and uses any unpermitted development, even if installed by a prior owner, undertakes an activity that requires a coastal development permit. *Lent v. California Coastal Com.*, 62 Cal. App. 5th 812, 832 (2021).

**B.    Other Pending Matters Involving the Las Flores Pipelines**

Since 2016, the Las Flores Pipelines have been considered "intrastate" pipelines under the regulatory oversight of the OSFM pursuant to the California Pipeline Safety Act. ECF No. 40, ¶ 45. However, on December 17, 2025, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") reversed its prior position and designated the Las Flores Pipelines and related infrastructure extending offshore as one single *inter*state pipeline because the offshore pipelines extend beyond state waters, which end three miles off the coast, to federal waters. ECF No. 40, ¶¶ 45, 54, Ex. B to SAC (Dec. 17, 2025, Letter from PHMSA to Sable). PHMSA shortly thereafter approved Plaintiff's plan to restart pipeline operations and issued an emergency special permit. ECF No. 40, Ex. C (Dec. 22, 2025, Letter from PHMSA to Sable) and Ex. D (PHMSA Emergency Special Permit) (collectively, the "PHMSA Orders").

On January 23, 2026, the State of California, by and through Attorney General Rob Bonta, and the OSFM, filed a Petition for Review in the United States Court of Appeals for the Ninth

3

Circuit challenging the PHMSA Orders as unlawful. *State of California v. PHMSA, et al.*, Ninth Circuit case no 26-508, consolidated with *Environmental Defense Center v. PHMSA*, Ninth Circuit case no. 25-8059 (the "Ninth Circuit PHMSA Case"). Oral argument took place on July 7, 2026, and the Ninth Circuit subsequently ordered supplemental briefing. The petition remains pending. California also filed a new petition, *California v. PHMSA*, Ninth Circuit case no. 26-4629, challenging PHMSA's issuance of a new Special Permit on June 25, 2026.

On March 13, 2026, the Secretary of Energy issued an order purporting to direct Plaintiff and Sable to "prioritize and allocate pipeline transportation services . . . through" the Santa Ynez Pipeline System, including the Las Flores Pipelines, pursuant to the Defense Production Act, 50 U.S.C. §§ 4501 et seq. (the "DPA Order"). ECF No. 40, ¶¶ 12, 78-81, Ex. F to SAC. Plaintiff admits it resumed transporting oil through the pipelines after the DPA Order was issued. ECF No. 40, ¶ 91; ECF No. 22 at 6:16-18.

On March 31, 2026, the California Attorney General, in his independent capacity, brought a suit on behalf of the State of California for declaratory and injunctive relief against Chris Wright in his official capacity as Secretary of the U.S. Department of Energy and the U.S. Department of Energy related to the DPA Order. *State of California v. Wright, et al.*, Case No. 2:26-cv-03396-SVW-SSCx (C.D. Cal. 2026). Plaintiff and Sable are intervenor-respondents. The complaint seeks, among other things, a judicial declaration that the DPA Order is unconstitutional and/or otherwise unlawful and to enjoin the defendants from invoking the DPA Order to authorize or compel operation of the pipelines.

This is not an exhaustive list of the pending lawsuits involving the Las Flores Pipelines, Plaintiff, and/or its owner, Sable.

### C.    Correspondence from State Agencies Regarding the Las Flores Pipelines

On February 18, 2026, the California Coastal Commission ("Coastal Commission") sent a courtesy reminder to Plaintiff's owner, Sable, that in order to reactivate the Las Flores Pipelines, it would have to apply for and receive a coastal development permit as required by Public Resources Code section 30262 as amended by SB 237, in addition to all other agency requirements and authorizations required by law. ECF No. 40, ¶ 11, Ex. E to SAC. On March 19,

4

2026, the Coastal Commission sent another letter to Sable after Sable issued a press release announcing that it had resumed transportation of hydrocarbons through the Las Flores Pipelines. *Id.*, ¶ 14, Ex. H to SAC. The letter stated that the Las Flores pipelines had been idled, inactive, and out of service for more than five years as of January 1, 2026, and therefore reactivation of the pipelines after January 1, 2026 without a coastal development permit is unpermitted development and would be grounds for an enforcement action by the Coastal Commission. *Id.*

On March 16, 2026, OSFM sent Sable a letter related to state waivers OSFM had granted to Sable to modify regulatory pipeline safety requirements based on the specifications applicable to the individual pipeline facilities. ECF No. 40, ¶¶ 13, 45, Ex. I to SAC. The letter set forth OSFM's position that Sable had not complied with the waivers, and that while Sable was free to relinquish, surrender, and abandon the waivers, if it desired to operate the Las Flores Pipelines, it would be required to apply for new state waivers at that time. *Id.*, Ex. I to SAC. The letter further stated that re-commencement of operations prior to OSFM's determination that Sable had complied with all terms of state waivers is prohibited by the consent decree that was entered after the 2015 oil spill, and OSFM reserves all rights to enforcement action if operations on the pipelines were to resume without valid state waivers. *Id.* These are the only actions the SAC points to as attempts to enforce SB 237. None are by the State or the Attorney General.

## II. PROCEDURAL HISTORY

Plaintiff initiated this lawsuit in Kern County Superior Court against the State of California as the sole defendant on September 29, 2025, before SB 237 went into effect. Plaintiff alleged a single cause of action concerning the interpretation of SB 237:  that the relevant provisions of SB 237 (i.e., the hydrostatic spike testing and coastal development permit requirements) do not apply to the Las Flores Pipelines because the new statute's use of the phrase "idled, inactive, or out of service" is governed by the Federal Pipeline Safety Act's use of the term "abandoned."

On January 21, 2026, Plaintiff filed its First Amended Complaint ("FAC"), adding a second cause of action alleging that SB 237 was preempted by the PHMSA Orders. Even though the FAC specifically alleged that OSFM's authority had been preempted by the PHMSA Orders (ECF No. 1 at 58), it did not name OSFM as a party and only named the State. On February 20,

5

2026, in light of the addition of this federal question to Plaintiff's limited action for declaratory relief, the State removed the action to federal court. ECF No. 1.

The State moved to dismiss the FAC on March 30, 2026. ECF No. 20. Before the motion to dismiss the FAC was decided, Plaintiff filed a motion for leave to file its Second Amended Complaint ("SAC") on April 10, 2026. ECF No. 22. Both motions were taken under submission without oral argument. On July 7, 2026, the Court granted Plaintiff's motion for leave to file the SAC, terminated the State's motion to dismiss the FAC as moot, and ordered the defendants to respond to the SAC within twenty-one days after service of the SAC. ECF No. 39. Plaintiff filed its SAC on July 8, 2026. ECF No. 40.

