ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General
MATTHEW BULLOCK (SBN 243377)
MICHAEL S. DORSI (SBN 281865)
Deputy Attorneys General
    455 Golden Gate Avenue, Suite 11000
    San Francisco, CA 94102-7004
    Telephone: (415) 510-3802
    Fax: (415) 703-5480
    E-mail: Michael.Dorsi@doj.ca.gov
*Attorneys for Defendants*
*California Department of Forestry and*
*Fire Protection, Office of the State Fire*
*Marshal, and Daniel Berlant, in his official*
*capacity as State Fire Marshal*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PACIFIC PIPELINE COMPANY, a Delaware Corporation,** | 1:26-CV-01486-KES-CDB |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, OFFICE OF THE STATE FIRE MARSHAL, AND DANIEL BERLANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT** |
| **STATE OF CALIFORNIA, a state government; CALIFORNIA COASTAL COMMISSION, a state agency; CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, a state agency; OFFICE OF THE STATE FIRE MARSHAL, a state agency; DANIEL BERLANT, in his official capacity as State Fire Marshal and DOES 1 through 25, inclusive,** | |
| Defendants. | Date: September 8, 2026<br>Time: 1:30 p.m.<br>Courtroom: 6 [7th Floor]<br>Judge: The Honorable Kirk E. Sherriff<br><br>Trial Date: None Set<br>Action Filed: September 29, 2025 |

**TABLE OF CONTENTS**

**Page**

Introduction ....................................................................................................................... 1

Background ......................................................................................................................... 2

Legal Standards ................................................................................................................. 5

Argument ............................................................................................................................ 6

I. This Court Lacks Article III Jurisdiction Over CAL FIRE, OSFM, and Fire Marshal Berlant Because the Claims Asserted Against Them are Not Ripe for Adjudication ...................................................................................................... 6

    A. The Fire Marshal Defendants Have Not Communicated a Specific Warning or Threat ................................................................................ 6

    B. There is No History of Prosecution Under SB 237 ................................... 8

II. Eleventh Amendment Immunity Bars Claims Against CAL FIRE, OSFM, and the Fire Marshal in the Second Amended Complaint ...................................... 8

    A. Sovereign Immunity Bars Claims Against the California Department of Forestry and Fire Protection, the Office of the State Fire Marshal, and Fire Marshal Berlant ......................................................... 9

    B. Sovereign Immunity Bars All State-Law Claims Against Fire Marshal Berlant in His Official Capacity, CAL FIRE, and OSFM .......... 10

    C. The State of California's Removal of this Case Does Not Waive Sovereign Immunity for Claims Not Yet Asserted Against Parties Not Yet Joined ...................................................................................... 11

        1. The State of California's Removal Does Not Waive Sovereign Immunity on Behalf of CAL FIRE, OSFM, and Berlant, who Were Not Parties at the Time of Removal ............... 11

        2. The State of California's Removal Does Not Waive Sovereign Immunity Against New Claims Not Pled at the Time of Removal ........................................................................... 13

III. The Court Should Dismiss Pacific Pipeline's Third Cause of Action Because there is no Basis for Relief Under the Defense Production Act ............. 16

    A. The DPA Does Not Allow Actors To Violate State Law With Impunity ................................................................................................. 17

        1. The Precedents of Two Federal Appeals Courts are Contrary to the Relief Sought by Pacific Pipeline ..................................... 17

        2. Pacific Pipeline Relies on a Flawed Opinion by the Office of Legal Counsel, Which is Inconsistent with the DPA ................ 18

        3. This Court Should Reject Pacific Pipeline's Attempt to Find Hidden but Vast Powers, Previously Unknown, in a Long-Standing Statute .................................................................. 19

    B. The DPA Has No Application Here Because Pacific Pipeline Does Not Allege, and Does Not Have, Other Contracts to Prioritize Over ....... 21

Conclusion ....................................................................................................................... 23

i

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Biden v. Nebraska*
  600 U.S. 477 (2023) ........................................................................................................... 20

*Bird v. Or. Comm'n for the Blind*
  22 F.4th 809 (9th Cir. 2022) ............................................................................................... 9

*Bond v. United States*
  572 U.S. 844 (2014) ........................................................................................................... 21

*Cascade Conservation League v. M.A. Segale, Inc.*
  921 F.Supp. 692 (W.D. Wash. 1996) ................................................................................ 13

*Chandler v. State Farm Mut. Auto. Ins. Co.*
  598 F.3d 1115 (9th Cir. 2010) ............................................................................................. 5

*Connerly v. Schwarzenegger*
  146 Cal. App. 4th 739 (2007) ............................................................................................ 12

*CSX Transp., Inc. v. Easterwood*
  507 U.S. 658 (1993) ........................................................................................................... 20

*Doe v. Regents of the Univ. of Cal.*
  891 F.3d 1147 (9th Cir. 2018) ........................................................................................... 10

*Durning v. Citibank, N.A.*
  950 F.2d 1419 (9th Cir. 1991) ..................................................................................... 9, 12

*Embury v. King*
  361 F.3d 562 (9th Cir. 2004) ................................................................................. 9, 13, 14

*Glenn v. Tyson Foods, Inc.*
  40 F.4th 230 (5th Cir. 2022) .............................................................................................. 19

*Golden Eagle Ins. Co. v. Travelers Cos.*
  103 F.3d 750 (9th Cir. 1996) ............................................................................................. 10

*Hercules, Inc. v. United States*
  24 F.3d 188 (Fed. Cir. 1994) ..................................................................................... 2, 16-22

*Hercules, Inc. v. United States*
  516 U.S. 417 (1996) ..................................................................................................... 18, 20

*Hess v. Port Auth. Trans-Hudson Corp.*
  513 U.S. 30 (1994) ............................................................................................................. 16

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Horton v. Kansas City S. Ry. Co.*
  692 S.W.3d 112 (Tex. 2024)......................................................................................... 21

*In re Agent Orange Prod. Liab. Litig.*
  597 F.Supp. 740 (E.D.N.Y. 1984) ................................................................................ 20

*In re California*
  No. 25-584, 2025 WL 2427608 (9th Cir. Aug. 22, 2025)............................................. 11

*In re Gilead Sci. Sec. Litig.*
  536 F.3d. 1049 (9th Cir. 2008)......................................................................................... 5

*In re Lazar*
  237 F.3d 967 (9th Cir. 2001)......................................................................................... 14

*Jenkins v. Washington*
  46 F.Supp.3d 1110 (W.D. Wash. 2014)........................................................................ 14

*Johnson v. Tyson Foods,Inc.*
  580 F.Supp.3d 382 (N.D. Tex. 2022) ........................................................................... 19

*Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*
  616 F.3d 963 (9th Cir. 2010)........................................................................................... 9

*Learning Res., Inc. v. Trump*
  607 U.S. 229 (2026)...................................................................................................... 20

*Lujan v. Defenders of Wildlife*
  504 U.S. 555 (1992)......................................................................................................... 6

*McLean v. State of California*
  1 Cal.5th 615 (2016) ..................................................................................................... 12

*Papasan v. Allain*
  478 U.S. 265 (1986) ........................................................................................................ 9

*Pennhurst State Sch. & Hosp. v. Halderman*
  465 U.S. 89 (1984) ................................................................... 2, 8, 10, 11, 13, 14

*People ex rel Lockyer v. Superior Court*
  122 Cal. App. 4th 1060 (2004)..................................................................................... 11

*Reed v. Tyson Foods, Inc.*
  No. 21-cv-01155, 2021 WL 5107725 (W.D. Tenn. Nov. 3, 2021)................................ 19

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Resighini Rancheria v. Bonham*
872 F.Supp.2d 964 (N.D. Cal. 2012) ................................................................. 6, 7

*Rincon Band of Mission Indians v. County of San Diego*
495 F.2d 1 (9th Cir.1974) ................................................................................. 6, 7

