ROB BONTA
Attorney General of California
BRANDON S. WALKER, State Bar No. 254581
Supervising Deputy Attorney General
ROXANNE J. CARTER, State Bar No. 259441
Deputy Attorneys General
 600 West Broadway, Suite 1800
 San Diego, CA 92101
 Telephone: (619) 321-5627
 Fax: (916) 732-7920
 E-mail: Roxy.Carter@doj.ca.gov
*Attorneys for Defendant*
*California Coastal Commission*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PACIFIC PIPELINE COMPANY, A Delaware Corporation,**<br><br>                                    Plaintiff,<br><br>          v.<br><br>**STATE OF CALIFORNIA, a state government; CALIFORNIA COASTAL COMMISSION, a state agency; CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, a state agency; OFFICE OF THE STATE FIRE MARSHAL, a state agency; DANIEL BERLANT, in his official capacity as State Fire Marshal and DOES 1 through 25, inclusive,**<br><br>                                    Defendants. | 1:26-CV-01486-KES-CDB<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT CALIFORNIA COASTAL COMMISSION'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date:            September 21, 2026<br>Time:           1:30 p.m.<br>Courtroom:   6 [7th Floor]<br>Judge:          The Honorable Kirk E. Sherriff<br>Trial Date:    None Set<br>Action Filed: September 29, 2025 |

# TABLE OF CONTENTS

**Page**

Introduction ............................................................................................................... 1

Relevant BackGround .............................................................................................. 1

    I.     Factual Background ................................................................................. 1

          A.     The Coastal Commission's Regulatory Authority ..................................... 1

          B.     Coastal Commission Correspondence .......................................................... 3

          C.     Other Pending Matters Involving the Las Flores Pipelines ..................... 4

    II.    Procedural History ...................................................................................... 5

Legal Standard .......................................................................................................... 6

Argument ................................................................................................................... 7

    I.     Eleventh Amendment Immunity Bars All of Plaintiff's Claims Against the Coastal Commission in the Second Amended Complaint ..................................... 7

          A.     Eleventh Amendment Immunity Bars All of Plaintiff's Claims in the Second Amended Complaint Against the Coastal Commission ........... 8

          B.     The Coastal Commission's Immunity from Suit in Federal Court was Not Waived Based on the State's Removal .......................................... 8

                1.    The State, by and through the Attorney General, and the Coastal Commission Are Separate Entities ..................................... 9

                2.    Even if the State's Waiver Did Extend to the Commission, It Would Only Extend to the First Two Causes of Action ............ 12

    II.    This Court Does Not Have Article III Jurisdiction because Plaintiff's Claims Are Not Ripe and Plaintiff Has Not Suffered Injury ............................... 15

          A.     Claims Against the Coastal Commission Are Not Ripe ......................... 16

          B.     Plaintiff Has Not Suffered Any Injury Because It Has Reactivated the Las Flores Pipelines ............................................................................. 19

    III.   The Second Amended Complaint Fails to State any Claim for Relief Against the Coastal Commission ......................................................................... 20

          A.     The Claim Splitting Doctrine Bars Plaintiff's Seventh, Eighth and Ninth Causes of Action ........................................................................ 20

          B.     The Fifth and Sixth Causes of Action Fail to State a Claim Because SB 237 Does Not Single Out or Apply to Any One Particular Person or Entity ............................................................................................ 22

          C.     The Seventh Through Ninth Causes of Action Fail Because Plaintiff Has Not Alleged That Any Property Right Has Been Impaired or Taken .................................................................................... 24

          D.     The Tenth Cause of Action Fails Because Injunctive Relief Is Not a Stand-Alone Cause of Action ................................................................. 24

          E.     The Third Cause of Action Fails Because There Is No Basis for Relief under the Defense Production Act ................................................. 24

Conclusion ............................................................................................................... 25

i

Coastal Commission's Memorandum of Points & Authorities ISO Motion to Dismiss Plaintiff's Second Amended
Complaint (1:26-CV-01486-KES-CDB)

# TABLE OF AUTHORITIES

**Page**

**CASES**

*A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*
    491 F.Supp.3d 727 (E.D. Cal. 2020)...................................................................................... 24

*Alden v. Maine*
    527 U.S. 706 (1999) ................................................................................................................ 7

*Allen v. Wright*
    468 U.S. 737 (1984) .............................................................................................................. 15

*Arizona Students' Ass'n v. Arizona Bd. of Regents*
    824 F.3d 858 (9th Cir. 2016)................................................................................................ 14

*Beck v. California*
    479 F. Supp. 392 (N.D. Cal. 1979) ....................................................................................... 7

*Bell Atl. Corp. v. Twombly*
    550 U.S. 544 (2007) ................................................................................................................ 6

*Bird v. Oregon Comm'n for the Blind*
    22 F.4th 809 (9th Cir. 2022)............................................................................................... 8, 9

*Bova v. City of Medford*
    564 F.3d 1093 (9th Cir. 2009)......................................................................................... 15, 16

*Bras v. Cal. Pub. Util. Comm'n*
    59 F.3d 869 (9th Cir.1995).................................................................................................... 15

*Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara*
    102 Cal. App. 5th 1303 (2024).............................................................................................. 17

*Clinton v. Acequia, Inc.*
    94 F.3d 568 (9th Cir.1996)............................................................................................... 16, 17

*Connerly v. Schwarzenegger*
    146 Cal. App. 4th 739 (2007)................................................................................................ 10

*Crumpacker v. Kansas, Dept. of Human Resources*
    474 F.3d 747 (10th Cir. 2007)................................................................................................. 9

*Durning v. Citibank, N.A.*
    950 F.2d 1419 (9th Cir. 1991)................................................................................................ 11

ii

**TABLE OF AUTHORITIES**
(continued)

**Page**

*Edelman v. Jordan*
  415 U.S. 351 (1973).................................................................................................................. 7

*Embury v. King*
  361 F.3d 562 (9th Cir. 2004)................................................................................................... 12

 *ex rel. Lockyer v. Superior Court*
  83 Cal. App. 4th 387, 99 Cal. Rptr. 2d 646 (Aug. 29, 2000) .................................................. 9

*Faghri v. Univ. of Conn.*
  (2010 U.S. Dist. LEXIS 54611 (D. Conn. June 3, 2010), 2010 WL 2232690) ...................... 13

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*
  528 U.S. 167 (2000).................................................................................................................. 15

*Hercules Inc. v. United States*
  24 F.3d 188 (Fed. Cir. 1994)............................................................................................... 24, 25

*Hercules, Inc. v. United States*
  No. 94-818 (516 U.S. 417), 1995 WL 495540 ......................................................................... 25

*Hess v. Port Auth. Trans-Hudson Corp.*
  513 U.S. 30 (1994).................................................................................................................... 14

*In re California*
  No. 25-584, 2025 WL 2427608 (9th Cir. Aug. 22, 2025).......................................................... 9

*In re Don Rose Oil, Inc.*
  614 B.R. 358 (Bankr. E.D. Cal. 2020) ..................................................................................... 20

*Jenkins v. Washington*
  46 F. Supp. 3d 1110 (W. Dist. Wash. 2014) ............................................................................ 13

*Johnson v. Riverside Healthcare Sys., LP*
  534 F.3d 1116 (9th Cir. 2008).................................................................................................... 6

*Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*
  616 F.3d 963 (9th Cir. 2010)...................................................................................................... 7

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*
  535 U.S. 613 (2002)....................................................................................................... 12, 13, 24

*Lent v. California Coastal Comm'n*
  62 Cal. App. 5th 812 (2021)........................................................................................................ 3

iii

**TABLE OF AUTHORITIES**
(continued)

Page

*Long Beach Unified Sch. Dist. v. State of California*
225 Cal.App.3d 155 (1990)..................................................................................... 17

*Lujan v. Defenders of Wildlife*
504 US 555 (1992) ........................................................................................... 7, 19

*Marine Forests Society v. Cal. Coastal Comm'n*
36 Cal.4th 1 (2005) ............................................................................................ 8

*Marvel Entm't LLC v. Kimble*
CV-15-00404-TUC-RM, 2016 WL 9525586 (D. Ariz. Apr. 14, 2016) ................................. 20

*McLean v. State of California*
1 Cal. 5th 615 (2016) ....................................................................................... 10

*MedImmune, Inc. v. Genentech, Inc.*
549 U.S. 118 (2007)......................................................................................... 19

