NO FEE PURSUANT TO
GOVERNMENT CODE
SECTION 6103



ROB BONTA, State Bar No. 202668
Attorney General of California
BRANDON WALKER, State Bar No. 254581
Supervising Deputy Attorney General
ROXANNE J. CARTER, State Bar No. 259441
Deputy Attorney General
600 West Broadway, Suite 1800
San Diego, CA 92101
Telephone: (619) 321-5627
Fax: (619) 732-7920
E-mail: Roxy.Carter@doj.ca.gov
*Attorneys for Defendant*
*California Coastal Commission*

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Pacific Pipeline Company, A Delaware Corporation,**<br><br>Plaintiff,<br><br>**v.**<br><br>**STATE OF CALIFORNIA, a state government; CALIFORNIA COASTAL COMMISSION, a state agency; CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, a state agency; OFFICE OF THE STATE FIRE MARSHAL, a state agency; DANIEL BERLANT, in his official capacity as State Fire Marshal and DOES 1 through 25, inclusive,**<br><br>Defendants. | 1:26-cv-01486-KES-CDB<br><br>**DEFENDANT CALIFORNIA COASTAL COMMISSION'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**<br><br>Date: September 21, 2026<br>Time: 1:30 p.m.<br>Dept: 6 [7th Floor]<br>Judge: The Honorable Kirk E. Sherriff<br>Trial Date: None Set<br>Action Filed: September 29, 2025 |

# TABLE OF CONTENTS

**Page**

Introduction ........ 1
Argument ........ 1
I. The Commission Is Immune from Plaintiff's Suit. ........ 1
A. Any Waiver Was Made by the Attorney General in His Independent Capacity. ........ 1
B. The Commission Is an Independent and Separate Entity from the Attorney General in His Independent Capacity. ........ 2
C. The Commission Did Not Consent to Waive Its Immunity. ........ 4
II. This Court Does Not Have Article III Jurisdiction Because the Commission Has Not Taken Definite or Concrete Action and Plaintiff Has Not Suffered Any Alleged Injury. ........ 5
III. The Second Amended Complaint Fails to State Any Claim for Relief Against the Coastal Commission ........ 8
A. The Claim Splitting Doctrine Bars Plaintiff's Seventh, Eighth and Ninth Causes of Action. ........ 8
B. The Fifth and Sixth Causes of Action Fail to State a Claim. ........ 9
C. Plaintiff's Seventh, Eighth and Ninth Causes of Action Fail to State a Claim. ........ 12
D. Plaintiff's Tenth Cause of Action Should Be Struck. ........ 13
E. There Is No Basis for Relief Under the Defense Production Act. ........ 13
IV. Plaintiff Cannot Cure Immunity or Lack of Standing by Amendment ........ 15
Conclusion ........ 15

## TABLE OF AUTHORITIES

**Page**

**CASES**

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*
309 F.3d 662 (9th Cir. 2002)........ 10, 11, 12

*Bird v. Oregon Comm'n for the Blind*
22 F.4th 809 (9th Cir. 2022)........ 4, 5

*Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara*
102 Cal.App.5th 1303 (2024)........ 7, 8

*Embury v. King*
361 F.3d 562 (9th Cir. 2004)........ 5

*Felder v. Casey*
487 U.S. 131 (1988)........ 7

*Fowler Packing Co. v. Lanier*
844 F.3d 809 (9th Cir. 2006)........ 9, 10, 11

*Geo Group, Inc. v. Newsom*
50 F.4th 745 (9th Cir. 2022)........ 2

*Habelt v. iRhythm Techs., Inc.*
83 F.4th 1162 (9th Cir. 2023)........ 1, 2

*Hercules, Inc. v. United States*
No. 94-818 (516 U.S. 417), 1995 WL 495540........ 14, 15

*In re Don Rose Oil, Inc.*
614 B.R. 358 (Bankr. E.D. Cal. 2020)........ 9

*Lapides v. Bd. of Regents of Univ. Sys. of Georgia*
535 U.S. 613 (2002)........ 13

*Marine Forests Society v. Cal. Coastal Comm'n*
36 Cal.4th 1 (2005)........ 3

*Marvel Entm't LLC v. Kimble*
CV-15-00404-TUC-RM, 2016 WL 9525586 (D. Ariz. Apr. 14, 2016)........ 9

*MedImmune, Inc. v. Genentech*
Inc., 549 U.S. 118, 129 (2007)........ 6

*Olson v. California*
104 F.4th 66 (9th Cir. 2024)........ 2

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Pennhurst State Sch. v. Halderman*
*465 U.S. 89 (1984)* .......... 3, 4

*PLIVA, Inc. v. Mensing*
564 U.S. 604 (2011) .......... 13

*Purdy and Fitzpatrick v. State*
71 Cal.2d 566 (1969) .......... 7

*Sable Offshore Company v. Cal. Coastal Comm'n*
No. 25CV00974 .......... 8

*Sail'er Inn, Inc. v. Kirby*
5 Cal.3d 1 (1971) .......... 7

*Shaw v. Delta Air Lines*
463 U.S. 85 (1983) .......... 7

*State Highway Comm'n of Wyoming v. Utah Const. Co.*
278 U.S. 194 (1929) .......... 13

