LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND
Nicholas McDaniel (Pending *pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455
Facsimile: +1 202.853.3491

Attorneys for Plaintiff
PACIFIC PIPELINE COMPANY

*[Additional counsel listed on signature page]*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

PACIFIC PIPELINE COMPANY, a Delaware corporation,

Plaintiffs,

v.

STATE OF CALIFORNIA, a state government; CALIFORNIA COASTAL COMMISSION, a state agency; CALIFORNIA DEPARTMENT OF FORESTRY AND FIRE PROTECTION, a state agency; OFFICE OF THE STATE FIRE MARSHAL, a state agency; DANIEL BERLANT, in his official capacity as State Fire Marshal; and DOES 1 through 25, inclusive,

Defendants.

Case No. 1:26-CV-01486-KES-CDB

Removed from Kern County Superior Court Case No. BCV-25-103508

**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: November 2, 2026
Time: 1:30 p.m.
Courtroom: 6
Judge: The Hon. Kirk E. Sheriff

Complaint Filed: September 29, 2025

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on November 2, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard, in Courtroom 6 of the Robert E. Coyle United States Courthouse located at 2500 Tulare Street in Fresno, California 93721, Plaintiff Pacific Pipeline Company ("Plaintiff" or "Pacific Pipeline") will move to transfer venue from this Court to the Central District of California. The motion will be and hereby is based on this notice, the memorandum of points and authorities in support of the motion, 28 U.S.C. § 1404(a), the files and records in this action, and any further evidence and argument that the Court may receive at or before the hearing.

Counsel for moving Plaintiff met and conferred with Defendants State of California, the California Coastal Commission, the California Department of Forestry and Fire Protection, and the Office of the State Fire Marshal to obtain their consent to transfer this matter to the Central District of California. Defendants indicated they would not consent to transfer.

Dated: September 14, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: */s/ Jessica Stebbins Bina*

LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND
Nicholas McDaniel (Pending *pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455

Facsimile: +1 202.853.3491

ALSTON & BIRD LLP
Jeffrey D. Dintzer (SBN 139056)
*Jeffrey.dintzer@alston.com*
Garrett B. Stanton (SBN 324775)
*Garrett.stanton@alston.com*
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: +1 213.576.1000
Facsimile: +1 213.576.1100

PAUL HASTINGS LLP
Benjamin J. Hanelin (SBN 237595)
*benjaminhanelin@paulhastings.com*
Natalie C. Rogers (SBN 301254)
*natalierogers@paulhastings.com*
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: +1 310.620.5879
Facsimile: +1 310.620.5899

*Attorneys for Plaintiff Pacific Pipeline Company*

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action is one of several related cases arising from a single controversy: Sable Offshore Corp. and its subsidiary Pacific Pipeline Company resuming oil flow through onshore segments of the Santa Ynez Pipeline System, which run through Santa Barbara and Kern Counties. Every court to touch that controversy, save this one, sits in the Central District of California, where a significant portion of the SYPS and the events giving rise to the dispute are located.

The Honorable Stephen V. Wilson of the Central District now presides over an "orbit of related cases" concerning the legality and consequences of Sable's operation of the SYPS, including the federal Consent Decree that governs compliance, safety measures, and continued operation of the onshore segments. *See Order Granting Motion to Modify the Consent Decree, United States v. Plains All American Pipeline, L.P.*, No. 2:20-cv-02415-SVW-SSC (C.D. Cal. Aug. 19, 2026), ECF No. 86, at 3 (the "Omnibus Order"). Plaintiff respectfully submits that this case belongs in the same forum.

When this case was initially filed in September 2025, it involved state-law claims only. PHMSA had not yet reasserted federal jurisdiction over the Santa Ynez Pipeline System, no Defense Production Act order had been entered, Sable had not been substituted as a party to the federal Consent Decree, and no federal litigation concerning Sable's operation in Gaviota State Park existed. Since then, the balance has shifted. Federal interests now drive both this action and the "orbit of related cases" pending in the Central District. Transfer is therefore appropriate, notwithstanding the fact that this case originated in Kern County, within the Eastern District.