## LEGAL STANDARD

A sovereign immunity defense is "quasi-jurisdictional" in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion. *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

Federal Rule 12(b)(6) allows a defendant to assert a defense by motion based on failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff must also allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Instead, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id*. In evaluating a motion to dismiss under Rule 12(b)(6), a court assumes all material allegations in the complaint are true, but "need not accept conclusory allegations of law or unwarranted inferences." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Rule 12(b)(1) allows a party to raise the defense that the court lacks jurisdiction over the subject matter of a claim. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733

6

(9th Cir. 1979); *Natural Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421-23 (9th Cir. 1996) (*NRDC*). It is well-established that Article III "[s]tanding is a constitutional requirement for the exercise of subject matter jurisdiction over disputes in federal court." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022) (citing *Spokeo v. Robins*, 578 U.S. 330, 339, (2016)). The Constitution limits the federal courts' jurisdiction to "cases and controversies." U.S. Const., Art. III, § 2. Both terms require a matter to be "justiciable" for the federal court to hear it. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

ARGUMENT

### I.   THE SECOND AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION

The SAC should be dismissed for lack of subject matter jurisdiction because Plaintiff has not alleged that the State has caused it to suffer any injury and it therefore lacks standing. Plaintiff cannot allege that it has suffered any injury, because it resumed transportation of oil through the pipelines on March 14, 2026. ECF No. 40, ¶ 91. Nor can it allege that the State has caused it to suffer any injury.[3]

Under Article III, section 2 of the United States Constitution, federal courts have jurisdiction over only those disputes that present a justiciable "case or controversy." U.S. Const. Art. 3, § 2; *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013); *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 179-80, (2000); *see also Clark v. City of Lakewood*, 259 F.3d 996, 1006 (9th Cir. 2001). To be a justiciable case or controversy, the plaintiff must have standing. *Lujan*, 504 U.S. at 560. "[T]he irreducible constitutional minimum of standing contains three elements, all of which the party invoking federal jurisdiction bears the burden of establishing." *Id.* at 560-61. The first of these elements requires the plaintiff to establish that he suffered an "injury in fact," defined as an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at

---

[3] In a separate action, *State of California v. Wright, et al.*, Case No. 2:26-cv-03396-SVW-SSCx (C.D. Cal. 2026), the State challenges the DPA Order and Plaintiff's reactivation of the Las Flores Pipelines based on its interpretation of that Order. That lawsuit does not involve SB 237, however, and has no impact on the standing issue in the present case, because Plaintiff already reactivated and continues to operate the Pipelines notwithstanding the State's challenge.

7

Memorandum of Points and Authorities in Support of State of California's Motion to Dismiss
Second Amended Complaint (1:26-CV-01486-KES-CDB)

560 (citations, internal quotation marks, and footnote omitted). Plaintiff does not allege that the State, as a party that is separate from OSFM and the Coastal Commission, has made any enforcement or specific threats of enforcement of the statutes that were amended by SB 237, and has therefore failed to allege that it suffered an injury sufficient to create standing.

Plaintiff also admits that it resumed transporting oil through its pipelines. ECF No. 40, ¶ 91; ECF No. 22 at 6:16-18. There can be no injury where a plaintiff is not coerced into deciding not to exercise their claimed right. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). As the *MedImmune* court makes clear, the declaratory judgment procedure (and pre-enforcement standing) is an *alternative* to pursuit of the alleged illegal activity. 549 U.S. at 129 (where a plaintiff eliminates the imminent threat of harm by simply not doing what he claimed the right to do (enter into a lease, or distribute handbills at the shopping center), subject-matter jurisdiction is not precluded because the threat-eliminating behavior was effectively coerced); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974). That is not the case here, where Plaintiff is actively engaged in the transportation of oil through the Pipelines and has not alleged that it was coerced into foregoing its rights.

To satisfy the "case or controversy" requirement regarding standing in a pre-enforcement challenge such as is alleged in this case, Plaintiff must also plausibly allege that, among other requirements, there is a credible threat that the challenged provision will be invoked against it. *Foothills Christian Ministries v. Johnson*, 148 F.4th 1040, 1049-50 (9th Cir. 2025). In determining whether a plaintiff faces a credible threat of enforcement, courts will generally consider whether the defendant "communicated a specific warning or threat to initiate proceedings," and "the history of past prosecution or enforcement under the challenged statute." *Id*. at 1049 (citing *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) and *Cal. Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1094 (9th Cir. 2003)). Here, Plaintiff does not allege that the State, as a named defendant and separate from OSFM and the Coastal Commission, made any enforcement or specific threats of enforcement of SB 237. The SAC should be dismissed under FRCP 12(b)(1) for lack of subject matter jurisdiction.

## II.   PLAINTIFF FAILS TO ALLEGE ANY FACTS TO SUPPORT A CLAIM AGAINST THE STATE OF CALIFORNIA

The State has been a defendant in every version of the complaint Plaintiff filed, despite the fact that the State is not and has never been a proper party, except possibly with respect to the Sixth Cause of Action, which is included for the first time in the SAC. The SAC retains the State of California as defendant, but for the same reasons set forth in the State's motion to dismiss the FAC (ECF No. 20), the State is still an improper defendant in this case because it does not enforce, administer, or implement SB 237, and it is a distinct entity from the state agencies that are responsible for enforcing that law. And even if the State were a proper party, Plaintiff fails to allege sufficient facts that are directed at or applicable to the State. *Supra* at pp. 8-9, 22-24; *infra* at pp. 16-22.

For each cause of action, except for possibly the Fifth[4] and Sixth, the SAC asserts as applied challenges to SB 237. It alleges that SB 237 does not apply to the Las Flores Pipelines (ECF No. 40, ¶¶ 88, 96, 110, 141) or that the enforcement of SB 237 against Plaintiff results in various injuries (ECF No. 40, ¶¶ 116, 119, 128, 144, 149, 161, 167). These are in contrast to a facial challenge to SB 237, which would invalidate SB 237, in whole or in part, on constitutional grounds. *See* ECF No. 40, ¶¶ 126-127 (alleging that SB 237 is constitutionally invalid because it singles out and discriminates against Plaintiff), ¶¶ 133-135 (alleging that SB 237 is constitutionally invalid because it applies with specificity to Plaintiff and the Las Flores Pipelines). These facial attacks, where the State may be a proper party, are separately discussed in pages 23-25 *infra*.