*Safe Air for Everyone v. Meyer*
373 F.3d 1035 (9th Cir. 2004) ............................................................................. 5

*Smith v. Reeves*
178 U.S. 436 (1900) ............................................................................................ 9

*Texas v. Caremark, Inc.*
584 F.3d 655 (5th Cir. 2009) ........................................................................ 14, 15

*Thomas v. Anchorage Equal Rights Comm'n*
220 F.3d 1134 (9th Cir. 2000) .......................................................................... 6, 8

*U.S. Parole Comm'n v. Geraghty*
445 U.S. 388 (1980) ............................................................................................ 6

*United States Forest Serv. v. Cowpasture River Pres. Ass'n*
590 U.S. 604 (2020) .......................................................................................... 21

*United States v. Chavez-Vernaza*
844 F.2d 1368 (9th Cir. 1987) .......................................................................... 19

*United States v. Vertac Chem. Corp.*
46 F.3d 803 (8th Cir. 1995) ...................................................................... 2, 17-20

*Util. Air Regul. Grp. v. Env't Prot. Agency*
573 U.S. 302 (2014) .......................................................................................... 20

*W. Virginia v. Env't Prot. Agency*
597 U.S. 697 (2022) .......................................................................................... 20

*Walden v. Nevada*
945 F.3d 1088 (9th Cir. 2019) ............................................................................. 9

*Wilson v. Craver*
994 F.3d 1085 (9th Cir. 2021) ............................................................................. 5

*Woods v. U.S. Bank N.A.*
831 F.3d 1159 (9th Cir. 2016) ............................................................................. 5

iv

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Ex Parte Young*
209 U.S. 123 (1908) .................................................................................. 8, 9, 10, 11

**STATUTES**

49 U.S.C. § 60119 ........................................................................................................ 3

50 U.S.C.
Appendix § 2157 .................................................................................................... 17
§ 4511 ...................................................................................................................... 21
§ 4511(a) ........................................................................................................... 18, 21
§ 4511(c) .................................................................................................................. 22
§ 4557 ............................................................................................................ 17, 18, 20
§ 4558(j) .......................................................................................................... 17, 20

Cal. Gov't Code
§ 11043(a)(2) .................................................................................................... 11, 12
§ 11043(a)(3) .......................................................................................................... 11
§ 11043(c) ............................................................................................................... 11
§ 11043(d) ............................................................................................................... 12

**COURT RULES**

Federal Rule of Civil Procedure
12(b)(1) ..................................................................................................................... 5
12(b)(6) ..................................................................................................................... 5

**OTHER AUTHORITIES**

Brief for United States as Amicus Curiae, *Glenn v. Tyson Foods, Inc.*
Nos. 21-40622, 21-11110 (40 F.4th 230), 2022 WL 110715 ................................. 19

Brief for Respondent United States, *Hercules, Inc. v. United States*
No. 94 818 (516 U.S. 417), 1995 WL 495540 .................................................. 18, 20

Jeffrey S. Sutton, *Who Decides? States as Laboratories of Constitutional
Experimentation* (2021) ........................................................................................ 11

**INTRODUCTION**

Article III confers, on the federal courts, the power to resolve cases or controversies. To have a case, a party must suffer an injury, and that injury must be actual and imminent, not conjectural or hypothetical. A threat of prosecution can, in certain cases, give rise to an imminent injury, but rarely does that injury arise from the enactment of a statute. The plaintiff in this case, Pacific Pipeline Company, with its parent company Sable Offshore Corp., initially worked with the State Fire Marshal on pipeline safety. Pipelines CA-324/325, Pacific Pipeline's asset, does not have a working anti-corrosion system, and as a result, requires a government agency's approval of its alternative safety measures. The Fire Marshal issued State Waivers, documents that impose conditions that Pacific Pipeline was required to carry out to operate its pipelines. But Pacific Pipeline did not complete the conditions—though it disagreed with the Fire Marshal's conclusion, Pacific Pipeline opted not to litigate that issue. Instead, it turned to the federal government for different approvals, and officially "relinquishe[d], surrender[ed,] and abandon[ed] the State Waivers." Second Amended Complaint (SAC), Exhibit I. The Fire Marshal sent a letter in response that confirmed the effectiveness of Pacific Pipeline's relinquishment, surrender, and abandonment of the State Waivers, and reserved the right to enforce California law.

Pacific Pipeline's request for relief against Fire Marshal Daniel Berlant (Berlant), the Office of the State Fire Marshal (OSFM), and the California Department of Forestry and Fire Protection (CAL FIRE) relies on this response letter and its reservation of rights. SAC, ¶ 13. Based on that letter, Pacific Pipeline seeks declaratory relief on eight causes of action, plus additional claims for taking of property and injunctive relief. In its prayer for relief, Pacific Pipeline seeks declaratory and injunctive relief concerning California SB 237, a piece of legislation not even mentioned, let alone threatened to be enforced, in the Fire Marshal's letter. The Fire Marshal's letter reserving his rights does not create a dispute that is ripe for adjudication.

In addition, Pacific Pipeline seeks to bring claims directly against CAL FIRE, OSFM, and Berlant, despite such claims being barred by the agencies' sovereign immunity. Pacific Pipeline

also brings claims under state law in federal court—a practice the federal courts have rejected for over 40 years. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984).

If this Court finds that Pacific Pipeline's Second Amended Complaint survives those defects, it would still fail to state claims for relief. Notably, Pacific Pipeline claims that an order under the Defense Production Act—an order that operates between Pacific Pipeline and the federal government—is so expansive that it serves to preempt state laws including SB 237. The Complaint fails to disclose that two circuit courts of appeals already rejected the sweeping preemption theory that Pacific Pipeline would have this Court adopt. *See United States v. Vertac Chem. Corp.*, 46 F.3d 803, 812 (8th Cir. 1995), *Hercules, Inc. v. United States*, 24 F.3d 188, 203-04 (Fed. Cir. 1994). If this Court does not entirely dismiss Berlant, OSFM, and CAL FIRE based on lack of standing or sovereign immunity, it should dismiss the Third Cause of Action (Defense Production Act preemption) for failure to state a claim upon which relief can be granted.[1]

## BACKGROUND

The Second Amended Complaint names, for the first time in this case (but not the first time in the related cases), CAL FIRE, OSFM, and Berlant, seeking declaratory and injunctive relief against these three defendants. Prior motions have provided this Court with extensive background on SB 237. But the Fire Marshal is new to the case, so this Background will focus on the Fire Marshal's role in these cases.

Pacific Pipeline, its parent company Sable Offshore Corp, and the Fire Marshal are not strangers. Their litigation odyssey began with Sable's request for State Waivers, which, if complied with, could have resulted in the Fire Marshal's formal authorization to restart pipelines CA-324/325, which would then be operated under the Fire Marshal's ongoing supervision. *See* Request for Judicial Notice ("RJN"), Exhs. 1-2 (State Waivers). The Fire Marshal, Sable, and Pacific Pipeline jointly defended the State Waivers against motions for preliminary injunctions by

---

[1] Pacific Pipeline similarly claims that orders under the Pipeline Safety Act preempt state law. Those orders are presently subject to challenge at the Ninth Circuit Court of Appeals in the consolidated cases of *Environmental Defense Center v. PHMSA*, Ninth Circuit case no. 25-8059, and *California v. PHMSA*, Ninth Circuit Case 26-508 (argument held July 7, 2026), and may also be addressed in the recently-filed case *California v. PHMSA*, Ninth Circuit Court of Appeals case no. 26-4629. At least for now, this Court should save its time and effort and wait for the Ninth Circuit to have an opportunity to resolve the Pipeline Safety Act preemption.

environmental non-governmental organizations. Those cases resulted in a narrow but meaningful preliminary injunction against Sable and Pacific Pipeline, prohibiting restart of pipelines CA-324/325 until Sable and Pacific Pipeline obtained further regulatory approvals. *See* Order Granting Preliminary Injunction, *CBD v. CAL FIRE*, attached to RJN as Exh. 4.[2] That injunction remains in place to this day, but Sable and Pacific Pipeline never obtained those approvals.