*Mendoza v. Amalgamated Transit Union Int'l*
30 F.4th 879 (9th Cir. 2022)................................................................................ 21

*Natural Res. Def. Council v. Cal. Dep't of Transp.*
96 F.3d 420 (9th Cir. 1996).................................................................................. 7

*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*
55 Cal.4th 783 (2012) ......................................................................................... 2

*Pennhurst State Sch. & Hosp. v. Halderman*
465 U.S. 89 (1984)......................................................................................... 8, 9

*People ex rel Lockyer v. Superior Court*
122 Cal. App. 4th 1060 ....................................................................................... 9

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*
494 F.3d 788 (9th Cir. 2007).................................................................................. 6

*Portland Police Ass'n v. City of Portland*
658 F.2d 1272 (9th Cir.1981)............................................................................... 16

*Raines v. Byrd*
521 U.S. 811 (1997)......................................................................................... 15

*Reddell v. Cal. Coastal Comm'n*
180 Cal.App.4th 956 (2009).................................................................................... 2

*Reg'l Rail Reorg. Act Cases*, 419 U.S. 102 (1974) ....................................................... 16

iv

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Reno v. Catholic Soc. Servs., Inc.*
    509 U.S. 43 (1993) ................................................................................................... 16

*Ross v. Cal. Coastal Comm'n*
    199 Cal.App.4th 900 (2011) ..................................................................................... 2

*Rossco Holdings, Inc. v. State*
    260 Cal. Rptr. 736 (Cal. Ct. App. 1989) ................................................................ 24

*Santa Barbara County Flower & Nursery Growers Assn. v. County of Santa Barbara*
    121 Cal.App.4th 864 (2004) ................................................................................... 17

*Sato v. Orange Cnty. Dep't of Educ.*
    861 F.3d 923 (9th Cir. 2017) ................................................................................... 6

*Scott v. Pasadena Unified Sch. Dist.*
    306 F.3d 646 (9th Cir. 2002) ............................................................................ 15, 16

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*
    309 F.3d 662 (9th Cir. 2002) ............................................................................ 22, 23

*Smith v. Reeves*
    178 U.S. 436 (1900) .......................................................................................... 11, 12

*Spokeo v. Robins*
    578 U.S. 330 (2016) ................................................................................................ 15

*State of California v. PHMSA, et al.*
    Case No. 26-508 (9th Cir. 2026) .............................................................................. 4

*State of California v. Wright, et al.*
    Case No. 2:26-cv-03396-SVW-SSCx (C.D. Cal. 2026) ........................................... 5

*Tailford v. Experian Info. Sols., Inc.*
    26 F.4th 1092 (9th Cir. 2022) ................................................................................... 7

*Texas v. Caremark, Inc.*
    584 F.3d 655 (5th Cir. 2009) .................................................................................. 13

*Texas v. United States*
    523 U.S. 296 (1998) ................................................................................................ 16

*Thomas v. Anchorage Equal Rights Comm'n*
    220 F.3d 1134 (9th Cir.) ......................................................................................... 16

v

**TABLE OF AUTHORITIES**
(continued)

Page

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*
  594 F.2d 730 (9th Cir. 1979)......................................................................................... 7

*United States v. Vertac Chem. Corp.*
  46 F.3d 803 (8th Cir. 1995)......................................................................................... 25

*Valley Forge Christian College v. Americans United for Separation of Church and
  State*
  454 U.S. 464 (1982)..................................................................................................... 15

*Walden v. Nevada*
  945 F.3d 1088 (9th Cir. 2019).............................................................................. 12, 13

**STATUTES**

50 U.S.C. § 4557........................................................................................................... 25

United States Code, Title 42
  § 1983........................................................................................................................ 24

United States Code Title 49
  Subtitle VIII........................................................................................................ 14, 18

United States Code, Title 50
  § 2157........................................................................................................................ 25
  §§ 4501 et seq. ........................................................................................................... 5
  § 4557........................................................................................................................ 25

California Code of Regulations, Title 14
  § 13053.5..................................................................................................................... 2

California Elder Pipeline Safety Act........................................................................ 4, 17, 18

California Government Code
  § 11043(a)(2)......................................................................................................... 9, 10
  § 11043(a)(3)............................................................................................................... 9
  § 11043(c) ................................................................................................................... 9
  § 11043(d) ................................................................................................................ 10

Coastal Commission's Memorandum of Points & Authorities ISO Motion to Dismiss Plaintiff's Second Amended
Complaint (1:26-CV-01486-KES-CDB)

**TABLE OF AUTHORITIES**
**(continued)**

Page

California Public Resources Code
§ 30000 (The Coastal Act) ................................................................. 1, 2, 3, 18
§ 30001 ................................................................................................. 3
§ 30001.5 .............................................................................................. 3
§ 30008 ................................................................................................. 3
§ 30103 ................................................................................................. 3
§§ 30210-30244 ..................................................................................... 2
§ 30262 ........................................................................................ 3, 18, 19, 23
§ 30600(a) ........................................................................................ 2, 3, 18
§ 30810 ................................................................................................. 2
§ 30810(a) ........................................................................................... 17
§ 30811 ................................................................................................. 2
§ 30821.3(b) ......................................................................................... 17

**CONSTITUTIONAL PROVISIONS**

United States Constitution
Eleventh Amendment............................................................................*passim*
Equal Protection Clause ......................................................................... 7

**COURT RULES**

Federal Rules of Civil Procedure Rule 12(b)(6) ............................................. 6, 7

Coastal Commission's Memorandum of Points & Authorities ISO Motion to Dismiss Plaintiff's Second Amended
Complaint (1:26-CV-01486-KES-CDB)

**INTRODUCTION**

Defendant California Coastal Commission ("Commission") moves to be dismissed from the second amended complaint ("SAC") filed by Plaintiff Pacific Pipeline Company ("Plaintiff"). The Commission, as an independent state agency, enjoys immunity under the Eleventh Amendment. Because the Commission was not a party to this case when it was removed, the Commission never waived its immunity or consented to being a party to this litigation in federal court, and so this court lacks jurisdiction over the Commission. Additionally, there is no Article III standing as Plaintiff's claims against the Commission are not yet ripe and, moreover, Plaintiff has not suffered any injury, so this court also lacks subject matter jurisdiction. Lastly, Plaintiff also fails to state a claim against the Commission for which relief can be granted.

For the foregoing reasons, the Commission respectfully requests that the court dismiss Plaintiff's SAC against the Commission.

**RELEVANT BACKGROUND**

**I.   FACTUAL BACKGROUND**

This lawsuit involves two onshore oil pipelines that, as of the date this case was initiated, had not transported oil since one of the pipelines ruptured on May 19, 2015, spilling more than 140,000 barrels of heavy crude oil near Refugio State Beach in Santa Barbara County. Plaintiff owns the onshore pipelines, which it refers to separately as Lines CA-324 and CA-325 and together as the "Las Flores Pipelines."[1] ECF No. 40 (SAC), ¶ 1. The Las Flores Pipelines connect to larger oil production infrastructure owned by Plaintiff's parent company, Sable Offshore Corp. ("Sable"). ECF No. 40, ¶¶ 1, 2. The Las Flores Pipelines begin at the Las Flores Canyon Processing Facility in unincorporated Santa Barbara County and terminate at the Pentland Station in Kern County. ECF No. 40, ¶¶ 2, 32-33.

**A.   The Coastal Commission's Regulatory Authority**

The California Coastal Act of 1976 ("the Coastal Act") is a comprehensive scheme governing land use planning for the California coast. Cal. Pub. Res. Code, § 30000 *et seq.*;

---

[1] In its original complaint, Plaintiff referred to these pipelines as the Las Flores Pipelines (plural). ECF No. 1 at 8. As such, the pipelines will be referred to in this brief in the plural.

*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*, 55 Cal.4th 783, 793 (2012), quoting *Yost v. Thomas*, 36 Cal.3d 561, 565 (1984). The objectives of the Coastal Act include but are not limited to providing the public coastal access and recreation opportunities, preserving marine and land resources, and protecting the coastal-related economic environment. Cal. Pub. Res. Code, §§ 30210-30244. The Coastal Act is to be "liberally construed to accomplish its purposes and objectives." *Id*. § 30009. The Coastal Act vests the Commission with broad discretion to enforce its provisions, including through issuance of cease-and-desist and restoration orders to prevent or remedy violations, and assessing administrative penalties. *Id*. §§ 30810, 30811, 30821.3. Further, California law affords "great weight" to the Commission's interpretation of the statutes and regulations under which it operates, given the Commission's special familiarity with its regulatory and legal issues. *Ross v. Cal. Coastal Comm'n*, 199 Cal.App.4th 900, 922-23 (2011); *Reddell v. Cal. Coastal Comm'n*, 180 Cal.App.4th 956, 965 (2009).