*Steffel v. Thompson*
415 U.S. 452 (1974) .......... 6

*Susan B. Anthony List v. Dreihaus*
573 U.S. 149 (2014) .......... 6

*Thomas v. Anchorage Equal Rights Comm'n*
220 F.3d 1124 (9th Cir. 2000) .......... 6

*United States Forest Serv. v. Cowpasture River Pres. Ass'n*
590 U.S. 604 (2020) .......... 14

*United States v. California*
921 F.3d 865 (9th Cir. 2019) .......... 2

*Vann v. City and County of San Francisco*
97 Cal.App.5th 1013 (2023) .......... 3

*Wyeth v. Levine*
555 U.S. 555 (2009) .......... 13

**STATUTES**

42 Unites States Code
§ 1983 .......... 13

## TABLE OF AUTHORITIES
**(continued)**

**Page**

Alaska Statute
§ 18.80.270 ........ 6

California Government Code
§ 11043 ........ 4
§ 11043(a)(1) ........ 2
§ 11043(a)(2) ........ 3
§ 11043(c) ........ 2
§ 11043(d) ........ 2

California Public Resources Code
§ 30000 (Coastal Act) ........ 7, 8, 9, 14
§ 30262(b)(2) ........ 9
§ 30301 ........ 3
§ 30334(b) ........ 3
§ 30801(a) ........ 13
§ 30810 ........ 6
§ 30811 ........ 6

Defense Production Act ........ 14, 15

**CONSTITUTIONAL PROVISIONS**

California Constitution Article V
§ 13 ........ 2

United States Constitution
Eleventh Amendment ........ *passim*
Article I, § 9 Clause 3 ........ 12
Equal Protection Clause ........ 10

## INTRODUCTION

It is undisputed that Defendant California Coastal Commission ("Commission") enjoys Eleventh Amendment immunity. The Commission has not waived its immunity. Further, even if the Commission is deemed to have waived its immunity—which it has not—the claims that Plaintiff Pacific Pipeline Company ("Plaintiff") asserts against the Commission are not yet ripe, so this court lacks jurisdiction to hear those claims at this juncture. Lastly, even if the court found it had jurisdiction, Plaintiff still fails to state a claim against the Commission.

The Commission respectfully offers the following reply to Plaintiff's Response in Opposition to the California Coastal Commission's Motion to Dismiss ("Opposition").

## ARGUMENT

### I. THE COMMISSION IS IMMUNE FROM PLAINTIFF'S SUIT.

Plaintiff concedes that the Commission enjoys Eleventh Amendment immunity. See ECF No. 60 at 11. While Plaintiff does not challenge that the Commission is entitled to immunity, Plaintiff mistakenly argues the Commission lost its immunity when "California waived sovereign immunity for itself and its relevant agencies and officers." ECF No. 60 at 7. However, "California" did not waive Eleventh Amendment immunity, it was the Attorney General of California in his independent capacity, who exists as but one arm of the State. ECF No. 1. The Commission was not even a party to the case at the time of removal. *Id.* The Attorney General of California, in his independent capacity, is unable to waive the immunity of another distinct arm of the state with a separate governing body, which he is not representing, without express authority to do so. No such authority existed here.

#### A. Any Waiver Was Made by the Attorney General in His Independent Capacity.

Plaintiff mistakenly believes that because its suit is ambiguously captioned as against the "State of California," that it was the overarching sovereign, "California," that responded and entered into litigation. "[T]he caption of an action is only the handle to identify it" and "[a] person or entity can be named in the caption of a complaint without necessarily becoming a party to the action." *Habelt v. iRhythm Techs., Inc.*, 83 F.4th 1162, 1166 (9th Cir. 2023) (internal

quotations omitted). Instead, we look to "the allegations in the body of the complaint" to determine the person or entity that is the party. *Id*. Because Plaintiff's original suit was based on new legislation—or a new law of the State—the appropriate state entity to respond and litigate was the Attorney General in his independent capacity. *See* Cal. Const., Art. V, § 13 ("It shall be the duty of the Attorney General to see that the laws of the State are uniformly and adequately enforced.").[1] However, the Attorney General "performs separate functions in enforcing state laws, pursuant to Section 13 of Article V of the California Constitution, and serving as counsel, whenever requested, for the representation of state agencies and employees in judicial and administrative adjudicative proceedings and other matters." Cal. Govt. Code, § 11043(a)(1). More importantly, "[w]hen the Attorney General institutes or defends an action in their independent capacity on behalf of the State of California or the people of the State of California, the Attorney General acts in the public interest of the State of California and its residents and not as the legal representative or attorney of any state entity, […]. State agencies are not parties to an action […], unless they are specifically named as a party, and the [relevant documents] are not in the possession, custody, or control of the Attorney General." Cal. Govt. Code, § 11043(d). Plaintiff does not address these authorities, roles, and distinctions. Moreover, at the time of removal the Commission was not named as a part of the case. ECF No. 1.

Because removal of this matter to federal court and any limited waiver of Eleventh Amendment immunity that resulted occurred before the Commission was named as a party to this suit, it simply cannot be said that the Commission voluntarily waived its immunity.