Under 28 U.S.C. § 1404(a), transfer is warranted. This action could have been brought in the Central District because a substantial part of the property and events

at issue lie in Santa Barbara County. Further, the interest of justice strongly favors litigating this dispute alongside its companion cases: doing so will conserve judicial resources, avoid duplicative discovery, and, most importantly, eliminate the risk that two federal courts will issue conflicting rulings about the same facts and legal issues. *See Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1214 (S.D. Cal. 2013). The pendency of the related Central District cases is, by itself, a powerful and "potentially dispositive" reason to transfer. *Id.* The Court should grant Plaintiff's Motion to Transfer to the Central District.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. The Parties and the Santa Ynez Pipeline System

Plaintiff Pacific Pipeline Company ("Plaintiff" or "Pacific Pipeline") owns Segments CA-324 and CA-325, the onshore segments of the Santa Ynez Pipeline System (the "SYPS"). Second Amended Complaint, ECF No. 40 ("Compl.") ¶ 20. Sable Offshore Corp. ("Sable") operates the SYPS as an integrated system, moving crude oil from offshore federal waters onshore to a midstream processing facility and then downstream through onshore Segments CA-324 and CA-325. *Id.* ¶ 1. Sable acquired Pacific Pipeline and the SYPS assets in February 2024. *Id.*

Prior to this acquisition, in May 2015, a leak along Segment CA-324 caused an oil spill, after which the flow of petroleum through Segments CA-324 and CA-325 was halted. *Id.* ¶ 40. In October 2020, the United States and the State of California entered into a consent decree with the onshore segments' prior owner, Plains Pipeline, L.P. ("Plains"), to resolve alleged violations of the federal Pipeline Safety Act arising from that spill (the "Consent Decree"), which set out requirements that had to be satisfied before the operator could resume transporting petroleum through the onshore segments. In the years since, Pacific Pipeline and Plains have maintained the onshore segments and undertaken substantial efforts to repair them to satisfy the Consent Decree's requirements. *Id.* ¶ 41. In May 2025, Sable began

transporting petroleum through the SYPS's offshore segments to its midstream Las Flores Canyon facility. *Id.* ¶ 47. Both Sable and Pacific Pipeline have at all times intended to restore the flow of oil through the remainder of the system, including onshore Segments CA-324 and CA-325. *Id.* ¶ 48.

The defendants in this action are the State of California; the California Coastal Commission (the "Coastal Commission"); the California Department of Forestry and Fire Protection, Office of State Fire Marshal ("OSFM"), and Daniel Berlant, in his capacity as State Fire Marshal (together, "CalFire"). *Id.* ¶¶ 22–26.

**B. SB 237 and the Underlying Dispute**

On September 13, 2025, the California Legislature adopted Senate Bill 237 ("SB 237"), which Governor Newsom signed into law on September 19, 2025. *Id.* ¶¶ 4, 8. Relevant here, SB 237 adds Government Code § 51014.1, which provides that an oil pipeline six inches or larger that "has been idle, inactive, or out of service for five years or more[] shall not be restarted without passing a spike hydrostatic testing program," *id.* ¶ 5, and amends Section 30262 of the California Coastal Act to require a new coastal development permit for the repair, reactivation, or maintenance of an oil and gas facility "that has been idled, inactive, or out of service for five years or more." *Id.* ¶ 6. SB 237 does not define "idled, inactive, or out of service." *Id.* ¶ 7.

Although this action began as a dispute over whether Segments CA-324 and CA-325 fall within the scope of SB 237, two subsequent federal actions have reframed the question around the scope of Defendants' authority to regulate the SYPS at all. First, on December 17, 2025, the federal Pipeline and Hazardous Materials Safety Administration ("PHMSA") determined that the entirety of the SYPS, including Segments CA-324 and CA-325, is an interstate pipeline subject to PHMSA's exclusive pipeline safety jurisdiction and confirmed that the SYPS is an "active" pipeline. *Id.* ¶ 10. That determination displaced whatever jurisdiction

OSFM had over Segments CA-324 and CA-325. *See id.*; *see also* Omnibus Order, at 15 (modifying the consent decree to replace OSFM with PHMSA). Second, on March 13, 2026, Secretary of Energy Chris Wright issued an order under the Defense Production Act, 50 U.S.C. §§ 4501 et seq. (the "DPA Order"), directing Sable and Pacific Pipeline to immediately commence the flow of oil through the entire SYPS, including Segments CA-324 and CA-325. Compl. ¶ 12. "In the DPA Order, . . . Secretary Wright made the notable findings that both domestically produced oil and pipeline services in the relevant area were scarce, critical, and essential to national interests." Omnibus Order, at 14. To comply with the DPA Order, Sable resumed transportation of oil through the onshore segments, with oil reaching Pentland Station shortly thereafter. *Id.*, at 5. Segments CA-324 and CA-325 are now operating under federal orders and oversight.