With respect to the as applied challenges, the SAC alleges that the State is "the government entity responsible for enacting and enforcing the laws of the State of California." ECF No. 40, ¶ 22. In the same breath, the SAC acknowledges that SB 237 is an act of the State "through the state Legislature, and the provisions of SB 237 impose duties on *state agencies, state officials,*

---

[4] Whether the Fifth Cause of Action alleges a facial or as applied challenge is unclear. It alleges that SB 237 intentionally singles out and discriminates against Plaintiff (ECF No. 40, ¶ 127), which may be understood as a facial challenge. But it then goes on to allege the enforcement of SB 237 would be an equal protection violation (ECF No. 40, ¶ 128), which would be an as applied challenge. To the extent it is an as applied challenge, it would only apply to the state agencies responsible for enforcing the law. To the extent it is a facial challenge, it fails to state a cause of action, as discussed below. *Infra* at pp. 23-25.

9

*and the Legislature* to carry out and enforce its provisions." *Id.* (emphasis added). In contrast to the federal model of a unitary executive, California law recognizes that "the State" as an entity is distinct from the specific state agencies and officers who carry out governmental functions. *Compare* Cal. Gov't Code § 11043(c) ("Every state agency is a separate legal entity.") and *People ex rel Lockyer v. Superior Court*, 122 Cal. App. 4th 1060, 1078-79 (2004) ("Each agency or department of the state is established as a separate entity, under various state laws or constitutional provisions."), *with Crumpacker v. Kansas, Dept. of Human Res.*, 474 F.3d 747, 753 n.5 (10th Cir. 2007) (noting the uniqueness of the Kansas Constitution providing for a unitary executive that is analogous to the federal system); *see also In re California*, No. 25-584, 2025 WL 2427608, at *2 (9th Cir. Aug. 22, 2025) ("[T]he magistrate judge and district judge clearly erred by failing to follow *People ex rel. Lockyer v. Superior Court*"). While declaratory relief in the context of an as applied challenge may be available against state agencies (*see California Physicians' Service v. Garrison*, 28 Cal. 2d 790 (1946)), neither the State nor Legislature have direct responsibility for the statute's administration. *Serrano v. Priest*, 18 Cal. 3d 728, 752 (1976) (lawmakers' interest in the validity of statutes enacted by them "is not of the immediacy and directness requisite to party status; it may thus be fully and adequately represented by the appropriate administrative officers of the state.").

The SAC contains no allegations that the State has any role, or has taken or threatened to take any action, to enforce SB 237. And by extension, the SAC contains no allegations that the State has caused Plaintiff to suffer any injury. By further amending its complaint to add three state agencies and a state agency official as defendants, Plaintiff tacitly concedes this point. But the fact that Plaintiff now, in its third attempt at pleading its claims, finally names state agencies and a state official as defendants, does not mean that the State is suddenly a proper party. In *Templo v. State of California*, a trial court granted the State's motion for judgment on the pleadings specifically because the State was not a proper defendant to the cause of action. *Templo v. State*, 24 Cal. App. 5th 730, 737 (2018); *State of California v. Superior Court (Veta)*, 12 Cal. 3d 237, 255 (1974) (the agency, not the State, was the entity with direct institutional interest in defending the constitutionality of the agency's act of denying a permit). Similarly, in *Connerly v.*

10

*Schwarzenegger*, the court noted that the plaintiff "has not named any state agency as a defendant, nor does he allege that any agency is enforcing or threatens to enforce" the challenged provision. *Connerly v. Schwarzenegger*, 146 Cal. App. 4th 739, 748 n.3 (2007). The State's interest in the validity of SB 237 still, as with the previous version of the complaint, lacks the immediacy and directness required to render it a proper party, and the State should be dismissed from this case.

### III.    ELEVENTH AMENDMENT IMMUNITY BARS PLAINTIFF FROM ASSERTING SEVERAL OF THE NEWLY PLED CLAIMS IN THE SECOND AMENDED COMPLAINT

There is no dispute that the State is afforded immunity from suit under the Eleventh Amendment of the U.S. Constitution. The Eleventh Amendment prevents federal courts from exercising jurisdiction over claims against the State unless there has been express and unequivocal consent or waiver, express and unequivocal Congressional abrogation of the State's immunity, or where the *Ex Parte Young* doctrine applies to federal claims against state officials. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). If ambiguous, a waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign." *Bird v. Oregon Comm'n for the Blind*, 22 F.4th 809, 814 (9th Cir. 2022) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). In this case, by its removal of the FAC to federal court (ECF No. 1), the State, on behalf of itself and not its separate agencies that were non-parties at the time,[5] consented to federal jurisdiction over a narrow case involving just two causes of action.

The State's limited waiver of Eleventh Amendment immunity does not extend to the Plaintiff's new claims asserted in the SAC that arise from an entirely separate set of facts and therefore constitute a distinct matter or controversy, and certainly did not extend to any claims for money damages—one of the heartland concerns of state sovereign immunity and Eleventh Amendment immunity. These separate matters include the Third (DPA Preemption), Fourth (Due

---

[5] In the order granting Plaintiff's motion for leave to file the SAC, the Court was not persuaded that the State and state agencies were separate entities in the sovereign immunity context. ECF No. 39 at 11 n.2. However, the order's cited authorities, *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1423 (9th Cir. 1991) and *Smith v. Reeves*, 178 U.S. 436, 439 (1900) focused on why agencies are entitled to immunity as arms of the state, and did not address the scope of a state's waiver of immunity. As discussed in this section of the motion, *Embury* does not hold that waiver of immunity is unlimited and extends to claims outside the existing case or matter as it was constituted at the time of removal.