In fall 2025, the Fire Marshal informed Sable and Pacific Pipeline that they had not completed remediation under the terms of the State Waivers. RJN, Exh. 5. The Fire Marshal explained that numerous anomalies—places where the pipelines had corroded—would need to be repaired prior to restart.[3] Pacific Pipeline did not repair those anomalies. Instead, Sable and Pacific Pipeline asked the federal Pipeline and Hazardous Materials Safety Administration (PHMSA) to assert federal jurisdiction and supplant the Fire Marshal as safety regulator. RJN, Exh. 6. In December 2025, PHMSA agreed, asserting jurisdiction under the Pipeline Safety Act (PSA) and issuing its own permits. SAC, Exhs. B-D.

Sable and Pacific Pipeline then asked the Santa Barbara County Superior Court to lift its injunction. The Fire Marshal challenged PHMSA's orders in the Ninth Circuit Court of Appeals,[4] and urged the Superior Court to deny Sable and Pacific Pipeline's motion. On February 26, 2026, the Superior Court issued a tentative ruling denying the motion for reconsideration. Later that afternoon, Sable and Pacific Pipeline sent a letter to the Fire Marshal that "relinquishe[d], surrender[ed] and abandon[ed] the State Waivers." RJN, Exh. 7. At its hearing the following day, the Superior Court found this last-minute maneuver to create mootness unpersuasive and adopted its tentative ruling denying the first motion for reconsideration. RJN, Exh. 8.

---

[2] The full name of the State Waivers case is *Center for Biological Diversity, et al. v. California Department of Forestry and Fire Protection, et al. (Sable Offshore Corp. and Pacific Pipeline Company, Real Parties in Interest)*, This case was Santa Barbara County Superior Court case no. 25CV02244, consolidated with case no. 25CV02247. After removal to the U.S. District Court for the Central District of California, where the case was renumbered 2:26-cv-05242-SVW.

[3] While Sable and Pacific Pipeline disagree with the Fire Marshal's letter, contending that their remediation of other anomalies sufficed and they were not obligated to remediate, prior to restart, the anomalies discussed in the letter, Sable and Pacific Pipeline did not dispute the fact that the did not, in fact, remediate the anomalies discussed in the Fire Marshal's letter.

[4] Under 49 U.S.C. § 60119, facial challenges to PHMSA orders under the PSA are brought directly in federal courts of appeals.

3

The following week, the United States Department of Justice Office of Legal Counsel released an opinion discussing the potential application of the Defense Production Act (DPA) to Sable, Pacific Pipeline, and pipelines CA-324/325. SAC, Exh. G. And the week after that, the Secretary of Energy issued an order under the DPA directed to Sable. SAC, Exh. F (the "DPA Order"). This time, Sable and Pacific Pipeline not only asked the Superior Court to dissolve its injunction—this time based on the DPA Order—but also, rather than waiting for the Superior Court to act, Sable and Pacific Pipeline also promptly restarted pipelines CA-324/325 (despite the preliminary injunction remaining in effect). On April 17, 2026, the Superior Court rejected this second motion for reconsideration and set a hearing on the enforcement of the preliminary injunction for May 22, 2026. In its order denying this motion, the Superior Court explained that the reasoning of two federal appellate courts "strongly implies that the DPA order, by itself, does not permit the violation of applicable state regulatory law." Order Denying Second Motion for Reconsideration, *CBD v. CAL FIRE*, at 11, attached to RJN as Exh. 9.

On May 14, 2026, Sable, Pacific Pipeline, and the U.S. removed *CBD v. CAL FIRE* to the U.S. District Court for the Central District of California, and, on the following day, moved that court to dissolve the preliminary injunction. The environmental organization plaintiffs and the Fire Marshal each moved to remand the case to the Superior Court. As of this filing, all three motions are fully briefed, argued, and under submission.

Pacific Pipeline is also a plaintiff in another federal district court case: *Sable Offshore Corp., et al. v. County of Santa Babara, et al*. Also in the Central District, that case challenges the County's denial of certain permit transfers. Sable and Pacific Pipeline raised claims, including preemption under the DPA and PSA, that Pacific Pipeline also asserts here. The District Court granted the County and defendant-intervenor environmental groups' motion to dismiss the DPA claim with leave to amend, rejecting Sable's proposed application of the DPA. (RJN, Exh. 10.)

Last, the Ninth Circuit challenges to the PHMSA orders are ongoing. The Fire Marshal and Pacific Pipeline are both parties to the consolidated cases *Environmental Defense Center v. PHMSA*, Ninth Circuit case no. 25-8059, and *California v. PHMSA*, Ninth Circuit Case no. 26-508. In those cases, California and environmental non-government organizations challenged

4

PHMSA's reclassification of pipelines CA-324/325 as interstate pipelines. The Ninth Circuit held argument on July 7, 2026. Adding to the complexity, on June 25, 2026, PHMSA issued a new Special Permit with a new jurisdictional determination. After argument, the Ninth Circuit ordered supplemental briefing to address, *inter alia*, whether, because of a new agency action by PHMSA, the Court of Appeals would need a new petition in order to rule on whether PHMSA properly asserted exclusive jurisdiction over CA-324/325. RJN, Exh. 11. In addition to supplemental briefing, California filed a new petition, *California v. PHMSA*, Ninth Circuit case no. 26-4629, challenging the new PHMSA actions.

## LEGAL STANDARDS

"The party asserting federal subject matter jurisdiction bears the burden of proving its existence." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). "A Rule 12(b)(1) jurisdictional attack may be facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "In a facial attack" under Rule 12(b)(1), "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* However, if Defendants mount a factual attack on jurisdiction, the district court may review evidence beyond the complaint, and "[t]he court need not presume the truthfulness of the plaintiff's allegations." *Id.*

Under Rule 12(b)(6), a complaint fails "to state a claim to relief" when it lacks either "a cognizable legal theory or … sufficient facts alleged under a cognizable legal theory." *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016) (internal quotation marks omitted). The Court must generally "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs," but need not "accept as true allegations that contradict matters properly subject to judicial notice" or "that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sci. Sec. Litig.*, 536 F.3d. 1049, 1055 (9th Cir. 2008) (internal quotation marks omitted). Courts also "need not accept as true legal conclusions couched as factual allegations." *Wilson v. Craver*, 994 F.3d 1085, 1090 (9th Cir. 2021).

**ARGUMENT**

**I.** **THIS COURT LACKS ARTICLE III JURISDICTION OVER CAL FIRE, OSFM, AND FIRE MARSHAL BERLANT BECAUSE THE CLAIMS ASSERTED AGAINST THEM ARE NOT RIPE FOR ADJUDICATION**

For a federal court to have jurisdiction under Article III of the United States Constitution, the plaintiff must have standing and the case must be ripe. The judicial "role is neither to issue advisory opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). Standing under Article III requires, inter alia, an injury in fact that is definite and concrete. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Ripeness has both a constitutional and prudential component; the constitutional component often overlaps with standing. The United States Supreme Court characterized ripeness as "standing set in a time frame." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980) (quoting Henry P. Monaghan, *Constitutional Adjudication: The Who and When*, 82 Yale L.J. 1363, 1384 (1973)). The Ninth Circuit Court of Appeals, acknowledging the overlap between ripeness and the injury-in-fact requirement for Article III standing, articulated a three-prong test for ripeness and standing in pre-enforcement challenges: "[W]e look to [1] whether the plaintiffs have articulated a 'concrete plan' to violate the law in question, [2] whether the prosecuting authorities have communicated a specific warning or threat to initiate proceedings, and [3] the history of past prosecution or enforcement under the challenged statute." *Thomas*, 220 F.3d at 1139. No allegation in the Second Amended Complaint nor any document indicates that the second or third prong is satisfied here.[5]

**A.** **The Fire Marshal Defendants Have Not Communicated a Specific Warning or Threat**

A letter conveying the state's view of a law, absent any threat of enforcement, is not a specific threat to initiate proceedings. *See Resighini Rancheria v. Bonham*, 872 F. Supp. 2d 964, 972 (N.D. Cal. 2012) (citing *Rincon Band of Mission Indians v. County of San Diego*, 495 F.2d 1

---

[5] Although this Motion does not address whether Pacific Pipeline has articulated a plan to violate the law, the decision not to address that issue does not create a legal consequence. The Court must be satisfied with its own jurisdiction, regardless of the parties' selection of arguments.