Development in the coastal zone generally requires a Coastal Development Permit ("CDP"), unless an exemption applies. Cal. Pub. Res. Code, § 30600(a). The Commission's permit process requires an applicant to submit an application that contains information the Commission determined is necessary to analyze the application. Cal. Code Regs., tit. 14, § 13053.5. Once the application is complete, staff reviews the proposed development for consistency with the Coastal Act and prepares a staff report. *Id*. § 13057. The Commission then considers the application at a public hearing. *Id*. § 13064. The Commission can vote (that is, take action) on the application only at a duly-noticed meeting. *Id*. § 13090.

Likewise, enforcement orders are only issued after a noticed public hearing. Cal. Pub. Res. Code, §§ 30810, 30811. Procedurally, matters can only be before the Commission for its action at a noticed public hearing. *See, e.g.*, *id*.

The California Legislature enacted SB 237, and Governor Newsom signed it in September 2025. ECF No. 40, ¶ 49; Stats.2025, c. 118 (S.B.237), eff. Jan. 1, 2026. SB 237 became effective on January 1, 2026, and it requires the operator of an oil pipeline that has been idled, inactive, or out of service for five years or more as of the effective date of the law to obtain a CDP that meets certain standards in order to repair, reactivate, or maintain the pipeline, or to perform any other

2

development associated therewith. ECF No. 40, ¶ 51. The legislation is not limited to, nor does it single out or specifically target, Plaintiff or the Las Flores Pipelines. ECF No. 40, ¶¶ 51, 60.

Among other provisions, SB 237 amended Public Resources Code section 30262, which is part of the Coastal Act. Cal. Pub. Res. Code § 30000 *et seq.*; ECF No. 40, ¶ 51. However, prior to the enactment of SB 237, the Coastal Act already authorized the Commission, or a local government with a certified local coastal program, to regulate development, including pipes, within the coastal zone. The Coastal Act delineates the coastal zone and sets policies and requirements for development to protect the distinct and valuable natural resources within the coastal zone. Cal. Pub. Res. Code §§ 30001, 30001.5, 30008, 30103. Under the Coastal Act, any person wishing to perform or undertake any development in the coastal zone must obtain a coastal development permit. *Id.* § 30600(a). "Development" under the Coastal Act includes the placement, construction, reconstruction, or alteration of any structure. *Id.* § 30106. "Structure" specifically includes any pipe. *Id*. Public Resources Code section 30262 specifically discusses oil and gas development within the coastal zone, and did so prior to SB 237. Additionally, a person that maintains and uses unpermitted development undertakes an activity that requires a coastal development permit. *Lent v. California Coastal Comm'n*, 62 Cal. App. 5th 812, 832 (2021).

## B.    Coastal Commission Correspondence

On February 18, 2026, the Commission sent a courtesy reminder to Plaintiff's owner, Sable, that in order to reactivate the Las Flores Pipelines, it would need a CDP, as required by Public Resources Code section 30262, as amended by SB 237, in addition to all other agency authorization required by law. ECF No. 40, ¶¶ 11, 62, Ex. E to SAC. On March 19, 2026, the Commission sent another letter to Sable after Sable issued a press release announcing that it had resumed transportation of hydrocarbons through the Las Flores Pipelines. *Id.* ¶¶ 14, 63, Ex. H to SAC. The letter stated that the Las Flores Pipelines had been idled, inactive, and out of service for more than five years as of January 1, 2026, and that reactivation of the pipelines without a CDP constituted unpermitted development and would be grounds for an enforcement action by the Commission. *Id.*

Coastal Commission's Memorandum of Points & Authorities ISO Motion to Dismiss Plaintiff's Second Amended Complaint (1:26-CV-01486-KES-CDB)

The SAC alleges that the Commission made statements concerning its position on the status of the Las Flores Pipelines in a staff report that refers to the pipelines as "offline and out of service" and "inoperable" for the past 10 years. SAC, ¶ 47. The referenced statements appeared in the Commission's Staff Report for its Cease-and-Desist Order CCC-25-CD-01, Restoration Order CCC-25-RO-01, and Administrative Civil Penalty Order CCC-25AP3-01. *Id.* The aforementioned administrative orders were challenged by Plaintiff, and the matter is currently in state trial court. *Sable Offshore Company v. Cal. Coastal Comm'n*, No. 25CV00974, Santa Barbara County Superior Court ("*Sable I*"). Request for Judicial Notice ("RJN"), Ex. A *Sable I* Second Amended Complaint.

C.    **Other Pending Matters Involving the Las Flores Pipelines**

Since 2016, the Las Flores Pipelines have been considered "intrastate" pipelines under the regulatory oversight of the Office of the State Fire Marshal ("OSFM") pursuant to the California Elder Pipeline Safety Act. ECF No. 40, ¶ 45. However, on December 17, 2025, the Pipeline and Hazardous Materials Safety Administration ("PHMSA") reversed its prior position and designated the Las Flores Pipelines and related infrastructure extending offshore as one single *inter*state pipeline because the offshore pipelines extend beyond state waters, which end three miles off the coast, to federal waters. ECF No. 40, ¶¶ 45, 54, Ex. B to SAC (Dec. 17, 2025, Letter from PHMSA to Sable). PHMSA shortly thereafter approved Plaintiff's plan to restart pipeline operations and issued an emergency special permit. ECF No. 40, Ex. C (Dec. 22, 2025, Letter from PHMSA to Sable) and Ex. D (PHMSA Emergency Special Permit) (collectively, the "PHMSA Orders").

On January 23, 2026, the State of California, by and through Attorney General Rob Bonta, and the OSFM, filed a Petition for Review in the United States Court of Appeals for the Ninth Circuit challenging the PHMSA Orders as unlawful. *State of California v. PHMSA, et al.*, Case No. 26-508 (9th Cir. 2026). Oral argument took place on July 7, 2026, and the Ninth Circuit subsequently ordered supplemental briefing. The petition remains pending. California also filed a new petition, *California v. PHMSA*, Ninth Circuit case no. 26-4629, challenging PHMSA's

4

issuance of a new Special Permit on June 25, 2026. However, the PHMSA Orders do not affect the Commission's authority under the Coastal Act.

On March 13, 2026, the Secretary of Energy issued an order purporting to direct Plaintiff to "prioritize and allocate pipeline transportation services . . . through" the Santa Ynez Pipeline System, including the Las Flores Pipelines, pursuant to the Defense Production Act, 50 U.S.C. §§ 4501 et seq. (the "DPA Order"). ECF No. 40, ¶¶ 12, 78-81, Ex. F to SAC. Plaintiff admits it resumed transporting oil through the pipelines the next day. ECF No. ¶ 91, 109; ECF No. 22 at 6:16-18. The DPA Order does not affect the Commission's authority pursuant to the Coastal Act.

On March 31, 2026, the California Attorney General, in his independent capacity, brought a suit on behalf of the State of California for declaratory and injunctive relief against Chris Wright in his official capacity as Secretary of the U.S. Department of Energy and the U.S. Department of Energy related to the DPA Order. *State of California v. Wright, et al.*, Case No. 2:26-cv-03396-SVW-SSCx (C.D. Cal. 2026). The complaint seeks, among other things, a judicial declaration that the DPA Order is unconstitutional and/or unlawful and an order to prevent the defendants from invoking the DPA Order to authorize or compel operation of the pipelines.

This is not an exhaustive list of the pending lawsuits involving the Las Flores Pipelines, Plaintiff, and/or its parent company, Sable.

## II.   PROCEDURAL HISTORY

Plaintiff initiated this lawsuit in Kern County Superior Court against the State of California ("the State") as the sole defendant on September 29, 2025, before SB 237 went into effect. Plaintiff alleged a single cause of action concerning the interpretation of SB 237: that the relevant provisions of the new statute (i.e., the hydrostatic spike testing and CDP requirements) do not apply to the Las Flores Pipelines because they have not been "idled, inactive, or out of service for five years or more" within the meaning of SB 237.