### B. The Commission Is an Independent and Separate Entity from the Attorney General in His Independent Capacity.

The Commission is a separate entity from the Attorney General, and therefore, any actions that may be construed as a limited waiver of immunity by the Attorney General cannot be imputed to the Commission in this case. "Every state agency is a separate legal entity." Cal. Govt.

[1] *See also Geo Group, Inc. v. Newsom*, 50 F.4th 745, 750 (9th Cir. 2022) (preemption challenge to state statute named Governor, Attorney General and State); *United States v. California,* 921 F.3d 865, 872 (9th Cir. 2019) (same); *Olson v. California*, 104 F.4th 66, 74 (9th Cir. 2024) (constitutional challenge to state statute named state and Attorney General).

Code, § 11043(c). Moreover, the Commission is an independent state agency. *Marine Forests Society v. Cal. Coastal Comm'n*, 36 Cal.4th 1, 46 (2005). The Commission "may sue and be sued." Cal. Pub. Res. Code, § 30334(b). Under California law, when determining whether a local entity is an independent entity versus a subsidiary of a local government, California courts will consider factors such as whether there are statutory declarations that the entity is a body corporate or politic and whether the entity has a separate governing body from the local government. *See Vann v. City and County of San Francisco*, 97 Cal.App.5th 1013, 1025 (2023).

Here, the Commission has a completely separate governing body within the state that is comprised of 15 members appointed by the Senate Rules Committee, the Speaker of the Assembly and the Governor. Cal. Pub. Res. Code, § 30301. The Attorney General is not a member of nor an appointing authority for the Commission. *Id.* Unless retained as counsel for the a "specific matter," the Attorney General cannot act on behalf of a separate state entity, agency or commission. *See* Cal. Govt. Code, § 11043(a)(2). As a matter of practicality, the actions of one agency cannot be imputed to others; if the Court finds that the actions of one entity of the state can bind a wholly separate and independent agency without authorization, it would be placing a heavy administrative and bureaucratic burden on already busy government bodies. It would be the administrative equivalent of requiring a judge in the Eastern District to circulate tentative orders for comment and agreement to all district court judges in the Southern, Northern and Central Districts before issuing her or his ruling in any given case. The fact is that the Commission is a separate and independent agency from the Attorney General in his independent capacity, and both are two separate party litigants in this matter.

The Attorney General and the Commission are not the same legal entities, and the Attorney General's removal of two causes of action did not result in an involuntary waiver of Eleventh Amendment immunity by the Commission. There is no dispute that the Commission is afforded immunity from suit under the Eleventh Amendment, which prevents federal courts from exercising jurisdiction over claims against the Commission unless there has been, *inter alia*, express and unequivocal consent or waiver. *Pennhurst*, 465 U.S. at 102. In this case, by its removal of the FAC to federal court (ECF No. 1), the Attorney General in his independent

capacity, only on behalf of himself but not separate agencies that were non-parties at the time of removal, consented to federal jurisdiction over a narrow case involving just two causes of action. The limited waiver of Eleventh Amendment immunity does not extend to the Commission. The Commission should not be prejudiced by Plaintiff waiting until after the State's removal to add the Commission as a defendant in this action.

The Commission has not provided an express and unequivocal consent or waiver and is asserting its sovereign immunity at the first opportunity to do so in this action. In fact, the Commission has not, until recently, been party to this action and as such, could not have asserted its sovereign immunity prior to this opportunity. Nor is there anything in the record suggesting that the State, by and through the Attorney General in his independent capacity, expressly and unequivocally intended to waive sovereign immunity on behalf of the Commission. Even if there were ambiguity as to whether the State waived the Commission's immunity, which there is not, the State's limited waiver should be strictly construed. *Pennhurst*, 465 U.S. at 102; *Bird v. Oregon Comm'n for the Blind*, 22 F.4th 809, 814 (9th Cir. 2022).

### C. The Commission Did Not Consent to Waive Its Immunity.

It is undisputed that the Commission was not a party to the case at the time of removal. ECF No. 1. Accordingly, it cannot be disputed that the Attorney General was not acting on behalf of the Commission at the time of removal. Thus, Plaintiff is unable to allege that the Commission consented to the Attorney General's limited waiver of Eleventh Amendment immunity.

Plaintiff argues "[t]he Commission diminishes California's waiver, concentrating on the Attorney General's 'independent capacity' and perceived lack of 'authority […].'" ECF No. 60 at 9. However, Plaintiff misses the point completely by focusing on the conceptual "California," rather than understanding who was actually litigating opposite Plaintiff at the time of removal: the Attorney General of California in his independent capacity—that is, not as counsel for "California" nor the Commission at that time. The distinction between the Attorney General acting in his constitutional capacity versus as a representative of any state agency is not merely "perceived"—it is codified in state law. *See* Cal. Govt. Code, § 11043. Further, this distinction is

critical to understanding the significance of the Attorney General's waiver and how it cannot feasibly be said to be binding on separate, independent agencies.