These federal developments bear on who may regulate Segments CA-324 and CA-325. As explained below, the same federal questions are at issue in several related actions pending in the Central District of California. They do not, however, resolve the original scope question, on which the parties remain at odds. Pacific Pipeline maintains that the entire SYPS—including Segments CA-324 and CA-325—has remained active under both state and federal law since 2015 and thus falls outside SB 237's scope (which Pacific Pipeline contends does not apply retroactively). *Id.* ¶ 9. Pacific Pipeline further contends that, so long as the DPA Order is operative, it independently preempts enforcement of SB 237 as to the SYPS, regardless of how the Court resolves the question regarding the scope of SB 237. *Id.* ¶ 12. Defendants contend that Segments CA-324 and CA-325 have been idle, inactive, or out of service for five years or more. Consistent with that position, the Coastal Commission has asserted independent authority over any resumption of use of the Segments and has demanded that Pacific Pipeline obtain a new coastal development permit under Section 30262 as amended by SB 237, *id.* ¶¶ 11, 14, while

OSFM has reserved enforcement rights if operations recommence without a state waiver. *Id.* ¶ 13.

**C. Procedural History of This Action**

Plaintiff commenced this action on September 29, 2025 in the Superior Court of California, County of Kern (No. BCV-25-103508), at a time when federal actions had not yet fundamentally altered the nature of the dispute. *See* Complaint, ECF No. 1 at 7–44. On January 21, 2026, Plaintiff filed its First Amended Complaint adding a cause of action alleging that SB 237 is preempted by PHMSA's reassumption of jurisdiction over the pipeline. *See* First Amended Complaint, ECF No. 1 at 46–98. On February 20, 2026, in light of that additional federal question, the State removed the action to this Court. *See* Notice of Removal, ECF No. 1 at 1–2. On July 8, 2026, Plaintiff filed the operative Second Amended Complaint. *See generally*, Compl. The Second Amended Complaint seeks declaratory and injunctive relief that the SYPS—including Segments CA-324 and CA-325—is not idle, inactive, or out of service within the meaning of SB 237, and that SB 237, as applied to the SYPS, is preempted by the federal Pipeline Safety Act and by the DPA Order. *Id.* ¶¶ 86–111. It further asserts constitutional claims arising from the enforcement or threatened enforcement of SB 237. *Id.* ¶¶ 112–69.

Three motions to dismiss the Second Amended Complaint are pending. *See* ECF Nos. 51, 52, and 54. Plaintiff filed its opposition to all three motions on August 24, 2026. *See* ECF No. 60. Replies in support of the motions to dismiss were filed on September 8, 2026. A hearing is currently scheduled for September 21, 2026. *See* Stipulation and Order Modifying Briefing Schedule, ECF No. 55.

**D. The Related Proceedings Before Judge Wilson in the Central District of California**

The dispute over resumed oil flow through the onshore segments of the SYPS has generated a cluster of four related federal cases in the Central District, each

pending before the Honorable Stephen V. Wilson. As Judge Wilson explained, these "related cases all consider issues relevant to the legality and consequences of actions by" Sable and Pacific Pipeline to resume flow though Segments CA-324 and CA-325. Omnibus Order at 1. Those cases[1] are:

- ***United States & People of the State of California v. Plains All American Pipeline, L.P.***, No. 20-cv-02415 (C.D. Cal.)—involving the Consent Decree governing the onshore segments, which the United States moved to terminate or modify in light of changed circumstances;

- ***California v. Wright***, No. 26-cv-03396 (C.D. Cal.)—California's challenge to the DPA Order issued by the Secretary of Energy;

- ***Sable Offshore Corp. v. Quintero***, No. 26-cv-02739 (C.D. Cal.)—Sable's declaratory judgment action against California concerning easement access and federal preemption of state restrictions on the SYPS; and

- ***California Department of Parks and Recreation v. Sable Offshore Corp.***, No. 26-cv-02946 (C.D. Cal.)—California's trespass action, removed to federal court, arising from the same SYPS operations.