11

Process), Fifth (Equal Protection), Seventh (Vested Rights), Eighth (Inverse Condemnation), Ninth (Takings), and Tenth (Injunctive Relief) Causes of Action. Waiver of Eleventh Amendment immunity extends only to the "case" or "matter" at hand at the time of removal. *Embury v. King*, 361 F.3d 562, 565 (9th Cir. 2004) (*Embury*). This waiver is not unlimited. Understood correctly, a State's unambiguous, unequivocal waiver of immunity in removing a lawsuit is only to the extent required for the removed lawsuit's determination, and does not apply to claims that do not arise "out of the same transaction or occurrence," "claims of a different form or nature," or "claims exceeding [the] amount" sought. *Texas v. Caremark, Inc.*, 584 F.3d 655, 659 (5th Cir. 2009) (*Caremark*) (quoting *Frederick v. United States*, 386 F.2d 481, 488 (5th Cir. 1967)). Consistent with this concept, *Embury* does not hold that the sovereign's waiver is limitless or that a plaintiff may sidestep a State's Eleventh Amendment immunity by adding a variety of new claims that arise out of a different set of facts, add constitutional and vested rights claims that are different in form and nature, and newly seek monetary damages, as Plaintiff attempts to do in this case.[6]

In *Embury*, a group of state defendants removed a complaint initially filed in state court seeking declaratory and injunctive relief for violation of due process rights and damages for state law claims of violation of public policy and breach of contract. All of the claims in the removed complaint stemmed from the plaintiff's wrongful discharge from employment by the state university where he was employed. After removal, the plaintiff filed an amended complaint asserting federal and state law claims for damages, declaratory relief, and injunctive relief, but all based on the same occurrence, i.e., his alleged wrongful discharge. *Embury*, 361 F.3d at 563. *Embury*, relying on *Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613, 122 (2002), held that removal is not of a claim but of the "case," which is to say, the "suit," and once immunity is waived, it is waived to the entire "case" or "matter." *Id.* at 563-64. But the

[6] The order granting Plaintiff's motion for leave to file the SAC concluded, with minimal analysis, that the proposition that the scope of a state's waiver is limited under *Caremark* is precluded under *Embury*. ECF No. 39 at 9:25-10:2. But *Embury* does not hold that waiver of immunity is without limitation. Whether a new claim is part of the same "matter" or "case" so as to fall within the scope of a state's consent to federal jurisdiction requires review of the specific claims being added to the case, and whether the claims arise from the same transaction or occurrence, are of a different form and nature, or exceed the amount sought. *Caremark*, 584 F.3d at 659-60. The order also suggested that such determinations should be reserved for a motion to dismiss. ECF No. 39 at 10:25-11:13, n.2-3.

12

bounds of a "case" or "matter" contemplated in *Embury* were limited to the same occurrence and did not involve a drastic expansion of the nature of claims or increase in damages sought. *Id.* at 563-64. This limitation is consistent with the primary problem that the Supreme Court dealt with in *Lapides*, where it would be unfair "for a State both (1) to invoke federal jurisdiction, thereby contending that the 'Judicial power of the United States' extends to the case at hand, and (2) to claim Eleventh Amendment immunity, thereby denying that the 'Judicial power of the United States' extends to the case at hand." *Lapides*, 535 U.S. at 619.[7] This limitation to the "case at hand" is also consistent with the requirement that a waiver be unequivocal and unambiguous. *Pennhurst*, 465 U.S. at 102.

The Ninth Circuit has addressed the scope of a State's waiver in the context of the State filing a proof of claim in a bankruptcy proceeding. *In re Lazar*, 237 F.3d 967, 977 (9th Cir. 2001). The court noted the inconsistency in the Circuits and determined that "the state waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim." *Id.* at 978. *Caremark* similarly addresses the question of the scope of a State's waiver of sovereign immunity as to allowable counterclaims brought against the State in a matter the State initiated in federal court. When a state initiates a lawsuit, it waives its sovereign immunity to the extent required for the lawsuit's complete determination. *Caremark*, 584 F.3d at 659. Immunity is not waived as to permissive claims which do not meet the "same transaction or occurrence" test, nor to counterclaims of a different form or nature than that sought by the State as a plaintiff. *Id.* Determining whether new claims are part of the same case requires factual examination of the transactions that form the basis of the underlying complaint and the new claims. *Id.*; *Jenkins v. Washington*, 46 F. Supp. 3d 1110, 1117 (W. Dist. Wash. 2014); *Faghri v. Univ. of Conn.*, No. 3:06-CV-01957 VLB, 2010 WL 2232690 at *27 (D. Conn. June 3, 2010) (State did not waive sovereign immunity for a claim related to a set of factual circumstances distinct from the underlying suit). The State did not initiate this lawsuit

---

[7] *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) and *Walden v. Nevada*, 945 F.3d 1088 (9th Cir. 2019) similarly do not support the argument that a State's waiver extends to any future claim a plaintiff might bring. *Lapides* and *Walden* did not involve new claims that were asserted after removal, and thus did not address the scope of a State's waiver.

13

and has not asserted any claims, but merely removed a case involving two limited claims for declaratory relief and no claims for monetary damages.

An examination of the factual basis of each of Plaintiff's Third, Fourth, Fifth, and Seventh through Tenth Causes of Action shows that these new claims arise from separate sets of facts from the First and Second Causes of Action in the SAC, which are identical to the First and Second Causes of Action in the FAC that the State removed, or are of a different nature or form, or seek monetary damages far beyond what was sought in the removed case. ECF No. 40, ¶¶ 86-104. The First Cause of Action seeks a judicial declaration that the Las Flores Pipelines have not been "idled, inactive, or out of service for five years or more" within the meaning of SB 237 because the pipelines have not been abandoned and "the Legislature did not make SB 237 retroactive." ECF No. 40, ¶¶ 88-89. This claim is derived from the enactment of SB 237 and is limited to statutory interpretation, with the primary issue being whether SB 237's adoption of the terms "idled, inactive, or out of service" are limited to mean abandoned, as that term is used in federal law. The Second Cause of Action seeks a judicial declaration that, by virtue of the PHMSA Orders, PHMSA asserted jurisdiction over the Las Flores Pipelines and preempted state agencies such as OSFM and the Coastal Commission from enforcing SB 237 on the Las Flores Pipelines. ECF No. 40, ¶¶ 96, 98. In removing this case, the State consented to this Court's jurisdiction to (1) determine whether the State is a proper party to the FAC, and if so, (2) interpret SB 237, and (3) determine whether the PHMSA Orders preempt SB 237, and nothing more.