6

Memo. of P's & A's ISO California Fire Marshal's Motion to Dismiss Plaintiff's Second Amended Complaint
(1:26-CV-01486-KES-CDB)

(9th Cir.1974)). In *Rincon*, the San Diego County Sherriff announced his view that the plaintiff's proposed action—gambling—was illegal and stated that the law would be applied equally to all persons in the County. *See Rincon*, 495 F.2d at 4. The Ninth Circuit explained that the plaintiff bore the burden to present evidence of enforcement and that the lack of immediacy in the Sheriff's letter meant that the letter was not a specific threat sufficient to cause an injury. *Id.* at 5. Similarly, in *Resighini*, the California Department of Fish and Wildlife sent a letter indicating its view that the plaintiffs' conduct—fishing on the Klamath River—was illegal and stated that the Department of Fish and Wildlife had authority to commence criminal prosecution against the plaintiffs. *See Resighini*, 872 F. Supp. 2d at 967, 973. The District Court concluded that because the statements by the Department of Fish and Wildlife did not say that it would enforce the law against the plaintiffs, there was no injury in fact. *Id.* at 973.

Pacific Pipeline's basis to seek relief against CAL FIRE, OSFM, and Berlant is *less threatening* than what courts have found insufficient in *Resinghini* and *Rincon*. Pacific Pipeline's allegations against CAL FIRE, OSFM, and Berlant arise from a one-page letter attached to the Second Amended Complaint as Exhibit I.  In that letter, Fire Marshal Berlant (1) acknowledges receipt of the letter relinquishing the State Waivers, (2) states that Sable and Pacific Pipeline did not comply with the State Waivers while they were in effect, (3) explains that abandonment, surrender, and relinquishment of the State Waivers is effective, (4) cautions that restart without State Waivers would violate state law and the Superior Court's preliminary injunction, and (5) reserves the right to enforce California law if Sable and Pacific Pipeline restart without a waiver.

A review of Pacific Pipeline's Second Amended Complaint makes clear that its argument depends entirely on the fifth point—the final sentence of Exhibit I—which contains a reservation of rights. Specifically, Pacific Pipeline alleges that "State Fire Marshal Berlant notified Sable that 'OSFM reserves all rights to enforcement action if operations on Lines 324 and/or 325 re-commence without a valid State Waiver' issued by OSFM." SAC, ¶ 13 (citing SAC, Exh. I). This is not a specific warning or threat. The Fire Marshal's reservation of rights, like the communications in *Resinghini* and *Rincon*, simply states an agency's position about the law.

More, Fire Marshal Berlant's letter does not say *anything* about SB 237, which is the subject of this case. Instead, the letter reflects the pre-existing requirements for State Waivers under California law. Those requirements existed prior to SB 237. But the relief sought by Pacific Pipeline in this case is entirely about SB 237. *See* SAC, Prayer, ¶¶ 1-8. 10. Because Fire Marshal Berlant's letter—Exhibit I—says nothing about SB 237, there is no ripe claim based on a threat of enforcement, and, in fact, no ripe claim at all against CAL FIRE, OSFM, or Berlant.

### B.    There is No History of Prosecution Under SB 237

This Court must also consider the history of enforcement of the relevant statute (here, SB 237). *Thomas*, 220 F.3d at 1140-41. In *Thomas*, a survey of agency practice showed no criminal enforcement and two civil enforcement proceedings. *Id.* The Ninth Circuit concluded that this history of enforcement was insufficient to conclude that the matter was ripe or that the plaintiff suffered an injury in fact. *Id.* at 1141. Here, there is no history of enforcement *at all*. CAL FIRE, OSFM, and Berlant have not engaged in civil or criminal enforcement concerning SB 237, and Pacific Pipeline has not alleged anything to the contrary.

***

Pacific Pipeline asks this Court to adjudicate hypothetical enforcement by the Fire Marshal against Pacific Pipeline. But there is no way to know what facts might change between now and any hypothetical enforcement. A simple reservation of rights with no further statement does not provide the contours of a live dispute and does not make a case ripe.

### II.    ELEVENTH AMENDMENT IMMUNITY BARS CLAIMS AGAINST CAL FIRE, OSFM, AND THE FIRE MARSHAL IN THE SECOND AMENDED COMPLAINT

State agencies and officials are afforded immunity from suit under the Eleventh Amendment of the U.S. Constitution. The Eleventh Amendment prevents federal courts from exercising jurisdiction over claims against state agencies unless there has been express and unequivocal consent or waiver, express and unequivocal Congressional abrogation of the State's immunity, or where the *Ex Parte Young* doctrine applies to federal claims against state officials. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). If ambiguous, a waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign."

8

*Bird v. Or. Comm'n for the Blind*, 22 F.4th 809, 814 (9th Cir. 2022) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)). In this case, by its removal of the FAC to federal court (ECF No. 1), the State, on behalf of itself and not CAL FIRE, OSFM, or Berlant, who were non-parties at the time,[6] consented to federal jurisdiction over a narrow case involving just two causes of action.

### A. Sovereign Immunity Bars Claims Against the California Department of Forestry and Fire Protection, the Office of the State Fire Marshal, and Fire Marshal Berlant

This Court lacks subject matter jurisdiction over CAL FIRE, OSFM, and Berlant in this action because sovereign immunity bars Pacific Pipeline's claims against them. Under the Eleventh Amendment, a state is immune from suits brought in federal court by its own citizens or citizens of other states. *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Walden v. Nevada*, 945 F.3d 1088, 1092 (9th Cir. 2019). This immunity extends to state agencies and their subdivisions. *Krainski v. Nevada ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010) (quoting *Romano v. Bible*, 169 F.3d 1182, 1185 (9th Cir. 1999)) ("The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state."). Accordingly, the Court should dismiss CAL FIRE, OSFM, and Berlant.

As to CAL FIRE and OSFM, there is no basis to cure, so the Court should dismiss the agencies without leave to amend. As to Fire Marshal Berlant in his official capacity, *Ex Parte Young*, 209 U.S. 123 (1908), allows an exception for claims against an official, in the official capacity, for prospective injunctive relief only. Accordingly, claims against Berlant for damages should be dismissed without leave to amend. If, in opposition, Pacific Pipeline demonstrates a plausible amendment (for which it would have standing) to seek prospective injunctive relief against Berlant, the Court may consider granting leave to amend.

---

[6] In the order granting Plaintiff's motion for leave to file the SAC, Magistrate Judge Baker was not persuaded that the State and state agencies were separate entities in the sovereign immunity context. ECF No. 39 at 11 n.2. However, the order's cited authorities, *Durning v. Citibank, N.A*., 950 F.2d 1419, 1423 (9th Cir. 1991) and *Smith v. Reeves*, 178 U.S. 436, 439 (1900) focused on why agencies are entitled to immunity as arms of the state and did not address the scope of a state's waiver of immunity. As discussed in Part II.C and footnote 9, *Embury* does not hold that waiver of immunity is unlimited and extends to claims outside the existing case or matter as it was constituted at the time of removal. The order also suggested that such determinations should be reserved for a motion to dismiss. ECF No. 39 at 10:25-11:13, n.2-3.