On January 21, 2026, Plaintiff filed its First Amended Complaint ("FAC"), adding a second cause of action alleging that SB 237 was preempted by the PHMSA Orders. Even though the FAC specifically alleged that OSFM's authority had been preempted by the PHMSA Orders (ECF No. 1 at 58), it did not name OSFM as a party and only named the State. On February 20,

5

2026, in light of the addition of this federal question to Plaintiff's action for declaratory relief, the State removed the action to federal court. ECF No. 1.

The State moved to dismiss the FAC on March 30, 2026. ECF No. 20. On April 10, 2026, before the motion to dismiss the FAC was decided, Plaintiff filed a motion for leave to file the SAC. ECF No. 22. Plaintiff's motion for leave to amend sought to add additional defendants—including the Commission—and claims. ECF No. 22-10. Both motions were taken under submission without oral argument. On July 7, 2026, this Court granted Plaintiff's motion for leave to file the SAC, determined the State's motion to dismiss the FAC was therefore moot, and ordered the defendants to respond to the SAC within twenty-one days after service of the SAC. ECF No. 39. Plaintiff filed its SAC on July 8, 2026, and served the Commission with the SAC on July 13, 2026. ECF Nos. 40, 45. This was the first time the Commission was named in and served with any complaint in this matter.

**LEGAL STANDARD**

An Eleventh Amendment immunity defense is "quasi-jurisdictional" in nature and may be raised in either a Rule 12(b)(1) or 12(b)(6) motion. *Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 927 n.2 (9th Cir. 2017).

Federal Rule 12(b)(6) allows a defendant to assert a defense by motion based on failure to state a claim. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss for failure to state a claim, Plaintiff must allege "enough facts to state a claim to relief that is plausible on its face[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plaintiff must also allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. Instead, the plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *Id*. In evaluating a motion to dismiss under Rule 12(b)(6), a court assumes all material allegations in the complaint are true, but "need not accept conclusory allegations of law or unwarranted inferences." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794 (9th Cir. 2007). "A Rule 12(b)(6) dismissal may be based on either a 'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside*

*Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).

Rule 12(b)(1) allows a party to raise the defense that the court lacks jurisdiction over the subject matter of a claim. *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979); *Natural Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421-23 (9th Cir. 1996) (*NRDC*). It is well-established that Article III "[s]tanding is a constitutional requirement for the exercise of subject matter jurisdiction over disputes in federal court." *Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022) (citing *Spokeo v. Robins*, 578 U.S. 330, 339, (2016)). The Constitution limits the federal courts' jurisdiction to "cases and controversies." U.S. Const., Art. III, § 2. Both terms require a matter to be "justiciable" for the federal court to hear it. *See Lujan v. Defenders of Wildlife*, 504 US 555, 560 (1992).

## ARGUMENT

### I. ELEVENTH AMENDMENT IMMUNITY BARS ALL OF PLAINTIFF'S CLAIMS AGAINST THE COASTAL COMMISSION IN THE SECOND AMENDED COMPLAINT

The Eleventh Amendment bars federal suits against a state. U.S. Const. amend XI; *see Edelman v. Jordan*, 415 U.S. 351, 663 (1973) ("an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). This "jurisdictional bar applies regardless of the nature of relief sought and extends to state instrumentalities and agencies." *Krainski v. Nevada ex rel. Bd. of Regents of Nevada Sys. of Higher Educ.*, 616 F.3d 963, 967 (9th Cir. 2010). The Commission, as a state agency, is entitled to immunity from suit under the Eleventh Amendment of the U.S. Constitution. *See Beck v. California*, 479 F. Supp. 392, 396 (N.D. Cal. 1979). It is worth noting that sovereign immunity of the state is not limited by the Eleventh Amendment and "the States' immunity from suit is a fundamental aspect of the sovereignty which the States enjoyed before the ratification of the Constitution, and which they retain today [….]" *Alden v. Maine*, 527 U.S. 706, 713-714 (1999).

Because the Commission did not consent to litigate this matter in federal court and the Commission is immune from federal suits against it, this Court lacks jurisdiction over the Commission. The complaint against the Commission should be dismissed.

7

### A. Eleventh Amendment Immunity Bars All of Plaintiff's Claims in the Second Amended Complaint Against the Coastal Commission

The Eleventh Amendment prevents federal courts from exercising jurisdiction over claims against the State or its agencies unless there has been express and unequivocal consent or waiver, express and unequivocal Congressional abrogation of the State's immunity, or where the *Ex Parte Young* doctrine applies to federal claims against state officials. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102 (1984). If ambiguous, a waiver of sovereign immunity "will be strictly construed, in terms of its scope, in favor of the sovereign." *Bird v. Oregon Comm'n for the Blind*, 22 F.4th 809, 814 (9th Cir. 2022) (quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)).

As an instrumentality of the State, the Coastal Commission is afforded Eleventh Amendment immunity from suit in this Court, and all of Plaintiff's claims against it are barred. There is no dispute that the Coastal Commission is a state agency entitled to Eleventh Amendment immunity. The SAC acknowledges the Commission is an "independent, quasi-judicial state agency." SAC, ¶ 23. Accordingly, Plaintiff's claims against the Commission should be dismissed for lack of jurisdiction because sovereign immunity bars the claims.

### B. The Coastal Commission's Immunity from Suit in Federal Court was Not Waived Based on the State's Removal

The Commission is a distinct legal entity, and the Attorney General's removal of two causes of action against the State, in his independent capacity, did not result in an involuntary waiver of immunity by the Commission, which is an independent agency not subject to the control of the Attorney General under California's non-unitary executive form of government. *Marine Forests Society v. Cal. Coastal Comm'n*, 36 Cal.4th 1, 15, 46 (2005). There is no dispute that the Commission is afforded immunity from suit under the Eleventh Amendment, which prevents federal courts from exercising jurisdiction over claims against the Commission unless there has been, *inter alia*, express and unequivocal consent or waiver. *Pennhurst*, 465 U.S. at 102. In this case, by its removal of the FAC to federal court (ECF No. 1), the Attorney General, in his independent capacity and not on behalf of separate agencies that were non-parties at the time of removal, consented to federal jurisdiction over a narrow case involving just two causes of action. The Attorney General's limited waiver of his Eleventh Amendment immunity does not extend to

8

the Commission. The Commission should not be prejudiced by Plaintiff waiting until after removal to add the Commission as a defendant in this action.

The Commission has not provided any consent or waiver, much less an expressed and unequivocal one, and is asserting immunity at the first opportunity for it to do so in this action. Nor is there anything in the record suggesting that the Attorney General expressly and unequivocally intended to waive immunity on behalf of the Commission when he removed a suit in his independent capacity. Even if there were ambiguity as to whether the Attorney General waived immunity for non-party state agencies, which there is not, the limited waiver should be strictly construed. *Pennhurst*, 465 U.S. at 102; *Bird*, 22 F.4th at 814.

**1.    The State, by and through the Attorney General, and the Coastal Commission Are Separate Entities**

The State, appearing by and through the Attorney General in his independent capacity, and the Commission are two separate entities with separate and differing interests and defenses in this matter. In contrast to the federal model of a unitary executive, California law recognizes that "the State" consists of distinct state agencies and officers who carry out governmental functions. *Compare* Cal. Gov't Code § 11043(c) ("Every [California] state agency is a separate legal entity") *and People ex rel Lockyer v. Superior Court*, 122 Cal. App. 4th 1060, 1078-79, *with Crumpacker v. Kansas, Dept. of Human Resources*, 474 F.3d 747, 753 n.5 (10th Cir. 2007) (noting the uniqueness of the Kansas Constitution providing for a unitary executive that is analogous to the federal system). "Each agency or department of the state is established as a separate entity, under various state laws or constitutional provisions." *People ex rel Lockyer*, 122 Cal. App. 4th at 1078-79. *see In re California*, No. 25-584, 2025 WL 2427608, at *2 (9th Cir. Aug. 22, 2025) ("[T]he magistrate judge and district judge clearly erred by failing to follow *People ex rel. Lockyer v. Superior Court*"). "It is important to uphold the divided executive branch enacted by the California Constitution." Cal. Gov't Code § 11043(a)(3).

This division is particularly important to recognize and maintain when it comes to litigation. The Attorney General only represents a state agency upon that agency's request, and that representation is limited to that specific matter. Cal. Gov't Code § 11043(a)(2). "When the

9

Attorney General . . . defends an action in their independent capacity on behalf of the State of California . . . the Attorney General acts in the public interest of the State . . . and not as the legal representative or attorney of any state entity, including entities within the executive, legislative, or judicial branches." *Id*. § 11043(d). State agencies are not parties to an action unless they are specifically named as a party. *Id*. In *Connerly v. Schwarzenegger*, the court dismissed a declaratory relief cause of action because it presented an abstract question without an actual controversy but also noted that plaintiff "has not named any state agency as a defendant, nor does he allege that any agency is enforcing or threatens to enforce" the challenged provision. *Connerly v. Schwarzenegger*, 146 Cal. App. 4th 739, 748 n.3 (2007).