Plaintiff erroneously implies that *Embury v. King*, 361 F.3d 562 (9th Cir. 2004) ("*Embury*") stands for the proposition that the Attorney General's "removal to this Court waived sovereign immunity for itself and [all of the arms of the state] as to all claims concerning SB 237 (*Embury v. King*, 361 F.3d at 566)." ECF No. 60 at 12. Not so. In *Embury*, "all of the defendants joined in removing the state superior court case to federal court." *Embury*, 361 F.3d at 563. Accordingly, it cannot be said that *Embury* stands to attribute a waiver of immunity to entities that were not defendants at the time of removal. As an aside, even if this court finds that the Attorney General in his independent capacity had authority to waive immunity on behalf of the Commission, who was not a party to this case at the time, the scope of the causes of action against the Commission should not exceed the scope of the limited waiver made by the Attorney General.

The case law is clear that a state agency cannot be sued without its consent. *Bird*, 22 F.4th at 814. It is undisputed that the Commission is entitled to Eleventh Amendment immunity. ECF No. 60 at 11. The Commission did not remove this matter to federal court. *See* ECF No. 1. The Commission was not even a named party in this matter at the time of removal. *Id.* The Commission did not waive its immunity or consent to be sued in this matter. Accordingly, the case should be dismissed as to the Coastal Commission.

## II. THIS COURT DOES NOT HAVE ARTICLE III JURISDICTION BECAUSE THE COMMISSION HAS NOT TAKEN DEFINITE OR CONCRETE ACTION AND PLAINTIFF HAS NOT SUFFERED ANY ALLEGED INJURY.

Plaintiff concedes that the ripeness and standing inquiry both turn on "whether the issues presented are definite and concrete, not hypothetical or abstract." ECF No. 60 at 14. The Commission agrees. However, Plaintiff fails to appreciate how the Commission's enforcement process works and thus conflates precautionary warnings and a notice of intent to commence enforcement proceedings in the future with concrete and definite enforcement actions.

Plaintiff correctly notes that the Commission staff issued a Notice of Intent to Commence Cease and Desist Order and Administrative Penalty Proceedings ("NOI"). ECF No. 60 at 5. The title of the NOI itself explains that the Commission staff only intends to commence—indicating

staff has not yet commenced enforcement proceedings and the Commission has not taken action. Further, Plaintiff itself concedes that the NOI "states that the commission *intends to commence* proceedings" and "asserts penalties and civil liability *may* be imposed." ECF No. 60 at 5, emphasis added. Thus, Plaintiff acknowledges that the NOI only shows Commission staff's intent, that the proceedings have not yet commenced, and that there is no direct threat of criminal harm.

Contrary to Plaintiff's argument, the Commission's contention is that it has not taken enforcement action, because the Commission as a body only acts when a quorum of the Commissioners convenes for a hearing and votes, not that "it has not taken *further* action." *Compare* ECF 54-1 at 16-19 *with* ECF No. 60 at 14. Commission enforcement orders are only issued after a noticed public hearing. Cal. Pub. Res. Code, §§ 30810, 30811. Procedurally, matters can only be before the Commission for its action at a noticed public hearing. *See, e.g.*, *id*. Here, Plaintiffs only received letters and a notice from staff, but the Commission itself did not act, and Plaintiff cannot allege that a hearing took place or is even scheduled. Further, to invoke pre-enforcement standing, Plaintiff would need to allege it has been coerced into deciding not to exercise its claimed right to show injury and justiciability. *See MedImmune, Inc. v. Genentech*, Inc., 549 U.S. 118, 129 (2007). Since Plaintiff cannot make the requisite showing, it cannot invoke pre-enforcement standing.

Plaintiff's reliance on *Susan B. Anthony List v. Dreihaus*, 573 U.S. 149 (2014), *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1124, (9th Cir. 2000), and *Steffel v. Thompson*, 415 U.S. 452 (1974) is misplaced. *See* ECF No. 60 at 14-15. In each, a critical fact was the threat of criminal prosecution, which is not present here. In *Susan B. Anthony List*, the Court stated that it was the "combination of . . . two threats"—an administrative threat plus an additional threat of criminal prosecution—that created an Article III injury "under the circumstances of [that] case." *Susan B. Anthony List*, 573 U.S. at 166. Likewise, the law at issue in *Thomas*, 220 F.3d 1124, was criminal in nature as any violator of the statute "is guilty of a misdemeanor." Alaska Stat. §18.80.270. Similarly, the Plaintiff in *Steffel*, 415 U.S. 452, also faced a threat of arrest by police for violating a Georgia criminal trespass law. Here, Plaintiff acknowledges the Commission did

not threaten criminal prosecution. *See* ECF No. 60 at 5. In fact, the Commission does not have authority under the Coastal Act of California (Cal. Pub. Res. Code, §§ 30000, et seq.) to initiate criminal proceedings.

Plaintiff's citations to *Sail'er Inn, Inc. v. Kirby*, 5 Cal.3d 1 (1971) and *Purdy and Fitzpatrick v. State*, 71 Cal.2d 566 (1969) are also not on point. They do not deal with ripeness in the face of administrative enforcement or support enjoining action of an agency such as the Commission. Instead, these cases are seeking to nullify laws with strong constitutional conflicts. In *Sail'er Inn*, 5 Cal.3d 1, the California Supreme Court held that a plaintiff need not exhaust its administrative remedies when a federal and state statute places them in the untenable situation of having to choose whether to obey possibly conflicting laws and face a penalty under the one they disobey. *Id*. at 6. Except for possibly the Third Cause of Action, there is no such alleged statutory conflict or untenable choice imposed upon Plaintiff. However, the Third Cause of Action does not allege facts that demonstrate that the Coastal Act imposes such an untenable choice upon Plaintiff.