Each of these actions turn on the same operative facts as this case and raises overlapping legal issues: the effect of the Consent Decree, PHMSA's reassertion of jurisdiction over the SYPS, Sable's and Pacific Pipeline's resumption of crude oil transportation through the SYPS, and the reach of the DPA Order. *See* Compl. ¶¶ 1–

[1] Until recently, a fifth related case was also pending before Judge Wilson in the Central District: *Center for Biological Diversity v. California Department of Forestry and Fire Protection*, No. 2:26-cv-05242-SVW-SSC (C.D. Cal.). That case, originally filed in Santa Barbara County, involved a challenge by several public interest plaintiffs to State Waivers issued by OSFM to Sable. On May 14, 2026, Sable and the United States removed that action to the Central District under the federal officer removal statute, 28 U.S.C. § 1442, based on Sable's operation of the SYPS under federal supervision pursuant to the DPA Order. In the Omnibus Order, Judge Wilson held that although federal officer jurisdiction existed, removal was untimely and granted the plaintiffs' and California's motions to remand. *See* Omnibus Order at 42–44.

2, 12; Omnibus Order at 1. Judge Wilson has handled these cases in tandem, setting joint hearing dates and resolving pending motions through consolidated rulings that address the Consent Decree, the DPA Order, and the parties' state-law and preemption theories together. For example, on August 19, 2026, he issued a single omnibus order addressing motions across the related dockets: granting a motion to modify the consent decree; granting in part a motion to enforce it; denying a preliminary injunction in *California v. Wright*; and denying a motion to dismiss in *Sable Offshore Corp. v. Quintero*. *See* Omnibus Order. In doing so, Judge Wilson considered filings across the related dockets. *Id.* at 1 n.20.

This action arises from operation of the same pipeline system, involves the same core parties, and turns on the same federal questions that Judge Wilson has already adjudicated in the related Central District proceedings. *See generally*, Omnibus Order; Compl. ¶¶ 1–2, 12, 16–17.

## III. <u>LEGAL STANDARD</u>

Section 1404(a) commits the transfer decision to the Court's discretion, guided by convenience and the interest of justice. Specifically, Section 1404(a) provides that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Either a plaintiff or a defendant may move to transfer. *See L.A. Printex Indus., Inc. v. Le Chateau, Inc.*, No. CV 10-4264 ODW (FMOx), 2011 WL 2462025, at *3 (C.D. Cal. June 20, 2011) (granting plaintiff's motion to transfer). A transfer motion requires a two-step inquiry: (1) whether the action could have been brought in the proposed transferee district, and (2) whether convenience and the interest of justice favor transfer. 28 U.S.C. § 1404(a); *see Greenley v. Kochava, Inc.,* 684 F. Supp. 3d 1024, 1041 (S.D. Cal. 2023).

A motion to transfer is not a merits adjudication and may be resolved by the district court even where threshold questions of the parties' standing or the court's

subject-matter jurisdiction remain unresolved. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007); *San Francisco Technology, Inc. v. Adobe Systems Inc.*, No. C 09-6083 RS, 2010 WL 1463571 (N.D. Cal. Apr. 13, 2010) (granting motion to transfer where question of Article III standing remained pending); *Pub. Employees' Ret. Sys. of Mississippi v. Stanley*, 605 F. Supp. 2d 1073, 1075 (C.D. Cal. 2009) (decision to transfer venue "is not a decision on the merits and therefore does not require a finding of jurisdiction.").The decision as to whether to transfer a case is committed to the district court's sound discretion, to be exercised through an "individualized, case-by-case consideration of convenience and fairness." *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (citing *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22, 29 (1988)). The "potentially dispositive factor" in a motion to transfer inquiry is "the burden on limited judicial resources if transfer is denied." *Hawkins*, 924 F. Supp. 2d at 1214. In the Ninth Circuit, courts also weigh a range of factors as to the convenience of the parties, including, but not limited to: the location where the relevant events occurred; the forum most familiar with the governing law; the plaintiff's choice of forum; the parties' contacts with the forum; the contacts relating to the plaintiff's claim; the comparative costs of litigation; the availability of compulsory process; and the ease of access to sources of proof. *Jones*, 211 F.3d at 498–99.

As discussed below, every relevant consideration here supports transfer.

## IV. ARGUMENT

### A. This Action Could Have Been Brought in the Central District of California.

The threshold requirement of Section 1404(a) is that the action could have been brought in the district to which the transfer is sought. Venue for any civil action is proper in "a judicial district in which a substantial part of the events or

omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391. This requirement is met.