In contrast, the newly-alleged Third Cause of Action seeks declaratory relief that SB 237's application to the Las Flores Pipelines is preempted based on the DPA Order issued by the Department of Energy on March 13, 2026, after the case was removed to federal court, and is entirely separate from the PHMSA Orders upon which the Second Cause of Action is based.[8] It

---

[8] To argue that the Third Cause of Action arises from the same transaction or occurrence as the Second Cause of Action would be equivalent to arguing that if the DPA Order had been issued after this case was fully adjudicated, Plaintiff would be precluded from bringing a lawsuit related to the DPA Order because it was part of the same "case or controversy" that was already litigated. *See Turtle Island Restoration Network v. U.S. Dept. of State*, 673 F.3d 914, 917-18 (9th Cir. 2012) (identifying the factors for claim preclusion as whether (1) previously adjudicated rights would be impaired by second action, (2) substantially the same evidence is presented, (3) both suits involve infringement of same right, and (4) both suits arise out of same transactional nucleus of facts).

14

presents an entirely new set of facts and legal arguments that the State did not consent to this Court's jurisdiction to hear. The Fourth, Fifth, and Seventh through Tenth Causes of Action similarly arise from a separate nucleus of facts, because they are all based on the enforcement or threat of enforcement of SB 237. But no final agency actions have yet been taken to enforce SB 237, nor has the State taken action to enforce SB 237. *Supra* at pp. 7-9; *infra* at pp. 16-21. As such, these causes of action, when ripe, will all be based on a set of facts that have not yet come to pass, and therefore are necessarily based on separate cases or controversies than what constituted the FAC that the State removed. The SAC also adds a slew of constitutional claims, which have a form and nature different from the two declaratory relief claims in the removed FAC that were based on statutory interpretation and a limited preemption claim. The SAC also includes a new takings claim that increases the damages sought in this case from $0 to $347,000,000. Applying the principles in *Caremark* that limit the scope of a sovereign's waiver of immunity, the State did not waive sovereign immunity as to any future claim that Plaintiff might attempt to pursue to enlarge the scope of the case—and certainly not for Plaintiff's newly asserted claim for monetary damages that would target the State's Treasury, a stark departure from the originally-removed claims which sought only declaratory relief. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994) (the impetus for the Eleventh Amendment is the prevention of federal court judgments that must be paid out of a State's treasury) (citing cases); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) ("[T]he Eleventh Amendment bars individuals from bringing lawsuits against a state for money damages or other retrospective relief . . . ."). For these reasons, the State did not waive Eleventh Amendment immunity as to Plaintiff's Third through Fifth and Seventh through Tenth Causes of Action against the State, and those claims should be dismissed.

## IV.    THE SECOND AMENDED COMPLAINT FAILS TO STATE ANY CLAIM FOR RELIEF

Plaintiff fails to allege sufficient facts to support a cognizable legal theory against the State. None of its causes of action state a claim for relief against the State, and the claims against the State should be dismissed.

### A.   Plaintiff's Claims for Declaratory Relief (First through Eighth Causes of Action) Fail Because There is No Actual Controversy

Plaintiff's First through Eighth Causes of Action seek declaratory relief under California Code of Civil Procedure section 1060 ("Section 1060"), which allows a party to obtain a judicial declaration of rights where, among other requirements, there is an "actual controversy relating to the legal rights and duties of the respective parties . . . ." Cal. Code Civ. P. § 1060; ECF No. 40, ¶¶ 91-93, 101-103, 109-111, 121-122, 130-131, 138-139, 146, 156-157.[9] All but the Sixth Cause of Action fail to state a claim for relief because they do not allege an actual controversy within the meaning of Section 1060, and because the SAC fails to establish that a judicial declaration is necessary or proper under all circumstances. Cal. Code Civil Proc. § 1061. The claims are therefore subject to dismissal as to the State under FRCP 12(b)(6).

A court's determination whether declaratory relief is appropriate involves a two-prong inquiry. *Artus v. Gramercy Towers Condo Assn*., 19 Cal. App. 5th 923, 930-31 (2018). Under the first prong, the court considers the legal question of whether "a probable future dispute over legal rights between parties is sufficiently ripe to represent an 'actual controversy' within the meaning of [Section 1060], as opposed to purely hypothetical concerns." *Id.* (citing *Steinberg v. Chiang*, 223 Cal. App. 4th 338, 343 (2014)). An "actual controversy" under Section 1060 must be real and substantial and does not merely seek an advisory opinion based on a hypothetical set of facts. *Pacific Legal Foundation v. California Coastal Com*., 33 Cal. 3d 158, 171 (1982). The second prong concerns whether such an actual controversy merits declaratory relief as necessary and proper" under California Code of Civil Procedure section 1061. *Artus*, 19 Cal. App. 5th at 931. Plaintiff's declaratory relief claims fail under both prongs.

### 1.   Plaintiff Fails to Allege an Actual Controversy Because the Claims Are Based on Enforcement or Threatened Enforcement of SB 237, and the State Does Not Enforce SB 237

The SAC does not establish that there is an actual controversy between Plaintiff and the State because it contains no allegations that the State has taken any action to enforce, or has even

---

[9] The Fourth, Fifth, Sixth, and Ninth Causes of Action also seek declaratory relief under section 1983 of the Civil Rights Act, but for the reasons discussed below, these causes of action still fail to state a claim for relief.

16

threatened to enforce, SB 237. As discussed above, a cause of action for declaratory relief under Section 1060 must allege an "actual controversy" that is real and substantial, and does not merely seek an advisory opinion based on a hypothetical set of facts. *Pacific Legal Foundation*, 33 Cal. 3d at 170. Under this first prong, "courts will decline to adjudicate a dispute if 'the abstract posture of [the] proceeding makes it difficult to evaluate … the issues,' if the court is asked to speculate on the resolution of hypothetical situations, or if the case presents a 'contrived inquiry.'" *Farm Sanctuary, Inc. v. Department of Food & Agriculture*, 63 Cal. App. 4th 495, 502 (1998) (internal citations omitted). Plaintiff's anticipatory, pre-enforcement challenge to SB 237 fails the first prong because there is not an established set of facts by which the dispute may be adjudicated. *Wilson & Wilson v. City Council of Redwood City*, 191 Cal. App. 4th 1559, 1573-74 (2011). In the absence of concrete facts showing how the State enforced SB 237 against Plaintiff, the Court would be forced to engage with a set of hypothetical facts and speculate as to whether and how the State will enforce SB 237 against Plaintiff in order to issue a declaration. *Stonehouse Homes LLC v. City of Sierra Madre*, 167 Cal. App. 4th 531, 540 (2008). Without any allegations of when, how, or if the State will enforce the statute against Plaintiff, the case amounts to seeking an advisory opinion on a hypothetical application of future law. *Pacific Legal Foundation*, 33 Cal. 3d at 171. A dispute based on a hypothetical set of facts lacks the "known parameters" necessary to be considered an actual controversy under Section 1060. *Sanctity of Human Life Network v. California Highway Patrol*, 105 Cal. App. 4th 858, 872 (2003). As noted by the California Court of Appeal in *City of Santa Monica v. Stewart*, 126 Cal. App. 4th 43, 63-64 (2005), "judicial decisionmaking is best conducted in the context of an actual set of facts so that the issues will be framed with sufficient definiteness to enable the court to make a decree finally disposing of the controversy." *Id.* at 63-64 (citing *Pacific Legal Foundation*, 33 Cal. 3d at 170).