### B.     Sovereign Immunity Bars All State-Law Claims Against Fire Marshal Berlant in His Official Capacity, CAL FIRE, and OSFM

Sovereign immunity also bars Pacific Pipeline's causes of action, as pled, because these claims, asserted against California agencies and a California official in his official capacity, arise under state law. The Eleventh Amendment bars claims brought in federal court seeking to issue commands to states, state agencies, and state officials on how to conform to their state's own laws. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106, (1984) ("[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law.") Unlike the bar against suits against state agencies, *see supra* Part II.A, this applies equally to state officials named in their official capacities. When a plaintiff makes such allegations in federal court, "the entire basis for the [*Ex parte Young* exception to sovereign immunity] disappears." *Pennhurst*, 465 U.S. at 106; *see also Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018) ("[T]he *Young* exception does not apply when a suit seeks relief under state law . . . ."). This is most pronounced in the First and Seventh causes of action, where Pacific Pipeline identifies its claims as arising exclusively under state law. SAC, ¶¶ 87-92, 143, 146.

In every cause of action, Pacific Pipeline relies, at least in part, on state law. The First through Eighth causes of action seek declaratory relief and invoke the provisions of the California Code of Civil Procedure.[7] Similarly, the Ninth Cause of Action invokes "article I, section 19, of the California Constitution," SAC, ¶ 162. The Tenth Cause of Action, for Injunctive Relief, is not itself a cause of action, but is a form of relief and derivative of the other causes of action.

While it is true that some of these causes of action also contain federal-law grounds for relief, no cause of action explains how those federal-law grounds for relief can operate independently of the state-law grounds for relief. To the extent that Pacific Pipeline might be able

---

[7] It appears from Pacific Pipeline's redline, ECF 22-10, that it may have intended to remove, at least in part, its reliance on the California Code of Civil Procedure. If otherwise valid, such an amendment would be consistent with the rule that federal procedure controls in federal court. *See Golden Eagle Ins. Co. v. Travelers Cos.,* 103 F.3d 750, 753 (9th Cir. 1996), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol,* 133 F.3d 1220 (9th Cir. 1998) (en banc).

10

to cure by relying exclusively on federal law (and asserting claims only against Berlant, relying on *Ex Parte Young*), that is a basis for leave to amend, not a basis to deny this Motion.

### C. The State of California's Removal of this Case Does Not Waive Sovereign Immunity for Claims Not Yet Asserted Against Parties Not Yet Joined

The State of California's removal of this case created a limited waiver of sovereign immunity—as to the State of California as defendant and as to the First and Second causes of action only. CAL FIRE, OSFM, and Berlant were not yet parties to the case, and any waiver by the State of California should not be imputed to them.

#### 1. The State of California's Removal Does Not Waive Sovereign Immunity on Behalf of CAL FIRE, OSFM, and Berlant, who Were Not Parties at the Time of Removal

Nothing in the Second Amended Complaint that suggests that the State expressly and unequivocally intended to waive sovereign immunity on behalf of the CAL FIRE, OSFM, or Berlant. The State's waiver should be strictly construed. *Pennhurst*, 465 U.S. at 102.

California law recognizes that the State and its agencies are distinct entities. "Every [California] state agency is a separate legal entity." Cal. Gov't Code § 11043(c). "Each agency or department of the state is established as a separate entity, under various state laws or constitutional provisions." *People ex rel Lockyer v. Superior Court*, 122 Cal. App. 4th 1060, 1078 (2004); *see In re California*, No. 25-584, 2025 WL 2427608, at *2 (9th Cir. Aug. 22, 2025) ("[T]he magistrate judge and district judge clearly erred by failing to follow *People ex rel. Lockyer v. Superior Court*"). "It is important to uphold the divided executive branch enacted by the California Constitution." Cal. Gov't Code § 11043(a)(3).[8]

This division is particularly important when it comes to litigation. The Attorney General only represents a state agency upon that agency's request, and that representation is limited to that specific matter. Cal. Gov't Code § 11043(a)(2). "When the Attorney General . . . defends an action in their independent capacity on behalf of the State of California . . . the Attorney General

---

[8] California's divided executive differs from the unitary executive of the federal system. *See* Jeffrey S. Sutton, *Who Decides? States as Laboratories of Constitutional Experimentation* 147-49 (2021) (noting that while the federal government follows a unitary executive model, most states have plural executives).

11

acts in the public interest of the State . . . and not as the legal representative or attorney of any state entity, including entities within the executive, legislative, or judicial branches." *Id.* at (d). State agencies are not parties to an action unless they are specifically named as a party. *Id.*; *see also Connerly v. Schwarzenegger*, 146 Cal. App. 4th 739, 748 & n.3 (2007).

When a plaintiff names the State as a defendant in a suit, the Attorney General will ordinarily attempt to identify the allegedly responsible agency, enter into an attorney-client relationship with that agency for the matter, and will respond to the complaint in the name of the State of California, "by and through" the allegedly responsible agency. *McLean v. State of California*, 1 Cal. 5th 615, 629 n.8 (2016); see also Cal. Gov't Code § 11043(a)(2).

Here, the original complaint and the First Amended Complaint merely named the State of California. They did not name CAL FIRE, OSFM, or Berlant, and Pacific Pipeline did not serve either complaint on CAL FIRE, OSFM, or Berlant. As a result, CAL FIRE did not request that the Attorney General represent it at that time (OSFM is a unit in CAL FIRE, and Berlant is an official within OSFM and CAL FIRE, so the request for representation is by CAL FIRE).

The Attorney General, in his independent capacity, is a separate arm of the State from the CAL FIRE. Although he has authority to invoke the federal court's jurisdiction on his own behalf, he does not have the authority to waive a separate agency's immunity unless an attorney-client relationship is established and he is representing that agency in the matter.

In its order granting leave to amend, which ultimately preserved this issue to be raised through a motion to dismiss, the court relied on *Durning v. Citibank, N.A.,* to suggest that the actions of the State are imputed to its agencies in the sovereign immunity context. But *Durning* does not analyze the scope of a *waiver* of sovereign immunity and does not take into account the actual relationships that exist between California state agencies and the Attorney General. In *Durning*, the issue was whether the Wyoming Community Development Authority was an arm of the State of Wyoming and thereby entitled to assert sovereign immunity under the Eleventh Amendment. *Durning v. Citibank, N.A.* (9th Cir. 1991) 950 F.2d 1419, 1423. The rationale cited by the Order is the rationale for why the agencies are arms of the state and *entitled to sovereign immunity*. Whether CAL FIRE is an arm of the state is not disputed.

12

Even if the State's removal created ambiguity, ambiguity does not suffice to waive sovereign immunity because a waiver of sovereign immunity must be unambiguous. CAL FIRE, OSFM, and Berlant acknowledge that the State does not dispute that its removal waived Eleventh Amendment Immunity to some extent. The scope of that waiver is disputed by all parties. But what cannot be overlooked is that a waiver must be unequivocal, and if it is ambiguous, it is to be strictly construed in favor of preserving immunity. *Pennhurst*, 465 U.S. at 102.

A comparison with federal agencies' sovereign immunity is instructive. In *Cascade Conservation League v. M.A. Segale, Inc.*, 921 F. Supp. 692 (W.D. Wash. 1996), the district court considered whether the Clean Water Act's express permission to sue the Administrator, which is defined as the Administrator of the Environmental Protection Agency ("EPA"), allowed a suit against the Army Corps of Engineers ("Corps"). *Id*. at 696. It found that it did not, even when some of the EPA's authority was delegated to the Corps. *Id*. The court recognized that it could not extend the waiver beyond its expressed bounds, but instead the waiver must be narrowly construed. *Id*. This is an easier case than *Cascade* because EPA and the Corps were components of the same unitary executive, while CAL FIRE, OSFM, and Berlant are agencies and an official in a plural executive.