When a plaintiff names the State as a defendant in a suit alleging wrongdoing by one of its agencies, the Attorney General will ordinarily attempt to identify the allegedly responsible agency, enter into an attorney-client relationship with that agency for the matter, and will respond to the complaint in the name of the State of California, "by and through" the allegedly responsible agency. *McLean v. State of California*, 1 Cal. 5th 615, 629 n.8 (2016); *see also* Cal. Gov't Code § 11043(a)(2). This is consistent with the understanding that courts must sometimes "look behind names that symbolize the parties" to determine the real parties in interest. *Id*. (citing *United States v. I. C. C.*, 337 U.S. 426, 430 (1949).

Here, the original complaint only named the State of California. It did not name the Commission, and it was not served on the Commission. As such, the Commission did not request that the Attorney General represent it at that time. Further, as SB 237 was not yet effective when the original complaint was filed, the Commission could not have taken any action pursuant to SB 237 for which review could be sought. Accordingly, the Commission was not a party to the action and the Attorney General was defending the lawsuit in his independent capacity, not on behalf of the Commission. Cal. Gov't Code § 11043(d); *see also* ECF No. 1 at 9.

The FAC again did not name the Commission and it was not served on the Commission. Therefore, when the case was removed, the Attorney General was still only acting in his independent capacity. Cal. Gov't Code § 11043(d); ECF No. 1 at 49.

10

The Attorney General, in his independent capacity, is constitutionally independent of the Commission. Although the Attorney General has authority to waive Eleventh Amendment immunity and invoke the federal court's jurisdiction on his own behalf and on behalf of a state entity he is representing, he does not have the authority to waive immunity on behalf of a constitutionally independent agency unless an attorney-client relationship is established with, and he is representing, that agency in the matter.

In the Magistrate Judge's order granting leave to amend (ECF No. 39 ("Order")), which ultimately deferred this issue to be decided on a motion to dismiss and to which the Commission was not a party, the Magistrate Judge relied on *Durning v. Citibank, N.A.*, 950 F.2d 1419 (9th Cir. 1991), to suggest that the actions of the State are imputed to its agencies in the sovereign immunity context. But *Durning* does not analyze the scope of a waiver of sovereign immunity and does not take into account the actual relationships that exist between California state agencies and the Attorney General. In *Durning*, the issue was whether the Wyoming Community Development Authority was an arm of the State of Wyoming such that it was entitled to assert immunity under the Eleventh Amendment. *Durning*, 950 F.2d at 1423. The rationale cited by the Order is the rationale for why the agencies are arms of the state and entitled to immunity. Whether the Commission is an arm of the state is not disputed. Indeed, the fact that it is an arm of the state supports the Commission's position that it can assert immunity here. However, each arm of the state can still function as a separate arm.

The Order also notes that *Durning* cites *Smith v. Reeves*, 178 U.S. 436 (1900). In *Smith*, a private party brought an action "to enforce the liability of the state to pay a certain amount of money on account of the payment of taxes alleged to have been wrongfully exacted by the state from the plaintiffs." *Smith*, 178 U.S. at 439. The Court found that the action, though in form against an officer of the state, is against the state itself. *Id*. at 440. Like *Durning*, *Smith* presents an analysis of whether immunity extends to the named party in the first place, not whether immunity of one arm of the State was waived when a separate arm of the State removed the matter. The Court went on to consider whether Political Code section 3669 waived the State's

11

immunity, and the Court found that it did, but only for actions in State Court, confirming the importance of identifying the limits of any waiver. *Id*. at 445-46.

As the State, by and through the Attorney General in his independent capacity, cautioned in its opposition to Plaintiff's motion for leave to file the SAC, Plaintiff makes a variety of attempts to impute the actions of one entity to others, to the prejudice of those other entities. ECF No. 29 at 7-9, 11. This is true in the immunity context, where the Attorney General removed the case, not the Commission, when the suit was filed against the State as the lone defendant. ECF 1. The waiver-by-removal doctrine is premised on the voluntary invocation of federal jurisdiction. *Embury v. King*, 361 F.3d 562, 564 (9th Cir. 2004) ("*Embury*"). In other words, in waiver-by-removal, the party waives its immunity by making an affirmative choice to litigate in federal court.

Here, the Commission was named after removal. It never consented to removal and never took any affirmative action invoking federal jurisdiction. Imputing a constitutionally independent entity's decision to invoke the federal court's jurisdiction onto the Commission prejudices the Commission's right to independently assert immunity once it was added as a defendant.

In sum, a waiver of Eleventh Amendment immunity must be explicit, the Commission— which is an entity capable of being sued and invoking immunity itself—has not explicitly waived its immunity, and the Attorney General's limited waiver does not extend to the Commission. Accordingly, Eleventh Amendment immunity bars each of the causes of action in the SAC against the Commission, and the Commission should be dismissed from this matter.

### 2. Even if the State's Waiver Did Extend to the Commission, It Would Only Extend to the First Two Causes of Action

The State's limited waiver of Eleventh Amendment immunity, by and through the Attorney General in his independent capacity, does not extend to the Plaintiff's new claims asserted in the SAC that arise from an entirely separate set of facts and therefore constitute a distinct matter or controversy. Waiver of Eleventh Amendment immunity extends only to the "case" or "matter" at hand at the time of removal. *Embury*, 361 F.3d at 565. This waiver is not unlimited.[2] Understood

---

[2] *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613 (2002) and *Walden v.* (continued…)

12

correctly, a State's unambiguous, unequivocal waiver of immunity in removing a lawsuit is only to the extent required for the lawsuit's determination, and does not extend to claims not "arising out of the same transaction or occurrence," "claims of a different form or nature," or "claims exceeding [the] amount" sought. *Texas v. Caremark, Inc.*, 584 F.3d 655, 659 (5th Cir. 2009) ("*Caremark*"). Immunity is not waived as to permissive claims which do not meet the "same transaction or occurrence" test, nor to counterclaims of a different form or nature than that sought by the State as a plaintiff. *Caremark*, 584 F.3d at 659. Determining whether new claims are part of the same transaction or occurrence requires factual examination of the transactions that form the basis of the underlying complaint and the new claims. *Id.*; *Jenkins v. Washington*, 46 F. Supp. 3d 1110, 1117 (W. Dist. Wash. 2014); *Faghri v. Univ. of Conn.*, (2010 U.S. Dist. LEXIS 54611, at *27 (D. Conn. June 3, 2010), 2010 WL 2232690) (State did not waive immunity for a claim related to a set of factual circumstances distinct from the underlying suit).

Here, neither the State nor the Commission initiated this lawsuit nor asserted any claims. The Attorney General, not the Commission, merely removed two limited claims against the State. To the extent that the court imputes the State's limited waiver to the Commission, any claims should be limited to the same transactions or occurrences as the State's removed claims, and should not extend to claims of a different form or nature or that seek an increased amount. *Caremark*, 584 F.3d at 659. An examination of the factual basis of Plaintiff's Third, Fourth, Fifth, and Seventh through Tenth Causes of Action shows that these new claims arise from separate sets of facts from the First and Second Causes of Action in the FAC that the State removed (ECF No. 40, ¶¶ 86-104), are of a different nature and form (constitutional claims as opposed to statutory interpretation and preemption), and now seek money damages. The First Cause of Action seeks a judicial declaration that the Las Flores Pipelines have not been "idled, inactive, or out of service for five years or more" within the meaning of SB 237 because the pipelines were not abandoned (as that term is used in federal law) and "the Legislature did not make SB 237 retroactive." ECF No. 40, ¶¶ 88-89. This claim is a matter of statutory interpretation as to whether SB 237's use of

---

*Nevada*, 945 F.3d 1088 (9th Cir. 2019) similarly do not support an argument that a State's waiver extends to any future claim a plaintiff might bring. *Lapides* and *Walden* did not involve new claims that were asserted after removal and thus did not address the scope of a State's waiver.