Lastly, Plaintiff relies on *Felder v. Casey*, 487 U.S. 131 ("*Felder*") to assert that it need not exhaust state administrative remedies to vindicate its constitutional rights. ECF No. 60 at 16. However, in *Felder*, the Plaintiff had already experienced an injury—a beating by Milwaukee police officers that was allegedly racially motivated—and the administrative exhaustion related to the timing of when Plaintiff brought his claim. *Id.* Here, because the Commission has not taken enforcement action, Plaintiff has not yet suffered an injury and *Felder* is simply irrelevant. Directly after citing *Felder*, Plaintiff cites to a footnote in *Shaw v. Delta Air Lines*, 463 U.S. 85, 96 n.14 (1983), but neither the cited case nor the cases cited in that footnote relate to a challenge where ripeness is a factor, so, as with *Felder*, the authority cited is irrelevant and does not support Plaintiff's allegations that it has standing despite the Commission not having acted. *See* ECF No. 60 at 16.

The Commission has not taken enforcement action. Its staff only sent precautionary letters and issued an NOI. In *Casa Blanca Beach Estates Owners' Assn. v. County of Santa Barbara*, 102 Cal.App.5th 1303 (2024), the Court held that "threats are not formalized or final decisions."

*Id.* As in *Casa Blanca*, because the Commission has not made a final decision on substance of the enforcement matter, nor on whether to assess penalties, Plaintiff's "action is not ripe because it has failed to exhaust its administrative remedies." *Id.* Because the Commission did not take definite and concrete action, all of Plaintiff's imagined injuries are just that—imaginary. Accordingly, Plaintiff lacks standing and this Court lacks jurisdiction over the Commission.

## III. THE SECOND AMENDED COMPLAINT FAILS TO STATE ANY CLAIM FOR RELIEF AGAINST THE COASTAL COMMISSION

The Commission replies as follows to Plaintiff's Opposition:

### A. The Claim Splitting Doctrine Bars Plaintiff's Seventh, Eighth and Ninth Causes of Action.

Depending on how broadly the Court views the scope of the removed case, the Commission moved to strike the Seventh, Eighth, and Ninth Causes of action on the basis of claim splitting. In other words, if the Court takes a broad view of the scope of the removed case that includes the Seventh, Eighth, and Ninth Causes of Action, then they should be barred because those claims are already being litigated between the Commission and Plaintiff in *Sable Offshore Company v. Cal. Coastal Comm'n,* No. 25CV00974, Santa Barbara County Superior Court ("*Sable I*").

In *Sable I*, Plaintiff and the Commission are litigating whether the work performed and required for restarting the Las Flores Pipelines ("Pipelines") within the coastal zone requires a new Coastal Development Permit. And Plaintiff also asserted in *Sable I* that the Commission's enforcement of the Coastal Act constituted an infringement on Plaintiff's property rights, resulting in $347,000,000 in damages. ECF 54-1 at 21. Here, Plaintiff again argues that a Coastal Development Permit is not required for work related to restarting and maintaining the operation of the Pipelines and that the Commission's threats to enforce the Coastal Act constitutes an infringement on Plaintiff's property rights, resulting in $347,000,000 in damages.

Plaintiff offers no attempt to distinguish the two cases other than to invoke SB 237. ECF 60 at 16-17. But, relevant to the Commission, SB 237 merely amends the Coastal Act to clarify that the "[r]epair, reactivation, and maintenance of an oil and gas facility, including an oil pipeline, that has been idled, inactive, or out of service for five years or more shall be considered a new or expanded development requiring a new coastal development permit consistent with this section."

Cal. Pub. Res. Code, § 30262(b)(2). Thus, SB 237 does not substantially alter Plaintiff's claims in *Sable I*. The fundamental issue in both cases is whether the Commission's enforcement of the Coastal Act with respect to development for the Pipelines infringes on Plaintiff's property rights, and Plaintiff has not articulated how the involvement of SB 237 substantially changes that issue, the evidence, or the legal arguments. And SB 237 supports the judgment against Plaintiff in *Sable I*, which held that work to reactivate the Pipelines exceeded Plaintiff's existing rights, thereby defeating the takings claims. Request For Judicial Notice in Support of Commission's Motion to Dismiss, Ex. E at p. 7.

Even without a final judgment, claim splitting bars the continued litigation of these duplicative causes of action here. *In re Don Rose Oil, Inc.*, 614 B.R. 358, 367-68 (Bankr. E.D. Cal. 2020); *Marvel Entm't LLC v. Kimble*, CV-15-00404-TUC-RM, 2016 WL 9525586, at *3 n.6 (D. Ariz. Apr. 14, 2016). The fact that judgment against Plaintiff in *Sable I* was appealed is irrelevant. Continued litigation here would needlessly waste judicial resources and potentially conflict with how the rights are finally adjudicated in *Sable I*. Accordingly, the Seventh, Eighth, and Ninth Causes of Action should be dismissed as to the Commission.