A substantial part of the property at issue (Segment CA-324 and much of Segment CA-325) is situated in Santa Barbara County, which lies within the Central District of California. Compl. ¶¶ 1, 34–35; Omnibus Order at 2. The events giving rise to this dispute, including the resumption of the flow of oil through Segments CA-324 and CA-325 and the Coastal Commission's demands concerning them, likewise center on those Santa Barbara County segments. Compl. ¶¶ 11–12, 62–63, 79–81. This action therefore "might have been brought" in the Central District, satisfying that first condition.

### B. The Interest of Justice Strongly Favors Transfer, Because This Case Overlaps with Related Actions Already Pending in the Central District.

After the Court finds that venue could have been proper, it must then consider a variety of other factors, the most salient of which is judicial economy. Given the four related actions concerning the SYPS already pending before Judge Wilson in the Central District, litigating this dispute in that forum is the clear efficient course.

"[T]he significant burden on limited judicial resources if transfer is denied" is a "potentially dispositive factor." *Hawkins*, 924 F. Supp. 2d at 1214 (internal quotations omitted). Where related litigation is already underway elsewhere, "[c]oncerns over judicial efficiency are *paramount*." *Id.* (internal quotations omitted) (emphasis in original). Centralizing the adjudication of similar cases conserves resources and "avoid[s] the possibility of inconsistent judgments." *Id.* (internal quotations omitted).

Courts routinely recognize that transfer is appropriate in circumstances such as this one, where transfer minimizes duplicative litigation and promotes judicial efficiency. *See, e.g., Carrera v. First Am. Home Buyers Prot. Co.*, No. CV 11-10242 GHK (FFMx), 2012 WL 13012698, at *5 (C.D. Cal. Jan. 24, 2012) (ordering transfer

where it would "serve[] the interest of justice and avoid[] the possibility of conflicting judgments"); *Clemco Med., Inc. v. Fi-Med Mgmt, Inc.*, No. SACV 11-00601-CJC (AJWx), 2011 WL 13228022, at *2 (C.D. Cal. June 17, 2011) (granting transfer to promote efficiency, conserve judicial resources, and avoid inconsistent results); *Jolly v. Purdue Pharma L.P.*, No. 05-CV-1452H, 2005 WL 2439197, at *2 (S.D. Cal. Sept. 28, 2005) ("Litigation of related claims in the same tribunal is strongly favored because it facilitates efficient, economical and expeditious pre-trial proceedings and discovery and avoid duplicitous (sic) litigation and inconsistent results." (quoting *Durham Prods., Inc. v. Sterling Film Portfolio, Ltd., Series A*, 537 F. Supp. 1241, 1243 (S.D.N.Y. 1982)).

This case presents precisely the situation that judicial-economy principles are designed to address. The recent federal actions and Sable's operation of Segments CA-324 and CA-325 have generated an "orbit of related cases" before Judge Wilson in the Central District, all of which "consider issues relevant to the legality and consequences" of Sable resuming oil transportation. Omnibus Order at 1, 3. Those cases and this one turn on a common set of facts—*i.e.*, the status, condition, and resumption of the flow of oil through the same onshore segments—and on overlapping legal questions concerning the interplay of federal authority and California's regulatory demands. Judge Wilson has already immersed himself in that record, resolving five motions across four related dockets involving more than a dozen parties in a single omnibus order and taking judicial notice of filings spanning the related cases. Omnibus Order at 1–2. In doing so, he recognized that the cases are inextricably intertwined and that each revolves around the DPA Order. That familiarity—and the consolidated ruling produced as a result—makes transfer to the Central District even more appropriate at this time. No other court is as well positioned to adjudicate this dispute efficiently and consistently.

Keeping this case in the Eastern District, by contrast, would produce precisely the waste and risk that Section 1404(a) is meant to avoid. Both this action and the Central District cases will require the courts to evaluate the same pipeline system, the same resumption of oil flow, and the same complex regulatory backdrop. Allowing these matters to proceed in separate forums risks inconsistent rulings on whether and how the SYPS may operate. That risk is not hypothetical. Three motions to dismiss are pending in this action, raising several of the issues Judge Wilson has already confronted in the related cases—including the effect of the DPA Order and the scope of state regulatory authority over the SYPS. Those questions are best resolved by the court already steeped in that record. Deciding them here would risk an early, avoidable conflict with the Central District's rulings on the same questions. Moreover, because the Central District litigation will proceed regardless of what happens here, denying transfer would "effectively double[]" the cost of litigation. *Hawkins*, 924 F. Supp. 2d at 1217. Granting Pacific Pipeline's Motion now, before the motions to dismiss are decided, avoids that result.