The SAC does not set forth any allegations that the State has taken any action, much less final action, to enforce SB 237. And yet, each cause of action in the SAC but for the Sixth is based on alleged application, enforcement, or threat of enforcement by Defendants, including the State. ECF No. 40, ¶¶ 90-91, 101, 109, 116, 119, 128, 144-46, 149, 151, 153-54, 161-62, 169. The only facts alleged in the SAC about purported actions to enforce SB 237 are letters sent by

17

the Coastal Commission and Office of the State Fire Marshal. *Id.*, ¶¶ 11, 13-14, 62-63. As discussed above, the State and the state agencies actually responsible for administering SB 237 are not one in the same, nor are they interchangeable entities. *Supra* at p. 10; *see also* Cal. Gov't Code § 11043. Plaintiff's failure to allege even a single fact showing that the State has applied, enforced, or threatened to enforce SB 237 shows that there is no actual controversy and justifies dismissal of the First through Fifth, Seventh, and Eighth Causes of Action as pled against the State.[10]

The First Cause of Action asserts there is an actual controversy between the parties "concerning the applicability of SB 237" based on "statements the State, through the Coastal Commission and Legislature, has previously made . . . threatening to enforce SB 237." ECF No. 40, ¶ 90. The Second Cause of Action asserting preemption by the federal Pipeline Safety Act is similarly based on the "risk of enforcement actions, penalties, or orders by the State." *Id.*, ¶ 101. The Third Cause of Action fails to present an actual controversy because it seeks a judicial declaration that the *application* of SB 237 to the Las Flores Pipelines is preempted by the DPA Order. ECF No. 40, ¶ 110. The Fourth, Fifth, Seventh, and Eighth Causes of Action are similarly based on enforcement or threatened enforcement of SB 237, as the law will be applied to Plaintiff's pipelines in particular. *Id.*, ¶ 116, 119, 128, 144, 149, 151, 153. Again, SB 237 has yet to be applied by the State, and implementation of SB 237 is left to state agencies. The State, as a separate entity from OSFM and the Coastal Commission, has not enforced or threatened to enforce SB 237, therefore these causes of action therefore fail to state a claim against the State.

Plaintiff contends an actual, present controversy exists between Plaintiff and the State as to the applicability of SB 237 based on statements made by the Legislature and letters issued by the Coastal Commission. ECF No. 40, ¶ 90. Again, this argument assumes that the State, its Legislature, and state agencies are a single entity—they are not. Cal. Gov't Code § 11043(c) ("Every state agency is a separate legal entity."); *People ex rel Lockyer*, 122 Cal. App. 4th 1060

---

[10] The Ninth (Takings) and Tenth (Injunctive Relief) Causes of Action do not seek declaratory relief, but they nonetheless fail to state a claim because they too are based on enforcement or threatened enforcement, and the SAC contains no factual allegations that the State has enforced or threatened to enforce SB 237 to support a claim for relief against the State.

18

at 1078-79 ("Each agency or department of the state is established as a separate entity, under various state laws or constitutional provisions."); *see also In re California*, No. 25-584, 2025 WL 2427608, at *2 (9th Cir. Aug. 22, 2025). Plaintiff also contends, citing to *Meyer v. Sprint Spectrum L.P.*, 45 Cal. 4th 634, 647 (2009), that it does not seek advisory opinions or abstract interpretations of law with respect to the First, Second, and Third Causes of Action because it must make immediate operational and financial decisions regarding whether to continue transporting petroleum at the risk of enforcement, penalties, or orders by the State. *Id.*, ¶ 91, 101, 109. *Meyer* does not support this contention because that case makes clear that "declaratory relief is designed in large part as a practical means of resolving controversies," meaning the resolution of the controversy must have practical consequences and will help the parties conform their conduct to the law and prevent future litigation. *Meyer*, 45 Cal. 4th at 648. The supposed controversy for which Plaintiff seeks judicial declarations has no practical effect here, where there are no allegations that the State has enforced or intends to enforce SB 237. Additionally, Plaintiff already made its decision to restart the Las Flores Pipelines. ECF No. 40, ¶ 91. For the Fourth, Fifth, Seventh, and Eighth Causes of Action, Plaintiff alleges a bona fide and actual controversy exists because Plaintiff and the State disagree as to whether SB 237 violates Plaintiff's due process or equal protection rights, constitutes a bill of attainder, impairs Plaintiff's vested rights, and violates the Takings Clause of the California and U.S. Constitutions. ECF No. 40, ¶¶ 120, 129, 137, 145, 155. But as discussed, each of these causes of action (except the Sixth) is in fact based on enforcement or threatened enforcement of SB 237, and the SAC contains no factual allegations as to how the State has enforced or threatened to enforce SB 237. For these reasons, none of the causes of action state a claim from relief against the State.

### 2. Declaratory Relief Is Not Necessary or Proper Under the Circumstances

The second prong in assessing the sufficiency of allegations to support a declaratory relief claim is determining whether the Court's declaration or determination is necessary or proper at the time under all the circumstances. Cal. Code of Civil Proc. § 1061. The declaratory relief Plaintiff seeks in the SAC is not necessary or proper because other litigation can—and should—

19

resolve this dispute and Plaintiff's dispute should be raised with the individual agencies who enforce SB 237 after they have taken final agency action and Plaintiff has exhausted administrative remedies.

Whether other litigation will resolve one or more of the issues on which declaratory relief is requested is relevant in assessing whether the court may decline to hear a declaratory relief claim under section 1061. *Fagerstedt v. Continental Ins. Co.*, 266 Cal. App. 2d 370, 373 (1968) (citations omitted). Courts will generally "not consider issues based on speculative future harm" which is "particularly true where the complaining party will have the opportunity to pursue appropriate legal remedies should the anticipated harm ever materialize." *Metropolitan Water District of Southern California v. Winograd*, 24 Cal. App. 5th 881, 893 (2018). Here, if any enforcement action is taken by any state agency, Plaintiff would have a remedy to challenge such action by way of a petition for writ of mandate challenging that final and concrete state agency action. Cal. Code Civ. P. §§ 1085, 1094.5.