### 2. The State of California's Removal Does Not Waive Sovereign Immunity Against New Claims Not Pled at the Time of Removal

In addition, the State's limited waiver of Eleventh Amendment immunity does not extend to Pacific Pipeline's new claims asserted in the SAC that arise from an entirely separate set of facts and therefore constitute a distinct matter or controversy, and certainly did not extend to any claims for money damages—one of the heartland concerns of state sovereign immunity and Eleventh Amendment immunity. These separate matters include the Third (DPA Preemption), Fourth (Due Process), Fifth (Equal Protection), Seventh (Vested Rights), Eighth (Inverse Condemnation), Ninth (Takings), and Tenth (Injunctive Relief) Causes of Action. Waiver of Eleventh Amendment immunity extends only to the "case" or "matter" at hand at the time of removal. *See Embury v. King*, 361 F.3d 562, 565 (9th Cir. 2004). This waiver is not unlimited. Understood correctly, a State's unambiguous, unequivocal waiver of immunity in removing a

13

lawsuit is only to the extent required for the lawsuit's determination and does not apply to claims that do not arise "out of the same transaction or occurrence," "claims of a different form or nature," or "claims exceeding [the] amount" sought. *Texas v. Caremark, Inc.*, 584 F.3d 655, 659 (5th Cir. 2009) (cleaned up). Consistent with this, *Embury* does not hold that a plaintiff may sidestep Eleventh Amendment immunity by adding a variety of new claims that arise out of a different set of facts, add constitutional and vested rights claims that are different in form and nature, and newly seek monetary damages, as Pacific Pipeline attempts here.[9]

The Ninth Circuit has addressed the scope of a State's waiver in the context of the State filing a proof of claim in a bankruptcy proceeding. *In re Lazar*, 237 F.3d 967, 977 (9th Cir. 2001). The court noted the inconsistency in the Circuits and determined that "the state waives its Eleventh Amendment immunity with regard to the bankruptcy estate's claims that arise from the same transaction or occurrence as the state's claim." *Id.* at 978. *Caremark* similarly addresses the question of the scope of a State's waiver of sovereign immunity as to allowable counterclaims brought against the State in a matter the state initiated in federal court. When a state initiates a lawsuit, it waives its sovereign immunity to the extent required for the lawsuit's complete determination. *Caremark*, 584 F.3d at 659. Immunity is not waived as to permissive claims which do not meet the "same transaction or occurrence" test, nor to counterclaims of a different form or nature than that sought by the State as a plaintiff. *Id.* Determining whether new claims are part of the same case requires examination of the factual basis of the underlying complaint and the new claims. *Id.*; *see Jenkins v. Washington*, 46 F. Supp. 3d 1110, 1117 (W.D. Wash. 2014). The State

---

[9] The order granting Plaintiff's motion for leave to file the SAC concluded, with minimal analysis, that the proposition that the scope of a state's waiver is limited under *Caremark* is precluded under *Embury*. ECF No. 39 at 9:25-10:2. But *Embury* does not hold that waiver of immunity is without limitation. In *Embury*, 361 F.3d at 562, the Ninth Circuit, held that removal is not of a claim but of the "case," which is to say, the "suit," and once immunity is waived, it is waived to the entire "case" or "matter." *Id.* at 565. But the bounds of a "case" or "matter" contemplated in *Embury* were limited to the same occurrence and did not involve a drastic expansion of the nature of claims or increase in damages sought. *Id.* at 563-64. The correct test for whether a new claim is part of the same "matter" or "case" so as to fall within the scope of a state's consent to federal jurisdiction requires review of the specific claims being added to the case, and whether the claims arise from the same transaction or occurrence, are of a different form and nature, or exceed the amount sought. *Caremark*, 584 F.3d at 659. This limitation is consistent with the requirement that a waiver be unequivocal and unambiguous. *See Pennhurst*, 465 U.S. at 99.

14

of California did not initiate this lawsuit and has not asserted any claims, but merely removed a case involving two claims for declaratory relief and no claims for money damages.

An examination of Pacific Pipeline's Third, Fourth, Fifth, and Seventh through Tenth Causes of Action shows that these new claims arise from separate sets of facts from the First and Second causes of action, are of a different nature or form, and/or seek monetary damages far beyond what was sought in the removed case. ECF No. 40, ¶¶ 86-104. The First Cause of Action seeks a judicial declaration that the Las Flores Pipelines have not been "idled, inactive, or out of service for five years or more" within the meaning of SB 237 because the pipelines have not been abandoned and "the Legislature did not make SB 237 retroactive." ECF No. 40, ¶¶ 88-89. This claim is a matter of statutory interpretation, with the primary issue being whether SB 237's adoption of the terms "idled, inactive, or out of service" are limited to mean abandoned, as that term is used in federal law. The Second Cause of Action seeks a judicial declaration that, by virtue of the PHMSA Orders, the federal Pipeline Safety Act preempts state agencies from imposing safety standards. ECF No. 40, ¶¶ 96, 98.

In contrast, the newly-alleged Third Cause of Action seeks declaratory relief that SB 237's application to the Las Flores Pipelines is preempted based on the DPA Order, issued after the case was removed to federal court. ECF No. 40, ¶ 110The Fourth, Fifth, and Seventh through Tenth Causes of Action similarly arise from a separate nucleus of facts, because they are all based on the enforcement or threat of enforcement of SB 237. ECF No. 40, ¶¶ 112-31, 140-69. But no final agency actions have yet been taken to enforce SB 237. These causes of action, if they ever become ripe, would do so based on a set of facts that have not yet come to pass, and therefore are necessarily based on separate cases or controversies than what constituted the FAC that the State removed. The SAC also adds a slew of constitutional claims, which have a form and nature different from the two declaratory relief claims in the previous version of the complaint that were based on statutory interpretation and preemption, as well as a takings claim that increases the damages sought in this case from $0 to $347,000,000. Applying the principles in *Caremark* that limit the scope of a sovereign's waiver of immunity, the State did not waive sovereign immunity as to any future claim that Plaintiff might attempt to pursue to enlarge the scope of the case—and

15

certainly not for Pacific Pipeline's newly asserted claim for monetary damages that would target the State's Treasury, a stark departure from the originally-removed claims which sought only declaratory relief. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994) ("[T]he impetus for the Eleventh Amendment [is] the prevention of federal court judgments that must be paid out of a State's treasury"). For these reasons, the State did not waive CAL FIRE, OSFM, or Berlant's sovereign immunity as to Pacific Pipeline's Third through Fifth and Seventh through Tenth causes of action. The Court should dismiss those claims.

### III.   THE COURT SHOULD DISMISS PACIFIC PIPELINE'S THIRD CAUSE OF ACTION BECAUSE THERE IS NO BASIS FOR RELIEF UNDER THE DEFENSE PRODUCTION ACT

In its Third Cause of Action, "Pacific Pipeline Company seeks a judicial declaration that the application of SB 237 to the Santa Ynez Pipeline System has been preempted by the DPA Order." SAC, ¶110. This relief requires that the Court accept two conclusions: (1) the DPA Order relied on in this case, based on the facts pled by Pacific Pipeline, creates preemption, and (2) that preemption under the DPA, if any, would apply to SB 237. Both of these conclusions are contrary to law. Unlike some claims in this case, which might plausibly be cured by amendment or become ripe later, this claim fails as a matter of law, and the Court should dismiss the Third Cause of Action without leave to amend.

The Defense Production Act is centered on federal prioritization of orders and contracts. It is a tool that the federal government uses to move itself to the front of the line in contract orders. Under the DPA, the President—or, as here, an official of the Executive Branch to whom the President delegated authority—may "require acceptance and performance of contracts which he deems necessary or appropriate to promote the national defense in preference to other contracts." *Hercules Inc. v. United States*, 24 F.3d 188, 191 n.4 (Fed. Cir. 1994), *aff'd on other grounds*, 516 U.S. 417 (1996). On March 13, 2026, the Secretary of Energy issued a DPA Order directing Pacific Pipeline to prioritize contracts (though it did not identify which contracts to prioritize). *See* SAC, Exh. F (DPA Order).