13

the terms "idled, inactive, or out of service" are limited to meaning abandoned, as that term is used in federal law. The Second Cause of Action seeks a judicial declaration that, by virtue of the PHMSA Orders, PHMSA has asserted jurisdiction over the Las Flores Pipelines and the federal Pipeline Safety Act preempts state agencies such as OSFM and the Commission from imposing safety standards over the Las Flores Pipelines. ECF No. 40, ¶¶ 96, 98.

In contrast, the newly-alleged Third Cause of Action seeks declaratory relief that SB 237's application to the Las Flores Pipelines is preempted based on the DPA Order issued by the Department of Energy on March 13, 2026, after the case was removed to federal court and entirely separate from the PHMSA Orders upon which the Second Cause of Action is based. The Fourth, Fifth, and Seventh through Tenth Causes of Action similarly arise from a separate nucleus of facts, because they are all based on the enforcement or threat of enforcement of SB 237. As such, these causes of action, when ripe, will all be based on a set of facts that have not yet come to pass, and therefore are necessarily based on separate cases or controversies than what constituted the FAC that the State removed. The SAC also adds constitutional claims, which have a form and nature different from the two declaratory relief claims in the removed FAC, and a new claim for monetary damages. The State did not waive immunity as to any future claim that Plaintiff might attempt to pursue to enlarge the scope of the case—and certainly not for Plaintiff's newly asserted claim for monetary damages that would target the State's Treasury, a stark departure from the originally-removed claims, which sought only declaratory relief. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994) (the impetus for the Eleventh Amendment is the prevention of federal court judgments that must be paid out of a State's treasury) (citing cases); *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 864 (9th Cir. 2016) ("[T]he Eleventh Amendment bars individuals from bringing lawsuits against a state for money damages or other retrospective relief . . . .")

For these reasons, even if this court finds that the State had authority to waive immunity on behalf of the Commission, which was not a party at the time, because the State did not waive Eleventh Amendment immunity as to Plaintiff's Third through Fifth and Seventh through Tenth Causes of Action against the State, those claims should be dismissed as to the Commission.

14

**II.    THIS COURT DOES NOT HAVE ARTICLE III JURISDICTION BECAUSE PLAINTIFF'S CLAIMS ARE NOT RIPE AND PLAINTIFF HAS NOT SUFFERED INJURY**

Under Article III, a federal court only has jurisdiction to hear claims that present an actual "case or controversy." *Allen v. Wright*, 468 U.S. 737, 750 (1984). "Two components of the Article III case or controversy requirement are standing and ripeness." *Bova v. City of Medford*, 564 F.3d 1093, 1096 (9th Cir. 2009); *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 654 (9th Cir. 2002) (federal court jurisdiction "is circumscribed by the 'case or controversy' requirement of Article III standing and by prudential considerations, such as ripeness"). If a plaintiff fails to satisfy the constitutional requirements to establish standing, a court lacks jurisdiction to hear the case and must dismiss the complaint. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 475-76 (1982).

In order for Plaintiff to establish Article III standing, it must show it: "(1) suffered injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan*, 504 U.S. at 560-61). "Where, as here, a case is at the pleading stage," Plaintiffs "must 'clearly ... allege facts demonstrating' each element." *Id*. (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). While the Supreme Court has "always insisted on strict compliance with this jurisdictional standing requirement," the standing inquiry must be "especially rigorous when reaching the merits of the dispute would force [a court] to decide whether [a statute is] unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997).

In addition, Plaintiff "must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) (finding that although plaintiff had standing to pursue damages, he lacked standing to pursue injunctive relief)); *see also Bras v. Cal. Pub. Util. Comm'n*, 59 F.3d 869, 873 (9th Cir.1995) (noting where a plaintiff "seeks declaratory and injunctive relief only, it is insufficient for him to demonstrate that he was injured in the past; he must instead show a very significant possibility of future harm in order to have standing").

The "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Reno v. Catholic Soc. Servs., Inc.*, 509 U.S. 43, 57 n.18 (1993). As a prudential matter, a claim is not ripe for judicial resolution "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (internal quotes and citation omitted). "The basic rationale of the ripeness doctrine is to prevent courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Scott*, 306 F.3d at 662 (internal quotes and citation omitted). As with standing, "[t]he prudential considerations of ripeness are amplified where constitutional issues are concerned." *Id*. To determine when a claim is ripe, courts consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Id*. (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)).

The issues of ripeness and standing can be "closely related." *Bova*, 564 F.3d at 1096. For example, "if the contingent events do not occur, the plaintiff likely will not have suffered an injury that is concrete and particularized enough to establish the first element of standing. ... In this way, ripeness and standing are intertwined." *Bova*, 564 F.3d at 1096. Sorting out the difference between the two "is not an easy task. Indeed, because the focus of our ripeness inquiry is primarily temporal in scope, ripeness can be characterized as standing on a timeline." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir.). The direct injury requirement, however, does not have to be fully consummated in order to obtain preventative relief. *See, e.g., Reg'l Rail Reorg. Act Cases*, 419 U.S. 102, 143 (1974).

### A.    Claims Against the Coastal Commission Are Not Ripe

"[A] federal court normally ought not resolve issues 'involving contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Clinton v. Acequia, Inc.*, 94 F.3d 568, 572 (9th Cir.1996). In *Clinton*, the Ninth Circuit held that a breach of contract claim presented "no live case or controversy" where the claim hinged on future conduct by one of the parties to the contract. *Id.*; *see also Portland Police Ass'n v. City of Portland*, 658 F.2d 1272, 1274 (9th Cir.1981). Here, Plaintiff sued the Commission over actions it has not yet taken, as any

16

matter involving Plaintiff and SB 237 has yet to come for hearing before the Commission. Matters can only be before the Commission for action when the Commission considers the matter at a noticed public hearing. *See, e.g.*, Cal Pub. Res. Code § 30810(a), 30821.3(b). Although prior to Plaintiff's filing of its SAC, the Commission issued a Notice of Intent and Plaintiff submitted a Statement of Defense, it is not, and cannot be, alleged that a hearing is scheduled. RJN, Ex. B (Commission's Notice of Intent) and Ex. C (Plaintiff's Statement of Defense). Any actions the Commission may take, decisions the Commission may make, or orders the Commission may issue are all "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Clinton*, 94 F.3d at 572. The rule applied in *Clinton* thus dictates that the instant case is not ripe.

"In the context of administrative proceedings, a controversy is not ripe for adjudication until the administrative process is completed and the agency makes a final decision that results in a direct and immediate impact on the parties." *Santa Barbara County Flower & Nursery Growers Assn. v. County of Santa Barbara*, 121 Cal.App.4th 864, 875 (2004). An administrative decision is final, and a plaintiff's claim is ripe for adjudication, "when the agency has exhausted its jurisdiction and possesses 'no further power to reconsider or rehear the claim.'" *Long Beach Unified Sch. Dist. v. State of California*, 225 Cal.App.3d 155, 169 (1990). In *Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara*, 102 Cal. App. 5th 1303 (2024), the plaintiff alleged the controversy was ripe because the Commission staff threatened "millions of dollars in fines and penalties." *Id.* at 1309. The Court held that "threats are not formalized or final decisions." *Id.* As in *Casa Blanca*, because the Commission has not made a final decision on substance of the enforcement matter, nor on whether to assess penalties, Plaintiff's "action is not ripe because it has failed to exhaust its administrative remedies." *Id.*

Because the Commission has not taken any action related to the application of SB 237 to Plaintiff's pipelines, Plaintiff's Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth and Tenth causes of action are premature and not ripe for adjudication. For example, the Second Cause of Action of the SAC seeks an order declaring that SB 237 is preempted by the federal Pipeline Safety Act as administered by PHMSA. ECF no. 40, ¶¶ 98-99, 103. This claim is premature as to

17

the Commission because it asks this Court to conclude that any potential terms of a CDP required by Public Resources Code section 30262, as amended by SB 237, are preempted before the Commission has even considered and proposed any terms.

The basis for the Second Cause of Action is the assertion of exclusive jurisdiction over the pipelines by PHMSA under the Pipeline Safety Act. ECF No. 40, ¶¶ 98-9, 103, exhibits B-D. There is no dispute that the Pipeline Safety Act and PHMSA's jurisdiction are limited to the regulation of pipeline safety. ECF 40, Ex. B (December 17 letter from PHMSA at page 2: "The [Pipeline Safety Act] vests with PHMSA exclusive regulatory authority over interstate pipelines and preempts States from adopting or continuing in force safety standards for interstate pipelines.")