**B. The Fifth and Sixth Causes of Action Fail to State a Claim.**

Plaintiff's conclusory allegations and unwarranted inferences that SB 237 was designed to intentionally single out the Pipelines are not sufficient to state a claim for relief. The unambiguous terms of the challenged statute show that the provisions of SB 237 at issue in this case apply broadly to repair, reactivation, and maintenance of any oil and gas facility—not just a pipeline, much less just Plaintiff's pipeline—that has been idle, inactive, or out of service for five years or more. Plaintiff wrongly suggests that this is a factual dispute that cannot be addressed on a motion to dismiss, and that the Court must ignore the language of SB 237 and defer to Plaintiff's speculative allegations that the law intentionally targets the Pipelines. *Fowler Packing Co. v. Lanier* ("*Fowler*"), 844 F.3d 809, 814, 817 (9th Cir. 2006) confirms that the Court need not accept conclusory or speculative allegations, and that it must consider the terms of the challenged statute. *Id.* at 814-817. The language of SB 237 and the relevant supporting allegations (i.e., references to legislative materials and the Coastal Commission's enforcement actions) show that

Plaintiff failed to state a claim for relief and the Fifth and Sixth Causes of Action should be dismissed.

With regard to the Fifth Cause of Action for violation of the Equal Protection Clause, there is no dispute that SB 237 does not implicate a suspect class or fundamental constitutional right. When a statutory classification does not implicate a suspect class and does not infringe on fundamental constitutional rights, the statute comports with equal protection if there is "any reasonably conceivable state of facts that could provide a rational basis for the classification." *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta* ("*SeaRiver*"), 309 F.3d 662, 679 (9th Cir. 2002) (quoting *FCC v. Beach Communications, Inc.*, 508 U.S. 307, 313 (1993)); *Fowler*, 844 F.3d at 814. Plaintiff does not meaningfully dispute that there is a rational basis for SB 237.[2] As explained in the Attorney General's motion to dismiss, and which Plaintiff does not contest, SB 237 has a rational basis in protecting coastal resources and ensuring safety when an operator seeks to restart a pipeline that is idle for five years or more. ECF No. 51-1 at 23:4-13.

Plaintiff mounts no real argument to rebut the fact that SB 237 on its face does not single out any particular pipeline or oil and gas facility, nor does it treat Plaintiff differently from others that are or will be similarly situated. The SAC's conclusory allegations that SB 237 "intentionally singles out and discriminates against Pacific Pipeline Company" (SAC ¶ 127) and its speculative inferences about statements from lawmakers (SAC ¶¶ 59-61)—statements that amount to nothing more than acknowledgments that SB 237 would apply to the Pipelines, rather than admissions that the statute was designed to target the Pipelines—does not overcome the clear language of the statute, which broadly applies to any oil and gas facility that meets the statute's criteria.[3] Plaintiff's reliance on *Fowler* does not help its position, as the only conceivable justification for

[2] Even if Plaintiff alleged some facts that might support a claim that SB 237 lacked a rational basis, the Court would still need to consider the State's offered justification for the law, which is supported by the SAC and matters that are judicially noticeable. *Fowler*, 844 F.3d at 815. Plaintiff misstates *Fowler* when it argues that the Court must accept Plaintiff's conclusory allegations as plausible and turn a blind eye to the alternative justifications found in the SAC and matters that are judicially noticeable. ECF No. 59 at 19:28-20:5.

[3] The only aspect of SB 237 that Plaintiff points to as demonstrating that it singles out the Las Flores Pipelines is the five-year criterion. ECF No. 59 at 19:28-20:2. This sole allegation is not only insufficient to support an equal protection claim but is also deficient because it does not closely track the timeframe that the Pipelines were inactive, which was over ten years.

the carve-outs in the statute at issue in that case was the illegitimate purpose of obtaining the farmworkers union's support of the law. *Fowler*, 844 F.3d at 815-16. Though the carve-outs in *Fowler* were generally worded and did not call out the affected entities by name, the carve-outs closely tracked the unique circumstances of those entities in a way that could only have applied to them. *Id.* at 815 (the statute invoked dates that corresponded to litigation timelines for the three affected employers within a matter of weeks, sometimes days). That is a far cry from the language of SB 237, which does not implicate, either expressly or implicitly, any particular oil and gas facility or a defined, static group of pipelines. The SAC and matters that are judicially noticeable demonstrate that SB 237 has a legitimate rational basis, and that is sufficient for the Court to dismiss the claim.

Plaintiff is no more successful at showing that SB 237 constitutes a bill of attainder. The amendments to the Coastal Act initiated by SB 237 lack the requisite specificity, and it does not inflict punishment, two necessary components of a bill of attainder. *SeaRiver*, 309 F.3d at 668.