Transfer to the Central District also minimizes the risk of conflicting rulings on the same statute. In his Omnibus Order, Judge Wilson modified the Consent Decree to incorporate California's state pipeline safety requirements—including the substantive standards of the Elder California Pipeline Safety Act (the "Elder Act")—and directed that those requirements be enforced by PHMSA going forward. Omnibus Order at 21–22. This action turns, in part, on application of the new spike hydrostatic-testing requirement that SB 237 added to the Elder Act at Government Code § 51014.1. Judge Wilson is already positioned to interpret and, if necessary, enforce those pipeline safety requirements, and their application to the SYPS now rests with PHMSA—an agency that is not a party to this action. Because the Consent Decree proceeding now directly reaches the state-law requirements at issue here, transfer would ensure consistent results.

The risk that two federal courts will reach conflicting results is not hypothetical. That risk is highlighted in the reply briefs in support of Defendants' respective motions to dismiss filed in this case on September 8, 2026. In its reply, CalFire asks this Court to disregard Judge Wilson's rulings on the Defense Production Act and to reach the opposite conclusion, insisting that there are "obvious errors in Judge Wilson's analysis" and urging this Court to "dismiss the Third Cause of Action" on the merits. *See* ECF No. 64 at 16, 20. That is an open invitation for a second federal court to decide the very questions the Central District has already resolved concerning these same pipelines—precisely the duplication and inconsistency Section 1404(a) exists to prevent. The State's reply illustrates the same hazard from the opposite direction: rather than engage the actual dispute, it conflates two distinct Central District proceedings, asserting that "[t]he Ninth Circuit's resolution of *Wright* will resolve any dispute regarding PHMSA's asserted exclusive jurisdiction over pipeline safety for the Las Flores Pipelines." *See* ECF No. 62 at 15. To be clear, the appeal in *Wright* and the PHMSA jurisdictional question are not the same matter, and the State devotes an entire section of its brief to that mistaken premise. When other parties cannot keep the related Central District actions straight, that confusion is itself a compelling reason to consolidate this controversy before the single court already immersed in it.

In *Hawkins v. Gerber Products Co.*, 924 F. Supp. 2d at 1214, the Southern District of California transferred a putative class action to the District of New Jersey, where five similar cases against the same defendants were already pending before a single judge. The court held that transfer served the interest of justice "due to the possible consolidation of discovery and the conservation of time, energy and money, and the avoidance of the possibility of inconsistent judgments." *Id.* These cases all arose out of the same allegations that defendant "misleadingly advertise and market

infant formula and cereal"—much like the instant set of cases all arise out of the same resumption of the flow of oil in the operative pipeline. *Id.* at 1214.

Likewise, in *Carrera v. First Am. Home Buyers Prot. Co.*, No. CV 11-10242 GHK (FFMx), 2012 WL 13012698, at *1–2, *5 (C.D. Cal. Jan. 24, 2012), the Central District of California transferred an action to the Southern District of California, where a related, first-filed class action was pending, both involving defendant's unfair business practices. The court concluded that the substantial overlap between the two cases meant that "efficiency concerns" favored litigating them in a single forum. *Id.* at *4. Because the Southern District was "familiar with the allegations . . . [it could] efficiently resolve many of the substantive and procedural issues that relate to the interaction between the two cases . . . . Additionally, transfer serve[d] the interests of justice because it avoid[ed] the possibility of conflicting judgments." *Id.* at *5. As is present here, the two *Carrera* cases had substantial factual overlap that necessitated the transfer of the actions to one venue to ensure consistency of judgments and judicial efficiency, which are also the precise reasons Pacific Pipeline now seeks transfer of the instant case.

That this action may not be formally consolidated with the Central District cases does not diminish the judicial-economy interest. Judicial economy favors transfer to a district where related cases are being litigated, even where "there is no prospect of consolidation." *See Snow v. L'Oreal USA, Inc.*, No. CV 24-00110 MWJS-KJM, 2025 WL 1191680, *5 (D. Haw. Apr. 23, 2025); *see also Berg v. First Am. Bankshares, Inc.*, 576 F. Supp. 1239, 1243 (S.D.N.Y. 1983)) ("[T]he likelihood of consolidation is not a prerequisite."). The relevant factor is the pendency of related litigation and the efficiencies of adjudicating it in one forum, including coordinated discovery and consistent adjudication.