The hardship of the parties resulting from withholding judicial consideration of a declaratory relief claim is also relevant in assessing whether a claim is necessary or proper under section 1061. *Farm Sanctuary, Inc.*, 63 Cal. App. 4th at 502. Until Plaintiff restarted the pipelines on March 14, 2026, the pipelines had not transported oil since 2015. Plaintiff claims it has "worked with federal and state agencies toward resuming petroleum transportation" including maintenance and repair work on the Las Flores Pipelines. ECF No. 40, ¶ 3. Nothing is preventing Plaintiff from seeking the necessary approvals required by SB 237 (e.g., hydrostatic spike testing and coastal development permit), and Plaintiff makes no allegations that it cannot obtain these approvals without violating the Pipeline Safety Act or DPA Order. Plaintiff is merely trying to seize upon the opportunity to circumvent state law that is created by its incorrect interpretation of the PHMSA Orders and DPA Order, but such opportunism does not create the type of hardship that renders declaratory relief necessary and proper, especially when the legality of the PHMSA Orders and DPA Order are being litigated in other pending cases. *Supra* at pp. 3-4 (discussing pending matters involving the Las Flores Pipelines).

Plaintiff also contends declaratory relief is necessary and proper because it will "prevent

20

multiplicity of actions." ECF No. 40, ¶ 93, 102. However, this lawsuit adds to the already-large number of pending actions resulting from Plaintiff's actions related to the Las Flores Pipelines. As Plaintiff has other remedies available if the circumstances ripen and action is taken by a state agency to enforce the new provisions of the Government and Public Resources Codes, other pending litigation will significantly affect Plaintiff's claims, and Plaintiff has not and will not suffer hardship if its declaratory relief claims are not heard, it is not necessary or proper for the Court to hear Plaintiff's declaratory relief claims and therefore the SAC should be dismissed.

### 3.    The Ninth and Tenth Causes of Action Fail to State a Claim Because They are Based on Enforcement or Threatened Enforcement

Similar to the declaratory relief causes of action discussed above, the Ninth and Tenth Causes of Action are based on enforcement or threatened enforcement of SB 237. ECF No. 40, ¶¶ 162, 168. For the same reasons discussed above, these causes of action should be dismissed because the SAC contains no factual allegations that the State has enforced or threatened to enforce SB 237. *Johnson*, 534 F.3d at 1121 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)) (dismissal may be based on "the absence of sufficient facts alleged under a cognizable legal theory.").

### B.    The Second Cause of Action Should Be Dismissed Due to Claim Splitting

The Ninth Circuit recognizes a well-established policy against claim splitting that prohibits a plaintiff from maintaining two separate actions involving the same subject matter at the same time against the same party. *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 886 (9th Cir. 2022). Here, the Second Cause of Action alleges that the PHMSA Orders establish exclusive federal jurisdiction over the Las Flores Pipelines. But Plaintiff already asserted this claim in the Ninth Circuit PHMSA Case. Accordingly, the Court should dismiss the Second Cause of Action as to the State.

Claim splitting "refers to the improper pursuit of more than one lawsuit against the same parties arising out of the same facts." *In re Don Rose Oil, Inc.*, 614 B.R. 358, 367 (Bankr. E.D. Cal. 2020). It is a species of claim preclusion and follows the same standards for determining whether the claim is duplicative, but it does not require final judgment on the merits in the prior

case before it can be applied. *Id.* at 367-68; *Marvel Entm't LLC v. Kimble*, CV-15-00404-TUC-RM, 2016 WL 9525586, at *3 n.6 (D. Ariz. Apr. 14, 2016). The claim-splitting doctrine promotes judicial economy, prevents the vexation of repetitive actions, and avoids the possibility of conflicting decisions. *Marvel*, 2016 WL 9525586, at *3 n.6.

The claim-splitting bar applies where (1) the actions arise out of the same transactional nucleus of facts, (2) involve infringement of the same right, (3) litigation would involve substantially the same evidence, and (3) continued litigation of the second suit could impair rights or interests that might be established in a judgment in the first. *Mendoza*, 30 F.4th at 887. The most important of the criteria is whether the two suits arise out of the same transactional nucleus of operative facts. *Id*. The doctrine also requires that the two actions involve the same parties or their privies. *Id*.

Plaintiff intervened in the Ninth Circuit PHMSA Case. That case involves both the State, by and through the Attorney General in his independent capacity, and OSFM. In that action, Plaintiff asserts that "PHMSA has exclusive jurisdiction and OSFM has none." Request for Judicial Notice, Ex. A, p. 26. In comparison, the SAC alleges:  "With PHMSA's assumption of jurisdiction and December 17, 2025 determination that the [Las Flores Pipelines are part of] an interstate pipeline under its exclusive regulatory oversight, OSFM no longer retains any regulatory authority over" the  Las Flores Pipelines. ECF No. 40, ¶ 96. Both claims arise out of the PHMSA Orders, and both involve Plaintiff's rights to perform, and OSFM's rights to regulate, activities related to and including the flow of oil through the Las Flores Pipelines. Thus, these cases will involve substantially the same evidence and legal arguments. Continuing to litigate the issue in this case could impair the rights or interests established in the Ninth Circuit litigation. Accordingly, the Second Cause of Action should be dismissed as to the State.

### C. The Fifth and Sixth Causes of Action Fail to State a Claim Because SB 237 Does Not Single Out or Apply to Any One Particular Person or Entity

With regard to the Fifth Cause of Action for violation of the Equal Protection Clause, "[a] successful equal protection claim may be brought by a 'class of one,' when the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no

rational basis for the difference in treatment." *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). Plaintiff has not, and cannot, allege that SB 237 treats it differently from others that are similarly situated. SB 237 applies to all pipelines or other oil or gas facilities that are idled, inactive, and out of service for five years or more. Additionally, the allegations in the SAC and matters that are judicially noticeable show that there was a rational legislative purpose for SB 237 and that there was a rational basis for targeting the legislation toward idled, inactive, and out of service pipelines.[11] *SeaRiver Mar. Fin. Holdings, Inc.*, 309 F.3d at 678-79. For instance, the Senate Rules Committee digest for SB 237, attached as Exhibit A to the SAC and FAC, states that the bill's provisions would require pipelines of a certain size (including but not limited to Plaintiff's pipelines) to meet specific testing requirements, and "address concerns surrounding the safety of restarting use of the repaired pipelines by requiring testing of the pipelines' durability." ECF No. 40 at 47 (Ex. A to SAC). Additionally, the SAC admits that the Las Flores Pipelines ruptured the last time they operated—underscoring the Legislature's concerns with safety and protecting the coastal zone. *Id.*, ¶ 40.