Two courts have explained why the DPA Order does not exempt the operation of CA-324/325 from California law. This Court should adopt their reasoning and dismiss Pacific

16

Pipeline's Third Cause of Action on the basis the DPA Order does not preempt SB 237.

### A.     The DPA Does Not Allow Actors To Violate State Law With Impunity

The DPA contains two preemption provisions: 50 U.S.C. § 4557 and 4558(j). Although Pacific Pipeline's Complaint fails to identify the relevant preemption position, the Complaint relies on the attached Exhibit G, which is an opinion by the U.S. Department of Justice Office of Legal Counsel issued earlier this year. SAC, ¶¶ 83-85 (citing the OLC Opinion, attached as Exhibit G). The OLC Opinion makes clear that the purported basis for preemption is 50 U.S.C. 4557,[10] known as the liability shield. The OLC Opinion, and Pacific Pipeline and its parent Sable in related cases, advance a maximalist view of Section 4557 that would grant nearly unlimited preemption of state law based on the phrase "no damages or penalties." *CBD v. CAL FIRE*, 2:26-cv-05242-SVW (C.D. Cal.) ECF 43 at 25. And they need this Court to adopt this maximalist position for the DPA to have any implications for SB 237. But the maximalist position is wrong. Both federal appellate courts to consider this position have rejected it. Every district court that was asked to apply those precedents did the same. This Court should as well.

### 1.     The Precedents of Two Federal Appeals Courts are Contrary to the Relief Sought by Pacific Pipeline

The Eighth Circuit and the Federal Circuit both concluded that Section 4557 of the DPA does not excuse parties from following state law, but simply protects them from liability when prioritization or allocation away from existing customers, ordered by the federal government, causes the firm to breach contracts with their existing customers. *See United States v. Vertac Chem. Corp.*, 46 F.3d 803, 812 (8th Cir. 1995) (citing *Hercules, Inc. v. United States*, 24 F.3d 188, 203-04 (Fed. Cir. 1994)). In reaching this conclusion in *Vertac*, the Eighth Circuit highlighted two key points. First, it correctly noted the federal government's argument that the maximalist interpretation "would have the absurd result of allowing a government contractor to violate the laws with impunity, so long as it is performing a rated contract." *Id.* Second, the Eighth Circuit explained that statutory provisions must be read harmoniously. The DPA

---

[10] Section 4557 was enacted as Section 707 of the DPA. At the time of *Vertac* and *Hercules*, the same provision was codified at 50 U.S.C. app. § 2157.

17

potentially exposes private parties to potential contract liability—if their products are diverted away from contract purchasers, those purchasers might have claims for damages against the contractor. The liability shield protects against that risk—and only that risk. *Id.* This shifts the risk of loss from the contractor under a DPA order to their would-be buyers, who now might have to wait longer for orders to be filled.

In its briefing at the Supreme Court seeking affirmance of the Federal Circuit in *Hercules*, the United States agreed, stating "the language and statutory context of Section 707 [50 U.S.C. § 4557] show that it protects contractors from claims arising out of a DPA order's displacement of work for other customers, not from tort liability to parties who claim to have been injured . . . ." Brief for Respondent United States, *Hercules, Inc. v. United States*, No. 94-818 (516 U.S. 417), 1995 WL 495540, at *34.[11]

Applying these precedents to this DPA Order and this pipeline, the Santa Barbara County Superior Court adopted this position, explaining that "[i]n both *Hercules* and *Vertac*, the federal circuit courts held that the scope of immunity under current section 4557 only extends to the risk imposed by section 4511(a) in prioritizing contracts with the United States pursuant to a DPA order." Order Denying Second Motion for Reconsideration, *CBD v. CAL FIRE*, at 11, attached to RJN as Exh. 9. Applying the holdings of *Vertac* and *Hercules* to this DPA Order and pipelines CA-324/325, the Superior Court explained that "the reasoning of *Hercules* and *Vertac* strongly implies that the DPA order, by itself, does not permit the violation of applicable state regulatory law—for example, no one suggests that Sable could steal materials or money to fulfill a DPA order without state law consequence under the section 4557 immunity." *Id.* If this Court accepts the position adopted in *Vertac* and *Hercules*, this cause of action is readily dismissed.

### 2.  Pacific Pipeline Relies on a Flawed Opinion by the Office of Legal Counsel, Which is Inconsistent with the DPA

Pacific Pipeline's challenge to SB 237 does not turn on contract liability. To prevail, Pacific Pipeline needs this Court to adopt the maximalist position espoused in the OLC Opinion. *See*

---

[11] The United States prevailed at the Supreme Court in *Hercules* on other grounds and the Court did not reach this issue. *Hercules Inc. v. United States*, 516 U.S. 417 (1996).

18

SAC, ¶ 83. But even a cursory examination of the OLC Opinion shows the flaws in its reasoning.

The OLC Opinion, which itself states was issued in response to Sable's request, fails to even address the contrary appellate precedent—the position that the U.S. asserted and prevailed on in the *Hercules* and *Vertac* cases. That OLC reached this opinion without addressing the contrary precedents the U.S. itself successfully put forward in two circuits casts serious doubt on the adequacy of the analysis.

More, only a few cases cited in the OLC Opinion even mention the DPA. Instead, the OLC Opinion, like Pacific Pipeline's complaint, relies on two district court cases: *Johnson v. Tyson Foods, Inc.*, 580 F. Supp. 3d 382 (N.D. Tex. 2022),[12] and *Reed v. Tyson Foods, Inc.*, No. 21-cv-01155, 2021 WL 5107725 (W.D. Tenn. Nov. 3, 2021). Neither case discusses the contrary court of appeal precedents from *Vertac* and *Hercules*—presumably because no party raised those cases in the briefs. *See Johnson v. Tyson Foods, Inc.*, No. 2:21-cv-156 (N.D. Tex.) at ECF 6, 12, 15, *Reed v. Tyson Foods, Inc.*, No. 21-cv-01155 (W.D. Tenn.) ECF 9, 15.[13] These two District Court cases, both with limited analysis and no discussion of contrary precedent, are not a sufficient basis to deviate from the uniform rule of the federal courts of appeals adopted in *Hercules* and *Vertac*. *Cf. United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374 (9th Cir. 1987) ("absent a strong reason to do so, we will not create a direct conflict with other circuits.").

### 3.    This Court Should Reject Pacific Pipeline's Attempt to Find Hidden but Vast Powers, Previously Unknown, in a Long-Standing Statute

Pacific Pipeline asks this Court to issue a declaration finding new and previously-unknown powers in a long-standing and previously-litigated statute. That is not how the interpretation of

---

[12] The OLC Opinion's reliance on *Johnson* is particularly suspect as the district court in *Johnson* erred in its central premise. In that case, there was *no* actual DPA order. Rather, as the Fifth Circuit clarified in deciding a related case, although the Department of Agriculture sent a letter warning that it *might* issue a DPA order it "did not issue a DPA order to Tyson or any other meatpacking company." *Glenn v. Tyson Foods, Inc.*, 40 F.4th 230, 234 (5th Cir. 2022). The Fifth Circuit reached that conclusion after receiving an amicus brief from the U.S. explaining that error. *See* Brief for United States as Amicus Curiae, *Glenn v. Tyson Foods, Inc.*, Nos. 21-40622, 21-11110 (40 F.4th 230), 2022 WL 110715, at *4 ("While USDA has expressed its support for the continuing operation of meat- and poultry-processing facilities-including in its May 5, 2020, letter to industry-it has at no time during the pandemic exercised its authority under the DPA to enter priority contracts or require specific allocations of these materials.").