The limitation of the Pipeline Safety Act and PHMSA's jurisdiction as to pipeline safety is in contrast to the requirements of the Coastal Act, of which Public Resources Code section 30262 is part. Cal. Pub. Res. Code §§ 30000 *et seq*. A basic goal of the Coastal Act is to "protect, maintain, and, where feasible, enhance and restore the overall quality of the coastal zone environment and its natural and artificial resources." *Id*. § 30001.5(a). As relevant here, the Coastal Act requires a coastal development permit for any "development" in the coastal zone. *Id*. § 30600(a). SB 237 amended Public Resources Code section 30262 to confirm that the "[r]epair, reactivation, and maintenance of an oil and gas facility, including an oil pipeline, that has been idled, inactive, or out of service for five years or more" requires a CDP that meets certain standards. A CDP related to this provision involves considerations outside of pipeline safety.

Because the Coastal Act involves many considerations and conditions outside pipeline safety, the federal Pipeline Safety Act and PHMSA's jurisdiction under the Act do not preempt the Coastal Act or the Commission's authority. By way of example, the 1988 CDP for Exxon's Santa Ynez Unit Development Production Plan included conditions requiring an oil spill contingency plan, oil spill containment and clean-up drills, notice to the Commission in the event of an oil spill, and marine resource conditions (e.g., protection for kelp beds, gray whales, and other wildlife). RJN, Ex. D (Adopted Commission Findings on Permit Consistency Certification) at pp. 7-18. Many of the conditions in this permit and permits like it have nothing to do with

18

pipeline safety and focus on the protection of coastal resources. In the case of Plaintiff and the CDP it is required to obtain under SB 237, those permit conditions are not yet and cannot be known unless and until Plaintiff applies for a coastal development permit as required by section 30262, and the Commission reviews the permit application. Consequently, it is premature for this Court to issue an order relating to a claim that a CDP, in whole or in part, is preempted by the PHMSA Orders. Thus, the Second Cause of Action is not yet ripe for review.

Similarly, Plaintiff's Third Cause of Action is also seeking declaratory relief as to the application of SB 237. As discussed above, because the Commission has not applied SB 237 to Plaintiff's pipeline, what the Commission may do at hearing is purely speculative at this point.

Further, because Plaintiff has not yet applied for a CDP nor has the Commission taken any action to enforce SB 237 against Plaintiff, what alleged constitutional infringements Plaintiff may or may not face at the hands of the Commission have yet to be seen. Accordingly, the Fourth, Fifth, and Seventh through Tenth causes of action against the Commission are not yet ripe and should be dismissed.

### B. Plaintiff Has Not Suffered Any Injury Because It Has Reactivated the Las Flores Pipelines

For a case to be a justiciable case or controversy under Article III, the plaintiff must have standing. *Lujan*, 504 U.S. at 560. "[T]he irreducible constitutional minimum of standing contains three elements, all of which the party invoking federal jurisdiction bears the burden of establishing." *Id.* at 560-61. The first element requires the plaintiff to establish that he suffered an "injury in fact," defined as an "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id*. at 560 (citations, internal quotation marks, and footnote omitted). Where pre-enforcement standing is invoked, there can be no injury, thus no justiciability, where a plaintiff has not been coerced into deciding not to exercise their claimed right. *See MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007).

Here, Plaintiff cannot allege that it has suffered any injury as a result of any action by the Commission, as it resumed transportation of oil through the pipelines on March 14, 2026. ECF

19

No. 40, ¶¶ 91, 109; ECF No. 22 at 6:16-18. Although the Commission and other state agencies dispute that Plaintiff did so legally, Plaintiff did not allege that SB 237 or any action by the Commission pursuant thereto impeded that restart. Further, Plaintiff has not alleged that it has been coerced into foregoing its rights. Because Plaintiff has not suffered harm, it lacks standing to bring this case, and the SAC and claims against the Commission should be dismissed.

### III. THE SECOND AMENDED COMPLAINT FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST THE COASTAL COMMISSION

Even if this court finds that the Commission involuntarily waived sovereign immunity, and that Article III standing exists, Plaintiff fails to state claims upon which relief can be granted against the Commission in the following causes of action:

#### A. The Claim Splitting Doctrine Bars Plaintiff's Seventh, Eighth and Ninth Causes of Action

If the Court rejects the argument that the State's limited waiver of Eleventh Amendment immunity, through removal of the FAC, does not extend to the Third through Fifth and Seventh through Tenth Causes of Action, then applying a consistent view of the case's scope inevitably leads to the conclusion that the claim-splitting doctrine would bar the Seventh, Eighth, and Ninth Causes of Action against the Commission. Claim-splitting prohibits a plaintiff from maintaining two separate actions involving the same subject matter at the same time against the same party. Here, the Seventh, Eighth, and Ninth Causes of Action are the same as claims asserted against the Commission by Plaintiff in *Sable I* in Santa Barbara Superior Court. Accordingly, the Court should dismiss the Seventh, Eighth, and Ninth Causes of Action as to the Commission.

Claim-splitting is a species of claim preclusion and follows the same test for determining whether the claim is duplicative, but it does not require final judgment on the merits in the prior case before it can be applied. *In re Don Rose Oil, Inc.*, 614 B.R. 358, 367-68 (Bankr. E.D. Cal. 2020); *Marvel Entm't LLC v. Kimble*, CV-15-00404-TUC-RM, 2016 WL 9525586, at *3 n.6 (D. Ariz. Apr. 14, 2016). The doctrine promotes judicial economy, prevents the vexation of repetitive actions, and avoids the possibility of conflicting decisions. *Marvel*, 2016 WL 9525586, at *3 n.6. The claim-splitting bar applies where (1) the actions arise out of the same transactional nucleus of facts, (2) they involve infringement of the same right, (3) litigation would involve substantially

20

the same evidence, and (4) continued litigation of the second suit could impair rights or interests that might be established in a judgment in the first. *Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 887 (9th Cir. 2022). The doctrine also requires that the two actions involve the same parties or their privies. *Id*. The most important of the criteria is whether the two suits arise out of the same transactional nucleus of operative facts. *Id*.

As explained in Section I.B.2, above, the Seventh, Eighth, and Ninth Causes of Action are not based on the same nucleus of facts as the First and Second Causes of Action, which were the only ones removed by the State. However, if the Court were to disagree with that position in assessing the scope of the waiver effectuated by the removal of this case to federal court, thereby taking a broader of view of what constitutes the case that was removed, then it must consistently apply that broader view, in which case Plaintiff's claims in *Sable I* would also be part of the same case and the case-splitting doctrine would bar the inclusion of the duplicative claims here.

*Sable I* arises out of extensive development done by Plaintiff, within the coastal zone, as part of its efforts to reactivate the Las Flores Pipelines. RJN, Ex. A at ¶ 2; *see also* ECF No. 40 at ¶ 9. Plaintiff did not seek a new coastal development permit for the work. In response, the Commission issued a Notice of Intent, cease and desist orders and an administrative penalty order to enforce Coastal Act requirements against Plaintiff and upon the Pipelines. RJN, Ex. A. Plaintiff challenged those actions and claimed that the Commission's enforcement of the Coastal Act impairs Plaintiff's vested rights and constitutes a taking that results in $347,000,000 in damages. *Id*. at ¶¶ 153, 154, 157, 158, 162, 165, 167, 172.

To the extent the Court takes a broad view of the scope of this case, the Commission's efforts to enforce the Coastal Act on the Las Flores Pipelines at issue in *Sable I*, would be part of the same case as the Commission's efforts to enforce the Coastal Act, as amended by SB 237, upon the Las Flores Pipelines at issue here. Plaintiff and the Commission are parties in both actions. Both actions would include claims that address Plaintiff's rights in the Las Flores Pipelines and whether enforcement of the Coastal Act impairs those rights and constitutes a taking. Both actions include a claim of takings damages in the amount of $347,000,000. Both claims would involve substantially the same evidence and legal arguments. Finally, continued

21

litigation of the Seventh, Eighth, and Ninth Causes of Action in the instant case could impair the Commission's rights that were adjudicated in *Sable I*, including but not limited to the court's ruling that the Commission's actions to enforce the Coastal Act were proper because Plaintiff's work to reactivate the Las Flores Pipelines exceeded its existing rights, which defeats the takings claims. RJN, Ex. E (Minute Order Granting Commission's Motion for Judgment on the Pleadings) at p. 7. Accordingly, even if the court were to find that the Eleventh Amendment does not bar the Seventh, Eighth and Ninth Causes of Action because the court finds the scope of the case is broad enough that immunity was waived, then each of the claim-splitting criteria would be met, and those causes of action should be dismissed.