Plaintiff attempts to reframe the State's argument by muddling the analysis between the Fifth and Sixth Causes of Action. ECF No. 59 at 18:27-28. A law, however, effectively singles out an individual by describing past conduct attributable to a particular person. ECF No. 51-1 at 24:4-5. Again, Plaintiff makes no compelling case that SB 237 singles out or punishes Plaintiff by describing past conduct that is unique to Plaintiff. Just because the criteria of the statute fit Plaintiff's circumstances does not mean that the statute carries any "particular significance" for Plaintiff over other operators, or that the law targeted Plaintiff. ECF No. 59 at 20:15-16. The express reference to the Pipelines in legislative materials and statements by lawmakers, the fact that the Pipelines' ten-year inactivity falls within the statute's five-year criteria, and the fact that the Commission has expressed its intention to enforce SB 237 against Plaintiff, do not equate to a showing that Plaintiff is "singled out." These circumstances merely show that the Pipelines are subject to the law, among other oil and gas facilities that are presently, or will be, idle for five or more years.

The facts of *SeaRiver* are not applicable, and the "close question" presented in that case does not exist here. In *SeaRiver*, the statute looked backward to past conduct and irrevocable acts

committed by the targeted person or class, e.g., any vessel that spilled a certain quantity of oil between 1989 and the date of the statute's enactment. These criteria were designed to fit a limited number of vessels that committed the completed, irrevocable act between a certain timeframe in the past, implicating a limited category of vessels based on completed conduct they could not take back or undo. In contrast, SB 237 looks only at the present status of oil and gas facilities and whether they have been inactive for five years. SB 237 does not look to completed, irrevocable past acts. As examples, the law does not apply to the mere rendering of a facility inactive sometime during the last fifteen years, nor does it apply to a facility that was rendered inactive for five or more years and restarted within the last five years. Instead, it only applies to oil and gas facilities that, either as of the effective date or thereafter, *are* inactive for five years or more and *are* being restarted after the effective date. Had Plaintiff restarted the Pipelines prior to January 1, 2026, it could have avoided being subject to the law altogether. SB 237 focuses on the conditions that *presently* exist once the statute became effective. Plaintiff even concedes that statute is not retroactive. SAC ¶ 89. The statute simply does not have the hallmarks of specificity exhibited by legislation that violates the Bill of Attainder Clause. *SeaRiver*, 309 F.3d at 669.

SB 237 also cannot be a bill of attainder because it does not inflict punishment; instead, it merely requires an entity to acquire an up-to-date coastal development permit. Having to apply for a permit does not fall within the historical meaning of legislative punishment, and these requirements demonstrate that the statute has a nonpunitive legislative purpose, i.e., protection of coastal resources. *Id.* at 673. Finally, Plaintiff did not allege, and the legislative materials do not demonstrate, an intent to punish. *Id.*

For these reasons, the Fifth and Sixth Causes of Action fail to state a claim and should be dismissed.

### C. Plaintiff's Seventh, Eighth and Ninth Causes of Action Fail to State a Claim.

The Seventh (Vested Rights), Eighth (Inverse Condemnation), and Ninth (Takings) Causes of Action still fail to state a claim because Plaintiff admits that it is currently transporting oil through its pipelines, and thus has suffered no harm. ECF No. 40, ¶¶ 91, 101, 109; ECF No. 22 at

6:16-18. In opposition, Plaintiff fails to identify any factual dispute or other allegations that would support a claim that the Commission impaired Plaintiff's property rights. See ECF No. 60 at 19. Interestingly, Plaintiff does not even contend that it has allegations of actual harm that it could include if granted leave to amend that would give rise to this alleged factual dispute.

Regardless, even if Plaintiff could invent some factual allegation of hypothetical injury caused by the Commission, such alleged injury is speculative unless and until the Commission takes action against Plaintiff. Only after the Commission takes concrete and definite action at a noticed hearing do Plaintiff's claims ripen and Plaintiff have the opportunity to challenge the Commission through a petition for writ of mandate. Cal. Pub. Res. Code, § 30801(a).

Seeking damages against "the Commission, OSFM defendants, and California, together jointly and severally" is irrelevant. See ECF No. 60 at 19. "[A] State is not a "person" against whom a § 1983 claim for money damages might be asserted." *Lapides v. Bd. of Regents of Univ. Sys. of Georgia*, 535 U.S. 613, 617 (2002). Further, the case Plaintiff cites for its joint-and-several argument does not appear to discuss joint and several liability, nor 42 U.S.C. §1983 claims at all. *State Highway Comm'n of Wyoming v. Utah Const. Co.*, 278 U.S. 194 (1929).

### D. Plaintiff's Tenth Cause of Action Should Be Struck.

While injunctive relief is a remedy that may be sought, this would only be available if Plaintiff prevailed on a substantive cause of action that alleges future harms. Without a substantive basis to form relief, injunctive relief cannot be granted. In either event, the Tenth Cause of Action should be struck because it does not allege a cause of action.