Accordingly, this Court should grant Pacific Pipeline's Motion, as doing so best serves the interests of justice by improving judicial efficiency, easing the burden on limited judicial resources, and lessening the risk of inconsistent judgments.

**C. The Convenience Factors and the Location of Events and Evidence Also Favor the Central District, and Plaintiff's Original Filing Does Not Bar Transfer.**

Section 1404(a) also directs the court to consider "[t]he convenience of parties" in ruling on a motion to transfer. Here, the convenience factors—the location where the operative events occurred, the plaintiff's choice of forum, the parties' contacts with the forum, and the contacts relating to the plaintiff's claim—all point to the Central District. *See Jones*, 211 F.3d at 498–99.

The operative events center on Santa Barbara County, which lies within the Central District. The entirety of Segment CA-324, and a significant portion of Segment CA-325, run through Santa Barbara County. Compl. ¶¶ 34–35. The dispute over the condition of and resumption of the flow of oil through the SYPS concerns those segments specifically, *id.* ¶ 12, and the Coastal Commission's permit demands are expressly directed at them. Compl. ¶¶ 11, 62–63. Because both the pipeline segments and the challenged regulatory conduct are centered in Santa Barbara County, litigating in the Central District would serve the convenience of the parties.

Pacific Pipeline's initial choice to bring this lawsuit in Kern County does not prevent transfer. Although "there is a strong presumption in favor of a plaintiff's choice of forum," that presumption belongs to the plaintiff, and it remains even if a plaintiff changes its preference on forum after filing suit. *L.A. Printex Indus., Inc. v. Le Chateau, Inc.,* No. CV 10-4264 ODW (FMOx), 2011 WL 2462025 (C.D. Cal. June 20, 2011) (granting plaintiff's motion to transfer). A plaintiff's current preference as to the location of the lawsuit—including one expressed through a motion to transfer—is entitled to deference and, "[a]bsent a strong showing of inconvenience," should not be disturbed. *Id.* That preference is well-founded here.

The subsequent development of the four related cases in the Central District and Judge Wilson's Omnibus Order have fundamentally changed the landscape of litigation concerning the SYPS.

This changed landscape is precisely why Pacific Pipeline seeks transfer now. When this matter was removed, the Central District cases were not yet being treated as an "orbit of related cases." Now, with Judge Wilson's Omnibus Order coordinating those cases on parallel tracks before him, judicial efficiency and consistency demand that this case be transferred to the forum where its companion cases sit.

## V. CONCLUSION

For the foregoing reasons, Pacific Pipeline Company respectfully requests that the Court grant this Motion and transfer this action to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a).

Dated: September 14, 2026

Respectfully submitted,

LATHAM & WATKINS LLP

By: /s/ *Jessica Stebbins Bina*

LATHAM & WATKINS LLP
Jessica Stebbins Bina (Bar No. 248485)
*jessica.stebbinsbina@lw.com*
10250 Constellation Blvd., Suite 1100
Los Angeles, CA 90067
Telephone: +1 424.653.5500
Facsimile: +1 424.653.5501

BABST CALLAND
Nicholas McDaniel (Pending *pro hac vice*)
*nmcdaniel@babstcalland.com*
505 Ninth St., NW, Suite 602
Washington, DC 20004
Telephone: +1 202.853.3455
Facsimile: +1 202.853.3491

ALSTON & BIRD LLP
Jeffrey D. Dintzer (SBN 139056)

*Jeffrey.dintzer@alston.com*
Garrett B. Stanton (SBN 324775)
*Jeffrey.dintzer@alston.com*
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071-1410
Telephone: +1 213.576.1000
Facsimile: +1 213.576.1100

PAUL HASTINGS LLP
Benjamin J. Hanelin (SBN 237595)
*benjaminhanelin@paulhastings.com*
Natalie C. Rogers (SBN 301254)
*natalierogers@paulhastings.com*
1999 Avenue of the Stars, 27th Floor
Los Angeles, CA 90067
Telephone: +1 310.620.5879
Facsimile: +1 310.620.5899

*Attorneys for Plaintiff Pacific Pipeline Company*