With regard to the Sixth Cause of Action, "[t]hree key features brand a statute a bill of attainder: that the statute (1) specifies the affected persons, and (2) inflicts punishment (3) without a judicial trial." *SeaRiver Mar. Fin. Holdings, Inc.*, 309 F.3d at 668. Plaintiff claims that SB 237 punishes the conduct of a single, specific entity by subjecting Plaintiff to the requirements of California Government Code section 51014.1 and California Public Resources Code section 30262. ECF No. 40, ¶¶ 135-36. Again, Plaintiff fails to state a claim upon which relief can be granted because the plain language of the statute belies Plaintiff's claims. Plaintiff claims that "SB 237 applies with specificity only to Pacific Pipeline Company as the owner of the [Las Flores Pipelines]." *Id.*, ¶ 134. Not so. SB 237, though likely applicable to Plaintiff, does not focus on any one entity or class.[12] The statute is couched in general terms appliable to any pipeline that

___

[11] In contrast to as applied challenges, the State, or the Attorney General representing the State, is a proper party when a State statute is facially challenged. *Taking Offense v. State of California*, 18 Cal. 5th 891, 921 (2025); *Samples v. Brown*, 146 Cal. App. 4th 787, 795 (2007). But the only two causes of action in the SAC that possibly present a facial challenge to SB 237 are both deficient as the allegations do not adequately support a cause of action.

[12] Even if the PHMSA or DPA Orders preempt application of SB 237, in whole or in part, to the Las Flores Pipelines, SB 237 could still apply to other pipelines, now or in the future.

23

fits the criteria laid out in the statute, and on its face does not name Plaintiff or any other pipeline owner. *SeaRiver Maritime Financial Holdings, Inc.*, 309 F.3d at 669.

While a statute need not specifically call out an individual by name in order to constitute a bill of attainder if it effectively singles out an individual by describing past conduct attributable to a particular person (*id.* at 670), SB 237 does no such thing. SB 237 does not use retrospective language that focuses on past conduct targeting any one group or individual. The relevant provisions at issue in this lawsuit apply broadly to *any* pipeline in the State that has been idle, inactive, or out of service for five years or more, and Plaintiff does not allege (and could not plausibly allege) that the Las Flores Pipelines are the only two meeting that description, either currently or in the future. Also, SB 237 regulates conditions that were *present* at the effective date of the legislation, not *past* behavior. If the Las Flores Pipelines had been legally restarted before January 1, 2026, then SB 237 could not apply. The statute also does nothing to single out any one particular operator, and the mere fact that SB 237 may be applicable to a particular operator does not mean the law constitutes a bill of attainder. Furthermore, if a law targets property as opposed to property owners, it is not a bill of attainder. *Id.* SB 237 targets pipelines, not individuals or a class of pipeline owners. For this additional reason, it does not qualify as a bill of attainder.

Accordingly, the only two causes of action in the SAC that potentially allege facial attacks on SB 237 fail to allege sufficient facts that adequately support a cause of action.

### D.   The Seventh Through Ninth Causes of Action Fail Because Plaintiff Has Not Alleged That Any Property Right Has Been Impaired or Taken

The Seventh (Vested Rights), Eighth (Inverse Condemnation), and Ninth (Takings) Causes of Action, which allege that Plaintiff's vested rights have been impaired, Defendants' actions constitute a taking, and Plaintiff is entitled to damages for Defendants' unconstitutional taking, fail to state a claim for the additional reason that Plaintiff admits that it is currently transporting oil through its pipelines. ECF No. 40, ¶¶ 91; ECF No. 22 at 6:16-18. In this sense, nothing has been taken from Plaintiff and Plaintiff's supposed property rights have not been impaired, and thus Plaintiff has not suffered any injury. To the extent Plaintiff believes any agency's future action will impair its vested rights or subject Plaintiff to an unconstitutional taking, Plaintiff will

24

have the opportunity to litigate those claims at the appropriate time, in the proper venue, after the agency has taken a final action. But these claims are improperly pled against the State, who has not and will not take any action to enforce SB 237.

Additionally, Plaintiff's Ninth Cause of Action for monetary damages fails because a State is not a "person" against whom a Section 1983 claim for money damages might be asserted. *Lapides*, 535 U.S. at 617 (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66 (1989)).

### E.    The Tenth Cause of Action Fails Because Injunctive Relief Is Not a Stand-Alone Cause of Action

In the Ninth Circuit, injunctive relief is a remedy and not, in itself, an independent cause of action. *A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F. Supp. 3d 727, 737-38 (E.D. Cal. 2020); *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1167 (N.D. Cal. 2013). Plaintiff's Tenth Cause of Action should be dismissed without leave to amend. *Id.*

### CONCLUSION

For the foregoing reason, the State respectfully requests that the Court grant its motion to dismiss and dismiss Plaintiff's claims against the State.

Dated:  July 29, 2026                                          Respectfully submitted,

ROB BONTA
Attorney General of California
BRANDON S. WALKER
Supervising Deputy Attorney General
JACK C. NICK
Deputy Attorney General

ISABELLA A. PANICUCCI
Deputy Attorney General
*Attorneys for Defendant*
*State of California*

# CERTIFICATE OF SERVICE

| Case Name: | **Pacific Pipeline Company, A Delaware Corporation v. State of California** | Case No. | **1:26-CV-01486-KES-CDB** |
|---|---|---|---|

I hereby certify that on July 29, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT STATE OF CALIFORNIA'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. My electronic service address is Antinia.Brown@doj.ca.gov.

Some participant(s) in the case are not registered CM/ECF users and will be served via e-mail.

I electronically served the aforementioned document[s] by emailing them to the following individual[s]:

Jeffrey Dintzer
Garrett B. Stanton
ALSTON & BIRD
**E-mail Address**: jeffrey.dintzer@alston.com
**E-mail Address**: garrett.stanton@alston.com

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on July 29, 2026, at Sacramento, California.

| Antinia Brown | | |
|---|---|---|
| Declarant | | Signature |

SA2025306665
39999000