[13] It is also worth noting that *Reed* is a motion to remand after federal officer removal, so the question is only whether there is a colorable defense, not whether the defense should prevail.

19

statutes conferring executive power works. Courts routinely reject assertions finding powers not clearly granted in statutes. *See, e.g.*, *Learning Res., Inc. v. Trump*, 146 S. Ct. 628, 638 (2026) (rejecting tariffs as not authorized by International Emergency Economic Powers Act); *Biden v. Nebraska*, 600 U.S. 477, 494 (2023) (rejecting student loan forgiveness as not authorized by COVID legislation). "When an agency [of the Executive Branch] claims to discover in a long-extant statute an unheralded power to regulate 'a significant portion of the American economy,' . . . [courts] typically greet its announcement with a measure of skepticism." *Util. Air Regul. Grp. v. Env't Prot. Agency*, 573 U.S. 302, 324 (2014) (citing *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). When the Executive did not previously claim the relevant power and Congress declined to clearly delegate the new-found power, "there is every reason to 'hesitate before concluding that Congress' meant to confer" more power on the agency. *W. Virginia v. Env't Prot. Agency*, 597 U.S. 697, 725 (2022) (quoting *Brown & Williamson*, 529 U.S. at 159-60).

That is the case here. By claiming the broader application of the liability shield, the OLC Opinion—and by extension Pacific Pipeline—is asserting the power to have federal commands take the place of nearly any state law in nearly any industry. *See* OLC Opinion, SAC Exh. G. at 12-13. The prior position of the U.S.—that the DPA's liability shield, 50 U.S.C. § 4557, protects only against contract liability—is the long-established position not only of the Executive Branch, but also of two federal courts of appeals and several federal district courts. *See, e.g.*, *Vertac*, 46 F.3d at 812, *In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 843-45 (E.D.N.Y. 1984). From the 1950s through 2010s, courts consistently applied the liability shield only to change the risk of loss in contract liability, not create broader preemption. *See* Brief for Respondent United States, *Hercules, Inc. v. United States*, No. 94 818 (516 U.S. 417), 1995 WL 495540, at *37-38 ("every court that has considered the matter has, like the courts below, rejected the argument that Congress intended the DPA's protection to sweep as broadly as Thompson claims").

Nor does any other provision or effect of the DPA authorize preemption. The preemption clauses, 50 U.S.C. § 4557 and 4558(j), "necessarily contain[] the best evidence of Congress' pre-emptive intent." *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664 (1993). Statutes authorizing

20

preemption must contain a "clear statement" to alter the "usual constitutional balance of federal and state powers." *Bond v. United States*, 572 U.S. 844, 858 (2014) (cleaned up). This requires "exceedingly clear language." *United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 622 (2020). There is no room for "creativity" in finding other forms of preemption when a statute contains specific clauses delineating its preemptive effect. *See Horton v. Kansas City S. Ry. Co.*, 692 S.W.3d 112, 148 (Tex. 2024) (Busby, J., concurring).

This Court should not indulge Pacific Pipeline's effort to find new meaning in an old statute. It should conclude, as a matter of law, that the DPA does not preempt SB 237, and dismiss the Third Cause of Action. Because this is *only* a question of law, amendment would be futile, and the Court should dismiss without leave to amend.

### B. The DPA Has No Application Here Because Pacific Pipeline Does Not Allege, and Does Not Have, Other Contracts to Prioritize Over

Even if the DPA had preemptive effect against some state environmental and public safety regulations, this DPA Order does not create that effect because, understood in context, it does not require Sable or Pacific Pipeline to do *anything*. Under the DPA, the President—or, as here, an official of the Executive Branch to whom the President delegated authority—may "require acceptance and performance of contracts which he deems necessary or appropriate to promote the national defense *in preference to* other contracts." *Hercules Inc. v. United States*, 24 F.3d 188, 191 n.4 (Fed. Cir. 1994) (emphasis added). Pacific Pipeline alleges preemption, but does not identify the relevant contracts—either those being prioritized or those being prioritized over. But more importantly, there are no contracts being prioritized over *at all*, so there is simply no basis for application of the DPA in this context.

The Secretary of Energy issued the DPA Order pursuant to the prioritization and allocation power in 50 U.S.C. § 4511(a) and (c).[14] SAC, Exh. F (DPA Order) at 1. The purpose of this provision is to provide the President with the power to (1) "prioritize" one set of contracts over another and (2) "allocate" resources under those contracts. 50 U.S.C. § 4511(a). "[S]ection 101(a) does not mention either the specific nature of performance under a DPA contract, or the

---

[14] 50 U.S.C. § 4511 is Section 101 of the DPA.

21

subsequent use of goods produced under such a contract." *Hercules*, 24 F.3d at 203. Similarly, the purpose of Section 101(c) is to allow the President to "require the allocation of, or the priority performance under contracts or orders (other than contracts of employment) relating to, materials, equipment, and services in order to maximize domestic energy supplies" (and, for that matter, only if certain specified findings are made). 50 U.S.C. § 4511(c). Yet none of Pacific Pipeline's allegations address prioritization or allocation.

Pacific Pipeline and its parent Sable addressed a similar argument in *Sable Offshore Corp., et al. v. County of Santa Barbara, et al.*, Central District of California case no. 25-cv-4165-DMG. There, the District Court dismissed their claim that the Santa Barbara County Board of Supervisors' decision to not transfer certain permits was preempted by the DPA. The District Court explained that Pacific Pipeline and Sable did "not allege in the FAC any applicable contracts or orders for services *prioritized* over other contracts or orders pursuant to both the DPA and the DPA Order." *Sable v. County of Santa Barbara*, ECF 83 at 20, attached to RJN as Exh. 10 (*Sable v. County of Santa Barbara* Order). This Court should follow the Central District's persuasive reasoning. Like in *Sable v. County of Santa Barbara*, Pacific Pipeline's Second Amended Complaint does not allege any contracts or orders for services to be prioritized over. That alone suffices for dismissal of this Cause of Action *with* leave to amend.

But Pacific Pipeline cannot cure by alleging contracts to be prioritized over because it knows that those contracts do not exist. Instead, if the related cases are a guide, Pacific Pipeline will contend that other contracts are not required for preemption under the DPA. But such a contention would be "an erroneous conclusion of law . . . not grounded in the language of the DPA or the DPA Order." *Sable v. County of Santa Barbara* Order at 20. As the District Court in *Sable v. County of Santa Barbara* explained, "[w]ithout these other contracts or orders . . . there are no alleged contracts or orders to perform under or deprioritize." *Id.*

While Pacific Pipeline may be ordered to prioritize certain contracts, because it has no other contracts to prioritize over, the DPA does not constitute an order requiring defiance of state law. More, SB 237 imposes no burdens on the relationship between contracts. As to the Fire Marshal, SB 237 requires pipeline testing. That has nothing to do with prioritizing contracts. Nor does any

22

other regulation under SB 237. As a result, this Court, consistent with the Central District's ruling, should dismiss the Third Cause of Action. And because this turns entirely on a legal argument, the Court should dismiss *without* leave to amend.

## CONCLUSION

For the reasons stated, this Court should dismiss all claims against CAL FIRE, OSFM, and Fire Marshal Berlant, without leave to amend.

Dated:  July 31, 2026                    Respectfully submitted,

ROB BONTA
Attorney General of California
MYUNG J. PARK
Supervising Deputy Attorney General

*/s/ Michael S. Dorsi*
MICHAEL DORSI
Deputy Attorney General
*Attorneys for Defendants*
*California Department of Forestry and*
*Fire Protection, Office of the State Fire*
*Marshal, and Daniel Berlant, in his official*
*capacity as State Fire Marshal*

Memo. of P's & A's ISO California Fire Marshal's Motion to Dismiss Plaintiff's Second Amended Complaint
(1:26-CV-01486-KES-CDB)