### B.    The Fifth and Sixth Causes of Action Fail to State a Claim Because SB 237 Does Not Single Out or Apply to Any One Particular Person or Entity

With regard to the Fifth Cause of Action for violation of the Equal Protection Clause, "[a] successful equal protection claim may be brought by a 'class of one,' when the plaintiff alleges that it has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 679 (9th Cir. 2002). Plaintiff has not, and cannot, allege that SB 237 treats it differently from others that are similarly situated. SB 237 applies to all pipelines or other oil or gas facilities that are idled, inactive, and out of service for five years or more. Additionally, the allegations in the SAC and matters that are judicially noticeable show that there was a rational legislative purpose for SB 237 and that there was a rational basis for targeting the legislation toward idled, inactive, and out of service oil and gas facilities. *Id.* at 678-79. For instance, the Senate Rules Committee digest for SB 237 states that the bill would require pipelines of a certain size (which would include but is not limited to Plaintiff's pipelines) to meet certain requirements. ECF No. 40 at 47 (Ex. A to SAC). Additionally, the SAC admits that the Las Flores Pipelines ruptured the last time they were operated—underscoring the Legislature's concerns with safety and protecting the coastal zone. *Id.*, ¶ 40.

With regard to the Sixth Cause of Action, "[t]hree key features brand a statute a bill of attainder: that the statute (1) specifies the affected persons, and (2) inflicts punishment (3) without

a judicial trial." *SeaRiver Mar. Fin. Holdings, Inc.*, 309 F.3d at 668. Relevant to the Commission, Plaintiff claims that SB 237 punishes the conduct of a single, specific entity by subjecting Plaintiff to the requirements of California Public Resources Code section 30262. ECF No. 40, ¶¶ 135-36. Again, Plaintiff fails to state a claim upon which relief can be granted because the plain language of the statute belies Plaintiff's claims. Plaintiff claims that "SB 237 applies with specificity only to Pacific Pipeline Company as the owner of the Santa Ynez Pipeline System." *Id.*, ¶ 134. Not so. SB 237, though likely applicable to Plaintiff, does not focus on any one entity or class. Public Resources Code section 30262 is couched in general terms appliable to any oil and gas facility, including a pipeline, that fits the criteria laid out in the statute, and on its face does not name Plaintiff or any other pipeline or oil and gas facility owner. *SeaRiver Maritime Financial Holdings, Inc.*, 309 F.3d at 669.

A statute need not specifically call out an individual by name in order to constitute a bill of attainder if it effectively singles out an individual by describing past conduct attributable to a particular person (*SeaRiver Maritime Financial Holdings, Inc.*, 309 F.3d at 670), but SB 237 does no such thing. SB 237 does not use retrospective language that focuses on past conduct targeting any one group or individual. The relevant provision to the Commission at issue in this lawsuit applies broadly to *any* oil and gas facility in the State that has been idle, inactive, or out of service for five years or more, and Plaintiff does not allege (and could not plausibly allege) that the Las Flores Pipelines are the only two facilities meeting that description, either currently or in the future. Also, SB 237 regulates conditions (idle, inactive, or out of service) that were *present* at the effective date of the legislation, and *prospective* behavior (repair, reactivation, and maintenance) occurring *after* the effective date of the legislation, not *past* behavior. If the Las Flores Pipelines had been legally restarted before January 1, 2026, then SB 237 could not apply. The statute also does nothing to single out any one particular operator, and the mere fact that SB 237 may be applicable to a particular operator does not mean the law constitutes a bill of attainder. Public Resources Code section 30262 targets oil and gas facilities, not individuals or a class of facility owners. Accordingly, it does not qualify as a bill of attainder.

### C.    The Seventh Through Ninth Causes of Action Fail Because Plaintiff Has Not Alleged That Any Property Right Has Been Impaired or Taken

The Seventh (Vested Rights), Eighth (Inverse Condemnation), and Ninth (Takings) Causes of Action, which allege that Plaintiff's vested rights have been impaired, Defendants' actions constitute a taking, and Plaintiff is entitled to damages for Defendants' unconstitutional taking, fail to state a claim for the additional reason that Plaintiff admits that it is currently transporting oil through its pipelines. ECF No. 40, ¶¶ 91, 101, 109; ECF No. 22 at 6:16-18. In this sense, nothing has been taken from Plaintiff and Plaintiff's supposed property rights have not been impaired (*see* RJN, Ex. E) and thus Plaintiff has not suffered any injury. To the extent Plaintiff believes the Coastal Commission's future action will impair its vested rights or subject Plaintiff to an unconstitutional taking, Plaintiff will have the opportunity to litigate those claims at the appropriate time, in the proper venue, after the agency has taken a final action.

Additionally, Plaintiff's Ninth Cause of Action for monetary damages fails because the Coastal Commission is not a "person" against whom a Section 1983 claim for money damages might be asserted. *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002); *Rossco Holdings, Inc. v. State*, 260 Cal. Rptr. 736, 746-47 (Cal. Ct. App. 1989).

### D.    The Tenth Cause of Action Fails Because Injunctive Relief Is Not a Stand-Alone Cause of Action

Plaintiff's Tenth Cause of Action for injunctive relief should be dismissed without leave to amend because, in the Ninth Circuit, injunctive relief is a remedy and not, in itself, an independent cause of action. *A.B. Concrete Coating Inc. v. Wells Fargo Bank, Nat'l Ass'n*, 491 F.Supp.3d 727, 737-38 (E.D. Cal. 2020).

### E.    The Third Cause of Action Fails Because There Is No Basis for Relief under the Defense Production Act

The DPA is a tool that the federal government uses to move itself to the front of the line in contract orders. The President—or her or his delegate—may "require acceptance and performance of contracts which he deems necessary or appropriate to promote the national defense in preference to other contracts." *Hercules Inc. v. United States*, 24 F.3d 188, 191 n.4 (Fed. Cir. 1994), *aff'd on other grounds*, 516 U.S. 417 (1996). On March 13, 2026, the DPA

24

Order directed Plaintiff to prioritize contracts (though it did not identify which contracts to prioritize). *See* ECF No. 40, Ex. F (DPA Order). Plaintiff alleges preemption of the Coastal Act, but does not identify the relevant contracts or how the Coastal Act somehow conflicts with such prioritization. Indeed, there are no contracts being prioritized *at all*, so there is no basis for alleging a conflict between the DPA and the Coastal Act.

Plaintiff relies on the liability shield in 50 U.S.C. 4557[3] to support the claimed preemption of the Coastal Act. *See* SAC, ¶¶ 83-85 (citing the OLC Opinion, attached as Exhibit G). However, the Eighth Circuit and the Federal Circuit both concluded that Section 4557 does not excuse parties from following state law but simply protects them from liability when the DPA's prioritization or allocation away from existing customers causes the firm to breach contracts with their existing customers. *See United States v. Vertac Chem. Corp.*, 46 F.3d 803, 812 (8th Cir. 1995) (citing *Hercules, Inc.*, 24 F.3d at 203-04). The United States has previously conceded this point, stating "the language and statutory context of Section 707 [50 U.S.C. § 4557] show that it protects contractors from claims arising out of a DPA order's displacement of work for other customers, not from tort liability to parties who claim to have been injured . . . ." Brief for Respondent United States, *Hercules, Inc. v. United States*, No. 94-818 (516 U.S. 417), 1995 WL 495540, at *34.[4] Because there are no contracts at issue and the DPA does not permit a party to disregard the Coastal Act, the court should dismiss Plaintiff's Third Cause of Action.

### CONCLUSION

For the foregoing reason, the Commission respectfully requests that the Court grant its motion to dismiss and dismiss Plaintiff's claims against the Commission.

Dated:  August 3, 2026

Respectfully submitted,
ROB BONTA
Attorney General of California

/s/ Roxanne J. Carter
ROXANNE J. CARTER, Deputy Attorney General
*Attorney for California Coastal Commission*

---

[3] Section 4557 was enacted as Section 707 of the DPA. At the time of *Vertac* and *Hercules*, the same provision was codified at 50 U.S.C. app. § 2157.

[4] The United States prevailed at the Supreme Court in *Hercules* on other grounds and the Court did not reach this issue. *Hercules Inc. v. United States*, 516 U.S. 417 (1996).

25