### E. There Is No Basis for Relief Under the Defense Production Act.

Plaintiff argues "[w]here state and federal law 'directly conflict,' 'state law must give way.' *PLIVA, Inc. v. Mensing*, 564 U.S. 604, 617 (2011)." ECF No. 60 at 20. Plaintiff fails to acknowledge that this is a high bar, where sufficient facts must be alleged to support the conclusion that it is impossible for Plaintiff to comply with both the Coastal Act and the DPA Order. *PLIVA, Inc.*, 564 U.S. at 617; *Wyeth v. Levine*, 555 U.S. 555, 580-81 (2009) (finding that it was not impossible for company to label its drugs in a way that complied with both federal and state laws). However, Plaintiff fails to allege sufficient facts to show that SB 237 directly

conflicts with the Defense Production Act ("DPA") Order. It is possible to comply with both, particularly given that the Commission has yet to take any action under SB 237. Accordingly, Plaintiff cannot allege whether the Commission will take action, what action it may take and whether that action would contain orders that make it impossible for Plaintiff to comply with the DPA Order. Without sufficient facts supporting a direct conflict, there is no preemption; and the DPA does not contain, nor does Plaintiff allege field preemption. Thus, Plaintiff has failed to state a claim and its Third Cause of Action should be dismissed as to the Commission.

On August 19, 2026, Judge Steven V. Wilson of the Central District of California issued an order that purportedly agreed with Plaintiff's preferred broad reading of the DPA. Exh. A to ECF 60-1 ("Wilson Order"). However, this trial court ruling is not binding on this Court, it is not binding on the Commission, and it did not consider any potential conflict with the Coastal Act. Further, Judge Dolly M. Gee, also in the Central District, and Judge Donna M. Geck of the Santa Barbara County Superior court issued rulings contrary to Plaintiff's interpretation. *See* Exhibits 8, 9 and 10 to ECF No. 53. Plaintiff relies heavily on the Wilson Order and insinuates it states that California lost its authority over the Pipelines and to regulate "because of the DPA Order." ECF No. 60 at 20. However, the language of Judge Wilson's order indicated that authority was lost as "an unavoidable effect of this [consent decree] modification." ECF No. 60-1 at 22. Accordingly, the Wilson Order has no bearing on this Court.

Plaintiff asks this Court to accept a seemingly unbounded interpretation of the DPA, which would allow the Executive Branch to preempt virtually any state law simply by ordering a private company to take actions in defiance of that law. Plaintiff's opposition brief confirms that it means to ask this Court to adopt a sweeping interpretation of the DPA without any limiting principle. In furtherance of Plaintiff's attempt to overextend the DPA Order, Plaintiff argues that the DPA liability shield should be read broadly because it does not state express limits. ECF No. 60 at 21-22. However, Plaintiff's theory runs contrary to established rules of statutory interpretation for preemption. Statutes preempting state laws must contain "exceedingly clear language." *United States Forest Serv. v. Cowpasture River Pres. Ass'n*, 590 U.S. 604, 622 (2020). This accords with the position the United States explained to the Supreme Court in *Hercules*, that such a major

change requires a clear statement. Brief for Respondent United States, *Hercules, Inc. v. United States*, No. 94-818 (516 U.S. 417), 1995 WL 495540, at *36. ("While it is not inconceivable that Congress might enact such broad protection in some circumstances, it is extremely unlikely that it would do so in an ambiguous manner and without extensive consideration and debate.").

If the Court reaches the DPA, it should reject Plaintiff's unlimited legal theory and dismiss the Third Cause of Action without leave to amend as to the Commission.

## IV. PLAINTIFF CANNOT CURE IMMUNITY OR LACK OF STANDING BY AMENDMENT

Immunity and standing are threshold inquiries that Plaintiff cannot cure on amendment. If the Court agrees that the Commission retains its immunity or that the challenge against the Commission is not yet ripe for adjudication, these are fatal to Plaintiff's case against the Commission. Accordingly, these defects are incurable and the motion to dismiss should be granted without leave to amend as to the Commission. Furthermore, as Plaintiff has not articulated any way in which it could cure its failure to state a claim, granting leave to amend to fix that defect would be similarly unwarranted.

## CONCLUSION

For the foregoing reasons and those in the Commission's motion, the Commission respectfully requests that the Court grant its motion to dismiss and dismiss Plaintiff's claims against the Commission.

Dated: September 8, 2026

Respectfully submitted,

ROB BONTA
Attorney General of California
BRANDON WALKER
Supervising Deputy Attorney General

/s/ Roxanne J. Carter
ROXANNE J. CARTER
Deputy Attorney General
*Attorneys for Defendant*
*California Coastal Commission*

# CERTIFICATE OF SERVICE

Case Name: **Pacific Pipeline Company, A Delaware Corporation v. State of California** Case No. **1:26-CV-01486-KES-CDB**

I hereby certify that on September 8, 2026, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT CALIFORNIA COASTAL COMMISSION'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I am employed in the Office of the Attorney General, which is the office of a member of the California State Bar at which member's direction this service is made. I am 18 years of age or older and not a party to this matter. My electronic service address is Monica.Goolsby@doj.ca.gov.

Some participants in the case are not registered CM/ECF users and will be served via e-mail.

I electronically served the aforementioned document[s] by emailing them to the following individuals:

Jeffrey Dintzer
Garrett B. Stanton
ALSTON & BIRD
**E-mail Address**: jeffrey.dintzer@alston.com
**E-mail Address**: garrett.stanton@alston.com

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct and that this declaration was executed on September 8, 2026, at San Diego, California.

| M. Goolsby | */s/ M. Goolsby* |
|---|---|
| Declarant | Signature |

SA2025306665
85896352